Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARTIN JOSEPH ABADILLA, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PRECIGEN, INC. F/K/A INTREXON CORPORATION, RANDAL J. KIRK, and RICK L. STERLING,<br><br>Defendants. | Case No:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Martin Joseph Abadilla ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Precigen, Inc. ("Precigen" or the "Company") f/k/a Intrexon Corporation ("Intrexon"), analysts' reports and advisories about the Company, information readily obtainable on the Internet, and the SEC's September 25, 2020 "Order Instituting Cease-and-Desist Proceedings Pursuant to Section 21C of the Securities Exchange Act Of 1934, Making Findings,

and Imposing a Cease-and-Desist Order" in the proceeding styled *In the Matter of Precigen, Inc. (f/k/a Intrexon Corporation)*, File No. 3-20069 (the "Cease-and-Desist Order"). Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired the publicly traded securities of the Company between May 10, 2017 and September 25, 2020, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4.      Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b) as Defendants conducts business in this district and a significant portion of the Defendants' actions and the subsequent damages took place within this District.

5.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

Class Action Complaint for Violation of the Federal Securities Laws

**PARTIES**

6.      Plaintiff, as set forth in the accompanying Certification, purchased the Company's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

7.      Defendant Precigen f/k/a Intrexon purportedly operates in the synthetic biology field and creates biologically-based products. The Company is incorporated in Virginia and its headquarters is in Germantown, Maryland. Precigen maintains an office in South San Francisco. During the Class Period, the Company's securities traded on the New York Stock Exchange ("NYSE") under the ticker symbol "XON" until September 25, 2018, when the Company's stock began trading on the NASDAQ market. On February 1, 2020, the Company changed its name to "Precigen, Inc." and its stock symbol to "PGEN."

8.      Defendant Randal J. Kirk ("Kirk") served as Chairman of the Board of the Company throughout the Class Period. Defendant Kirk also served as the Chief Executive Officer of the Company during the Class Period until February 2020.

9.      Defendant Rick L. Sterling ("Sterling") served as the Chief Financial Officer of the Company throughout the Class Period.

10.     Defendants Kirk and Sterling are sometimes referred to herein as the "Individual Defendants."

11.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

Class Action Complaint for Violation of the Federal Securities Laws

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

12.     The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

14.     The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements

15.     On May 10, 2017, the Company filed a Form 8-K (the "May 8-K") with the SEC which announced the Company's financial results and position for the quarter ending March 31, 2017. Attached to the May 8-K was a press release (the "May Press Release") and a slideshow (the "May Slideshow").

16.     The May Press Release stated the following, in pertinent part, regarding the Company's proprietary methanotroph bioconversion platform:

**Business Highlights and Recent Developments:**

- ***Intrexon's proprietary methanotroph bioconversion platform has achieved yields necessary for site selection on two molecules, isbobutyraldehyde and 2,3 butanediol (2,3 BDO), each of which represent a multi-billion dollar revenue opportunity for the Company.*** Yields for 2,3 BDO, a precursor to butadiene, increased by greater than 30% during the first quarter of 2017. ***This yield level produces a positive "in the money" gross margin based on current natural gas and product prices.*** While additional yield improvements and scaling milestones must be met, the current yields and business implications have led the Company to retain Moelis & Company to

Class Action Complaint for Violation of the Federal Securities Laws

advise it on strategic and financial options with respect to its bioconversion platform and specific products;

(Emphasis added.)

17.    The May Slideshow included the following slides, touting the Company's proprietary methanotroph bioconversion platform:





Class Action Complaint for Violation of the Federal Securities Laws

1
2
3
4
5
6
7
8
9
10
11



**Butadiene: $22B Addressable Market with MBP**

Intrexon's on-purpose butadiene process:



**Butadiene Market:**

- Global demand for butadiene estimated to be 10.8M metric tons per year in 2015, and projected to reach 12.4M tons by 2020. Total market of butadiene is approximately $22B

- Synthetic rubber production accounts for 62% of consumption.

