NINA F. LOCKER, State Bar No. 123838
LAURIE B. SMILAN, State Bar No. 116740
ANDREW J. FRANTELA, State Bar No. 325278
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: nlocker@wsgr.com
      lsmilan@wsgr.com
      afrantela@wsgr.com

*Attorneys for Defendants Precigen, Inc.*
*f/k/a Intrexon Corporation, Randal J.*
*Kirk, Rick L. Sterling, and Andrew J. Last*

[Additional Counsel On Signature Page Filing
Joinder for Defendant Robert F. Walsh III]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE PRECIGEN SECURITIES LITIGATION | CASE NO.: 5:20-cv-06936-BLF<br><br>CLASS ACTION<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Hearing Date: April 7, 2022<br>Time: 9:00 a.m.<br>Courtroom: 3, Fifth Floor<br>Judge: Hon. Beth Labson Freeman |

**TABLE OF CONTENTS**

|  |  | **Page** |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | PLAINTIFF FAILS TO ESTABLISH SCIENTER OR FALSITY | 1 |
| | A. The SEC Order Does Not Establish Falsity or Scienter | 1 |
| | B. The Ninth Circuit Recently Rejected Plaintiff's Fraud-by-Implication Theory | 3 |
| | C. The CWs Do Not Show That Any Statement Was False or Made with Scienter | 5 |
| | D. Defendants' Puffing, Opinion, and Forward-Looking Statements Are Inactionable | 8 |
| |    1. Statements of Pride and Optimism are Immaterial as a Matter of Law | 8 |
| |    2. Forward-Looking Statements Protected by the PSLRA Safe Harbor | 8 |
| |    3. Precigen's Optimistic Opinions are Non-Actionable | 10 |
| | E. There Was No Duty to Disclose the SEC Investigation Earlier – And No Scienter | 11 |
| | F. Plaintiff Fails to Establish the Requisite "Strong Inference" of Scienter | 11 |
| |    1. The CWs are Insufficient and the Core Operations Doctrine is Inapplicable | **Error! Bookmark not defined.** |
| |    2. The Alleged Facts Actually Undermine Any Inference of Scienter | 13 |
| | G. Plaintiff Fails to Plead Loss Causation | 14 |
| | H. Plaintiff Fails to State a Claim for Scheme Liability or Control Person Liability | 15 |
| | I. Plaintiff Should Not Be Granted Further Leave to Amend | 15 |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Azar v. Yelp, Inc.*,
2018 WL 6182756 (N.D. Cal. Nov. 27, 2018)........................................................15

*Browning v. Amyris Inc.*,
2014 WL 1285175 (N.D. Cal. Mar. 24, 2014) ..................................................... 7-8

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align*,
856 F.3d 605 (9th Cir. 2017)....................................................................10, 15

*City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*,
302 F. Supp. 3d 1028 (N.D. Cal. 2018) ....................................................................6

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
527 F. Supp. 3d 1151 (N.D. Cal. 2021) ...........................................................4, 8, 9

*Costanzo v. DXC Tech. Co.*,
2021 WL 5908385 (N.D. Cal. Dec. 14, 2021) .......................................................4, 7, 9, 10

*Cutler v. Kirchner*,
696 F. App'x 809 (9th Cir. 2017)....................................................................8

*Evanston Police Pension Fund v. McKesson Corp.*,
411 F. Supp. 3d 580 (N.D. Cal. 2019) ....................................................................2

*Glazer Cap. Mgmt., LP v. Magistri*,
549 F.3d 736 (9th Cir. 2008)....................................................................3, 13

*Hampton v. Aqua Metals, Inc.*,
2020 WL 6710096 (N.D. Cal. Nov. 16, 2020)....................................................................13

*In re Allied Nev. Gold Corp. Sec. Lit.*,
743 F. App'x 887 (9th Cir. 2018)....................................................................11

*In re Alphabet, Inc. Sec. Lit.*,
1 F.4th 687 (9th Cir. 2021),
*cert. granted*, No. 21-594 (Oct. 25, 2021)................................................. 5-6, 8, 12

*In re Atossa Genetics Inc. Sec. Lit.*,
868 F.3d 784 (9th Cir. 2017)....................................................................11

*In re BofI Holding, Inc. Sec. Lit.*,
977 F.3d 781 (9th Cir. 2020)....................................................................11

*In re Fannie Mae 2008 Sec. Lit.*,
891 F. Supp. 2d 458 (S.D.N.Y. 2012),
*aff'd*, 525 F. App'x 16 (2d Cir. 2013) ....................................................................2

*In re Nuvelo, Inc.*,
2008 WL 5114325 (N.D. Cal. Dec. 4, 2008) ....................................................................4

ii

*In re NVIDIA Corp. Sec. Lit.*,
    768 F.3d 1046 (9th Cir. 2014)..................................................................................................12

*In re OmniVision Techs., Inc. Sec. Lit.*,
    937 F. Supp. 2d 1090 (N.D. Cal. 2013) ...................................................................................12

*In re Peregrine Sys., Inc. Sec. Lit.*,
    2005 WL 8158825 (S.D. Cal. Mar. 30, 2005)...........................................................................5

*In re Quality Sys., Inc. Sec. Lit.*,
    865 F.3d 1130 (9th Cir. 2017)................................................................................................8, 9

*In re Restoration Robotics Inc. Sec. Lit.*,
    417 F. Supp. 3d 1242 (N.D. Cal. 2019) ...................................................................................11

*In re Rigel Pharms., Inc. Sec. Lit.*,
    |697 F.3d 869 (9th Cir. 2012) ..............................................................................................4, 13

*In re Twitter, Inc. Sec. Lit.*,
    506 F. Supp. 3d 867 (N.D. Cal. 2020) .........................................................................11, 12, 13

*In re VeriFone Holdings, Inc. Sec. Lit.*,
    704 F.3d 694 (9th Cir. 2012)......................................................................................................2

