UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARTIN JOSEPH ABADILLA, ET AL., <br> Plaintiffs, <br> v. <br> PRECIGEN, INC., et al., <br> Defendants. | Case No. 20-cv-06936-BLF <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND** <br><br> [Re: ECF No. 96] |

Before the Court is Defendants Precigen, Inc. ("Precigen"), Randal. J. Kirk, Rick L. Sterling, and Andrew Last's motion to dismiss Lead Plaintiff Raju Shah's Second Amended Consolidated Class Complaint under Federal Rule of Civil Procedure 12(b)(6) in this securities fraud class action. Defendant Robert F. Walsh III joins in the other Defendants' motion (collectively, including Mr. Walsh, "Precigen"; "Individual Defendants" refers to Mr. Kirk, Mr. Sterling, Mr. Last, and Mr. Walsh). Mr. Shah alleges that Precigen defrauded investors by publicly touting its methane bioconversion platform ("MBP"), which sought to convert cheap natural gas into valuable industrial products. Mr. Shah alleges that Precigen touted the MBP program based on misleading results based on testing utilizing expensive pure methane gas—rather than natural gas. Mr. Shah brings claims under Sections 10(b) and 20(a) of the Securities and Exchange Act ("Exchange Act") on behalf of a class (the "Class") consisting of all persons or entities who purchased or otherwise acquired Precigen common stock between May 10, 2017 and September 25, 2020 (the "Class Period"). *See* Second Amended Complaint ("SAC"), ECF No. 88 ¶ 1. Precigen moves to dismiss Mr. Shah's second amended complaint. *See* Motion, ECF No. 96. Mr. Shah opposes. *See* Opposition, ECF No. 98.

Based on the below reasoning, the Court GRANTS Precigen's motion WITH LEAVE TO

AMEND.

## I. BACKGROUND

Precigen is a Virginia corporation with its headquarters in Maryland. *See* SAC, ECF No. 88 ¶ 15. Precigen went public in 2013 under the name Intrexon, which it changed to Precigen on February 1, 2020. *See id.* ¶¶ 15, 18. Precigen is a synthetic biology company that develops biologically based products, including healthcare products, food, energy, chemicals, and biosensors. *See id.* ¶¶ 2, 15. Mr. Kirk served as Precigen's Chairman of the Board and Chief Executive Officer ("CEO") throughout the Class Period until January 1, 2020, after which he served as Precigen's Executive Chairman. *See id.* ¶ 19. Mr. Sterling served as Precigen's Chief Financial Officer ("CFO") throughout the Class Period. *See id.* ¶ 20. Mr. Walsh served as Precigen's Senior Vice President of Energy & Fine Chemical Platforms from May 2013 through November 2019 and was a self-described "Section 16 Officer." *See id.* ¶ 21. Mr. Last served as Precigen's Chief Operating Officer ("COO") from August 2016 to December 2017. *See id.* ¶ 22. Lead Plaintiff Raju Shah allegedly purchased Precigen common stock during the Class Period and was damaged by Defendants' alleged misstatements. *See id.* ¶ 14. Each of the Individual Defendants allegedly personally uttered or signed company disclosures containing the alleged misstatements. *See id.* ¶¶ 19–22.

Mr. Shah's allegations pertain to Precigen's representations regarding its methane bioconversion platform ("MBP")—part of the company directed by Mr. Walsh. *See id.* ¶¶ 2, 21. The MBP program sought to use certain enzymes known as methanotrophs to convert methane into valuable commercial end-products. *See id.* ¶ 2. The methane provided to the methanotrophs (the "feedstock") can come in two forms: (1) natural gas and (2) pure methane. *See id.* At all relevant times, the price of pure methane was over 200 times that of natural gas. *See id.* ¶¶ 24–25. However, using natural gas—rather than pure methane—as a feedstock poses significant technical challenges. *See id.* ¶ 2.

Mr. Shah alleges that Precigen touted the efficiency and economic viability of its MBP throughout the Class Period even though it was using pure methane—not natural gas—as a feedstock. *See id.* ¶¶ 4–5. Mr. Shah alleges that Precigen never achieved satisfactory results through

2

any MBP production method. *See id.* ¶ 6. Mr. Shah points to alleged false and misleading statements by Precigen and the Individual Defendants in earnings calls and SEC Form 8-K and 10-K disclosures. *See id.* ¶¶ 116–62. Despite the MBP program's alleged lack of commercial viability throughout the Class Period, Mr. Shah alleges that Precigen and the Individual Defendants claimed the program was "in the money;" it had achieved "commercially relevant yields" of various chemicals; it had developed the ability to "profitabl[y]" use natural gas; it had reached the stage of "site selection" for an industrial facility and working with an investment bank; and that it had a potential market size in the hundreds of billions of dollars. *See, e.g.*, *id.* ¶¶ 118–123, 125, 128, 130, 131, 135, 139, 142, 145, 149, 150. Further, while productivity gains using natural gas as a feedstock were allegedly necessary to the success of the MBP, Precigen and the Individual Defendants publicized yield gains using pure methane. *See, e.g.*, *id.* ¶¶ 118, 122, 129–30, 136–37, 142, 144, 148, 150, 153–55, 158. Additionally, throughout the Class period, Precigen and the Individual Defendants repeatedly referenced using natural gas as a feedstock for the MBP. *See, e.g.*, *id.* ¶¶ 119, 121, 125, 135, 139, 143, 148, 153, 155, 158, 160.