- >95% of butadiene supply comes from byproduct of ethylene production by steam cracking of naphtha.

- The US shale revolution has caused US ethylene producers to switch to the cheaper ethane feedstock, which produces much less butadiene as a co-product.

SOURCE: ICIS, IHS reports

INTREXON

12    18.    On August 9, 2017, the Company filed a Form 8-K (the "August 8-K") with the SEC
13  which announced the Company's financial results and position for the quarter ending June 30, 2017.
14  Attached to the May 8-K was a press release (the "August Press Release") and a slideshow (the
15  "August Slideshow").

16    19.    The August Press Release stated the following, in pertinent part, regarding the
17  Company's proprietary methanotroph bioconversion platform: "***After attaining commercially***
18  ***relevant yields on two high-value industrial molecules***, isbobutyraldehyde and 2,3 butanediol (2,3
19  BDO), retained Moelis & Company to advise on strategic and financial options, later converting the
20  assignment to a transactional objective[.]" (Emphasis added.)

21    20.    The August Slideshow included substantially similar slides touting the Company's
22  proprietary methanotroph bioconversion platform as the May Slideshow, and included the following
23  updated slide:

24
25
26
27
28

- 6 -



21.    On November 9, 2017, the Company filed a Form 8-K (the "November 8-K") with the SEC which announced the Company's financial results and position for the quarter ending September 30, 2017. Attached to the May 8-K was a press release (the "November Press Release") and a slideshow (the "November Slideshow").

22.    The November Press Release stated the following, in pertinent part, regarding the Company's proprietary methanotroph bioconversion platform: "Intrexon's proprietary methanotroph bioconversion platform continued to increase yield across multiple products including 2,3 butanediol, which increased approximately 15% during the quarter, and isobutanol, which increased 78%[.]"

23.    The November Slideshow included the following slides, touting the Company's proprietary methanotroph bioconversion platform and its progress:



Class Action Complaint for Violation of the Federal Securities Laws





24.     On March 1, 2018, the Company filed a Form 10-K for the year ended December 31, 2017 (the "2017 Annual Report") with the SEC which provided the Company's financial results and position. The 2017 Annual Report was signed by Defendants Kirk and Sterling. The 2017 Annual Report contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Kirk and Sterling attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

25.     The 2017 Annual Report stated the following, in pertinent part, regarding the Company's proprietary methanotroph bioconversion platform and its feedstock:

> . . . In energy, we are working to create novel, highly engineered bacteria ***that utilize specific energy feedstocks, typically pipeline grade natural gas, to synthesize commercial end products, such as isobutanol for gasoline blending, 2,3 Butanediol for conversion to synthetic rubber and 1,4 Butanediol for polyester***. Today these target markets are estimated to represent over $100 billion in aggregate commercial opportunity.
>
> \*          \*          \*
>
> ***To date we have proven biological production of six valuable and large market fuel and chemical products.*** These products are isobutanol for gasoline blending, 2,3 Butanediol and isoprene for conversion to synthetic rubber, 1,4 Butanediol for polyester, farnesene for diesel fuel and lubricants and isobutyraldehyde for acrylics. In aggregate, we estimate that these products represent greater than a $100 billion market opportunity.
>
> (Emphasis added.)

Class Action Complaint for Violation of the Federal Securities Laws

26.     The 2017 Annual Report stated the following, in relevant part, regarding the Company's controls:

Based on their evaluation of our disclosure controls and procedures as of December 31, 2017, our chief executive officer and chief financial officer have concluded that, as of such date, *our disclosure controls and procedures were effective at the reasonable assurance level*.

\*     \*     \*

Our management assessed the effectiveness of our internal control over financial reporting as of December 31, 2017. In making this assessment, our management used the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission (COSO) in Internal Control - Integrated Framework (2013). *Based on this evaluation, management concluded that our internal control over financial reporting was effective as of December 31, 2017*.

\*     \*     \*

There have been no changes in our internal control over financial reporting during the quarter ended December 31, 2017 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

(Emphasis added.)