*Iron Workers Local 580 Joint Funds v. NVIDIA Corp.*,
    522 F. Supp. 3d 660 (N.D. Cal. 2021) .......................................................................................5

*Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*,
    998 F.3d 397 (9th Cir. 2021)....................................................................................................14

*Kyung Cho v. UCBH Holdings, Inc.*,
    890 F. Supp. 2d 1190 (N.D. Cal. 2012) ...................................................................................14

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008)............................................................................................11, 15

*Meyer v. Jinkosolar Holdings Co.*,
    761 F.3d 245 (2d Cir. 2014)...................................................................................................4, 5

*Mineworkers' Pension Scheme v. First Solar Inc.*,
    881 F.3d 750 (9th Cir. 2018)............................................................................................9, 14-15

*Mulquin v. Nektar Therapeutics*,
    510 F. Supp. 3d 854 (N.D. Cal. 2020) .......................................................................................4

*Nat'l Elevator Indus. Pension Fund v. Flex Ltd.*,
    2021 WL 6101391 (9th Cir. Dec. 21, 2021) ..........................................................................5, 9

*Nathanson v. Polycom, Inc.*,
    87 F. Supp. 3d 966 (N.D. Cal. 2015) .........................................................................................2

*Nguyen v. Endologix, Inc.*,
    962 F.3d 405 (9th Cir. 2020)......................................................................................................4

*No. 84 Emp.-Teamster Joint Council Pension Tr. v. Am. W. Holding Corp.*,
    320 F.3d 920 (9th Cir. 2003).....................................................................................................13

iii

*Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*,
2018 WL 3126393 (N.D. Cal. June 26, 2018) ...............................................................15

*Police Ret. Sys. v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014).........................................................................................8

*Prodanova v. H.C. Wainwright & Co., LLC*,
993 F.3d 1097 (9th Cir. 2021)...........................................................................11, 12, 14

*Robb v. Fitbit Inc.*,
216 F. Supp. 3d 1017 (N.D. Cal. 2016) ......................................................................5, 6

*Roberts v. Zuora, Inc.*,
2020 WL 2042244 (N.D. Cal. Apr. 28, 2020) ..................................................................6

*Schueneman v. Arena Pharms., Inc.*,
840 F.3d 698 (9th Cir. 2016)......................................................................................4, 11

*Singh v. Cigna Corp.*,
918 F.3d 57 (2d Cir. 2019)..............................................................................................5

*Vancouver Alumni Asset Holdings Inc. v. Daimler AG*,
2017 WL 2378369 (C.D. Cal. May 31, 2017)...................................................................6

*Vanleeuwen v. Keyuan Petrochemicals, Inc.*,
2014 WL 3891351 (S.D.N.Y. Aug. 8, 2014) ....................................................................2

*Veal v. LendingClub Corp.*,
2021 WL 4281301 (9th Cir. Sept. 21, 2021)..................................................................13

*Veal v. LendingClub Corp.*,
423 F. Supp. 3d 785 (N.D. Cal. 2019) .......................................................................6, 12

*Warshaw v. Xoma Corp.*,
74 F.3d 955 (9th Cir. 1996).............................................................................................8

*Webb v. Solarcity Corp.*,
884 F.3d 844 (9th Cir. 2018).....................................................................................13, 14

*Wochos v. Tesla, Inc.*,
2019 WL 1332395 (N.D. Cal. Mar. 25, 2019),
*aff'd*, 985 F.3d 1180 (9th Cir. 2021) .................................................................................6

*Wochos v. Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021).................................................................................. *passim*

## I.    INTRODUCTION

Plaintiff's Opposition spins a narrative that wholly ignores his own allegations and the undisputed facts. Plaintiff's entire case is grounded on the theory that non-disclosure of the fact that Precigen's methane bioconversion platform ("MBP") program's early laboratory tests used pure methane was misleading because pure methane produced *better* yields than, and, thus, was not predictive of, yields the Company hoped to achieve with methane derived from natural gas. However, Plaintiff does not dispute that as testing progressed, natural gas yields *exceeded* those achieved with methane in the lab. Further, Plaintiff's contention that the developmental MBP program was Precigen's "core" business ignores the Company's many other, more advanced, core health care ventures as well as its blunt warnings that the MBP program might <u>never</u> achieve commercial success. Plaintiff also ignores that Precigen's enterprise-wide financial crisis, necessitating the sale or suspension of <u>almost all</u> of its many non-core health care ventures, was the reason why the promising MBP program was halted and Precigen's stock declined.

Plaintiff similarly ignores Defendants' many legal authorities, including those demonstrating that neither (1) the uncorroborated, time-limited assertions in an unadmitted, non-fraud-based SEC settled order, nor (2) a handful of former employee's impressionistic, speculative accounts are sufficient to establish falsity or scienter under the PSLRA's stringent pleading standards. Plaintiff also fails to satisfy the Ninth Circuit's requirement that he plead facts showing that his losses were actually caused by some misstatement or omission related to the MBP program, rather than the Company's enterprise-wide financial woes. Finally, Plaintiff cannot overcome the fact that the Individual Defendants' stock purchases of *more than $180 million* as well as the Company's significant investments in the MBP program during the Class Period support an inference of innocence, not scienter or fraud – as the Ninth Circuit has repeatedly held.

Despite multiple attempts, Plaintiff's theory of fraud is unsupported by particularized facts and simply "does not make a whole lot of sense." The SAC should be dismissed with prejudice.

## II.    PLAINTIFF FAILS TO ESTABLISH SCIENTER OR FALSITY

### A.    The SEC Order Does Not Establish Falsity or Scienter

Plaintiff does not dispute that his claims largely rely on the assertions in the unadmitted,

1

DEFS' REPLY ISO MOT. TO DISMISS
CASE NO. 5:20-CV-06936-BLF

settled SEC Order which, as Defendants showed, (1) are not "findings" upon which Plaintiff may rely and (2) do not satisfy the PSLRA's stringent pleading requirements. Br. at 6-7. Plaintiff's claim that Defendants' cases are inapt because they involved SEC *complaints* (Opp. at 8) is not true – all involved and rejected allegations based on SEC settled orders. Br. at 6-7.