Mr. Shah alleges that the truth about the MBP program came out through six corrective disclosures between February 28, 2019 and September 25, 2020. *See id.* ¶¶ 76–93. The first of the alleged corrective disclosures (on February 28, 2019) raised "substantial doubt" about Precigen's ability to continue as a going concern due to a lack of funding on hand. *See id.* ¶¶ 77–79. Three of the other alleged corrective disclosures (on August 8, 2019; May 6, 2020; and August 10, 2020) indicated Precigen's plans to spin off its MBP into a new company, suspend its MBP operations, and eventually dispose of the MBP's assets, which were "not fully recoverable." *See id.* ¶¶ 81, 86, 88. The remaining two corrective disclosures relate to an SEC investigation started in October 2018 regarding Precigen's public representations about the MBP program. *See id.* ¶¶ 83, 91–93. On March 2, 2020, Precigen disclosed the investigation, and on September 25, 2020, the SEC issued a cease-and-desist order against Precigen (the "SEC Order"). The Order found that Precigen's representations in May, August, and November 2017 about the MBP's success converting natural gas into industrial chemicals were "inaccurate" due to the use of pure methane in achieving reported yields. *See id.* In addition to the alleged false and misleading statements outlined above, Mr. Shah

alleges that Precigen made false and misleading statements on November 8, 2018 and March 1, 2019 by disclosing that the company "may" become subject to governmental investigations without disclosing that it was actively under SEC investigation at the time. *See id.* ¶¶ 156, 161.

Precigen supports its claims with allegations from six confidential witnesses (the "CWs"). *See id.* ¶¶ 48–75. The CWs served as researchers, engineers, and scientists in Precigen's South San Francisco facility, where the MBP program was headquartered during the Class Period. *See id.* ¶¶ 48, 49, 51, 53, 57, 68, 73. The CWs allege that the ongoing challenges of using natural gas as a feedstock were well-known, commonly discussed, and accessible throughout the MBP program, such that Mr. Walsh and his top lieutenant Bryan Yeh were aware of them. *See id.* ¶¶ 50, 55–56, 64–66, 69–71, 75. Further, the CWs allege that Mr. Kirk was present at or aware of the substance of town hall meetings where difficulties with using natural gas as a feedstock were discussed. *See id.* ¶¶ 71–72. CW4's allegations are the most fulsome, indicating that, for example, Walsh and Yeh were briefed on ongoing difficulties with natural gas feedstock and the fact that public statements about the MBP program were based on pure methane experiments. *See id.* ¶¶ 64–65. CW4 also indicates that he recommended investing in a space for constructing a 20,000-liter facility for the MBP program and initially got Mr. Kirk's agreement, but the plan was vetoed by Mr. Walsh because the MBP program had not achieved its key metrics. *See id.* ¶ 66.

## II.  LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a plaintiff has stated a claim, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain

1  sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
2  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570
3  (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference
4  that the defendant is liable for the misconduct alleged." *Id.*  On a motion to dismiss, the Court's
5  review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp.*
6  *v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578,
7  581 (9th Cir. 1983).

8  In addition to the pleading standards discussed above, a plaintiff asserting a private securities
9  fraud action must meet the heightened pleading requirements imposed by Federal Rule of Civil
10 Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *In re*
11 *VeriFone Holdings, Inc. Secs. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012).  Rule 9(b) requires a plaintiff
12 to "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b); *see also*
13 *VeriFone*, 704 F.3d at 701.  Similarly, the PSLRA requires that "the complaint shall specify each
14 statement alleged to have been misleading, [and] the reason or reasons why the statement is
15 misleading[.]"  15 U.S.C. § 78u-4(b)(1)(B).  The PSLRA further requires that the complaint "state
16 with particularity facts giving rise to a strong inference that the defendant acted with the required
17 state of mind." *Id.* § 78u-4(b)(2)(A).  "To satisfy the requisite state of mind element, a complaint
18 must allege that the defendant[] made false or misleading statements either intentionally or with
19 deliberate recklessness." *VeriFone*, 704 F.3d at 701 (internal quotation marks and citation omitted)
20 (alteration in original).  The scienter allegations must give rise not only to a plausible inference of
21 scienter, but to an inference that is "cogent and at least as compelling as any opposing inference of
22 nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

23 **III.    REQUEST FOR JUDICIAL NOTICE**

24 Precigen requests judicial notice as to 36 exhibits. *See* Motion, ECF No. 96 at 2.  Mr. Shah
25 does not oppose for the limited purpose of showing what statements Precigen made during the Class
26 Period. *See* Opposition, ECF No. 98 at 25.  However, Mr. Shah argues that such exhibits cannot be
27 used to establish the truth of any matters asserted therein or to present a counternarrative. *See id.*
28 There are two doctrines that permit district courts to consider material outside the pleadings

without converting a motion to dismiss into a motion for summary judgment: judicial notice under Federal Rule of Evidence 201 and incorporation by reference. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018), *cert. denied sub nom. Hagan v. Khoja*, 139 S. Ct. 2615 (2019). The judicial notice doctrine permits a court to take judicial notice of matters that are "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)–(2). Incorporation-by-reference allows a court to treat certain documents as though they are part of the complaint itself "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Because all inferences must still be drawn in the nonmoving party's favor, however, "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1003.