27.     On May 10, 2018, the Company filed a Form 10-Q for the quarter ended March 31, 2018 ("1Q18 10-Q") with the SEC which provided the Company's financial results and position. The 1Q18 10-Q was signed by Defendant Sterling. The 1Q18 10-Q contained signed certifications pursuant to SOX by Defendants Kirk and Sterling attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

28.     The 1Q18 10-Q contained the Company's Consolidated Unaudited Financial Statements which included its deferred revenue and accumulated deficit, stating relevant part:

Class Action Complaint for Violation of the Federal Securities Laws

| | March 31, 2018 | | |
| --- | --- | --- | --- |
| | As Reported | Balances Without Adoption of ASC 606 | Effect of Change Higher/(Lower) |
| **Consolidated Balance Sheet** | | | |
| Liabilities | | | |
|    Deferred revenue, current | $ 48,646 | $ 42,320 | $ 6,326 |
|    Deferred revenue, net of current portion | 214,744 | 182,239 | 32,505 |
| Total Equity | | | |
|    Accumulated deficit | (930,220) | (891,389) | (38,831) |

29.     The 1Q18-Q listed revenue as $24,025,000 for the period ending March 31, 2018.

30.     The 1Q18 10-Q also discussed the Company's controls and procedures, stating in relevant part: "There has been no change in our internal control over financial reporting during the three months ended March 31, 2018, that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting."

31.     The statements referenced in ¶¶15-30 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company was using pure methane as feedstock for its announced yields for its methanotroph bioconversion platform instead of natural gas; (2) yields from natural gas as a feedstock were substantially lower than the aforementioned pure methane yields; (3) due to the substantial price difference between pure methane and natural gas, pure methane was not a commercially viable feedstock; (4) the Company's financial statements for the quarter ended March 31, 2018 were false and could not be relied upon; (5) the Company had material weaknesses in its internal controls over financial reporting; and (6) as a result of the foregoing, Defendants' public statements were materially false and misleading at all relevant times.

Class Action Complaint for Violation of the Federal Securities Laws

**The Truth Begins To Emerge**

32.     On August 9, 2018, the Company filed a Form 8-K with the SEC announcing that previously issued financial statements could no longer be relied upon, stating in relevant part:

> **Non-reliance on Previously Issued Financial Statements**
> **Item 4.02**     **or a Related Audit Report or Completed Interim Review**
>
> On August 9, 2018, the Audit Committee of the Board of Directors of Intrexon Corporation (the "Company") ***concluded that a restatement of the unaudited interim consolidated financial statements included in the Company's Quarterly Report on Form 10-Q for the quarter ended March 31, 2018 (the "Form 10-Q") was required and those financial statements should not be relied upon*** because of errors in the Company's accounting related to the initial adoption, and resultant impacts, of Accounting Standards Codification Topic 606, Revenue from Contracts with Customers ("ASC 606"). This conclusion was reached in consultation with the Company's management and the Company's independent registered public accounting firm, PricewaterhouseCoopers LLP ("PwC").
>
> Effective January 1, 2018, the Company adopted ASC 606 using the modified retrospective method. The Company has determined it incorrectly applied certain aspects of ASC 606, including gross versus net presentation for payments pursuant to one of the Company's contracts and the guidance for contract modifications to a contract that had been modified prior to the adoption of ASC 606. ***The Company estimates that these errors have resulted in an overstatement of deferred revenue and accumulated deficit by approximately $67 million as of the adoption date, and an overstatement of revenues by approximately $4 million for the three months ended March 31, 2018.*** These estimates are based on the Company's current expectations and are subject to finalization, including completion of procedures for the Form 10-Q/A. ***The Company concluded these errors resulted from a material weakness as it did not maintain effective controls over the adoption of ASC 606.*** As a result, the Company has reevaluated its assessment of the effectiveness of the Company's disclosure controls and procedures for the three-months ended March 31, 2018 and has concluded that they were not effective.
>
> The Company's unaudited interim consolidated financial statements as of and for the quarter ended March 31, 2018 will be restated in an amended Quarterly Report on Form 10-Q/A.