Plaintiff's cases did not uphold "allegations based on [an] SEC cease-and-desist order." Opp. at 8. *Nathanson v. Polycom, Inc.*, 87 F. Supp. 3d 966, 970-71 (N.D. Cal. 2015) did not rely on the SEC's order, issued *after* briefing on the motion to dismiss the complaint was complete. *Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, 593, 597 (N.D. Cal. 2019) acknowledges that "government . . . investigations ordinarily carry no weight in pleading" wrongdoing, and *In re VeriFone Holdings, Inc. Sec. Lit.*, 704 F.3d 694, 707 n.5 (9th Cir. 2012) warns against drawing inferences based on an SEC complaint. *In re Fannie Mae 2008 Sec. Lit.*, 891 F. Supp. 2d 458, 471 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 16 (2d Cir. 2013), granted dismissal with prejudice and also held that the SEC's assertions are *inadmissible for the truth* and no better than allegations cribbed from a news clipping. *Id.* (also cited in *Vanleeuwen v. Keyuan Petrochemicals, Inc.*, 2014 WL 3891351, at *4 (S.D.N.Y. Aug. 8, 2014)).

*The Scope of the Order is Limited:* Plaintiff does not deny that the SEC Order relates only to stated yields for 2,3 BDO in the 2017 8-Ks (not any other statements). Br. at 6. Nor does he dispute that the Order does not assert that (1) Precigen made any affirmative representations that yields were based on natural gas before natural gas results were first disclosed in November 2018 or (2) inaccurately stated the actual yields achieved at any time. *Id.* at 6-7. The Order's assertion that, in 2017, "laboratory experiments using natural gas as a feedstock [were] substantially lower than those disclosed publicly using pure methane has no bearing whatsoever on whether statements by Defendants subsequent to 2017 – as development progressed – were false or misleading when made. Br. at 6-7. Plaintiff claims that Precigen's statements about improved yields in May and August 2018 were misleading because, like the earlier-reported 2017 yields, those results were based on pure methane. Opp. at 8-9, 15-16. However, in May and August 2018, Precigen *also* disclosed that it achieved yields with natural gas that were *better* than the yields achieved with methane (Br. at 4; Ex. 18 at 22; Ex. 11 at 6-7) – disclosures that

2

Plaintiff does not challenge as false. Thus, if anything, Precigen's methane-to-methane yields comparison *understated* Precigen's 2018 achievements *with natural gas*. The entire premise of Plaintiff's case – that yields achieved using pure methane were not predictive of yields the Company hoped to achieve using natural gas – is flawed from the get-go but is clearly demonstrated to be false at least as of May 2018. Br. at 4.

*The Order Made No Assertions of Fraud or Scienter:* Plaintiff does not dispute that the Order does not assert that the 2017 8-Ks (much less any other statements) were fraudulent or that any Defendant acted with scienter. *Id.* at 7. Plaintiff's cynical retort that the SEC *could have* charged fraud if the agency (and Precigen) had more resources (Opp. at 2) does not come close to satisfying the PSLRA's stringent requirements for pleading falsity and a strong inference of scienter. *Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 748-49 (9th Cir. 2008).

**B.    The Ninth Circuit Recently Rejected Plaintiff's Fraud-by-Implication Theory**

As shown, at most, the Order suggests that although the 2017 8-Ks made *no* affirmative representations about the source of methane used in lab testing, investors may have *assumed* that the stated yields were achieved using natural gas. Br. at 7. However, the Ninth Circuit assesses private securities fraud claims based on "what the statement says," not based on "misleading-by-implication" theories reliant on selective editing.[1] *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1187, 1193 (9th Cir. 2021) (affirming dismissal of claims based on unsupported assertions that "words used in a statement [regarding manufacturing processes] have some special or nuanced meaning

---

[1] The SAC again deletes the word "enables" from statements that the MBP platform "*enables* the profitable use of low-cost natural gas" in an attempt to manufacture a claim that Precigen misrepresented that the yields it was reporting were based on natural gas. Br. at 8. Similarly, the omission of the caveats that "*additional yield improvements and scaling milestones must be met*" and that commercialization might never be achieved, belie the claim that forecasts of commercial viability created a misimpression that positive gross margins had already been achieved for products which Defendants never represented were being sold or even produced on a commercial scale. *Id.* at 3-4, 8-9 (citation omitted).

DEFS' REPLY ISO MOT. TO DISMISS
CASE NO. 5:20-CV-06936-BLF

that differs from what the literal words suggest"); Br. at 7-9. Thus, where, as here, Plaintiff alleges investors *assumed* that Defendants employed certain scientific methods but "does not allege that Defendants *misrepresented* their . . . methodology" they have no claim. *Mulquin v. Nektar Therapeutics*, 510 F. Supp. 3d 854, 860, 868 (N.D. Cal. 2020) (citation omitted); Br. at 9.

Moreover, as shown, unless, unlike here, defendants *make an affirmative statement* misstating their methods, there is no stand-alone duty to "include exhaustive disclosures of procedures used" when reporting scientific results. *In re Nuvelo, Inc.*, 2008 WL 5114325, at *11 (N.D. Cal. Dec. 4, 2008); *see also City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 527 F. Supp. 3d 1151, 1178, 1180 (N.D. Cal. 2021) ("*Oracle II*") ("no duty to disclose" absent affirmative misrepresentation of the reasons for reported results); Br. at 9. Because Precigen never affirmatively misrepresented that its laboratory yields were achieved with methane derived from natural gas, it was under no duty to disclose the details of (1) its early lab testing methods (using pure methane) or (2) the fact that natural gas presented different biochemical engineering challenges, which existing and later-perfected solutions resolved, achieving increased yields. *E.g.*, *In re Rigel Pharms., Inc. Sec. Lit.*, 697 F.3d 869, 879 (9th Cir. 2012); Br. at 8-9.