Precigen argues that Exhibits 2–4, 5–14, 18–24, 26–29, and 36 are incorporated by reference into the Complaint. *See* Motion, ECF No. 96 at 2. The Court agrees, since these documents serve as the basis of Mr. Shah's claims. *See Ritchie*, 342 F.3d at 908.

Precigen further argues that the remaining exhibits—Exhibits 1, 15–17, 25, and 30–35—are subject to judicial notice. *See* Motion, ECF No. 96 at 2. The Court considers Precigen's request for judicial notice as to each exhibit in turn:

- Exhibit 1 is Precigen's March 1, 2017 Form 10-K and Exhibit 25 is a transcript from Precigen's earnings call on the same day. *See* Birn Decl., ECF No. 97 ¶¶ 1, 25. The Court GRANTS Precigen's request for judicial notice as to Exhibits 1 and 25, for the limited purpose of showing Precigen's public statements.
- Exhibits 15 to 17 are scientific articles regarding natural gas and methanotrophs. *See id.* ¶¶ 15–17. Since the Court does not see how the facts contained in these articles are "not subject to reasonable dispute," the Court DENIES Precigen's request for judicial notice as to these exhibits. *See Khoja*, 899 F.3d at 999.
- Exhibits 30 to 33 are a compilation of the SEC Form 4 filings made by Mr. Kirk, Mr. Walsh,

Mr. Last, and Mr. Sterling during the Class Period, disclosing their Precigen stock holdings. *See* Birn Decl., ECF No. 97 ¶¶ 30–33. Further, Exhibits 34 and 35 are Precigen's SEC Schedule 14A filings made on May 1, 2017 and April 29, 2020. *See id.* ¶¶ 34, 35. The Court will GRANT this request limited to the fact that the filings make certain representations and not the underlying truth of those statements. *See Khoja*, 899 F.3d at 999.

**IV.   DISCUSSION**

At the hearing on April 7, 2022 on Precigen's motion to dismiss, the Court indicated that it would grant the motion to dismiss with leave to amend based upon the lack of adequate factual allegations on the key issue of scienter. This order is intended to highlight the areas of primary concern to the Court.

    **A.   Claim 1 – Section 10(b) and Rule 10b-5**

"To plead a claim under section 10(b) and Rule 10b-5, the Plaintiff[] must allege: (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." *City of Dearborn Heights Act 345 Police & Fire Retirement Sys. v. Align Tech., Inc.*, 856 F.3d 605, 613 (9th Cir. 2017) (citations omitted). The parties' disputes hinge on (1) falsity (*i.e.*, whether Mr. Shah has adequately allege a material misrepresentation or omission); (2) scienter; and (3) loss causation. The Court considers each issue in turn.

        **1.   Falsity**

Precigen argues that Mr. Shah has not adequately alleged falsity of the challenged statements. Precigen argues that the SEC Order only pertains to the 2017 statements—and even then such an order cannot be used to establish falsity. *See* Motion, ECF No. 96 at 6–7. Precigen further argues that the 2017 challenged statements make no affirmative representation about the use of natural gas, so Mr. Shah must rely on a "fraud by implication" theory rejected in *Wochos v. Tesla, Inc*. *See id.* at 7–9 (citing *Tesla*, 985 F.3d 1180, 1187, 1193 (9th Cir. 2021)). Precigen also argues that the CWs only raise broad allegations like "challenges" in using natural gas as a feedstock, failure to meet internal targets, and non-expert speculation about the MBP's finances—all insufficient to plead falsity. *See id.* at 9–14. Additionally, Precigen argues the challenged

7

statements are non-actionable statements of pride and optimism, forward-looking statements, and statements of opinion. *See id.* at 14–17. As to the challenged statements regarding government investigations, Precigen argues that there is no affirmative statement or omission suggesting Precigen was *not* under investigation. *See id.* at 17–18.

In response, Mr. Shah argues that courts routinely allow plaintiffs to allege falsity based on SEC orders. *See* Opposition, ECF No. 98 at 8. Further, Mr. Shah argues that since some of the alleged false and misleading statements made in 2018 refer back to the reported 2017 results, his allegations as to the falsity of those 2018 statements are adequate as well. *See id.* at 8–9. Additionally, Mr. Shah argues that the CW allegations are sufficient to support falsity as to the remaining post-2017 statements he identifies. *See id.* at 9. In response to Precigen's arguments about non-actionable puffery and forward-looking statements, Mr. Shah argues that any "puffery" is misleading in context and the PSLRA Safe Harbor arguments are inapplicable to Precigen's statements about being presently "in the money." *See id.* at 11–13. Further, Mr. Shah argues that such statements are not opinions—and even if they were, they were false and misleading under *Omnicare*. *See id.* at 13–14 (citing *Omnicare, Inc. v. Laborers Dist. Council Const. Indus.*, 135 S.Ct. 1318, 1336–37 (2015)).