(Emphasis added).

33.     On August 13, 2018, the Company filed a Form 10-Q/A, amending and restating its previous quarterly report for the period ending March 31, 2018.   The Form 10-Q/A included updated figures for deferred revenue and accumulated deficit:

| | March 31, 2018 | | |
| --- | --- | --- | --- |
| | As Restated | Balances Without Adoption of ASC 606 | Effect of Change |
| **Consolidated Balance Sheet** | | | |
| Liabilities | | | |
| Deferred revenue, current | $        38,376 | $        42,320 | $        (3,944) |
| Deferred revenue, net of current portion | 162,318 | 182,239 | (19,921) |
| Total Equity | | | |
| Accumulated deficit | (867,374) | (891,389) | 24,015 |
| Accumulated other comprehensive loss | (9,737) | (9,586) | (151) |

34.     The Form 10-Q/A restated revenue as $19,848,000 for the period ended March 31, 2018.

35.     The Form 10-Q/A discussed the Company's internal controls over financial reporting, stating in relevant part:

***Material Weakness in Internal Control Over Financial Reporting***

A material weakness is a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the annual or interim financial statements will not be prevented or detected on a timely basis.

***We did not maintain effective internal controls*** related to the adoption of Accounting Standards Codification ("ASC") Topic 606, *Revenue from Contracts with Customers* ("ASC 606"). Specifically, we did not design controls which were sufficiently precise to identify and account for the impacts of adopting ASC 606 on our open exclusive channel collaboration agreements, including gross versus net presentation for payments pursuant to one of the Company's contracts, the guidance for contract modifications to a contract that had been modified prior to the adoption of ASC 606, and the measurement of progress for performance obligations satisfied over time. ***This control deficiency resulted in the misstatement of accumulated deficit, deferred revenue, and collaboration and licensing revenues, and restatement of the Company's consolidated financial statements for the quarter ended March 31, 2018.***

Additionally, this control deficiency could result in a misstatement of the aforementioned account balances or disclosures that would result in a material misstatement to the annual or interim consolidated financial statements that would not be prevented or detected. ***Accordingly, our management has determined that this control deficiency constitutes a material weakness.***

***Changes in Internal Control Over Financial Reporting***

The material weakness described above constitutes a change in our internal control over financial reporting during the three months ended March 31, 2018, that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.

(Emphasis added.)

36.    On March 1, 2019, the Company filed a Form 10-K for the year ended December 31, 2018 (the "2018 Annual Report") with the SEC which provided the Company's financial results and position. The 2018 Annual Report was signed by Defendants Kirk and Sterling. The 2018 Annual Report contained signed certifications pursuant to SOX by Defendants Kirk and Sterling attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

37.    The 2018 Annual Report stated the following, in pertinent part, regarding the Company's proprietary methanotroph bioconversion platform and its feedstock:

In energy, we are working to create novel, highly engineered bacteria ***that utilize specific energy feedstocks, typically pipeline grade natural gas***, to synthesize commercial end products, such as isobutanol for gasoline blending, 2,3 Butanediol for conversion to synthetic rubber and 1,4 Butanediol for polyester. In aggregate, the value of such fuel and chemical products are significant, representing the potential of billions of dollars in estimated market opportunity.

38.    The 2018 Annual Report did not state that the Company was under investigation by the SEC, but instead stated:

***We may become subject to other claims, assessments and governmental investigations from time to time in the ordinary course of business.*** Such matters are subject to many uncertainties and outcomes are not predictable with assurance. We accrue liabilities for such matters when it is probable that future expenditures will be made and such expenditures can be reasonably estimated. We do not believe that any such matters, individually or in the aggregate, will have a material adverse effect on our business, financial condition, results of operations, or cash flows.