The limited "no lying" exception to the general "no duty to disclose details" rule distinguishes Plaintiff's cases. Opp. at 14. Plaintiff's only Ninth Circuit authority, *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 702, 706-08 (9th Cir. 2016), a case assessing *scienter*, "provides no assistance to plaintiff," as in that case "the company publicly stated that the results of [its] study made it confident that the FDA would approve [its] drug," when, in fact, its "rat study revealed that the drug might cause cancer" which it knew was "*the* sticking point with the FDA." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 418 (9th Cir. 2020) (citation omitted) (affirming dismissal; distinguishing *Schueneman*); *see also Costanzo v. DXC Tech. Co.*, 2021 WL 5908385, at *5 (N.D. Cal. Dec. 14, 2021) (same). *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014) is inapt for similar reasons: There, unlike here, the company made confident, affirmative statements that it was in full regulatory compliance, detailing very specific procedures, *e.g.*, 24-hour monitoring teams and specific equipment, while simultaneously admitting to regulators that such measures were failing to prevent significant violations. *Id.* at

DEFS' REPLY ISO MOT. TO DISMISS
CASE NO. 5:20-CV-06936-BLF

250-51; *see Singh v. Cigna Corp.*, 918 F.3d 57, 63 (2d Cir. 2019) (distinguishing *Meyer*).

Because Defendants neither misrepresented nor had any stand-alone duty to disclose their scientific or forecasting methodologies, such claims must be dismissed.

**C.     The CWs Do Not Show That Any Statement Was False or Made with Scienter**

The Opposition does not and cannot deny that (1) none of the CWs reported to any of the Individual Defendants, (2) none had any basis to assess any Defendant's state of mind, (3) none had knowledge of or involvement in the challenged disclosures, and (4) none were involved in applying the "techno-economic model" on which Precigen's cautious forecasts of commercial viability were based. Br. at 9-10. Thus, the CW accounts do not support an inference of scienter. *Id.*; *see also Nat'l Elevator Indus. Pension Fund v. Flex Ltd.*, 2021 WL 6101391, at *1 (9th Cir. Dec. 21, 2021) (affirming dismissal of similarly unreliable CW allegations).

The CWs also fail to provide any *specific* information at odds with any of Defendants' statements that was actually communicated to any Defendant responsible for such statements. Br. at 10-12. The unspecific, conclusory opinions of the CWs coupled with broad assertions that "everybody" knew, or that unspecified "test result data" on the "Lab Inventory Management System" "*was accessible to anyone working on the MBP program*" (Opp. at 16-17) "do not meet the level of specificity required by the PSLRA and . . . caselaw interpreting it." *Flex*, 2021 WL 6101391, at *1 (citation omitted); Br. at 10-11. Several of *Plaintiff's* cases reject such threadbare CW accounts. *In re Peregrine Sys., Inc. Sec. Lit.*, 2005 WL 8158825, at *42 (S.D. Cal. Mar. 30, 2005) ("no allegations identifying specific conversations, . . . meetings, or reports where [defendants] purportedly learned of the [specific] true and adverse information" (citation omitted)) (Opp. at 15, 18); *Robb v. Fitbit Inc.*, 216 F. Supp. 3d 1017, 1031-32 (N.D. Cal. 2016) (rejecting a CW's "widely familiar" allegations); Opp. at 17, 18.

What is required but missing from the SAC and the Opposition are specific allegations that identify specific data actually accessed by specific defendants that undermined their own specific statements. *Iron Workers Local 580 Joint Funds v. NVIDIA Corp.*, 522 F. Supp. 3d 660, 674-75 (N.D. Cal. 2021). Such details distinguish Plaintiff's remaining cases. *In re Alphabet, Inc. Sec. Lit.*, 1 F.4th 687, 705-06 (9th Cir. 2021) (specific Privacy Bug Memos reviewed by specific

5

senior executives detailed security vulnerabilities at issue and warned against disclosure), *cert. granted*, No. 21-594 (Oct. 25, 2021); *Roberts v. Zuora, Inc.*, 2020 WL 2042244, at *11-12 (N.D. Cal. Apr. 28, 2020) (<u>20</u> CWs, including senior executive's direct report, identified specific reports detailing product problems that were actually reviewed by specific executive defendants); *City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*, 302 F. Supp. 3d 1028, 1042-43 (N.D. Cal. 2018) (same) (distinguished in *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 815 (N.D. Cal. 2019)); *Fitbit*, 216 F. Supp. 3d at 1031-32 (same); *Vancouver Alumni Asset Holdings Inc. v. Daimler AG*, 2017 WL 2378369, at *16 (C.D. Cal. May 31, 2017) (alleging "not only that . . . defendants were in a position to receive information about '. . . diesel' emissions, but also that they in fact did receive such information").

Here, the few seemingly specific CW reports highlighted in the Opposition do not compare and also do not withstand close scrutiny. Plaintiff's assertion that "the SAC specifically alleges how Walsh and Kirk were present at meetings where information was presented that flatly contradicted Defendants' public statements of having already achieved 'in the money' status" (Opp. at 16 (citing ¶56 (CW3), ¶71 (CW5), ¶¶63-64 (CW4))) grossly overstates the actual allegations. CW3 only generally describes meetings with non-defendants. ¶56. CW5 claims that discussion about the MBP program being behind internal goals for achieving commercial viability occurred at town hall meetings, which he then merely speculates Kirk would know about because he "personally attended multiple town hall meetings," whose dates and content are not described. ¶¶71-72 (emphasis omitted). CW4 also generally claims that "Walsh and Yeh were well aware" that the program was not meeting unspecified internal targets, as discussed at unspecified meetings and reflected in unspecified lab data "accessible" on the Company's system. ¶¶64-65. None of these CWs provide the dates of the meetings, identify any specific information, or explain why being behind on unspecified *internal* targets – which "the securities laws do not punish" (*Wochos v. Tesla, Inc.*, 2019 WL 1332395, at *5 (N.D. Cal. Mar. 25, 2019), *aff'd*, 985 F.3d 1180 (9th Cir. 2021)) – somehow showed the techno-economic model's *projections* of commercial viability (for which none of the CWs were responsible) were objectively "impossible" to achieve. *Tesla*, 985 F.3d at 1191-94, 1196 (projections actionable only if "impossible"). There are *no* allegations about Last

6

or Sterling. Accordingly, the CW allegations fail. Br. at 9-14; *DXC*, 2021 WL 5908385, at *5.