As to the 2017 challenged statements regarding the falsity of statements regarding yield levels and commercial viability of the MBP program in light of the SEC Order, the Court agrees with Mr. Shah. The SEC order is sufficient to establish falsity. *See VeriFone,* 704 F.3d at 706–707; *Nathanson v. Polycom, Inc.*, 87 F.Supp.3d 966 (N.D. Cal. 2015). Precigen's case authority in support of its argument that the SEC Order cannot be relied on to plead falsity is distinguishable. *See In re Facebook, Inc. Secs. Litig.*, 477 F.Supp.3d 980, 1017 n.4 (N.D. Cal. 2020) (finding falsity inadequately pled where "Plaintiff relies on the SEC's *Complaint*") (emphasis added); *Kyung Cho v. UCBH Holdings, Inc.*, 890 F.Supp.2d 1190, 1203 (N.D. Cal. 2012) (defendants' consent to entry of final judgment in SEC actions against them insufficient to plead scienter—not falsity—where they did not admit or deny the allegations against them). The Court finds that Mr. Shah has adequately alleged falsity as to the 2017 challenged statements regarding the yield levels and commercial viability of the MBP program based on the SEC Order. *See* SAC, ECF No. 88 ¶¶ 118,

1  122, 123, 128–131, 134, 136, 137.  Further, the Court finds that Mr. Shah has adequately alleged
2  falsity as to the May and August 2018 statements reporting that yields were up since 2017, since
3  these referred back to the 2017 statements for which Mr. Shah has adequately alleged falsity.  *See,*
4  *e.g.*, SAC, ECF No. 88 ¶¶ 142; Opposition, ECF No. 98 at 8–9.

        However, regarding the sufficiency of Mr. Shah's allegations as to falsity of the other post-2017 statements regarding the MBP program, the Court agrees with Precigen.  Mr. Shah's CW allegations about Precigen's failure to meet internal timelines and assessments of commercial viability that are not clearly within the expertise of Mr. Shah's engineer and researcher CWs are insufficient to allege falsity.  *See* Opposition, ECF No. 98 at 9 (citing SAC, ECF No. 88 ¶¶ 52, 57–63, 73–75); *Costanzo v. DXC Tech. Co.*, No. 19–cv–05794–BLF, 2021 WL 5908385, at *4 (N.D. Cal. Dec. 14, 2021) (dismissing claims based on failure to meet internal goals); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009) (CWs must be "described with sufficient particularity to establish their reliability and personal knowledge").  Further, the allegations regarding knowledge about generalized "challenges" facing the MBP program are not sufficient to support that Precigen's statements about the progress or commercial viability of the program were false or misleading.  *See* SAC, ECF No. 88 ¶¶ 50, 52, 56, 65, 71.  The Court finds that Mr. Shah has not adequately alleged falsity as to the other post-2017 challenged statements that cannot be linked back to statements adequately alleged to be false under the SEC Order.

        Mr. Shah further argues that Precigen's disclosures about the progress of the MBP program were based on "cherry-picked" data.  *See* Opposition, ECF No. 98 at 14.  But such a theory runs headlong into the recent Ninth Circuit decision in *In re Nektar Therapeutics Securities Litigation*, No. 21–15170, --- F.4th ----, 2022 WL 1573821 (9th Cir. May 19, 2022).  There, the Ninth Circuit found that plaintiffs had not adequately alleged false or misleading statements under the PSLRA in disclosing drug trial results that allegedly included "cherry-pick[ed]" outlier data.  *See Nektar*, 2022 WL 1573821 at *13.  Specifically, the Ninth Circuit found that "we simply do not know what the results would have been without the outlier data or what those results would mean[.]"  *See id.* at 5.  Mr. Shah may amend his Complaint in light of the *Nektar* decision.

        Additionally, the Court finds that many of the statements Mr. Shah points to are non-

9

actionable under the PSLRA. For example, many of the statements Mr. Shah points to are non-actionable puffery or statements of optimism. *See, e.g.*, SAC, ECF No. 88 ¶ 125 (describing MBP as "a very breakthrough platform"); *id.* ¶ 139 ("Today these target markets are estimated to represent over $100 billion in aggregate commercial *opportunity*") (emphasis added); *id.* ¶ 145 ("And the size – just the revenue size of that market, it's something like $900 billion in total. So, we're very excited about this development."). Others are forward-looking statements protected by the PSLRA Safe Harbor. *See, e.g.*, *id.* ¶ 139 ("[W]e are *working to create* novel, highly engineered bacteria . . . to synthesize commercial end products[.]") (emphasis added); *id.* ¶ 150 ("Intrexon's scientists continue to engineer the organism to improve utilization of natural gas as a carbon source, improving the potential operating margin."); ¶ 119 ("Intrexon has developed disruptive MBP technology that *enables* the profitable use of low cost natural gas to replace oil as the feedstock for several high value industrial products.") (emphasis added); ¶ 160. Further, some of the alleged false statements are opinions. *See, e.g.*, ¶ 101 ("The results that Bob Walsh disclosed a few minutes ago represent the achievement of what I personally believe is probably the most valuable biotechnology in history."). In amending his Complaint, Mr. Shah should consider paring down the alleged false and misleading statements to those that pertain to testing results and assessments that the MBP program was "in the money" at the time of the statement. *See, e.g.*, *id.* ¶¶ 118, 122, 128–131, 134–137, 144, 150.