- 13 -

39.     The statements referenced in ¶¶36-38 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company was using pure methane as feedstock for its announced yields for its methanotroph bioconversion platform instead of natural gas; (2) yields from natural gas as a feedstock were substantially lower than the aforementioned pure methane yields; (3) due to the substantial price difference between pure methane and natural gas, pure methane was not a commercially viable feedstock; (4) the Company was under investigation by the SEC; and (5) as a result of the foregoing, Defendants' public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

40.     On March 2, 2020, after market hours, the Company filed a Form 10-K for the year ended December 31, 2019 (the "2019 Annual Report") with the SEC which provided the Company's financial results and position.

41.     The 2019 Annual Report stated the following, regarding the SEC investigation:

> ***In October 2018, the Company received a subpoena from the Division of Enforcement of the SEC informing the Company of a non-public, fact-finding investigation concerning the Company's disclosures regarding its methane bioconversion platform.*** The Company has produced documents to, and met with, the staff of the SEC and is voluntarily cooperating with their investigation. In November 2019, the staff of the SEC informed the Company that its investigative work was largely completed. The Company and the staff of the SEC are currently in discussions, and there can be no assurance regarding the ultimate outcome of the investigation.

(Emphasis added.)

42.     On September 25, 2020, the SEC announced the Cease-and-Desist Order which stated, among other things, that:

> These proceedings involve inaccurate reports ***concerning the company's purported success converting relatively inexpensive natural gas into more expensive industrial chemicals using a proprietary methane bioconversion ("MBC") program***. On May 10, 2017, Intrexon publicly reported progress in the laboratory converting natural gas into a precursor component of synthetic rubber called "2,3

- 14 -

Class Action Complaint for Violation of the Federal Securities Laws

BDO." ***Intrexon continued to publicly report the company's progress converting natural gas into 2,3 BDO in August and November 2017, which was important information for investors and analysts at that time.***

Intrexon was primarily using significantly more expensive pure methane for the relevant laboratory experiments but was indicating that the results had been achieved using natural gas. Natural gas differs from pure methane in that it contains chemicals that inhibit the bioconversion process. ***As a result, the Forms 8-K Intrexon furnished with the Commission on May 10, August 9 and November 9, 2017 were inaccurate under Section 13(a) of the Exchange Act and Rules 13a-11 and 12b-20 promulgated thereunder.***

(Emphasis added.)

43.     The Cease-and-Desist Order further explained that:
Intrexon pitched the MBC program privately to numerous potential business partners over the course of 2017 and 2018. A number of these potential partners performed due diligence on the MBC program including reviewing lab results and plans for commercialization. Intrexon has not yet found a partner for the MBC program. Intrexon worked on the feedstock issue with some success throughout 2018 and 2019 but never developed the MBC program to commercial scale.

44.     As a result of Defendants' wrongful acts and omissions, and the decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

45.     Plaintiffs did not discover, and a reasonably diligent plaintiff would not have discovered, facts sufficient to adequately plead Defendants' scienter until after the publication of the Cease-and-Desist Order on September 25, 2020.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

46.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the publicly traded securities of the Company during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

- 15 -

47.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on the NYSE or the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

48.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

49.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

50.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

Class Action Complaint for Violation of the Federal Securities Laws

- whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

- whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

51.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

52.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- the Company's securities are traded in efficient markets;

- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE or the NASDAQ, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold the Company's securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

Class Action Complaint for Violation of the Federal Securities Laws

53.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

54.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

### COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

55.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

56.     This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

57.      During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

58.     The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

Class Action Complaint for Violation of the Federal Securities Laws

59.   The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

60.   Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

61.   As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

62.   Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

Class Action Complaint for Violation of the Federal Securities Laws

63.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

64.     By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Company's securities during the Class Period.

### COUNT II

**Violation of Section 20(a) of The Exchange Act**
**Against The Individual Defendants**

65.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

66.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

67.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

68.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

69.     Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company,

Class Action Complaint for Violation of the Federal Securities Laws

each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

70.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.


Dated: October 5, 2020          Respectfully submitted,


**THE ROSEN LAW FIRM, P.A.**
/s/Laurence M. Rosen
Laurence M. Rosen, Esq. (SBN 219683)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

Class Action Complaint for Violation of the Federal Securities Laws