Plaintiff also fails to address any of Defendants' arguments discrediting its star CW's non-expert opinion that Defendants' "in the money" statements were false because "yield," "titer," and "productivity" were different metrics (¶59) that *must have been* "cherry-picked" from separate experiments (¶¶60-61). Br. at 12-14. He fails to explain why using results from different experiments, if that in fact occurred, was scientifically unsound or why those metrics mattered since no metric other than "yield" was ever publicly disclosed, either alone or as an input to Precigen's commercial viability projections. *Id.*

The Opposition also exaggerates CW4's accounts, now claiming that CW4 "***oversaw MBP testing***," even though the SAC alleges that CW4 – "an engineer," not a biochemist – only had a "significant role in overseeing the testing" *related to scaling up production*, *i.e.*, the physical plant and equipment aspects of the program. ¶57; Opp. at 16. The Opposition's assertion that this non-scientist "directly told both Walsh and his deputy (Yeh)" about his "separate experiments" misgivings is unsupported in the SAC. Opp. at 16 (citing ¶¶59-61, 65). Instead, CW4 describes a meeting attended by Walsh and Yeh where the *fact* that results from different experiments were being used was allegedly discussed, *not* that this methodology was *criticized*, and that CW4 expressed concerns about this approach to Yeh, *not* Walsh, which Yeh apparently dismissed. ¶65. There are no allegations that Walsh ever learned of or agreed with CW4's views, a requisite for demonstrating scienter. *Tesla*, 985 F.3d at 1194; Br. at 11-12.[2] In any event, courts have rejected almost identical CW allegations that management "cherry picked the very best available data from tests at every step of the process" and must have been "aware that it would not be able to translate peak yields . . . produced in lab settings, to stable and reliable production at factory scale" as insufficient to plead either falsity or scienter – a point Plaintiff fails to address. Br. at 13 (quoting *Browning v. Amyris Inc.*, 2014 WL 1285175, at *11, *18 (N.D. Cal. Mar. 24, 2014)).

---

[2] CW4 claims these discussions took place in the second half of 2018 but Walsh's only statement during or after that period made no affirmative representations about the scientific or economic methods underlying the reported improvements in yields. ¶¶65, 150.

DEFS' REPLY ISO MOT. TO DISMISS
CASE NO. 5:20-cv-06936-BLF

Finally, CW4's allegations concerning whether "the MBP program had attained sufficiently high yields to proceed to 'site selection' and 'ground-breaking' for a commercial plant" (Opp. at 16) merely recounts a difference of *opinion* on the matter which, ironically, does not even square with Plaintiff's theory: CW4 *recommended* an immediate investment in such a facility and while Kirk concurred, Walsh was more cautious. ¶66; Br. at 10. In any event, internal differences of opinion about the implications of scientific results do not demonstrate fraud. Br. at 13; *infra* at 10-11.

Plaintiff does not address Defendants' arguments or cases demonstrating the deficiencies of its speculative, unspecific, unreliable CW allegations – which must be rejected. Br. at 9-14.

**D.     Defendants' Puffing, Opinion, and Forward-Looking Statements Are Inactionable**

      1.     <u>Statements of Pride and Optimism are Immaterial as a Matter of Law</u>

As shown, Defendants' "optimistic, subjective assessment[s]," about the MBP program's "breakthrough" achievements, enthusing that it was "the most valuable biotechnology in history" (Br. at 14) "amount to vague and generalized corporate commitments, aspirations, or puffery." *Alphabet*, 1 F.4th at 708-09 (affirming dismissal) (cited in Opp. at 11); *see also* Br. at 14 (citing *Oracle II*, 2021 WL 1091891, at *11). In so holding, *Alphabet* distinguished another of Plaintiff's cited cases, *Quality*, which, like Plaintiff's other authorities, involved "concrete" misrepresentations of past and present circumstances (not mere "puffing") directly contradicted by particularized, documented, currently known facts. 1 F.4th at 708 (distinguishing *In re Quality Sys., Inc. Sec. Lit.*, 865 F.3d 1130, 1141 (9th Cir. 2017) (positive statements about *existing* "strong" pipeline where pipeline reports showed steep decline)); *see also Warshaw v. Xoma Corp.*, 74 F.3d 955, 959 (9th Cir. 1996) (assurances that FDA approval *was* "*imminent*" where trial data showed increased mortality, making approval unlikely) (distinguished in *Police Ret. Sys. v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014)); *Cutler v. Kirchner*, 696 F. App'x 809, 814 (9th Cir. 2017) (statements that new computer system *was allowing* acquisitions to be integrated "quickly," when bugs were causing significant disruptions); Opp. at 11.

      2.     <u>Forward-Looking Statements Protected by the PSLRA Safe Harbor</u>

As Defendants showed, all of Precigen's plans and projections concerning its MBP platform, including that (1) development and production goals were "on track," (2) its product

DEFS' REPLY ISO MOT. TO DISMISS
CASE NO. 5:20-CV-06936-BLF

was projected to be "in the money," or (3) its estimates of the potential addressable market,[3] are "unquestionably . . . 'forward-looking statement[s]'" protected by the Safe Harbor. *Tesla*, 985 F.3d at 1189-92; *Oracle II*, 2021 WL 1091891, at *13 (market estimates); Br. at 14-15.