As to the challenged statements regarding governmental investigations, the Court finds that Mr. Shah has adequately alleged falsity. *See* SAC, ECF No. 88 ¶¶ 156, 161. The Court finds it plausible that Precigen's general statements regarding a risk of governmental investigations "affirmatively create[d] an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]," *i.e.*, that Precigen was under investigation by the SEC at the time the statements were made. *Brody v. Transitional Hospitals Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002); *In re Alphabet, Inc. Secs. Litig.*, 1 F.4th 687, 703 (9th Cir. 2021) ("Risk disclosures that 'speak[] entirely of as-yet-unrealized risks and contingencies' and do not 'alert[] the reader that some of these risks may already have come to fruition' can mislead reasonable investors.") (quoting *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985–87 (9th Cir. 2008)). Precigen's only Ninth Circuit

case does not suggest otherwise. *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1071 (9th Cir. 2008) (finding falsity inadequately pled where "the TAC does not connect the . . . investigations to *any* false or misleading statement") (emphasis added).

Based on the above reasoning, the Court finds that Mr. Shah has adequately alleged falsity as to certain identified statements but not as to others. Mr. Shah can amend to address the deficiencies identified as to certain of the identified statements. Further, as the Court discussed at the April 7, 2022 hearing, Mr. Shah should consider submitting along with any amended pleading a chart listing all challenged statements, the individuals alleged to have made each statement, and the CW allegations supporting scienter as to each statement.

### 2. Scienter

Mr. Shah pleads scienter based on (1) CW allegations; (2) the "core operations" doctrine; and (3) allegations regarding Precigen's motive for artificially inflating its stock price. Further, Mr. Shah argues that he has adequately pled scienter as to the challenged statements regarding government investigations. Precigen challenges the sufficiency of Mr. Shah's allegations. The Court will consider each of Mr. Shah's allegations in turn.

#### a. CW Allegations

Precigen argues that the CW allegations fail to provide any support for scienter as to Last or Sterling. *See* Motion, ECF No. 96 at 10. Regarding Walsh and Kirk, Precigen argues that the CW allegations are too speculative and general, since they merely focus on meeting attendance, access to lab data, and generalized "chatter." *See* Motion, ECF No. 96 at 9–12. Otherwise, Precigen argues that the CW allegations are based on Precigen's alleged failure to meet irrelevant internal goals and speculation about Precigen's "techno-economic model" outside of the CWs' area of expertise. *See id.* at 12–13. In response, Mr. Shah argues that he alleges the problems with the MBP program were so widely known and serious that each Individual Defendant was at least reckless in his misstatements. *See id.* at 16–17. Further, for Mr. Walsh and Mr. Kirk, Mr. Shah points to allegations regarding (1) their town hall meeting attendance and (2) CW4's direct interactions with Kirk and Walsh. *See id.* at 15–16 (citing SAC ¶¶ 56, 59–61, 63–66, 71, 74–75).

The Court finds that the CW allegations are insufficient to plead scienter as to any of the

11

Individual Defendants. Regarding Mr. Last and Mr. Sterling, the CWs allege no direct interactions. Mr. Shah's cases do not support that the CW's generalized allegations of access and widespread knowledge are sufficient to plead scienter. In fact, Mr. Shah's cases suggest the contrary. *See, e.g.*, *Robb v. Fitbit Inc.*, 216 F.Supp.3d 1017, 1032 (N.D. Cal. Oct. 26, 2016) (finding scienter allegations that "employees were widely familiar" with inaccuracies were "conclusory"); *Ross v. Career Educ. Corp.*, No. 12 C 276, 2012 WL 5363431, at *11 (N.D. Ill. Oct. 30, 2012) (finding plaintiffs inadequately pled scienter as to CFO where "Plaintiffs allege no direct interaction that any CW had with" the CFO).

As to Walsh and Kirk, while Mr. Shah's scienter allegations are more specific, the Court nonetheless finds them insufficient. "General allegations of defendants' 'hands-on' management style, their interaction with other officers and employees, their attendance at meetings, and their receipt of unspecified weekly or monthly reports are insufficient." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1022 (9th Cir. 2005) (citations omitted). CW4's allegations of Mr. Kirk's "sporadic[]" visits to MBP headquarters and attendance at "multiple town hall meetings" lack particularity. *See City of Sunrise*, 2019 WL 6877195, at *42 ("CW reports must be specific in their time references"). And the alleged 2018 meeting between CW4 and Mr. Kirk is indeterminate. Mr. Kirk was allegedly optimistic about the MBP program, and there is no allegation that Mr. Kirk was present or involved when Mr. Walsh "vetoed" an expansion plan "[s]hortly thereafter." *See* SAC, ECF No. 88 ¶ 66. Further, Precigen raises strong points about CW4's reliability as to the related allegations regarding the "techno-economic model," which does not appear to be within his expertise as an engineer. *See* Reply, ECF No. 102 at 7–8; Motion, ECF No. 96 at 12–14; *Zucco Partners*, 552 F.3d at 995.