Plaintiff's tactics to evade the Safe Harbor fail. *First*, Plaintiff's cases suggesting that "on track" statements are not forward looking (Opp. at 11-12), have been overruled by *Tesla* which held that "on track" statements reflect an "implicit assertion that the goal is achievable based on current circumstances," an assumption which the Safe Harbor explicitly protects. Br. at 15; *Tesla*, 985 F.3d at 1189-92; *see also Flex*, 2021 WL 6101391, at *2 (quoting *Tesla*). *Second*, as this Court held in *DXC*, "Plaintiffs' cases about intertwined present and past facts are inapposite" because here there were no *affirmative misrepresentations* of past or present facts. 2021 WL 5908385, at *8-9 (distinguishing *Quality*, 865 F.3d at 1141 (misrepresentation of current pipeline in making projection)). *Third*, "Plaintiffs cannot convert facially forward-looking statements into a present representation of fact based on the . . . omission of an [unmet] internal goal." *Id.* at *25-26. *Fourth*, the assertion that the forward-looking statements were not identified as such (Opp. at 12) is false. Birn Dec. Ex. 2 at 3, Ex. 3 at 3, Ex. 5 at 5, Ex. 6 at 9, Ex. 7 at 10, Ex. 8 at 5, Ex. 9 at 10, Ex. 10 at 7-8, Ex. 11 at 5, Ex. 12 at 9, Ex. 13 at 5, Ex. 14 at 5, Ex. 18 at 8, Ex. 19 at 8-9, Ex. 27 at 5; Frantela Dec. Ex. 40 at 3-4.

*Finally*, Plaintiff's assertion that "even a true forward-looking statement is actionable if made with actual knowledge that it is false or misleading" misreads the statute, which provides that "a defendant will not be liable for a false or misleading statement if it is forward-looking and *either* is accompanied by cautionary language *or* is made without actual knowledge that it is false or misleading." *Tesla*, 985 F.3d at 1190 (citation omitted). In any event, Plaintiff fails to plead facts sufficient to establish *either* actual knowledge (Br. at 18-19; *infra* at 11-12) *or* that Defendants' cautions were insufficient. Br. at 15-16. Indeed, the only quibble with Defendants' cautionary statements pressed in the Opposition is the assertion that warnings that commercialization might *never* be achieved were somehow misleading because they did not spell

---

[3] Plaintiff does not defend its "addressable market" claims in the Opposition.

DEFS' REPLY ISO MOT. TO DISMISS
CASE NO. 5:20-CV-06936-BLF

out that "maybe never" also meant "not yet." Opp. at 12-13. No "reasonable investor" could have misinterpreted Precigen's blunt warnings as Plaintiff contends, especially since Defendants *never* claimed any MBP product was commercialized. *See DXC*, 2021 WL 5908385, at *9 ("meaningful cautionary language that warned investors about 'the eventualities that Plaintiffs complain of'" sufficient); Frantela Dec. Ex. 37 at 26, Ex. 38 at 31, Ex. 39 at 32.

### 3.   Precigen's Optimistic Opinions are Non-Actionable

Plaintiff's argument that Precigen's statements about testing yields are not non-actionable opinions (Opp. at 13) is a straw man. It is the "'interpretations of the results of [scientific] studies' [that are] 'opinions,'" *i.e.*, Precigen's belief that (1) yields suggested products would be "in the money" using natural gas prices if additional milestones and scaling were achieved and, (2) later, that the results justified site selection for a commercial plant. Br. at 16-17.

Plaintiff's argument as to why these opinions are actionable relies primarily on the CWs' more pessimistic views (Opp. at 13-14), ignoring that differences of opinion or "some fact cutting the other way" are insufficient to establish liability. Br. at 16-17; *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align*, 856 F.3d 605, 615-16, 618 (9th Cir. 2017); *Tesla*, 985 F.3d at 1196. Instead, opinions that "'great progress' was being made" and that profitable commercialization could be achieved are not actionable absent facts showing (1) there had been "no progress at all," (2) the speaker actually agreed with the CWs' more pessimistic views, and/or (3) the Company's goals were objectively "impossible," not merely unlikely. *Tesla*, 985 F.3d at 1193-94, 1196.

There are *no* facts alleged in the SAC or identified in the Opposition suggesting the opinions were not subjectively believed. Moreover, the only *facts* Plaintiff claims undermined Defendants' opinions – *i.e.*, that pure methane was used in the lab in 2017, that the use of natural gas presented bioconversion challenges, and that internal timelines were not met (Opp. at 13-14) – did not, in fact, prevent the MBP program's progress or make Precigen's goals "impossible." Instead, there were known and perfected solutions to deal with bioconversion process challenges and Precigen achieved yields using natural gas during the Class Period that continued to approach target yields for a commercial operation, while cautioning that such goals might not be

10

met (Br. at 4, 6, 11) – facts Plaintiff does not dispute but assiduously ignores. Thus, Plaintiff's cases (Opp. at 13), in which known facts directly contradicted the speaker's positive opinions, are inapt. *In re Allied Nev. Gold Corp. Sec. Lit.*, 743 F. App'x 887, 888 (9th Cir. 2018) (optimistic opinions about drilling project despite serious issues with no known solution which halted operations) (distinguished in *In re Restoration Robotics Inc. Sec. Lit.*, 417 F. Supp. 3d 1242, 1257 (N.D. Cal. 2019)); *In re Atossa Genetics Inc. Sec. Lit.*, 868 F.3d 784, 802 (9th Cir. 2017) (opinion that clearance risk had been addressed when FDA remained concerned about lack of clearance); *Schueneman*, 840 F.3d at 708 (opinion drug would be approved when carcinogenicity was a significant FDA concern). The citation to *In re BofI Holding, Inc. Sec. Lit.*, 977 F.3d 781 (9th Cir. 2020) is odd since the Ninth Circuit affirmed dismissal of opinion statements. *Id.* at 798.