Otherwise, the strongest allegations of scienter Mr. Shah provides are CW4's allegations pertaining to Walsh, including an in-person meeting with CW4. *See, e.g.,* SAC ¶¶ 64–66. But these allegations are insufficiently specific or too indirect. *See id.* ¶ 64 (Walsh and Yeh were "well aware of the facts that rendered the Company's positive statements" about the MBP program materially false and misleading); *id.* ¶ 65 (Walsh was briefed on "positive MBP data being cited in the Company's public statements was being taken from separate experiments," although it was with

12

1  Yeh that CW4 indicated "concerns that the data being publicly presented was materially
2  misleading"); *Browning v. Amyris, Inc.*, No. 13–cv–02209–WHO, 2014 WL 1285175, at **11–18;
3  *City of Miami Gen. Empls.' & Sanitation Empls. Retirement Tr. v. RH, Inc.*, 302 F.Supp.3d 1028,
4  1042–44 (N.D. Cal. 2018) (finding scienter based on significantly more than discussion at staff
5  meetings).

6  Accordingly, the Court finds that Mr. Shah's CW allegations are insufficient to adequately
7  plead scienter.

### b. "Core Operations" Allegations

Mr. Shah pleads scienter under the "core operations" doctrine. *See* Opposition, ECF No. 98 at 18–21; SAC, ECF No. 88 ¶¶ 95–102. Such a doctrine applies "in rare circumstances where the nature of the relevant fact is of such prominence that it would be absurd to suggest that management was without knowledge of the matter." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014) (citations omitted). Mr. Shah argues that the MBP program was a core operation for Precigen, because it was one of the company's largest teams; Mr. Walsh often participated in earnings calls; Mr. Kirk called the program's work "probably the most valuable biotechnology in history"; and Mr. Walsh kept the other Individual Defendants informed about the program. *See* Opposition, ECF No. 98 at 18–19. Precigen argues that Mr. Shah's "core operations" allegations are not enough, including because Precigen had many other business ventures. *See* Motion, ECF No. 96 at 19–20.

The Court agrees with Precigen. Mr. Shah's allegations are not sufficient to show that the "rare circumstances" are present here to support a core operations theory. *See Intuitive Surgical*, 759 F.3d at 1062. The MBP program was only one of Precigen's many enterprises during the Class Period. *See* Birn Decl., ECF No. 97, Ex. 20 at 4 (listing MBP program as one of four "immediate investments and activities"); *In re Twitter, Inc. Secs. Litig.*, 506 F.Supp.3d 867, 889 (N.D. Cal. 2020) (product was "only one component" of company, not core operation); *see also Alphabet*, 1 F.4th at 706 (company's "lifeblood" subsidiary was core operation). Further, Mr. Shah's general allegations that Mr. Walsh was on earnings calls or kept management informed do not indicate the "rare circumstances" of a core operation. *See Intuitive Surgical*, 759 F.3d at 1062. Additionally,

13

1  Mr. Kirk's statement about "the most valuable biotechnology in history" has little bearing on
2  Precigen's operations. *See* SAC, ECF No. 88 ¶ 101.

3  Accordingly, the Court finds that Mr. Shah's allegations are insufficient to plead scienter
4  under a "core operations" theory.

**c. Motive Allegations**

6  Mr. Shah's scienter allegations also include (1) stock sales by Walsh and Sterling during the
7  Class Period; (2) Precigen's hundreds of millions in SPO fund-raising and convertible note sales;
8  (3) Precigen's acquisition of companies using common stock; and (4) Precigen's record-setting FY
9  2016 losses and later capitalization problems. *See* Opposition, ECF No. 98 at 19–21; SAC,
10 ECF No. 88 ¶¶ 103–115. Mr. Shah argues that these allegations support that Precigen had a motive
11 for inflating its stock price. *See* Opposition, ECF No. 98 at 19–21. Precigen argues that stock sales
12 not alleged to be suspicious and merger approvals and offerings are not sufficient to establish
13 motive. *See* Motion, ECF No. 96 at 22 (citing *Bao v. SolarCity Corp.*, 2015 WL 1906105, at *4
14 (N.D. Cal. Apr. 27, 2015)). Further, Precigen argues that its candid disclosures of capitalization
15 problems in 2019 undermines scienter. *See* Reply, ECF No. 102 at 14. Additionally, Precigen
16 points to the fact that Mr. Kirk and his controlled entities purchased more than $180 million in new
17 shares during the Class Period and all of the Defendants increased their holdings—arguing that these
18 details undermine scienter. *See* Birn Decl., Exs. 30–33; Ex. 34 at 28; Ex. 35 at 15; Ex. 13–14.

19 The Court agrees with Precigen. The kinds of conduct Mr. Shah alleges here—stock sales,
20 merger approvals, and offerings—are insufficient to take Mr. Shah's otherwise deficient scienter
21 allegations over the line, particularly without additional allegations indicating they were suspicious.
22 *See, e.g.*, *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002) (scienter cannot be
23 pled merely by alleging that "officers and directors possess motive and opportunity to enhance a
24 company's business prospects") (citations and quotations omitted); *Metzler*, 540 F.3d at 1067. Mr.
25 Shah's motive allegations are particularly deficient in light of the Precigen stock purchases the
26 Individual Defendants made during the Class Period.