**E.      There Was No Duty to Disclose the SEC Investigation Earlier – And No Scienter**

Plaintiff does not deny that there is no general duty to disclose a government investigation. *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1071 (9th Cir. 2008); Br. at 17-18. Nor does he address the fact that Precigen's Q3 2018 10-Q disclosed that "[f]rom time to time, we ***are*** involved in litigation or legal matters, including governmental investigations," disclosure which does not give reasonable investors the impression that there were no investigations. Br. at 17-18. While Plaintiff speculates that Defendants (other than Last) knew about the investigation earlier (Opp. at 21), "[k]nowledge . . . is insufficient to infer . . . intent to defraud . . . in not reporting the issue" (*In re Twitter, Inc. Sec. Lit.*, 506 F. Supp. 3d 867, 889 (N.D. Cal. 2020) (citation omitted)), before the SEC's intent was clear.

**F.      Plaintiff Fails to Establish the Requisite "Strong Inference" of Scienter**

1.      <u>The CWs are Insufficient and the Core Operations Doctrine is Inapplicable</u>

As shown, the CWs do not come close to meeting the PSLRA's stringent standards for pleading a strong inference of scienter. *Supra* at 5-8. Plaintiff's "core operations" allegations also "fall short of the PSLRA standard" as is "usually" the case where, as here, Plaintiff fails to provide any detailed allegations about the Defendants' actual exposure to omitted information. *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1109 (9th Cir. 2021) (citation omitted); Br. at 19-21. Plaintiff's Opposition offers nothing to refute that details concerning lab

11

testing in the developmental MBP program, one of Precigen's many ventures and one that was still in the development stage, were *not* "fact[s] of such prominence that it would be absurd to suggest that management was without knowledge of the matter" (*Prodanova*, 993 F.3d at 1111-12 (citations omitted)) and that omission of such details rendered any statements of its progress and prospects "dramatically false." *In re NVIDIA Corp. Sec. Lit.*, 768 F.3d 1046, 1063 (9th Cir. 2014); *see also Twitter*, 506 F. Supp. 3d at 889 (core operations doctrine inapplicable where issue related to "only one component" of business). Kirk's enthusiastic optimism concerning the MBP project does not establish its "central importance" to the corporation as a whole much less permit an inference that *every* Defendant knew *every* detail about *every* piece of information related to the developmental MBP program. *LendingClub*, 423 F. Supp. 3d at 817.

Again, Plaintiff does not address a single one of Defendants' cases and his cases, *In re OmniVision Techs., Inc. Sec. Lit.*, 937 F. Supp. 2d 1090, 1111 (N.D. Cal. 2013) and *Alphabet*, are inapt. Opp. at 19. Unlike *OmniVision*, here there are no specific allegations (*supra* at 1-8) to be "bolstered" by any "hands on" generalities and, in any event, only one CW ever even met with any defendant other than Walsh and sightings of Kirk at occasional "town hall" meetings are hardly suggestive of a "hands-on" style. Br. at 10. While *Alphabet* held that courts "may consider a senior executive's role . . . to determine whether there is a cogent and compelling inference that the senior executive knew of the information at issue" (1 F.4th at 706), any such consideration here supports an inference that Kirk, Last, and Sterling did *not* know the details of the MBP testing program – one of Precigen's many and least-advanced ventures. Birn Decl. Ex. 27 at 7-8. Moreover, *Alphabet's* ruling was not based on Defendants' positions, but on the fact that they received and reviewed specifically identified reports which laid out the undisclosed privacy "bug" at issue and warned against its disclosure. *Alphabet*, 1 F.4th at 706. There is not a single specific allegation like that here. Instead, Plaintiff merely points to Kirk's statement that Walsh keeps "us" generally apprised (Opp. at 19), but "offer[s] no information on whether [Walsh] reported . . . about the details" of the MBP program and no "admissions by [any other Individual Defendant] that he closely monitored" particular details and, thus, "does not provide any particularized facts supporting an inference of scienter." *Prodanova*, 993 F.3d at 1109 (affirming dismissal).

12

In any event, "[k]nowledge of the [information] is insufficient to infer that [defendants] *acted with the intent to defraud or with deliberate recklessness in not reporting the issue publicly*." *Twitter*, 506 F. Supp. 3d at 889 (emphasis added) (citation omitted). In this regard, although Walsh might have known many details about the MBP program testing, he is not alleged to have made disclosure decisions or signed SEC filings. Conversely, the Defendants who signed the SEC filings and/or regularly made statements are not sufficiently alleged to have known the MBP program's details. *Glazer*, 549 F.3d at 745 ("PSLRA requires [plaintiff] to plead scienter with respect to those individuals who actually made the false statements"). Either way, because "the complaint does not allege that Defendants *believed* that [by] not reporting information concerning [internal timelines or methods] they were making false or misleading statements," Plaintiff fails adequately to allege scienter. *Rigel*, 697 F.3d at 883-84.

2.   The Alleged Facts Actually Undermine Any Inference of Scienter

As Defendants showed, the fact that the Individual Defendants increased their holdings, with Kirk and his entities investing more than $180 million, and the fact that Precigen spent millions of dollars on the MBP program supports an inference of innocence, not scienter. Br. at 21; *see also Veal v. LendingClub Corp.*, 2021 WL 4281301, at *2 (9th Cir. Sept. 21, 2021) (quoting *Webb v. Solarcity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018)). Sales by two defendants who increased their overall holdings, which are not alleged nor alleged to be suspicious, do not change the calculus. Opp. at 19; *Hampton v. Aqua Metals, Inc.*, 2020 WL 6710096, at *16 (N.D. Cal. Nov. 16, 2020) (no inference of scienter where primary speaker increased holdings and two defendants sold small amounts). Nor does a private M&A transaction from which individuals may profit give rise to an inference of scienter. *Glazer*, 549 F.3d at 748; Opp. at 19-20; Br. at 22.