27 Mr. Shah can point to no case in which motive allegations similar to those pled here—on
28 their own or paired with otherwise deficient scienter allegations—were sufficient to plead scienter.

14

*See Nguyen v. Radient Pharma. Corp.*, No. SA CV 11–0406 DOC (MLGx), 2011 WL 5041959, at *9 (C.D. Cal. Oct. 20, 2011) ("[M]otive and opportunity alone are insufficient to show scienter at the pleading stage[.]"); *In re Ibis Tech. Secs. Litig.*, 422 F.Supp.2d 294, 317 (D. Mass. 2006) (motive to delay timing of impairment charge to artificially inflate stock price before offering provided "additional evidence of scienter").

Accordingly, the Court finds that Mr. Shah's motive allegations are insufficient to adequately plead scienter.

### d. Statements Regarding Government Investigation

Regarding the challenged statements indicating that Precigen was periodically under government investigation, Mr. Shah argues that scienter is well-pled because it defies credulity that the Individual Defendants lacked knowledge about the SEC inquiry into its MBP program representations by November 2018. *See* Opposition, ECF No. 98 at 21. In response, Precigen argues that Mr. Shah merely speculates that the Individual Defendants knew about the SEC investigation, and scienter requires more than mere knowledge—particularly since the SEC's intent was not clear at the time of the challenged statements. *See* Reply, ECF No. 102 at 11. The Court finds that Mr. Shah's barebones allegations in support of scienter as to the challenged statements regarding government investigations are insufficient at this stage, particularly in the context of Mr. Shah's insufficient pleadings regarding scienter for the other challenged statements regarding the MBP. The Court will reassess Mr. Shah's allegations in support of scienter regarding the SEC investigation when it has Mr. Shah's amended pleading before it.

\* \* \*

Based on the above reasoning, the Court finds that none of Mr. Shah's individual allegations are sufficient to adequately plead scienter. Further, the Court finds that when considered holistically, Mr. Shah's allegations are insufficient. *Tellabs*, 551 U.S. at 310.

Accordingly, the Court finds that Mr. Shah has failed to adequately plead scienter.

### 3. Loss Causation

Precigen also argues that Plaintiff has inadequately pled loss causation. The loss causation element of a § 10(b) claim "is simply a variant of proximate cause," and "the ultimate issue is

15

whether the defendant's misstatement, as opposed to some other fact, foreseeably caused the plaintiff's loss." *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016). "Loss causation thus focuses on whether a loss can be attributed to the very facts about which the defendant lied." *Tesla*, 985 F.3d at 1197 (citations omitted). Loss causation is generally not a high burden for plaintiffs at the pleading stage in securities cases. *See, e.g.*, *Grigsby v. BofI Holding, Inc.*, 979 F.3d 1198, 1205 (9th Cir. 2020).

Precigen argues that the alleged corrective disclosures about Precigen's poor financial health are insufficient to plead loss causation, since investors could not infer information regarding the MBP program from those disclosures. *See* Motion, ECF No. 96 at 22–23. Precigen further argues that Mr. Shah must plead further facts like market speculation to adequately plead loss causation as to the disclosure of the SEC investigation and Order. *See id.* at 23–24. In response, Mr. Shah argues that Precigen's arguments are based on too exacting of a standard. Mr. Shah argues that loss causation can be adequately pled even if the alleged corrective disclosures do not identify specific prior company statements, including under a "materialization of the risk" theory. *See* Opposition, ECF No. 98 at 23–24. Further, regarding the corrective disclosures pertaining to the SEC investigation and Order, Mr. Shah argues that the case law supports the adequacy of his loss causation allegations. Mr. Shah argues that courts have been satisfied when a plaintiff points to both a disclosure regarding a government investigation and a *subsequent* corrective disclosure confirming the investigation pertained to the allegedly false statements at issue—just like Mr. Shah does here. *See id.* at 24–25 (citing *Lloyd,* 811 F.3d at 1209–10).

The Court finds that Mr. Shah has adequately alleged loss causation. It is plausible that investors could have reasonably inferred from at least the August 8, 2019; May 6, 2020; and August 10, 2020 disclosures—which pertain to Precigen's spinning off of the MBP, Precigen's suspension of MBP operations, and Precigen's ultimate writing off of MBP assets—that Precigen had made false and misleading statements about the MBP's progress and "in the money" status. *See In re Vivendi Univ., S.A. Secs. Litig.*, 634 F.Supp.2d 352, 364 (S.D.N.Y. 2009). Further, Mr. Shah has adequately alleged loss causation as to the March 2020 disclosure of the SEC investigation and the September 2020 disclosure of the SEC Order. Precigen's case authority only supports that

16

alleging the announcement of an investigation on its own is insufficient to plead loss causation. *See Lloyd*, 811 F.3d at 1209–10 ("[T]he announcement of a government investigation, without more, cannot meet the loss causation requirement, but much more is alleged here."). Here, Mr. Shah points to both the disclosure of an investigation and a subsequent disclosure of an order finding that Precigen had made "inaccurate" statements regarding the MBP program in 2017. *See* SAC, ECF No. 88 ¶¶ 83–85, 91–93. The Court finds Mr. Shah's pleadings sufficient to plausibly plead loss causation as to the March and September 2020 disclosures based on the alleged misstatements.