Again, Plaintiff does not address Defendants' arguments and cases and cites no case to the contrary on similar facts. Opp. at 19-21. In *America West*, "[m]ost of the individuals sold 100% of their shares, with the lowest percentage being 88%." *No. 84 Emp.-Teamster Joint Council Pension Tr. v. Am. W. Holding Corp.*, 320 F.3d 920, 939 (9th Cir. 2003). Plaintiff's only in-Circuit case finding scienter in the absence of suspicious trading involved other, compelling evidence of scienter: The CEO wrongfully withheld required reports revealing the company's dire

13

financial situation for a considerable period of time. *Kyung Cho v. UCBH Holdings, Inc.*, 890 F. Supp. 2d 1190, 1202-03 (N.D. Cal. 2012) (rejecting scienter allegations against other defendants). Here, by contrast, Precigen's "going concern" warnings and candid disclosures of risks and actual challenges facing the MBP program are inconsistent with any inference of scienter or fraud – another factor Plaintiff fails to address. *Webb*, 884 F.3d at 856; Br. at 21-22.

Considering the allegations holistically, Plaintiff has not established that an inference of intentional or deliberately reckless conduct is as cogent and as compelling as an inference of nonculpable conduct, requiring dismissal. *Prodanova*, 993 F.3d at 1112-13.

**G.      Plaintiff Fails to Plead Loss Causation**

As shown, Plaintiff's loss causation theory fails because he does not link the decline in Precigen's stock price to the "'*the very facts about which the defendant lied*,'" (*Tesla*, 985 F.3d at 1197 (emphasis added) (citation omitted)), *i.e.*, by showing that such losses were due to alleged misstatements concerning the MBP program as opposed to reports of Precigen's corporate-wide financial decline. Br. at 22-23. As also shown, the announcement of the SEC investigation does not qualify as a corrective disclosure because there was no link – not even market speculation later confirmed by the Company – that the investigation suggested a prior statement about the MBP program was fraudulent. *Id.* at 23-24. Plaintiff's purely speculative assertion, not articulated by the Company, the market, or the SEC, nor supported by any specific facts, that Precigen's financial decline related, "at least in part" to the MBP program (Opp. at 22), is wholly insufficient.

Tacitly recognizing the deficiencies of its corrective disclosure theory, Plaintiff asserts that he "may *also* plead 'materialization of the risk,' alleging that corrective discloses [sic] revealed the true extent of relevant risks." *Id.* at 24. This evasion fails for several reasons. *First*, because "plaintiff[] plead[s] a causation theory based on market revelation of the fraud, [the] court [should] naturally evaluate[] whether plaintiff[] ha[s] pleaded or proved the facts relevant to their theory" and not some other unpled, hypothetical approach. *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 410 (9th Cir. 2021) (citation omitted). *Second*, under any theory, "[t]he 'ultimate issue'" remains and remains unsatisfied: The allegations must demonstrate that the alleged fraud, as opposed to some other fact, caused the plaintiff's loss. *Mineworkers' Pension*

DEFS' REPLY ISO MOT. TO DISMISS
CASE NO. 5:20-CV-06936-BLF

*Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018). In Plaintiff's single in-Circuit "materialization of the risk" case, *Azar v. Yelp, Inc.* (which no other court has followed), unlike here, "Defendants *concede[d]*" that the previously undisclosed "decline in [customer] retention" at issue in the case was *the* factor that caused the company's downward revision in guidance which, when announced, caused the stock price to significantly decline. 2018 WL 6182756, at *22 (N.D. Cal. Nov. 27, 2018) (emphasis added) (cited at Opp. at 24). Here, there was no similar concession by Defendants, finding by the SEC, or even later-confirmed speculation by the market.

**H.     Plaintiff Fails to State a Claim for Scheme Liability or Control Person Liability**

Plaintiff does not contest that Defendants cannot be liable for statements they did not make nor address their arguments concerning "scheme" liability, thereby waiving any such claims. Br. at 18, 24; *Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*, 2018 WL 3126393, at *3 n.3 (N.D. Cal. June 26, 2018).  The Section 20(a) claim falls with the Section 10(b) claim (*Align*, 856 F.3d at 623) and Walsh, only a Senior Vice President, is not shown to have control over any other Defendant. *Cf.* Opp. at 25. Plaintiff also does not contest the request for judicial notice (*id.*) which applies to the additional excerpts from SEC filings cited in the SAC submitted with the Frantela Declaration.

**I.     Plaintiff Should Not Be Granted Further Leave to Amend**

Given that Plaintiff has had two opportunities to amend his pleadings, has failed to correct the deficiencies identified in the prior motion to dismiss, and has not properly sought further leave showing how those *same* deficiencies could be addressed, dismissal should be granted with prejudice. *See Metzler*, 540 F.3d at 1072 ("district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint" (citation omitted)) (affirming dismissal with prejudice where prior motions, although granted without reasoned opinions, advised Plaintiff of deficiencies they failed to cure).

DATED:  January 28, 2022

WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION

/s/ *Nina F. Locker*
    NINA F. LOCKER

*Attorneys for Defendants Precigen, Inc. f/k/a Intrexon Corporation, Randal J. Kirk, Rick L. Sterling, and Andrew J. Last*

15

JOINDER BY DEFENDANT ROBERT F. WALSH III

Defendant Robert F. Walsh III joins in the brief of the other Defendants.

NORTON ROSE FULBRIGHT US LLP

/s/ *Joshua D. Lichtman*
JOSHUA D. LICHTMAN

555 South Flower Street, Forty-First Floor
Los Angeles, CA 90071
Telephone:       (213) 892-9226
Facsimile:        (213) 892 9494
joshua.lichtman@nortonrosefulbright.com

PETER A. STOKES (admitted *pro hac vice*)
98 San Jacinto Boulevard, Suite 1100
Austin, TX 78701
Telephone:       (512) 474-5201
Facsimile:        (512) 536-4598
peter.stokes@nortonrosefulbright.com

*Counsel for Defendant Robert F. Walsh III*

**ATTESTATION PURSUANT TO LOCAL RULE 5-1(h)(3)**

This certifies, pursuant to Local Rule 5-1(h)(3), that all signatories to this document concur in its content and have authorized this filing.

DATED: January 28, 2022          /s/ *Nina F. Locker*
                                 NINA F. LOCKER

16

DEFS' REPLY ISO MOT. TO DISMISS
CASE NO. 5:20-CV-06936-BLF