Precigen points to the case *Irving Firemen's Relief & Retirement Fund v. Uber Techs., Inc.*, 998 F.3d 397 (9th Cir. 2021) to support the insufficiency of Mr. Shah's pleadings as to loss causation. In the *Irving* case, the plaintiff "fail[ed] to link [the defendant's] reduced valuation to any particular scandal or misstatement"—instead, providing "general allegations, which lump together the effects of various alleged scandals." *Id.* at 407. Here, Mr. Shah alleges stock price drops for each alleged corrective disclosure and identifies misstatements related to the progress of the MBP program—including some of the very statements identified by the SEC Order. *See, e.g.*, ¶¶ 92–93, 117–38. Accordingly, the *Irving Firemen*'s case is not analogous to the alleged facts.

Based on the above reasoning, the Court finds that Mr. Shah has adequately alleged loss causation.

\* \* \*

Based on the above reasoning, the Court finds that Mr. Shah has failed to adequately plead a Section 10(b) claim against any of the Defendants, due to insufficient falsity and scienter allegations.

**B.   Claim 2:  Section 20(a)**

Section 20(a) of the Exchange Act extends liability for § 10(b) violations to those who are "controlling persons" of the alleged violations. *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1572 (9th Cir. 1990). To prevail on his claim for violations of § 20(a), Plaintiff must first allege a violation of § 10(b) or Rule 10b-5. *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1033 n.15 (9th Cir. 2002). As outlined above, Plaintiff has failed to do so here. Accordingly, the Court GRANTS the motion to dismiss the § 20(a) claim against Defendants Kirk, Walsh, Sterling, and Last.

17

Precigen further argues that Mr. Shah does not adequately allege that Mr. Walsh—only a Senior Vice President—was a "control person," since Mr. Shah does not allege that Mr. Walsh had control over any other Individual Defendant. *See* Motion, ECF No. 96 at 24; Reply, ECF No. 102 at 15. In response, Mr. Shah argues that he alleges Mr. Walsh was a self-described "Section 16 Officer" as the direct or indirect beneficial owner of more than 10% of Precigen's equity. *See* Opposition, ECF No. 98 at 25. Further, Mr. Shah argues that Mr. Walsh was in charge of the unit responsible for the MBP program. *See id.* (citing SAC, ECF No. 88 ¶¶ 21, 102).

To adequately plead an individual defendant is a "controlling person," plaintiffs must allege specific facts concerning a defendant's responsibilities within the company that demonstrate his or her involvement in the day-to-day affairs of the company or specific control over the preparation and release of the allegedly false and misleading statements. *See Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1163–64 (9th Cir. 1996); *see also In re Immune Response Sec. Litig.*, 375 F.Supp.2d 983, 1031 (S.D. Cal. 2005).

The Court agrees with Precigen. Mr. Shah's generalized allegations about Mr. Walsh's title and management of the MBP program, and internal communications are insufficient to plead he was a controlling person. *See* SAC, ECF No. 88 ¶ 21; *In re Intern. Rectifier Corp. Secs. Litig.*, No. CV 07–02544–JFW (VBKx), 2008 WL 4555794, at *22 (C.D. Cal. May 23, 2008) ("boilerplate allegation" insufficient to plead individual was controlling person). Mr. Shah must allege specific facts regarding Mr. Walsh's involvement in Precigen's day-to-day affairs or in his role in the preparation and release of the allegedly false and misleading statements to adequately plead a Section 20(a) claim against Mr. Walsh. *See Paracor Fin.*, 96 F.3d at 1163–64.

**V.   LEAVE TO AMEND**

A district court ordinarily must grant leave to amend unless one or more of the following factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

The Court finds that leave to amend is appropriate. While the present pleading is Mr. Shah's second amended complaint, this is the first time the Court has reviewed the adequacy of Mr. Shah's

18

pleadings. *See Eminence Capital*, 316 F.3d at 1052 (denying leave to amend may be appropriate where there has been "*repeated* failure to cure deficiencies by amendment") (emphasis added). Further, there is no indication that amendment would be futile at this stage. *See id.*

Accordingly, the Court's dismissal of Mr. Shah's complaint is WITH LEAVE TO AMEND.

## VI. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Mr. Shah's Section 10(b) and 20(a) claims are DISMISSED WITH LEAVE TO AMEND;
2. Mr. Shah SHALL file an amended complaint within 60 days of the date of this Order;
3. Mr. Shah SHALL file a chart listing each false statement, the person alleged to have made the statement, and the allegations supporting scienter as to that statement; and
4. if Precigen chooses to move to dismiss Mr. Shah's amended complaint, then Precigen SHALL provide copies of its exhibits with highlighting indicating cited portions.

Dated: May 31, 2022

_____
BETH LABSON FREEMAN
United States District Judge

19