John T. Jasnoch (CA 281605)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
jjasnoch@scott-scott.com

William C. Fredericks (*pro hac vice*)
Jeffrey P. Jacobson (*pro hac vice*)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6464
Facsimile:  212-223-6334
wfredericks@scott-scott.com
jjacobson@scott-scott.com

*Attorneys for Lead Plaintiff Raju Shah, and*
*Lead Counsel for the Putative Class and for Lead Plaintiff Raju Shah*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| MARTIN JOSEPH ABADILLA, et al., | Case No.: 5:20-cv-06936-BLF |
| Plaintiff, | |
| v. | Dept.:  Courtroom 3, 5th Floor<br>Judge: Honorable Beth Labson Freeman<br>Hearing Date:  July 6, 2023 |
| PRECIGEN, INC., et al., | |
| Defendants. | |
| *This Document Relates to:* | |
| *ALL CONSOLIDATED ACTIONS* | |

### LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# **TABLE OF CONTENTS**

STATEMENT OF ISSUES TO BE DECIDED ................................................................. 2

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

    I.      PRELIMINARY STATEMENT ............................................................... 1

    II.     FACTUAL BACKGROUND ................................................................... 1

    III.    THE PARTIES' SETTLEMENT NEGOTIATIONS ............................... 3

    IV.    THE PROPOSED SETTLEMENT ......................................................... 4

    V.     THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ....... 5

        A.    Standards Governing Approval of a Class Action Settlement ................... 5

        B.    The Court "Will Likely Be Able to" Approve the Proposed
            Settlement Under Rule 23(e)(2) ................................................................ 7

           1.    Lead Plaintiff and Lead Counsel Have Adequately
               Represented the Class in This Action ............................................ 7

           2.    The Settlement Was Reached Through Extensive Arm's-
               Length Negotiations Between Experienced Counsel and with
               the Assistance of an Experienced Mediator ................................. 8

           3.    The Settlement Is Within the Range of Possible Approval ............ 9

           4.    The Settlement Treats All Class Members Fairly ........................ 12

           5.    Lead Plaintiff Has Identified All Agreements Made in
                Connection with the Settlement .................................................. 13

    VI.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE ...................... 13

    VII.   THE COURT SHOULD APPROVE THE PROPOSED NOTICE AND
         THE PROPOSED PLAN FOR PROVIDING NOTICE AND
         PROCESSING CLAIMS ...................................................................... 15

        A.    Retention of A.B. Data ........................................................................... 15

        B.    Retention of Huntington National Bank .................................................. 15

        C.    Proposed Notice Procedures ................................................................... 16

        D.    Claims Processing .................................................................................. 18

        E.    Estimated Notice and Administrative Costs ........................................... 18

    VIII.  CLASS CERTIFICATION IS APPROPRIATE FOR SETTLEMENT
         PURPOSES ........................................................................................... 19

IX.     ATTORNEYS' FEES, LITIGATION EXPENSES AND PLAINTIFF'S EXPENSES .......................................................................................... 22

X.      PROPOSED SCHEDULE OF EVENTS ............................................................. 22

XI.     CONCLUSION ................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ............................................................................................ 21

*Barnes v. AT&T Pension Benefit Plan – Nonbargained Program*,
   270 F.R.D. 488 (N.D. Cal. 2010) ....................................................................... 20

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) .............................................................................. 19

*Bright v. Dennis Garberg & Assocs., Inc.*,
   No. 2:10-cv-7933, 2011 WL 13150437 (C.D. Cal. Aug. 24, 2011) ...................... 8

*Chavez v. Converse, Inc.*,
   No. 15-cv-03746-NC, 2020 WL 4047863 (N.D. Cal. July 8, 2020) ...................... 8

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ................................................................................. 7

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ....................................................................... 5, 14

*Elliott v. Rolling Frito-Lay Sales, LP*,
   No. SACV 11-01730, 2014 WL 2761316 (C.D. Cal. June 12, 2014) .................... 6

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...................................................................... 19, 20

*Harris v. Palm Springs Alpine Estates, Inc.*,
   329 F.2d 909 (9th Cir. 1964) .............................................................................. 20

*Hefler v. Wells Fargo & Co.*,
   No. 16-cv-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ............. 8, 13

*Hesse v. Sprint Corp.*,
   598 F.3d 581 (9th Cir. 2010) ................................................................................. 5

*Huddlestun v. Harrison Glob., LLC*,
   No. 17-cv-0253, 2018 WL 3752368 (S.D. Cal. Aug. 7, 2018) .............................. 6

*In re Adobe Sys., Inc. Sec. Litig.*,
   139 F.R.D. 150 (N.D. Cal. 1991) ........................................................................ 19

*In re Biolase, Inc. Sec. Litig.*,
   No. SACV 14-1300, 2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) ................... 14

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ................................................................................ 7

*In re Bridgepoint Educ., Inc. Sec. Litig.*,
   No. 12-cv-1737, 2015 WL 224631 (S.D. Cal. Jan. 15, 2015) ................................ 20

*In re Cooper Cos. Inc. Sec. Litig.*,
   254 F.R.D. 628 (C.D. Cal. 2009) ......................................................................... 19

*In re Diamond Foods, Inc., Sec. Litig.*,
   295 F.R.D. 240 (N.D. Cal. 2013) ......................................................................... 21

*In re Extreme Networks, Inc. Sec. Litig.*,
   No. 15-cv-04883-BLF, 2019 WL 3290770 (N.D. Cal. July 22, 2019) .................. 14

*In re Heritage Bond Litig.*,
   No. 02-ML-1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ........................... 6

*In re LendingClub Sec. Litig.*,
   No. C 16-02627 WHA, 2018 WL 1367336 (N.D. Cal. Mar. 16, 2018) .................. 5

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ................................................................................ 9

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................... 9, 11

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ................................................................................ 6

*In re Portal Software, Inc. Sec. Litig.*,
   No. C-03-5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) .................. 18

*In re Portal Software, Inc. Sec. Litig.*,
   No. C-03-5183 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) .................. 11

*In re Purdue Pharma, L.P.*,
   635 B.R. 26 (S.D.N.Y. 2021) ................................................................................ 8

*In re RH, Inc. Sec. Litig.*,
   No. 4:17-00554-YGR, 2019 WL 5538215 (N.D. Cal. Oct. 25, 2019) ......... 14, 15, 18

*In re Signet Jewelers Ltd. Sec. Litig.*,
   No. 1:16-cv-06728, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ....................... 13

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   895 F.3d 597 (9th Cir. 2018) ................................................................................ 6

*In re Zynga Inc. Sec. Litig.*,
   No. 12-cv-04007-JSC, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) .................. 14

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ................................................................................ 5

*Luz Bautista-Perez v. Juul Labs, Inc.*,
    No. 20-cv-01613-HSG, 2022 WL 307942 (N.D. Cal. Feb. 2, 2022) ...................... 6

*Mild v. PPG Indus., Inc.*,
    No. 2:18-CV-04231, 2019 WL 3345714 (C.D. Cal. July 25, 2019) ...................... 11

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) ................................................................................ 22

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
    442 F.3d 741 (9th Cir. 2006) ................................................................................ 5

*Reynolds v. Direct Flow Med., Inc.*,
    No. 17-cv-00204-KAW, 2019 WL 1084179 (N.D. Cal. Mar. 7, 2019) .................. 9

*Satchell v. Fed. Express Corp.*,
    No. C03-2659-SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .......................... 8

*Sheikh v. Tesla, Inc.*,
    No. 17-cv-02193-BLF, 2018 WL 5794532 (N.D. Cal. Nov. 2, 2018) .................... 8

*Siemer v. Assocs. First Cap. Corp.*,
    No. CV97-281, 2001 WL 35948712 (D. Ariz. Mar. 30, 2001) ............................. 20

*Stewart v. Applied Materials, Inc.*,
    No. 15-cv-02632-JST, 2017 WL 3670711 (N.D. Cal. Aug. 25, 2017) .................. 9

*Thomas v. MagnaChip Semiconductor Corp.*,
    No. 14-cv-01160-JST, 2017 WL 4750628 (N.D. Cal. Oct. 20, 2017) ................... 13

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) .............................................................................. 22

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) .............................................................................. 19

**Statutes, Rules, and Regulations**

15 U.S.C.
    §78u-4(a)(7) .......................................................................................................... 16

28 U.S.C.
    §§1715 (2005), *et seq.* .......................................................................................... 17

Federal Rules of Civil Procedure

Rule 23 ................................................................................................................. 13, 18
Rule 23(a) ................................................................................................................... 19
Rule 23(a)(2) .............................................................................................................. 20
Rule 23(a)(4) .............................................................................................................. 21
Rule 23(b) ................................................................................................................... 19
Rule 23(b)(3) ......................................................................................................... 16, 21
Rule 23(c)(2)(B) .................................................................................................... 16, 17
Rule 23(e) ......................................................................................................... 6, 7, 16
Rule 23(e)(1) ................................................................................................... 1, 6, 17
Rule 23(e)(1)(B) .............................................................................................. 6, 9, 17
Rule 23(e)(2) ....................................................................................................... 6, 7
Rule 23(e)(2)(A) ........................................................................................................... 7
Rule 23(e)(2)(B) ........................................................................................................... 7
Rule 23(e)(2)(C) ........................................................................................................... 7
Rule 23(e)(2)(D) ........................................................................................................... 7

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL – Case No. 5:20-cv-06936-BLF

**NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
<u>CLASS ACTION SETTLEMENT</u>**

**TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

PLEASE TAKE NOTICE that on July 6, 2023 at 9:00 a.m., before the Honorable Beth Labson Freeman of the U.S. District Court for the Northern District of California, 280 South 1st Street, San Jose, CA 95113, Fifth Floor, Courtroom 3, Lead Plaintiff Raju Shah will and hereby does move for an order pursuant to Federal Rule of Civil Procedure 23(e)(1) that will: (1) preliminarily approve the proposed Settlement[1] of this Action; (2) approve the form and manner of giving notice of the proposed Settlement to the Settlement Class; (3) authorize the retention of A.B. Data, Ltd. ("A.B. Data") as the administrator for the Settlement, and Huntington National Bank ("HNB") as Escrow Agent; and (4) schedule a final settlement hearing before the Court to determine whether the proposed Settlement, proposed Plan of Allocation, and Lead Counsel's motion for attorneys' fees and litigation expenses should be approved ("Fairness Hearing").

Pursuant to Civil Local Rule 7-2 and Your Honor's Standing Order re Civil Cases, the motion is noticed for a hearing on July 6, 2023 at 9:00 a.m.  However, because the motion is unopposed, Lead Plaintiff respectfully submits that it may be decided on the papers at this time and without a hearing – should the Court so desire.

This motion is supported by the following Memorandum of Points and Authorities in support thereof, the accompanying Declaration of William C. Fredericks in Support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement ("Fredericks Declaration" or "Fredericks Decl."), including the N.D. Cal. Procedural Guidance for Class Action Settlements Compliance Checklist ("Compliance Checklist") attached thereto as Exhibit 1, the accompanying Declaration of Adam D. Walter of the proposed claims administrator, A.B. Data, in Support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Proposed Class Action

---

[1]     Unless otherwise indicated, capitalized terms shall have their meaning as defined in the Stipulation and Agreement of Settlement ("Stipulation" or the "Stip."), attached hereto as Exhibit 2.

Settlement ("Walter Decl."), the previous filings and orders in this case, and such other representations as may be made by counsel at any hearing on this matter.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the proposed $13 million cash settlement of this Action is within the range of fairness, reasonableness, and adequacy to warrant the Court's preliminary approval so that notice of the Settlement and its terms can be disseminated to members of the Class.

2.      Whether the Court will likely be able to certify the Class for purposes of effectuating the Settlement.

3.      Whether the proposed form and manner of providing notice to the Class of pendency of the Action as a class action and of the proposed Settlement should be approved.

4.      Whether the Court should approve Lead Counsel's selection of A.B. Data to serve as Claims Administrator and its selection of HNB to serve as Escrow Agent in this matter.

5.      Whether the Court should set a date for a hearing for final approval of the proposed Settlement, the proposed Plan of Allocation, and Lead Counsel's motion for attorneys' fees and litigation expenses.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL – Case No. 5:20-cv-06936-BLF

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   PRELIMINARY STATEMENT

The proposed Settlement, if approved by the Court, will resolve all claims asserted in this Action against Defendants Precigen, Inc., formerly known as Intrexon Corporation, Kirk, and Walsh and their Related Persons (including its current and former officers), in exchange for a cash payment of $13,000,000 for the benefit of the Settlement Class.  The Settlement was achieved only after contested litigation, which included full briefing on Defendants' motion to dismiss Plaintiff's Second Amended Complaint (which resulted in the Court's dismissal, with leave to replead, of all claims) and Plaintiff's submission (following further investigation and contacts with confidential witness) of a Third Amended Class Action Complaint (ECF No. 116) (the "TAC").  Significantly, the Settlement was only reached after the TAC was filed, and only after an extended arm's-length mediation process conducted under the auspices of a highly experienced mediator, the Hon. Layn Phillips (U.S.D.J., ret.) of Phillips ADR ("Judge Phillips" or the "Mediator").  The Settlement is based on and fully consistent with Judge Phillips's "mediator's proposal," which the Parties entered into after a full-day mediation session, and the Settlement only became final only after Lead Counsel had had the opportunity to complete their review of over 83,000 pages of internal documents that Precigen produced prior to the execution of the Stipulation.  Fredericks Decl., ¶4.

Lead Counsel respectfully submit that the Settlement should be preliminarily approved (and, after issuance of notice and a fairness hearing, finally approved) because it represents a "fair, reasonable, and adequate" result for the Class, given the risks and challenges faced by Plaintiff and the Class in proving, and collecting on, the Released Claims as against Defendants. *Id.*, ¶5.

## II.   FACTUAL BACKGROUND

In this section, Lead Plaintiff sets out the key highlights of the Action to date.  A full history of the Action is included in ¶¶6-22 of the Fredericks Declaration.  Following the filing of an initial complaint, consolidation, and appointment of Raju Shah as Lead Plaintiff and Scott+Scott as Lead Counsel, pursuant to a Stipulation and Order entered on September 22, 2021 (ECF No. 87), on September 27, 2021, Lead Plaintiff filed the Second Amended Complaint (ECF No. 88).  On November 3, 2021, Defendants Precigen and Kirk and then-defendants Sterling and Last filed their

1    opening brief and other supporting materials in support of their motion to dismiss, which was

2    separately joined in by Defendant Walsh.  ECF Nos. 96-97.  Lead Plaintiff thereafter submitted his

3    opposition on December 17, 2021 (ECF No. 98), and the moving defendants submitted their reply

4    (as well as certain additional supporting materials) on January 28, 2022 (ECF Nos. 102-103).

5        The Court heard oral argument on the motion to dismiss on April 8, 2022, and at the hearing,

6    the Court indicated that it intended to issue an order (a) granting the motion to dismiss without

7    prejudice, and (b) granting Lead Plaintiff leave to file a further amended complaint.  ECF Nos. 106,

8    110.  On May 31, 2022, the Court issued its 19-page Order Granting Defendants' Motion to Dismiss

9    with Leave to Amend (ECF No. 111) ("MTD Order").

10       Shortly thereafter, the Parties commenced preliminary discussions about trying to resolve

11   the claims at issue through mediation.  Fredericks Decl., ¶13.  While these discussions were still

12   ongoing, on August 1, 2022, Lead Plaintiff filed his TAC (which complaint, *inter alia*, dropped Last

13   and Sterling as defendants).  *See* TAC.

14       On August 2, 2022, Lead Plaintiff, Precigen, Kirk, and Walsh advised the Court that they

15   had reached an agreement to try to pursue a settlement through mediation, and that same day the

16   Court entered an Order approving the Parties' proposed stipulation to vacate existing deadlines for

17   briefing any motions to dismiss the TAC while the Parties tried to reach a mediated settlement.  ECF

18   Nos. 118-119.

19       On December 2, 2022, the Parties reported to the Court that they had reached an agreement

20   in principle to settle all claims at issue in the Action, executed an initial Term Sheet, and continued

21   to negotiation the scope of confirmatory discovery.  ECF No. 123.  On January 20, 2023, the Parties

22   filed a Joint Status Report, stating that an initial draft of the contemplated Stipulation had been

23   circulated.  ECF No. 124.  On February 24, 2023, the Parties filed a further Joint Status Report,

24   stating that they had substantially completed negotiations with respect to the Stipulation, save

25   certain procedures for payment.  ECF No. 126.  On March 1, 2023, the Parties executed the

26   Stipulation.

27

28

### III.    THE PARTIES' SETTLEMENT NEGOTIATIONS

Beginning in June 2022, Defendants and Lead Plaintiff, through their counsel, commenced preliminary discussions regarding the possibility of trying to resolve the claims at issue through mediation, and the Parties ultimately agreed to retain a highly experienced mediator of securities class actions, Judge Phillips, for that purpose.  Fredericks Decl., ¶14.

Pursuant to Judge Phillips' instructions (as Mediator), both Lead Plaintiff and Defendants prepared and exchanged comprehensive opening mediation briefs and supporting materials on September 30, and submitted additional reply papers and supporting materials on November 3, 2022.  In addition, as part of the mediation process, Precigen produced to Lead Plaintiff certain relevant Precigen documents that Lead Plaintiff had requested in advance of the mediation.  *Id.*, ¶16.  Lead Counsel also participated in pre-mediation conference calls with the Mediator to review the Parties' positions on specific legal and factual issues raised by the Mediator.  *Id.*, ¶23.

On November 17, 2022, representatives of the Parties attended a full-day in-person mediation session in New York City under the auspices of the Mediator.  *Id.*, ¶17.  At the end of this full-day mediation session, the Mediator made a "mediator's proposal" for a global settlement of all claims asserted in the Action under which Lead Plaintiff (on behalf of himself and the putative class) would settle, compromise, and release all claims in exchange for Defendants' payment of $13 million in cash.  *Id.*, ¶18.

Lead Plaintiff, Precigen, and Kirk accepted the "mediator's proposal" in principle, subject to the resolution of certain non-monetary terms regarding the nature, scope, and completion of confirmatory discovery to be provided to Lead Plaintiff by Precigen prior to the execution of a final stipulation of settlement, and the Parties promptly notified the Court accordingly.[2]  *Id.*, ¶19.

Lead Plaintiff and Precigen thereafter reached an agreement in early December 2022, whereby Precigen agreed to produce, and Lead Counsel thereafter reviewed, confirmatory discovery consisting of roughly 83,000 pages of documents from Precigen.  On January 20, 2023, Lead

---

[2]    In January 2023, Defendant Walsh agreed to settle on terms consistent with the mediator's proposal and is therefore also a signatory to the Stipulation.  *Id.*, ¶21.

1   Counsel advised Precigen that their review had confirmed their original assessment that the

2   proposed Settlement was fair, reasonable, and adequate, and that Lead Plaintiff would elect to

3   proceed with the Settlement.  *Id.*, ¶20.

4   　　　The Parties signed the Stipulation on March 1, 2023.  On the same day, the Parties entered

5   into a confidential Supplemental Agreement, which gives Defendants the right to terminate the

6   Settlement if valid requests for exclusion from persons and entities entitled to be members of the

7   Settlement Class exceed an amount agreed to by the Parties.  *Id.*, ¶22.

8   **IV.    THE PROPOSED SETTLEMENT**

9   　　　The Settlement provides that following preliminary approval, Defendants will cause $13

10   million in cash to be paid into an interest-bearing Escrow Account.  Stip., ¶2.1.  The Settlement

11   Amount, plus accrued interest, after the deduction of attorneys' fees and litigation expenses awarded

12   by the Court, Notice and Administration Expenses, Taxes and Tax Expenses, and any other costs or

13   fees approved by the Court (the "Net Settlement Fund"), will be distributed among Settlement Class

14   Members who submit valid Claim Forms, in accordance with a plan of allocation to be approved by

15   the Court.  *Id.*, ¶¶2.2, 2.5.  If the Settlement is approved, Defendants will have no right to the return

16   of any portion of the Settlement Fund based on the number or value of Claims submitted.  *Id.*, ¶2.3.

17   　　　The Settlement Class Is the Same as Alleged in the Complaint.  The Settlement will apply

18   to the same Class that was alleged in the Complaint.  *See* TAC, ¶201; Stip., ¶1.46.  The Settlement

19   Class includes all Persons or entities who purchased or otherwise acquired publicly-traded shares of

20   the common stock of Precigen, Inc. f/k/a Intrexon Corporation (ticker PGEN, formerly XON)

21   between May 10, 2017 and September 25, 2020, inclusive, and were damaged thereby (subject to

22   certain exclusions).

23   　　　The Release Is Appropriate.  The Stipulation provides for Class Members to release the

24   "Released Claims" as against the "Released Defendant Persons."  *See* Stip., ¶3.1.  Released Claims

25   include claims by "Plaintiff, any Settlement Class Member, or any of their Related Persons arising

26   out of, relating to, or in connection with both: (a) the facts, events, transactions, occurrences,

27   statements, representations, misrepresentations or omissions that were or could have been alleged

28   in the Action; and (b) the purchase or acquisition of publicly-traded Precigen common stock during

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL – Case No. 5:20-cv-06936-BLF

the Class Period." Stip., ¶1.40. The Settlement's release provision, however, does not release the claims asserted in *In re Precigen, Inc. Stockholder Litigation*, Case No. 2020-0767-PAF (Del. Ch. Ct.), *Wright v. Alvarez*, Case No CL-2020-20013 (Va. Cir. Ct.), and *Kent v. Precigen, Inc.*, Case No. CL21-6349 (Va. Cir. Ct.), the pending derivative actions purportedly on behalf of Precigen against certain current and former Precigen offices and directors arising out the same factual predicate. Stip., ¶¶1.14, 1.40.

The release is thus appropriately limited to claims that relate to the same factual allegations as set forth in the TAC, and it releases ***only*** claims arising from the purchase or acquisition of Precigen common stock during a "Class Period" that is the same as that alleged in the operative complaint. *See* TAC, ¶¶1, 201; Stip., ¶¶1.10, 1.46. In short, the releases here will bar only claims based on the same underlying factual predicates (Class Period purchases of Precigen shares) as that which underly the claims being settled in this Action, as required by Ninth Circuit law. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) (a class release may release claims not asserted in the action as long as they arise from the same set of factual allegations); *see also Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010). The proposed release is, therefore, tailored to the conduct at issue in this Action and is consistent with release provisions approved by courts in this District. *See, e.g.*, *In re LendingClub Sec. Litig.*, No. C 16-02627 WHA, 2018 WL 1367336, at *4 (N.D. Cal. Mar. 16, 2018) (approving release that was "anchored to 'the purchase, acquisition, holding, sale, or disposition of LendingClub common stock by Class Members during the [class] period'")[3]; Judgment Approving Class Action Settlement, *In re Oracle Corp. Sec. Litig.*, No. 5:18-cv-04844-BLF, ECF No. 148 (N.D. Cal. Jan. 13, 2023) (approving similar release).

## V. THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

### A. Standards Governing Approval of a Class Action Settlement

In the Ninth Circuit, there is a strong judicial policy in favor of voluntarily settlement of litigation, and particularly so in class actions. *See, e.g.*, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992);

---

[3]     All citations are omitted unless otherwise noted.

1   *In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005)

2   ("'There is an overriding public interest in settling and quieting litigation,' and this is 'particularly

3   true in class action suits.'").   Settlements of complex cases greatly contribute to the efficient

4   utilization of scarce judicial resources and achieve the speedy resolution of justice.  *See Elliott v.*

5   *Rolling Frito-Lay Sales, LP*, No. SACV 11-01730, 2014 WL 2761316, at *3 (C.D. Cal. June 12,

6   2014) ("judicial policy favors settlement in class actions and other complex litigation where

7   substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation").

8        Federal Rule of Civil Procedure 23(e) requires judicial approval of class action settlements.

9   A district court's review of a proposed class action settlement is a two-step process.  First, the court

10   performs a preliminary review of the terms of the proposed settlement to determine whether to send

11   notice of the proposed settlement to the class.  *See* Fed. R. Civ. P. 23(e)(1).  Second, after notice

12   and a hearing, the Court determines whether to grant final approval of the settlement.  *See* Fed. R.

13   Civ. P. 23(e)(2); *see also Huddlestun v. Harrison Glob., LLC*, No. 17-cv-0253, 2018 WL 3752368,

14   at *2 (S.D. Cal. Aug. 7, 2018).

15        A court grants preliminary approval to authorize notice to the Class upon a finding that it

16   "will likely be able" to approve the Settlement as fair, reasonable, and adequate at the final hearing.

17   Fed. R. Civ. P. 23(e)(1)(B).  This standard effectively codifies prior case law, providing that courts

18   should grant preliminary approval after considering whether the settlement: (1) appears to be the

19   product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does

20   not improperly grant preferential treatment to class representatives or segments of the class; and (4)

21   falls within the range of possible approval.  *See, e.g.*, *Luz Bautista-Perez v. Juul Labs, Inc.*, No. 20-

22   cv-01613-HSG, 2022 WL 307942, at *6 (N.D. Cal. Feb. 2, 2022).

23        At final approval, the Court will have to determine whether the proposed Settlement is "fair,

24   reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *see also In re Volkswagen "Clean Diesel"*

25   *Mktg., Sales Pracs., & Prods. Liab. Litig.*, 895 F.3d 597, 610 (9th Cir. 2018); *In re Online DVD-*

26   *Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015).  In considering whether a settlement is

27   fair, reasonable, and adequate at final approval, Rule 23(e)(2) provides that the Court should

28   consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D).  The Court also considers the factors identified by the Ninth Circuit in *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004), and *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011), many of which overlap with the Rule 23(e) factors.  Each of these factors supports approval of the Settlement and, thus, preliminary approval is appropriate here.

### B. The Court "Will Likely Be Able to" Approve the Proposed Settlement Under Rule 23(e)(2)

#### 1. Lead Plaintiff and Lead Counsel Have Adequately Represented the Class in This Action

In determining whether to approve a class-action settlement, the Court should first consider whether Lead Plaintiff and Lead Counsel "have adequately represented the class."  Fed. R. Civ. P. 23(e)(2)(A).  This analysis includes "the nature and amount of discovery" undertaken in the litigation.  *See* Fed. R. Civ. P. 23(e)(2) advisory committee's notes to 2018 amendment.

When the Settlement was reached, Lead Counsel had a firm understanding of the strengths and weaknesses of Lead Plaintiff's claims as a result of their: (a) investigation of claims at issue; (b) briefing of Defendants' motion to dismiss; (c) review of both Precigen's pre-mediation and post-mediation document productions; and (d) participation in a thorough mediation process (including the preparation and exchange of comprehensive opening and reply mediation submissions), during

which all parties and the Mediator engaged in depth on relevant liability, damages, and collectability issues. *See* Fredericks Decl., ¶¶23, 44.

In sum, Lead Counsel and Lead Plaintiff had adequate time to "reasonably evaluate their respective positions," *Bright v. Dennis Garberg & Assocs., Inc.*, No. 2:10-cv-7933, 2011 WL 13150437, at *2 (C.D. Cal. Aug. 24, 2011) (granting preliminarily approval), even if formal discovery was not complete. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 4207245, at *10 (N.D. Cal. Sept. 4, 2018) (granting preliminary approval where parties were "'at the outset of formal discovery'"); *Sheikh v. Tesla, Inc.*, No. 17-cv-02193-BLF, 2018 WL 5794532, at *5 (N.D. Cal. Nov. 2, 2018) (approving settlement where "[l]ittle formal discovery had been completed at the time of settlement," but plaintiffs' counsel had conducted pre-suit investigation, filed two amended pleadings, and obtained informal discovery).

### 2. The Settlement Was Reached Through Extensive Arm's-Length Negotiations Between Experienced Counsel and with the Assistance of an Experienced Mediator

The fact that the Parties reached the Settlement after arm's-length negotiations between experienced counsel and with the assistance of an experienced mediator creates a presumption of its fairness. *See In re Purdue Pharma, L.P.*, 635 B.R. 26, 35 (S.D.N.Y. 2021) (citing Judge Phillips as one "of this country's finest and most experienced mediators"). As discussed above, the mediation process involved preparation of comprehensive mediation statements, pre-mediation discovery, pre-mediation "Q & A" sessions with the Mediator, and a face-to-face mediation session in New York City on November 17, 2022. Fredericks Decl., ¶¶16-17, 23.

This settlement process demonstrates that the Settlement was hard-fought and negotiated at arm's length. As courts in this District and elsewhere have found, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, No. C03-2659-SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *see also Chavez v. Converse, Inc.*, No. 15-cv-03746-NC, 2020 WL 4047863, at *2 (N.D. Cal. July 8, 2020) ("The assistance of an experienced neutral mediator during the settlement process supports the Court's conclusion that the Agreement is non-collusive.").

Courts have also given considerable weight to the opinion of experienced and informed counsel who support settlement.  In deciding whether to approve a proposed settlement of a class action, "'[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness.'"  *Stewart v. Applied Materials, Inc.*, No. 15-cv-02632-JST, 2017 WL 3670711, at *6 (N.D. Cal. Aug. 25, 2017); *accord In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (same).  Here, Lead Counsel has a thorough understanding of the merits and risks of the Action.  Lead Counsel's beliefs in the fairness and reasonableness of this Settlement warrant a presumption of reasonableness.  Further, the fact that the Settlement is based on the Mediator's independent proposal strongly supports Lead Counsel's judgment that the Proposed Settlement is "fair, reasonable, and adequate."

### 3.     The Settlement Is Within the Range of Possible Approval

At the preliminary approval stage, the Court need only determine whether it "will likely be able" to approve the Settlement, *see* Fed. R. Civ. P. 23(e)(1)(B), or, in other words, whether the Settlement "'falls within the range of possible approval.'"  *Reynolds v. Direct Flow Med., Inc.*, No. 17-cv-00204-KAW, 2019 WL 1084179, at *4 (N.D. Cal. Mar. 7, 2019).  In assessing whether the Settlement is fair, reasonable, and adequate, courts should balance the continuing risks of litigation, the benefits afforded to the Settlement Class, and the immediacy and certainty of the proposed recovery.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

Here, the Proposed Settlement provides for a certain and immediate all-cash Settlement Fund of $13 million.  By contrast, if Plaintiff had instead chosen to pursue the claims to be released under the Settlement, he would have faced a significant risk of recovering significantly less than $13 million and could well have recovered nothing at all.

Some of the challenges that Plaintiff faced in prevailing on liability were made clear early on.  For example, at oral argument on Defendants' motion to dismiss on April 8, 2022, the Court raised various questions about certain aspects of Plaintiff's false and misleading statement claims (brought under §10(b) and SEC Rule 10b-5(b), and related §20(a) claims).  In particular, although the Court ultimately found in its MTD Order that Plaintiff had adequately alleged that certain statements from the first part of the Class Period were misleading because they purported to describe

1  test results based on use of natural gas (when Plaintiff alleged that they had instead been obtained

2  using pure methane), the Court's MTD Order also found that numerous other statements (largely

3  from the latter half of the Class Period) were not actionable, including Defendants' various

4  statements that the Methane Bioconversion Platform ("MBP") had reached "in the money" status

5  with respect to being able to produce certain chemicals.  Lead Counsel believed that the Court's

6  findings that certain key false and misleading statements at issue were not actionable was incorrect,

7  and hoped to so persuade the Court on repleading, but there could be no guarantee that the Court

8  would have reversed course on repleading.  *Id.*, ¶24.

9       Although Lead Plaintiff believes that he would have been able to prove that Defendants

10  acted with *scienter*, such proof is never certain in a §10(b) case.  First, although defendant Walsh

11  (the executive who headed the MBP Program) was the defendant most at risk of being found to have

12  acted with *scienter* (based inter alia on his closeness to the program), Mr. Walsh retired from the

13  Company well before the end of the Class Period, and personally issued only a few of the allegedly

14  false or misleading statements at issue.  Moreover, Mr. Walsh did not engage in any suspicious stock

15  sales during the Class Period, a factor that made it harder for Lead Plaintiff to plead (let alone prove)

16  that he acted with *scienter*.  And finally, the Court had already rejected Lead Plaintiff's reliance on

17  certain confidential witnesses ("CWs") to support the requisite "strong inference" of Mr. Walsh's

18  *scienter*, so once again there could be no assurance that Lead Plaintiff's reliance on many of the

19  same CWs in the TAC would cause the Court to reach a different view as to Mr. Walsh's *scienter*.

20  Second, with respect to former Chief Executive Officer Kirk, the challenges of pleading and proving

21  his *scienter* were even greater, as he was further removed from the MBP Program than Mr. Walsh,

22  the CW allegations against Mr. Kirk were significantly weaker than they were as to Mr. Walsh, and

23  Mr. Kirk also did not sell a suspiciously large percentage of his Precigen shares during the Class

24  Period.  *Id.*, ¶25.

25       In addition, Defendants also had significant loss causation defenses.  This case, for example,

26  did not involve a single large drop in Precigen's share price in response to a "clean" disclosure that

27  one or more of the Company's prior statements about the MBP Program had been false.  Instead,

28  this case involved a series of roughly ten "partial corrective disclosure dates," with Plaintiff alleging

that the truth about Defendants' alleged misstatement only emerged gradually over a multi-year period.  On the facts alleged, proving loss causation was particularly challenging because on certain alleged "partial corrective disclosure dates," the negative stock price reaction was not statistically significant, and even on dates when there was a statistically significant reaction, there were other negative (and hence potentially "confounding") disclosures relating to non-MBP-related aspects of Precigen's business, such that proving that the observed price declines on such dates were related to fraud-related disclosures (as opposed to unrelated matters) would likely be difficult.  Accordingly, after considering these and other loss causation issues, Lead Plaintiff's damages expert estimated that the range of reasonably recoverable damages in this case was roughly $135 million to $270 million.  *Id.*, ¶26.

While Lead Counsel are confident that the Settlement Class meets the requirements for certification (*see* §VIII, *infra*), the Class had not yet been certified, and Lead Counsel are aware that there is a risk the Court could disagree.  Even if the Court were to certify the Class, there is always a risk that the Class could be decertified at a later stage in the proceedings.  *See, e.g.*, *Omnivision*, 559 F. Supp. 2d at 1041 (even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class").  Thus, the risks and uncertainty surrounding class certification also support approval of the Settlement, as Defendants undoubtedly would have challenged class certification if Lead Plaintiff had reached that stage.

Nonetheless, despite these risks, Lead Plaintiff obtained a $13 million Settlement that represents a meaningful, if not decidedly superior result.  This recovery must be compared to the real risk that the Settlement Class would recover nothing after summary judgment, trial, and likely appeals, possibly years into the future.  *See Mild v. PPG Indus., Inc.*, No. 2:18-CV-04231, 2019 WL 3345714, at *6 (C.D. Cal. July 25, 2019) (recognizing the "significant risk that continued litigation might yield a smaller recovery or no recovery at all"); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5183 VRW, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007) (same).  Indeed, even if Lead Plaintiff had prevailed in full on all his claims against Defendants, the chances that he could ever actually recover a significantly larger amount was uncertain at best.  For example, Precigen's

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL – Case No. 5:20-cv-06936-BLF

1  business has been in sharp decline in recent years and there is "substantial doubt about the

2  Company's ability to continue as a going concern."  Fredericks Decl., ¶27 (citing third fiscal quarter

3  of 2022 Form 10-Q, filed November 9, 2022).  In addition, Defendants have only limited available

4  insurance coverage, which would almost certainly have been fully exhausted had Lead Plaintiff

5  elected to litigate his claims against them through discovery, summary judgment, trial, and likely

6  appeals.  Fredericks Decl., ¶27.

7       Based on several objective metrics, the $13,000,000 settlement compares favorably to other

8  securities class action settlements.  For example, the Settlement is almost double the size of the

9  median securities class action settlement ($6.9 million) in the Ninth Circuit between 2012 and 2021.[4]

10  In addition, as noted above, Lead Plaintiff's consulting damages expert advised that reasonably

11  recoverable damages were in the range of $135 million to $270 million here, which would mean

12  that the proposed $13,000,000 recovery here – equal to roughly 5% of the **high** end of this range –

13  would compare quite favorably to the roughly 2.3% of maximum recoverable §10(b) damages

14  observed in comparably sized securities cases.[5]  *Id.*, ¶28.

### 4.     The Settlement Treats All Class Members Fairly

16       The Settlement does not improperly grant preferential treatment to Lead Plaintiff or any

17  segment of the Class.  All Class Members will be eligible to receive a distribution from the Net

18  Settlement Fund in accordance with a plan of allocation to be approved by the Court.

---

20  [4]     *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2021 Review

21  and Analysis*, CORNERSTONE RESEARCH, at 19 (2021), https://www.cornerstone.com/wp-

22  content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf.

23  [5]     By comparison, NERA Economic Consulting recently reported that, between 2012 and

24  2021, the median securities class action settlement equated to roughly 2.3% of maximum damages

25  in cases involving estimated investor losses between $200 million and $399 million.  Janeen

26  McIntosh & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year

27  Review*, NERA ECONOMIC CONSULTING, at 23 (Jan. 25, 2022), www.nera.com/publications/archive/

28  2022/recent-trends-in-securities-class-action-litigation-2021-full-y.html.

At the Fairness Hearing, Lead Plaintiff will ask the Court to approve the proposed Plan of Allocation for the Net Settlement Fund. The Plan of Allocation provides a formula for the distribution of the Net Settlement Fund to Class Members demonstrating a loss on their transactions in Precigen common stock related to the alleged fraud. As discussed further below, the formula to apportion the Net Settlement Fund among Settlement Class Members is based on the damages analysis prepared by Lead Plaintiff's damages expert, and Lead Counsel believes it provides an equitable method for allocating the Net Settlement Fund among injured Class Members. Fredericks Decl., ¶32.

### 5. Lead Plaintiff Has Identified All Agreements Made in Connection with the Settlement

In addition to the Stipulation, Lead Plaintiff and Defendants have entered into a confidential Supplemental Agreement regarding requests for exclusion ("opt-outs") from the Class. *See* Stip., ¶10.5. This agreement establishes the conditions under which Defendants may terminate the Settlement if the opt-outs received exceed an agreed-upon threshold. "This type of agreement is a standard provision in securities class actions and has no negative impact on the fairness of the Settlement." *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-cv-06728, 2020 WL 4196468, at *13 (S.D.N.Y. July 21, 2020) *see also Thomas v. MagnaChip Semiconductor Corp.*, No. 14-cv-01160-JST, 2017 WL 4750628, at *7 (N.D. Cal. Oct. 20, 2017) (same). As is also standard in securities class actions, agreements of this kind are not made public to avoid incentivizing individuals to leverage the opt-out threshold to exact individual settlements at the Class's expense. *See, e.g.*, *Hefler*, 2018 WL 4207245, at *7 ("There are compelling reasons to keep this information confidential in order to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts."). In accordance with its terms, the Supplemental Agreement may be submitted to the Court *in camera*.

## VI. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Lead Plaintiff also seeks preliminary approval of the proposed Plan of Allocation of the settlement proceeds, which is set forth at pages 10-13 of the proposed Notice (Exhibit A-1 to the Stipulation). The Court's review of the proposed Plan of Allocation under Rule 23 is governed by

1   the same standards of review applicable to the settlement itself – the plan must be fair and

2   reasonable.  *See Class Plaintiffs*, 955 F.2d at 1284.  The Plan of Allocation, which Lead Counsel

3   developed based on the damages analysis prepared by Lead Plaintiff's expert, provides a fair,

4   reasonable, and equitable basis to allocate the Net Settlement Fund among Class Members who

5   submit acceptable Claim Forms.  Fredericks Decl., ¶32.

6   In short, the Plan of Allocation proposes that the Net Settlement Fund be allocated to

7   Authorized Claimants (*i.e.*, those who submit a completed Claim Form to the Claims Administrator

8   that is later approved for payment from the Net Settlement Fund) on a *pro rata* basis based on the

9   relative size of their Recognized Claims, where their Recognized Claims are in turn based on that

10   portion of the losses on their Class Period purchases of Precigen common shares that can be fairly

11   attributed to Defendants' misconduct as alleged in the TAC.  *Id.*

12   Such customary plans of allocation, based on *pro rata* allocations to each class member

13   under a common formula, ensure that each Settlement Class Member's recovery is based upon the

14   relative losses he or she sustained, and that eligible Settlement Class Members will receive

15   distributions calculated in the same manner, and are routinely held to be fair and reasonable.  *See,*

16   *e.g.*, *In re Biolase, Inc. Sec. Litig.*, No. SACV 14-1300, 2015 WL 12720318, at *5 (C.D. Cal. Oct.

17   13, 2015); *In re RH, Inc. Sec. Litig.*, No. 4:17-00554-YGR, 2019 WL 5538215, at *5, *20 (N.D.

18   Cal. Oct. 25, 2019); *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2019 WL

19   3290770, at *8 (N.D. Cal. July 22, 2019) (finding *pro rata* allocation "equitable"); *In re Zynga Inc.*

20   *Sec. Litig.*, No. 12-cv-04007-JSC, 2015 WL 6471171, at *12 (N.D. Cal. Oct. 27, 2015).

21   One hundred percent of the Net Settlement Fund will be distributed to eligible Claimants.

22   *See* Stip., ¶2.3.  Moreover, if any funds remain after an initial distribution to eligible Claimants, as

23   a result of uncashed or returned checks or other reasons, subsequent distributions will also be

24   conducted if they are cost effective.  *Id.*, ¶4.15.  The Stipulation also identifies Investor Protection

25   Trust as the proposed *cy pres* recipient for any residual funds that may remain after all cost-effective

26   distributions of the Net Settlement Fund to all eligible Claimants have been completed.  *Id.*  The

27   Investor Protection Trust, a 501(c)(3) nonprofit organization devoted to investor education, is an

28   appropriate *cy pres* recipient because of the nature of the securities fraud claims at issue, and courts

1  in this District have approved it as a *cy pres* recipient in other similar actions.  *See SEB Inv. Mgmt.*

2  *AB v. Symantec Corp., et al.*, No. 3:18-cv-02902-WHA (N.D. Cal.); *In re RH, Inc. Sec. Litig.*, No.

3  4:17-00554-YGR (N.D. Cal.); *Hefler v. Wells Fargo & Co., et al.*, No. 3:16-cv-05479-JST (N.D.

4  Cal.).  Scott+Scott has no relationship with the Investor Protection Trust.  Fredericks Decl., ¶32.

5  Payment will only be made to the Investor Protection Trust if and when the residual amount left for

6  re-distribution to Class Members is so small that a further re-distribution would not be cost-effective

7  (for example, where the costs would subsume the funds available).  Stip., ¶4.15.

8  Thus, Lead Counsel believes that the Plan of Allocation will result in a fair and equitable

9  distribution of the Settlement proceeds among Class Members who submit valid claims.

10 **VII.  THE COURT SHOULD APPROVE THE PROPOSED NOTICE AND THE**

11 **PROPOSED PLAN FOR PROVIDING NOTICE AND PROCESSING CLAIMS**

12 **A.  Retention of A.B. Data**

13 Lead Plaintiff proposes that the notice and claims process be administered by A.B. Data, an

14 independent settlement and claims administrator with extensive experience handling the

15 administration of securities class actions.  *See* Walter Decl., ¶2.  Lead Counsel selected A.B. Data

16 after a competitive bidding process in which three firms submitted proposals.  All the proposals

17 received involved comparable methods of providing notice and claims processing, including use of

18 first-class mail and identifying potential Class Members through brokers and nominee owners.

19 Fredericks Decl., ¶43.  Lead Counsel has engaged A.B. Data to serve as notice or settlement

20 administrator in nine cases other than *Precigen* in the past two years.  *Id.*, ¶41.

21 **B.  Retention of Huntington National Bank**

22 Lead Plaintiff proposes that the Court approve his selection of Huntington National Bank as

23 escrow agent.  HNB was established in 1866, holds over $60 billion in assets, and has more than

24 700 branches nationwide.  HNB's national settlement team has handled more than 1,000 settlements

25 for law firms, claims administrators, and regulatory agencies.  Significantly, HNB has also agreed

26 not to charge the Class any fees in connection with its investment of Settlement Fund assets.

27 Fredericks Decl., ¶47.

28

C.      **Proposed Notice Procedures**

Lead Plaintiff respectfully submits that the Court should approve the form and content of the proposed Notice and Summary Notice.  *See* Stip., Exs. A-1, A-3.  The Notice is written in plain language and clearly sets out the relevant information and answers to most questions that Class Members will have.  Consistent with Rule 23(e), the Notice apprises Class Members of the terms of the Settlement and the options available to them.  The Notice also satisfies the requirements imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), *see* 15 U.S.C. §78u-4(a)(7), in that it, among other things, states the amount of the Settlement on an absolute and per-share basis; states the amount of attorneys' fees and litigation expenses that Lead Counsel will seek; provides the names, address, and telephone number of Lead Counsel who will be available to answer questions from Class Members; and provides a brief statement explaining the reasons why the Parties are proposing the Settlement.  *Id.*

The Notice also meets the requirements of the Northern District of California Procedural Guidance for Class Action Settlements in that it includes, among other things: (1) "[c]ontact information for class counsel to answer questions"; (2) the address for the settlement website; and (3) "[i]nstructions on how to access the case docket."  N.D. Cal. Procedural Guidance for Class Action Settlements, ¶3.[6]  The Notice also discloses the date, time, and location of the Fairness Hearing and the procedures and deadlines for exclusions from the Class, the submission of Claim Forms, and objections to any aspect of the Settlement, the Plan of Allocation, or the requested attorneys' fees and expenses.

The proposed method for disseminating notice, which is set forth in the Preliminary Approval Order submitted herewith, also readily meets the standards under the Federal Rules and Due Process.  Rule 23(c)(2)(B) requires the court to direct to a class certified under Rule 23(b)(3) "the best notice that is practicable under the circumstances, including individual notice to all

---

[6]      Attached to the Fredericks Declaration at Exhibit 1, is a Compliance Checklist identifying all (a) criteria under the N.D. Cal. Procedural Guidance for Class Action Settlements, and (b) the relevant sections of the preliminary approval submissions where the information can be found.

1   members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  Similarly,

2   Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who

3   would be bound" by a proposed settlement, voluntary dismissal, or compromise.  Fed. R. Civ. P.

4   23(e)(1)(B).

5          If the Court preliminarily approves the Settlement, Precigen will provide A.B. Data with the

6   names and addresses of the record holders or purchasers of Precigen common stock during the Class

7   Period, to the extent reasonably available to Precigen, for the purpose of identifying and giving

8   notice to the Settlement Class.  *See* Stip., ¶4.3.  A.B. Data will mail the Notice and Claim Form (the

9   "Notice Packet") to all such identified potential Class Members.  A.B. Data will also send notice to

10  brokerage firms and other nominees who purchased Precigen common stock during the Class Period

11  on behalf of other beneficial owners.  These nominee purchasers will be required to either forward

12  the Notice Packet to their customers or provide the names and addresses of the beneficial owners to

13  A.B. Data, which will then promptly send the Notice Packet by first-class mail to such identified

14  beneficial owners (or by email if provided).  Walter Decl., ¶¶6-7.  A.B. Data will also cause the

15  Summary Notice, which provides an abbreviated description of the Action and the proposed

16  Settlement and explains how to obtain the more detailed Notice, to be published in *PRNewswire* and

17  to be transmitted over the *Investor's Business Daily* within 20 business days after the Notice Date.

18  *Id.*, ¶9.  A.B. Data will also send the Depository Trust Company ("DTC") a Notice and Claim Form

19  for the DTC to publish on its Legal Notice System ("LENS").  LENS provides DTC participants the

20  ability to search and download legal notices as well as receive email alerts based on particular

21  notices or particular CUSIPs once a legal notice is posted.  *Id.*, ¶10.  In addition, A.B. Data will

22  publish the Notice and Claim Form and other materials on a website to be developed for the

23  Settlement.  *Id.*, ¶8. Further, the Parties have agreed that, no later than ten calendar days following

24  the filing of the Stipulation with the Court, Defendants shall serve the notice required under the

25  Class Action Fairness Act, 28 U.S.C. §§1715 (2005), *et seq*.  *See* Stip., ¶4.3.

26         The proposed plan for providing notice is the same method that has been used in numerous

27  other securities class actions.  Courts routinely find that comparable notice programs, combining

28  individual  notice  by  first-class  mail  to  all  class  members  who  can  reasonably  identified,

supplemented with publication notice, meet all the requirements of Rule 23 and Due Process. *See RH*, 2019 WL 5538215, at *2 (approving similar notice plan in securities class action); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 1991529, at *7 (N.D. Cal. June 30, 2007) (holding that "notice by mail and publication is the 'best notice practicable under the circumstances'").

### D.   Claims Processing

The net proceeds of the Settlement will be distributed to Class Members who submit eligible Claim Forms with required documentation to A.B. Data. Stip., ¶4.14. A.B. Data will review and process the claims under the supervision of Lead Counsel, provide claimants with an opportunity to cure any deficiencies in their claim(s) or request review of the denial of their claim(s) by the Court, and then mail or wire claimants their *pro rata* share of the Net Settlement Fund (as calculated under the Plan of Allocation) upon approval of the Court. *Id.*, ¶¶4.6-4.10, 4.14. A.B. Data estimates that a total of 205,000 Notice Packets will be mailed based on A.B. Data's analysis of the trading volume of Precigen common stock during the Class Period, and that approximately 40,000 claims will be received, based on an estimated 20% response rate, which A.B. Data finds reasonable and typical. Walter Decl., ¶11.

### E.   Estimated Notice and Administrative Costs

A.B. Data's fees for administration of the Settlement are charged on a per-claim basis and its expenses will be billed separately (including expenses for printing and mailing the notices, publishing the Summary Notice, establishing and maintaining the settlement website, and establishing and operating the toll-free telephone helpline). Because the costs are dependent on how many Notice Packets are ultimately mailed and how many claims are ultimately received and processed, at this time only an estimate of the total Notice and Administration Costs can be provided. Based on the estimates of the number of Notice Packets expected to be mailed and claims expected to be received discussed above, A.B. Data estimates that the total Notice and Administration Costs for the Action will be approximately $615,000. Walter Decl., ¶13. This amount includes the costs for printing and mailing the Notice Packet, related costs such as maintaining the website and P.O. Box and fielding Class Member calls, and the cost of processing claims received. *Id.* The Notice

1   and Administration Expenses are necessary to effectuate the Settlement and are reasonable in

2   relation to the value of the Settlement (the estimated total administrative costs represent

3   approximately 0.05% of the Settlement Amount).  The Notice and Administration Costs will be paid

4   from the Settlement Fund.  *See* Stip., ¶¶1.29, 2.2, 4.2.  The Stipulation (and proposed Preliminary

5   Approval Order) provides that Lead Counsel may pay from the Escrow Account up to $300,000 in

6   Notice and Administration Expenses without further order of the Court.  *Id.*, ¶4.2.  Lead Counsel

7   will apply to the Court to pay amounts more than $300,000.  *Id.*

8   **VIII.   CLASS CERTIFICATION IS APPROPRIATE FOR SETTLEMENT PURPOSES**

9           At the Fairness Hearing, Lead Plaintiff will request final approval of the Settlement on behalf

10   of the Settlement Class.  Thus, it is appropriate for the Court to consider, at the preliminary approval

11   stage, and solely for the purpose of the Settlement, whether class certification appears to be

12   appropriate.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  Rule 23(a) sets forth

13   four prerequisites to class certification: (i) numerosity; (ii) commonality; (iii) typicality; and (iv)

14   adequacy of representation.  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th

15   Cir. 2010).  In addition, the Court must find that at least one of the three conditions of Rule 23(b) is

16   satisfied.  *Id.*  Under subsection (b)(3), the Court must find that the common questions of law or fact

17   predominate over any questions affecting only individual members and that a class action is superior

18   to other available methods for the fair and efficient adjudication of the controversy.  *Id.*

19           This Action satisfies all the factors for certification of a class, and if the Action were to

20   proceed toward trial, class certification would be appropriate.  The Ninth Circuit and numerous

21   courts within have held that class actions are generally favored in securities fraud actions.  *See, e.g.*,

22   *Blackie v. Barrack*, 524 F.2d 891, 902-03 (9th Cir. 1975); *In re Adobe Sys., Inc. Sec. Litig.*, 139

23   F.R.D. 150, 152-53 (N.D. Cal. 1991) ("[T]he Ninth Circuit and courts in this district hold a liberal

24   view of class actions in securities litigation."); *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628,

25   642 (C.D. Cal. 2009) ("'Rule 23 is . . . liberally construed in a securities fraud context because class

26   actions are particularly effective in serving as private policing weapons against corporate

27   wrongdoing.'").

28

Numerosity.  To meet the requirement of numerosity, one need only show that it is difficult or inconvenient to join all members of the Class.  *Harris v. Palm Springs Alpine Estates, Inc*., 329 F.2d 909, 913-14 (9th Cir. 1964).  Impracticable does not mean impossible, only that it would be difficult or inconvenient to join all members of the class.  *Id*.  Lead Counsel estimates that there were thousands of purchasers of Precigen common stock during the Class Period. The threshold presumption of impracticability of joinder is thus easily exceeded.  *See, e.g.*, *Barnes v. AT&T Pension Benefit Plan – Nonbargained Program*, 270 F.R.D. 488, 493 n.2 (N.D. Cal. 2010) ("'As a general rule, classes numbering greater than forty individuals satisfy the numerosity requirement.'").

Common Questions.  To maintain a class action, there must be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality is satisfied if there is one issue common to the class members.  *Hanlon*, 150 F.3d at 1019.  Generally, courts have liberally construed the commonality prerequisite, requiring only that "'the named plaintiffs share at least one question of fact or law with the grievances of the proposed class.'"  *Siemer v. Assocs. First Cap. Corp.*, No. CV97-281, 2001 WL 35948712, at *14 (D. Ariz. Mar. 30, 2001).  Not all questions of fact and law need be common to satisfy Rule 23(a)(2).  *Hanlon*, 150 F.3d at 1019.  This factor is "construed permissively . . . [and] [t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Id*.  Rule 23(a)(2) is plainly satisfied here.  Lead Plaintiff's claims that Defendants violated the federal securities laws by omitting and/or misrepresenting material facts about the business, operations, and prospects of Precigen in publicly disseminated statements during the Class Period raises issues of common interest to the Class.

Typicality.  Like other Settlement Class Members, Lead Plaintiff alleges that he purchased Precigen common stock during the Class Period and was subsequently damaged due to Defendants' conduct.  TAC, ¶14.  The other members of the Class were allegedly affected in the same way.  Similarly, the interest of Lead Plaintiff in obtaining a fair, reasonable, and adequate settlement of the claims asserted is identical to the interests of the other Class Members.  Under the proposed Plan of Allocation, Plaintiff will receive the same *pro rata* share of the Settlement Fund as the other Authorized Claimants.  Accordingly, the typicality requirement is met.  *In re Bridgepoint Educ.,*

*Inc. Sec. Litig.*, No. 12-cv-1737, 2015 WL 224631, at *5 (S.D. Cal. Jan. 15, 2015) ("Here, Plaintiffs' claims arise from the same events and conduct that gave rise to the claims of other class members. They are, therefore, typical of the class.").

<u>Adequacy</u>.  Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The two key inquiries are (1) whether there are conflicts within the class; and (2) whether plaintiffs and counsel will vigorously fulfill their duties to the class.  The adequacy inquiry also 'factors in competency and conflicts of class counsel.'"  *In re Diamond Foods, Inc., Sec. Litig.*, 295 F.R.D. 240, 252 (N.D. Cal. 2013). Here, Lead Plaintiff has faithfully served the interests of the Class and has consulted with Lead Counsel regarding the claims asserted, consistently made himself available whenever needed by counsel, and confirmed his willingness to continue to serve the Class as may be necessary or appropriate going forward.  Moreover, Lead Counsel are also unaware of any conceivable (let alone actual) "fundamental conflicts" between the interests of the Lead Plaintiff and the interests of the Class, or any other impairments, that would disqualify him from serving as a fiduciary for the Class. Scott+Scott is well qualified to serve as Class Counsel based on its extensive experience in prosecuting securities class actions in general, as well as based on its representation to date of the Lead Plaintiff and the Class here.  Fredericks Decl., ¶¶36-37.  Thus, the requirements of Rule 23(a)(4) are met.

<u>Predominance</u>.  Under Rule 23(b)(3), a class may be certified if a court finds that common questions of law or fact predominate over individual questions, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Here, the proposed Settlement Class satisfies the requirements of Rule 23(b)(3) in that, as described above, the questions of law or fact common to the members of the Settlement Class predominate over any questions affecting individual members.  Moreover, damages suffered by members of the Settlement Class are not sufficient to make it economical to prosecute separate actions to recover individual losses sustained as a result of Defendants' alleged violations of the securities laws. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any

individual to bring a solo action . . . .  A class action solves this problem . . . .").  Accordingly, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## IX. ATTORNEYS' FEES, LITIGATION EXPENSES AND PLAINTIFF'S EXPENSES

Lead Counsel intends to seek an award of attorneys' fees of up to 25% of the Settlement Fund (*i.e.*, 25% of the Settlement Amount, or $3,250,000, plus interest earned at the same rate as the Settlement Fund),[7] and payment of litigation expenses not to exceed $111,000.  Fredericks Decl., ¶40.  Lead Counsel will provide detailed information in support of its application in its motion for attorneys' fees and expenses, to be filed with the Court 35 days before the Fairness Hearing.  Plaintiff's Counsel's lodestar through mid-February 2023 was roughly $1.9 million; therefore, if a 25% fee were requested and then granted in full, such award would result in a "lodestar multiplier" of roughly 1.7 on all lodestar time billed to date on this case.  *Id.*, ¶45.  Such a multiplier is well below the range of multipliers commonly awarded in class actions and other similar cases.  *See generally Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-52 & n.6 (9th Cir. 2002) (affirming 3.65 multiplier on appeal and finding that multipliers commonly range from 1.0 to 4.0).  Litigation expenses in this Action include costs for retention of experts, mediation fees, online legal and factual research, and document management, among other costs.  As part of this application, Lead Counsel will also seek an award under the PSLRA for Lead Plaintiff in an amount not to exceed $5,000, in reimbursement for the time that Shah dedicated to the Action.  *Id.*, ¶46.

## X. PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set a date for the Fairness Hearing, dates for mailing and publication of the Notice and Summary Notice, and deadlines for submitting claims or for objecting to the Settlement.  The Parties respectfully propose

---

[7]      *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 273 (9th Cir. 1989) ("[T]he district court should take note that 25 percent has been a proper benchmark figure, which it can then adjust upward or downward to fit the individual circumstances of this case.").

the schedule set out in Exhibit 1 hereto for the Court's consideration, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order. Lead Plaintiff requests that the Court schedule the Settlement Hearing for a date 75 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.

## XI.     CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that this Court grant his unopposed motion for preliminary approval of the Settlement, approve the forms and methods of notice, and enter the proposed Preliminary Approval Order.

DATED:  March 2, 2023

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

*s/ William C. Fredericks*
William C. Fredericks (*pro hac vice*)
Jeffrey P. Jacobson (*pro hac vice*)
230 Park Avenue, 17th Floor
New York, NY 10169
212-223-6464
Telephone: 212-223-6464
Facsimile:  212-223-6334
wfredericks@scott-scott.com
jjacobson@scott-scott.com

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
John T. Jasnoch (CA 281605)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
jjasnoch@scott-scott.com

*Attorneys for Lead Plaintiff Raju Shah, and Lead Counsel for the Putative Class and for Lead Plaintiff Raju Shah*

**THE SCHALL LAW FIRM**
Brian J. Schall (CA 290685)
1880 Century Park East, Suite 404
Los Angeles, CA 90067-1604
Telephone: 310-301-3335
Facsimile:  310-388-0192
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff Raju Shah*

1

## **CERTIFICATE OF SERVICE**

2

I hereby certify that on March 2, 2023, I caused the foregoing document to be filed with

3

the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the

4

email addresses denoted on the Electronic Mail Notice List.

5

Executed on March 2, 2023, at New York, New York.

6

*s/ William C. Fredericks*

William C. Fredericks

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL – Case No. 5:20-cv-06936-BLF

# EXHIBIT 1

1

**EXHIBIT 1**

2

**PROPOSED SCHEDULE OF SETTLEMENT EVENTS**

3

| Event | Proposed Time for Compliance |
|---|---|
| Deadline for mailing Notice and Claim Form to Settlement Class Members ("Notice Deadline") | 21 calendar days after the Court's entry of the Preliminary Approval Order (proposed Preliminary Approval Order, ¶15) |
| Deadline for publishing the Summary Notice | 30 business days after entry of Preliminary Approval Order (*Id.*, ¶18) |
| Deadline for filing papers in support of final approval of the Settlement, plan of allocation, and Plaintiff's Counsel's request for attorneys' fees and litigation expenses | 35 calendar days prior to the Fairness Hearing (*Id.*, ¶28) |
| Deadline for requesting exclusion from the Settlement Class, or for filing objections to the Settlement, Plan of Allocation, and/or the Fee and Expense Application | Exclusions: 30 calendar days prior to Fairness Hearing (*Id.*, ¶23) Objections: 21 calendar days prior to Fairness Hearing (*Id.*, ¶26) |
| Deadline for filing reply papers | 14 calendar days prior to Fairness Hearing (*Id.*, ¶29) |
| Fairness Hearing | To be set by Court and inserted at ¶7 of Preliminary Approval Order [*Note*: should be set for at least 75 days after entry of Preliminary Approval Order to allow time for issuance of Notice][8] |
| Deadline for submitting Claim Forms | 120 calendar days after the Notice Deadline (*Id.*, ¶21) |

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

---

27

[8]      Under this schedule, class members will have more than 35 days to "opt out" or submit

28

objections.  *See* N.D. Cal. Procedural Guidance for Class Action Settlements, ¶9.

# EXHIBIT 2

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN JOSEPH ABADILLA, et al., | Case No.: 5:20-cv-06936-BLF |
| Plaintiffs, | CONSOLIDATED CLASS ACTION |
| v. | |
| PRECIGEN, INC., et al., | |
| Defendants. | |
| *This Document Relates to:* | |
| *ALL CONSOLIDATED ACTIONS* | |

# STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement (the "Stipulation") is entered into by and among (a) Court-appointed Lead Plaintiff Raju Shah ("Lead Plaintiff"), on behalf of himself and the putative Settlement Class[1]; and (b) defendants Precigen, Inc. ("Precigen"), former Precigen chief executive officer Randal J. Kirk ("Kirk"), and former Precigen officer Robert F. Walsh III ("Walsh" and collectively, with Precigen and Kirk, the "Defendants"), by and through the Parties' respective counsel.  The Stipulation is intended by Lead Plaintiff and the Defendants to fully, finally and forever resolve, discharge, release and settle the Released Claims (as defined below) upon and subject to the terms and conditions hereof, and to be submitted pursuant to Rule 23 of the Federal Rules of Civil Procedure for approval by the Court.

WHEREAS, on August 24, 2020, plaintiff Martin Joseph Abadilla filed the first of several related putative class action complaints in this Court, styled *Abadilla v. Precigen, Inc., et al.*, No. 5:20-cv-06936-BLF, alleging violations of federal securities laws against Precigen, Kirk, and former Precigen chief financial officer Rick Sterling ("Sterling") (ECF No. 1);

WHEREAS, following the filing of certain related actions and the submission of various motions to consolidate related cases and appoint lead plaintiff(s) and lead counsel, by order dated April 8, 2021, the Court (1) consolidated all related actions with this action; and (2) appointed plaintiff Raju Shah as Lead Plaintiff, and appointed Scott+Scott Attorneys at Law LLP ("Scott+Scott") as lead counsel, in this consolidated Action (ECF No. 57);

WHEREAS, on May 18, 2021, Lead Plaintiff filed his Consolidated Amended Class Action Complaint (the "Amended Complaint"), which, *inter alia,* added as additional defendants former Precigen officers Walsh and Andrew J. Last ("Last") (ECF No. 71);

---

[1] All capitalized words and terms that are not otherwise defined in text have the meaning to ascribed to them below in the section entitled "Definitions."

WHEREAS, on August 2, 2021, Precigen, Kirk, Sterling and Last filed their opening brief and other supporting materials in support of their Motion to Dismiss the Amended Complaint (the "Motion to Dismiss"), which was separately joined in by Defendant Walsh (ECF Nos. 83, 84);

WHEREAS, pursuant to a Stipulation and Order entered on September 22, 2021 (ECF No. 87), on September 27, 2021, (a) Lead Plaintiff filed his Second Amended Class Action Complaint (the "Second Amended Complaint") as to the same defendants who had been named in the Amended Complaint (ECF No. 88), and (b) the Court terminated the then-pending Motion to Dismiss as moot (ECF No. 89);

WHEREAS, on November 3, 2021, Precigen, Kirk, Sterling and Last filed their opening brief and other supporting materials in support of their Corrected Notice of Motion and Motion to Dismiss the Second Amended Complaint (the "Defendants' Renewed Motion to Dismiss"), which was separately joined in by Defendant Walsh (ECF Nos. 96, 97);

WHEREAS, Lead Plaintiff thereafter submitted his briefs and supporting papers in opposition to the Defendants' Renewed Motion to Dismiss on December 17, 2021 (ECF No. 98), and the moving Defendants submitted their reply brief (as well as certain additional supporting materials) in further support of their Renewed Motion to Dismiss on January 28, 2022 (ECF Nos. 102, 103);

WHEREAS, the Court heard oral argument on the Renewed Motion to Dismiss on April 8, 2022, at which the Court indicated that it intended to issue an order (a) granting the Renewed Motion to Dismiss without prejudice, and (b) granting Lead Plaintiff leave to file a further amended complaint (ECF Nos. 106, 110);

WHEREAS, on May 31, 2022, the Court issued its 19-page Order Granting Defendants' Renewed Motion to Dismiss With Leave To Amend, and set a schedule for Lead Plaintiff to file a further amended complaint (ECF No. 111);

WHEREAS, beginning in June 2022, the Defendants and Lead Plaintiff, through their counsel, commenced preliminary discussions regarding the possibility of trying to resolve the claims at issue through mediation, and Lead Plaintiff and Defendants[2] ultimately agreed to retain a highly experienced mediator of securities class actions, the Hon. Layn R. Phillips (U.S.D.J., ret.) ("Judge Phillips" or the "Mediator") for that purpose;

WHEREAS, while discussions regarding the time, place and manner of a possible mediation were still being negotiated, Lead Plaintiff filed his Third Amended Class Action Complaint on August 1, 2022 (which complaint, *inter alia,* dropped Messrs. Last and Sterling as defendants) (ECF No. 116);

WHEREAS, on August 2, 2022, Lead Plaintiff, Walsh, Precigen and Kirk advised the Court that they had reached an agreement to try to pursue a settlement through mediation, and that same day the Court entered an Order approving the Parties' proposed stipulation to vacate existing deadlines for briefing any motions to dismiss the operative complaint while the Parties pursued their efforts to try to reach a mediated settlement (ECF Nos. 118, 119);

WHEREAS, pursuant to Judge Phillips' instructions (as mediator), both Lead Plaintiff and the Defendants prepared and exchanged comprehensive opening and reply mediation briefs and supporting materials on September 30 and November 3, 2022, respectively, and, as part of the

---

[2] Counsel for Precigen and Kirk participated in the mediation on behalf of Defendants, which in turn ultimately resulted in Plaintiff's, Precigen's and Kirk's of the "mediator's proposal" on which this Settlement is based.  Walsh thereafter also agreed to settle on terms consistent with the "mediator's proposal" (and with this Stipulation), and is therefore also a signatory to this Stipulation.

mediation process, Precigen produced to Lead Plaintiff certain relevant Precigen documents that Lead Plaintiff had requested in advance of the mediation;

WHEREAS, on November 17, 2022, representatives of the Parties attended a full-day in person mediation session in New York City under the auspices of the Mediator;

WHEREAS, at the end of this full day mediation session, the Mediator made a "mediator's proposal" for a settlement of all claims asserted in the Action (including those asserted against Walsh) under which, *inter alia*: (a) Lead Plaintiff (on behalf of himself and the putative class) would settle, compromise and release all claims against Precigen and its current and former officers, directors, employees, agents and representatives (in their capacities as such) in exchange for the Defendants' payment of $13,000,000.00 million in cash;

WHEREAS, Lead Plaintiff, Precigen and Kirk accepted the "mediator's proposal" in principle, subject to the resolution of certain non-monetary terms regarding the nature, scope and completion of confirmatory discovery to be provided to Lead Plaintiff by Precigen prior to the execution of a final stipulation of settlement;

WHEREAS, Lead Plaintiff and Precigen thereafter reached an agreement whereby Precigen agreed to produce, and did produce, confirmatory discovery consisting of roughly 83,000 pages of documents from Precigen;

WHEREAS, Defendant Walsh thereafter also agreed to become a party to the Settlement on the terms set forth herein;

WHEREAS, after taking into account the uncertainties, risks and likely costs and expenses of further litigation over the Released Claims in this complex securities action, and having also finished their review of the significant confirmatory discovery produced by Precigen, Lead

Plaintiff believes that the settlement set forth herein is fair, reasonable, and in the best interests of Settlement Class Members (as defined herein);

WHEREAS, the Defendants have denied and continue to deny each and all of the claims alleged by Lead Plaintiff, including all allegations of wrongdoing, fault, damages or liability whatsoever arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in this Action, but have also, after taking into account the potential costs, uncertainties, and risks of further litigation, determined to fully and finally settle and resolve the claims asserted against them in the manner and upon the terms and conditions set forth herein;

NOW, THEREFORE, without any admission or concession whatsoever on the part of Lead Plaintiff or any Settlement Class Member of any lack of merit of any claims in the Action, and without any admission or concession whatsoever on the part of the Defendants of any liability, wrongdoing, fault, or lack of merit in the defenses they have asserted in the Action, the Parties hereby STIPULATE AND AGREE, by and through their respective undersigned attorneys, and subject to judicial approval as further set forth herein, in consideration of the benefits flowing to the Parties hereto from the Settlement, that all Released Claims (as defined below) as against the Released Defendant Parties (as defined below) and all Released Defendants' Claims (as defined below) as against the Released Plaintiff Parties (as defined below) shall be compromised, resolved, settled, released, and discharged, upon and subject to the following terms and conditions, as set forth below:

## 1. DEFINITIONS

As used in this Stipulation, the following terms have the meanings specified below:

1.1    "Action" (or "this Action") means *Abadilla et al. v. Precigen, Inc. et al.,* Case No. 5:20-cv-06936-BLF (N.D. Cal.), including all other actions subsequently consolidated into that action.

1.2    "Alternative Judgment" means a form of judgment with terms materially different from those set forth in the form of judgment that is attached hereto as Exhibit B.

1.3     "Attorneys' Fees and Expenses" means any portion of the Gross Settlement Fund approved by the Court for payment to counsel who have represented Lead Plaintiff or the proposed Class, including such counsel's attorneys' fees, costs, litigation expenses, and fees and expenses of experts (excluding Notice and Administration Expenses).

1.4     "Authorized Claimant" means a Settlement Class Member who submits a timely and valid Proof of Claim form to the Claims Administrator.

1.5     "Award to Lead Plaintiff" means any portion of the Gross Settlement Fund approved by the Court for payment to the Lead Plaintiff for his service to the Settlement Class in this Action, and of reasonable costs and expenses (including lost wages) directly relating to the representation of the Settlement Class pursuant to 15 U.S.C. § 78u-4(a)(4).

1.6     "Claim Form" has the same meaning as "Proof of Claim" (defined below).

1.7     "Claimant" means a putative Settlement Class Member who submits a Proof of Claim.

1.8     "Claims Administrator" means A.B. Data, Ltd., or such other claims administration firm that may be appointed by the Court to administer the Settlement and disseminate notice to the Settlement Class.

1.9     "Class" has the same meaning as "Settlement Class".

1.10    "Class Period" means the period between May 10, 2017 and September 25, 2020, inclusive.

1.11    "Court" means the United States District Court for the Northern District of California.

1.12    "Defendants" refers, collectively, to Precigen, Kirk and Walsh.

1.13    "Defendants' Counsel" means the law firms of Wilson Sonsini Goodrich & Rosati, P.C. and Norton Rose Fulbright US LLP.

1.14    "Derivative Actions" means and includes *In re Precigen, Inc. Stockholder Litigation*, Case No. 2020-0767-PAF (Del. Ct. of Chancery), *Wright v. Alvarez, et al.*, Case No CL-2020-20013 (Va. Cir. Ct.), and *Kent v. Precigen, Inc.*, Case No. CL21-6349 (Va. Cir. Ct.).

1.15    "Effective Date" means the date on which all the conditions set forth below in ¶10.1 shall have been satisfied.

1.16    "Escrow Account" means the segregated and separate interest-bearing escrow account to be established with the Escrow Agent (subject to judicial oversight) into which the Settlement Amount will be deposited for the benefit of Settlement Class Members, and which will thereafter hold the assets of the Settlement Fund (subject to the making of such awards, payments, and distributions as authorized herein).

1.17    "Escrow Agent" means Huntington National Bank or its duly appointed successor, or such other bank as may be proposed by Lead Counsel and approved by the Court.

1.18    "Fairness Hearing" means the hearing scheduled by the Court to determine whether (i) the Settlement is fair, reasonable, and adequate, (ii) the Plan of Allocation is fair, reasonable and adequate; and (iii) Plaintiff's Counsel's request for an award of Attorneys' Fees and Expenses, including any Awards to Lead Plaintiff, is reasonable.

1.19    "Fee and Expense Application" has the meaning given that term in ¶7.1 below.

1.20    "Final" shall mean, with respect to the Judgment of the Court dismissing or declining to dismiss with prejudice the claims brought against the Defendants, a Judgment:

(a) as to which there is no pending stay, motion for reconsideration, motion for rehearing, motion to vacate, appeal, petition for writ of certiorari or similar request for relief;

(b) if no appeal or review is filed, the day following the expiration of the time to appeal or petition for review; or

(c) if there is an appeal or review, the day after such Judgment is affirmed or the appeal or review is dismissed or denied, and such Judgment is no longer subject to further judicial review, including upon appeal or review by writ of certiorari.

1.21    "Gross Settlement Fund" means the Settlement Amount plus all interest earned thereon.

1.22    "Judgment" means either (i) the proposed judgment to be entered approving the Settlement, substantially in the form attached hereto as Exhibit B; or (ii) an Alternative Judgment, if expressly agreed in writing by all of the Parties.

1.23    "Kirk" means the aforementioned Randal J. Kirk.

1.24    "Lead Counsel" (or "Plaintiff's Lead Counsel") means the law firm of Scott+Scott Attorneys at Law LLP.

1.25    "Lead Plaintiff" means plaintiff Raju Shah.

1.26    "Mediator" means the Hon. Layn R. Phillips (U.S.D.J., ret.).

1.27    "Net Settlement Fund" means the Gross Settlement Fund less: (i) taxes on the income thereof and any Tax Expenses; (ii) the Notice and Administration Expenses as authorized by this Stipulation; (iii) Attorneys' Fees and Expenses authorized by the Court; (iv) any Award to Lead Plaintiff authorized by the Court; and (v) any other fees and expenses authorized by the Court.

1.28    "Notice" means the Notice of Proposed Settlement of Class Action, substantially in the form attached hereto as Exhibit A-1, which is to be sent to members of the Settlement Class.

1.29    "Notice and Administration Expenses" means the reasonable costs and expenses incurred in connection with locating Settlement Class Members; preparing, printing, mailing, and publishing the Notice and the Summary Notice; soliciting the submission of proofs of claims; assisting with the submission of proofs of claim; processing Proof of Claim and Release forms; administering and distributing the Net Settlement Fund to Authorized Claimants; tax preparation expenses; and paying escrow fees and costs (if any).  All such Notice and Administration Expenses shall be paid from the Settlement Fund.

1.30    "Parties" means the undersigned parties to this Stipulation.

1.31    "Person" means any individual, corporation, partnership, limited liability company or partnership, limited partnership, professional corporation, association, joint stock company, trust, estate, unincorporated association, government or any political subdivision or agency thereof, and any other type of legal or political entity, any representative, and, as applicable, his,

her or its respective spouses, heirs, predecessors, successors-in-interest, representatives, and assigns.

1.32    "Plaintiff" has the same meaning as Lead Plaintiff.

1.33    "Plaintiff's Counsel" means Lead Counsel and Lead Plaintiff's additional counsel, The Schall Law Firm.

1.34    "Plan of Allocation" means the plan for allocating the Net Settlement Fund described in the Notice, or in any alternate plan approved by the Court, whereby the Net Settlement Fund shall be distributed to Authorized Claimants.  Any Plan of Allocation is not part of the Stipulation, and the Released Defendant Persons shall have no liability with respect thereto.

1.35    "Precigen" means Precigen, Inc. (formerly known as Intrexon Corporation).

1.36    "Precigen's Counsel" means the law firm of Wilson Sonsini Goodrich & Rosati, P.C.

1.37    "Preliminary Approval Order" or "Preliminary Order" means the proposed order preliminarily approving the Settlement and directing notice thereof to the Settlement Class, substantially in the form attached hereto as Exhibit A.

1.38    "Proof of Claim" means the Proof of Claim and Release, substantially in the form attached hereto as Exhibit A-2 to Exhibit A.

1.39    "Related Persons", when used in reference to a Person, means (a) the Person; (b) for natural persons, each of that Person's respective immediate family members and any trust which that Person is the settlor of or which is for the benefit of any such Person and/or the members of his or her family, and, for non-natural persons, each of their direct or indirect parents, subsidiaries, divisions, and departments; and (c), for any of the entities or Persons listed at (a) or (b) above, their respective past, present or future parents, subsidiaries and affiliates, and their respective directors, officers, managers, managing directors, partners, members, principals, employees, auditors, accountants, representatives, insurers, trustees, trustors, agents, attorneys, professionals, predecessors, successors, assigns, heirs, executors, and administrators, in their capacities as such, and any entity in which the Person has a controlling interest.

1.40    "Released Claims" means any and all claims, rights, demands, obligations, remedies, liabilities, damages, actions and causes of action, or liabilities whatsoever, of every nature and description, including both known claims and Unknown Claims, whether arising under federal, state, common or foreign law or regulation, that have or could have been asserted in the Action against any of the Released Defendant Persons by Plaintiff, any Settlement Class Member, or any of their Related Persons arising out of, relating to, or in connection with both: (a) the facts, events, transactions, occurrences, statements, representations, misrepresentations or omissions that were or could have been alleged in the Action; and (b) the purchase or acquisition of publicly-traded Precigen common stock during the Class Period.  For the avoidance of doubt, the following are expressly excluded from the definition of Released Claims: (i) all claims asserted in the Derivative Actions; and (ii) any claims to enforce any of the terms of this Stipulation.

1.41    "Released Defendants' Claims" means any and all claims, demands, rights, remedies, damages, actions and causes of action or liabilities whatsoever, of every nature and description whatsoever, whether based on federal, state, local, statutory, or common law, or any other law, rule, or regulation, including both known and Unknown Claims, by any of the Released Defendant Persons against Plaintiff, any members of the Settlement Class, or any of their Related Persons, including any Plaintiff's or Settlement Class Member's counsel, which arise out of or relate in any way to the institution, prosecution, assertion, settlement, or resolution of the Action or the Released Claims, except for claims to enforce any of the terms of this Stipulation.

1.42    "Released Defendant Persons" means (a) Precigen, Kirk and Walsh, and (b) each of their respective Related Persons.

1.43    "Released Plaintiff Persons" means (i) Plaintiff and all Settlement Class Members; and (ii) each of their Related Persons.

1.44    "Settlement" means the settlement of the Action on the terms set forth in this Stipulation.

1.45    "Settlement Amount" means the sum of US $13,000,000.00 (thirteen million U.S. dollars) in cash, to be deposited into the Escrow Account pursuant to ¶2.1.

1.46    "Settlement Class" (or "Class") means all Persons or entities who purchased or otherwise acquired publicly traded shares of the common stock of Precigen, Inc. f/k/a Intrexon Corporation ("Precigen") (ticker PGEN, formerly XON) between May 10, 2017 and September 25, 2020, inclusive (the "Class Period"), and were damaged thereby, provided, however, that the following are excluded from the Class: (i) Defendants; (ii) the past and current officers, directors, partners and managing partners of Precigen (and any of Precigen's subsidiaries or affiliates, including but not limited to MBP Titan LLC); (iii) the immediate family members, legal representatives, heirs, parents, subsidiaries, successors, successors and assigns of any excluded Person; and any entity in which any excluded Person(s) have or had a majority ownership interest, or that is or was controlled by any excluded Person(s).  Also excluded from the Settlement Class will be those Persons who file valid and timely requests for exclusion in accordance with the Court's Preliminary Approval Order.

1.47    "Settlement Class Member" (or "Class Member") means any Person who falls within the definition of Settlement Class (as defined above).

1.48    "Settlement Distribution Order" means an order to be entered by the Court, upon application of Lead Counsel, in accordance with ¶4.10 below, which authorizes the Claims Administrator to distribute the Net Settlement Fund to Authorized Claimants.

1.49    "Settlement Fund" means the account to be established by the Escrow Agent to hold the Settlement Amount and any interest earned thereon.

1.50    "Summary Notice" means the Summary Notice of (i) Pendency of Class Action and proposed Partial Settlement, (ii) Settlement Fairness Hearing; and (iii) Motion for Attorneys' Fees and Litigation Expenses, substantially in the form attached hereto as Exhibit A-3.

1.51    "Taxes and Tax Expenses" means: (i) taxes (including any interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Precigen with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for Federal or state income tax purposes; and (ii) expenses and costs incurred in

connection with the operation and implementation of ¶5.3 (including, without limitation, expenses of tax attorneys and/or accountants, and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in ¶5.3).

      1.52    "Unknown Claims" means: (i) any Released Claims that the Plaintiff or any Settlement Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, which if known by him, her, or it, might have affected his, her, or its decision(s) with respect to the Settlement, including, but not limited to, the decision not to object to the Settlement, provided such claim arises out of or relates to the purchase or acquisition of publicly traded Precigen common stock; and (ii) any Released Defendants' Claims that any Defendant does not know or expect to exist in his, her, or its favor at the time of the release of such claims, which if known by him, her, or it might have affected his, her, or its decision(s) with respect to the Settlement. With respect to any and all Released Claims and Released Defendants' Claims, the Parties stipulate and agree that upon the Effective Date, the Parties shall expressly waive, and each of the Settlement Class Members shall be deemed to have waived, and by operation of the Judgment shall have waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law that is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

The Parties and the Settlement Class Members may hereafter discover facts in addition to or different from those that any of them now knows or believes to be true related to the subject matter of the Released Claims or the Released Defendants' Claims, but the Parties shall expressly settle and release, and each Settlement Class Member, upon the Effective Date, shall be deemed to have, and by operation of Judgment (or Alternative Judgment, if applicable) shall have, fully, finally, and forever settled and released any and all Released Claims and Released Defendants' Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, disclosed or

undisclosed, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Parties acknowledge, and Settlement Class Members shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately bargained for and a material element of the Settlement.

1.53    "Walsh" means the aforementioned Robert F. Walsh III.

## 2.   THE SETTLEMENT CONSIDERATION; ESTABLISHMENT OF ESCROW ACCOUNT

2.1.    Precigen shall pay, or cause to be paid, in cash, the sum of U.S. $13,000,000.00 (thirteen million U.S. dollars) to settle and release the Released Claims, to be paid by wire into the Escrow Account (to be established for the benefit of the Settlement Class) within 30 (thirty) calendar days from the later of (a) the date the Court signs and enters the Preliminary Approval Order, or (b) the date on which Lead Counsel provides to Precigen's Counsel the wire instructions for the Escrow Account and an IRS Form W-9 (or other appropriate tax identification information) for the Settlement Fund and the name and telephone number of a person with knowledge who verbally can confirm the wire instructions for the escrow account. Notwithstanding anything to the contrary in this paragraph, however, a total of up to $5 million of the U.S. $13,000,000 total amount payable under this paragraph may be paid by check payable to the Settlement Fund, provided that such check is delivered to the Escrow Agent (c/o such named officer or other representative of the Escrow Agent, at such address of the Escrow Agent, as Lead Counsel will provide to Precigen's Counsel) by noon on the date when such payment would otherwise be due by wire.

2.2.    The Settlement Fund shall be used to pay: (i) Taxes and any Tax Expenses, the Notice and Administration Expenses as authorized by this Stipulation; (ii) Attorneys' Fees and Expenses authorized by the Court; (iii) any Award to Plaintiff authorized by the Court; and

(iv) other fees and expenses, if any, authorized by the Court. The balance of the Settlement Fund remaining after the above payments shall constitute the Net Settlement Fund, which shall be distributed to the Authorized Claimants in accordance with this Stipulation.

2.3.    The Settlement is non-recapture, *i.e.* it is not a claims-made settlement. Upon the occurrence of the Effective Date, no Defendant, Released Defendant Person, or any other Person or entity who or which paid any portion of the Settlement Amount (including, without limitation, any Defendants' insurance carriers), shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever.

2.4.    Any sums required to be held in escrow hereunder shall be held by the Escrow Agent, which shall be controlled by Lead Counsel (subject to the supervision of the Court) for the benefit of the Settlement Class until the Effective Date. To the extent that money is not paid out from the Settlement Fund as authorized by this Stipulation or as otherwise ordered by the Court, all assets held by the Escrow Agent in the Settlement Fund shall be deemed to be held in *custodia legis* and shall remain subject to the jurisdiction of the Court until such time as they shall be distributed or returned pursuant to this Stipulation and/or further order of the Court. Other than amounts disbursed for Notice and Administration Expenses, Taxes and Tax Expenses, and Attorneys' Fees and Expenses, the remainder of the Settlement Fund shall not be distributed before the Effective Date occurs. The Escrow Agent shall not disburse the Settlement Fund, or any portion thereof, except as provided in this Stipulation, or upon order of the Court. The Escrow Agent shall bear all risks related to the holding of the Settlement Fund in the Escrow Account.

2.5.    The Escrow Agent, at the direction of Lead Counsel, shall invest all funds exclusively in eligible investments, meaning obligations or securities issued or guaranteed by the United States Government or any agency or instrumentality thereof, backed by the full faith and credit of the United States, or fully insured by the United States Government or an agency thereof, and including any mutual funds or similar funds invested solely in such obligations or securities, and the Escrow Agent (unless otherwise instructed by Lead Counsel) shall reinvest the proceeds

of these obligations or securities as they mature in similar instruments at their then-current market rates. Interest earned on the money deposited into the Escrow Account shall be part of the Settlement Fund.

2.6.    Neither the Parties nor their respective counsel shall be liable for the loss of any portion of the Settlement Fund, nor have any liability, obligation, or responsibility for (a) the payment of claims, taxes, legal fees, or any other expenses payable from the Settlement Fund; (b) the investment of any Settlement Fund assets; or (c) any act, omission, or determination of the Escrow Agent.

## 3.  SCOPE AND EFFECT OF SETTLEMENT

3.1.    The obligations incurred pursuant to this Stipulation shall be in full and final disposition of: (i) all claims asserted in the Action; (ii) any and all Released Claims as against the Released Defendant Persons; and (iii) any and all Released Defendants' Claims as against the Released Plaintiff Persons, as more fully set forth herein.

3.2.    Upon the Effective Date of this Settlement, Plaintiff and each Settlement Class Member, on behalf of themselves and their Related Persons, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, waived, relinquished and discharged, and shall forever be enjoined from prosecuting, all Released Claims against each Released Defendant Person, whether or not such Plaintiff or Settlement Class Member executes and delivers a Proof of Claim.

3.3.    Upon the Effective Date of this Settlement, each Defendant, and each of the Released Defendant Persons in their capacities as such shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, waived, relinquished and discharged, and shall forever be enjoined from prosecuting, each and every one of the Released Defendants' Claims against each Released Plaintiff Person.

3.4.    The releases provided in this Stipulation shall become effective immediately upon the occurrence of the Effective Date without the need for any further action, notice, condition or event.

4.      **ISSUANCE OF NOTICE; ADMINISTRATION AND CALCULATION OF CLAIMS, FINAL AWARDS, AND DISTRIBUTION OF NET SETTLEMENT FUND**

4.1.    The Claims Administrator shall (a) administer the issuance of notice to the Settlement Class in accordance with the terms of the Preliminary Approval Order and any other orders of the Court, (b) determine the validity of the Proofs of Claim submitted and calculate the recognized loss amounts of Authorized Claimants that shall be allowed, (c) administer the distribution of the Net Settlement Fund to Authorized Claimants, and (d) otherwise provide such claims administration services as are customary in settlements of this type, subject to such supervision of Lead Counsel and (as appropriate or as circumstances may require) the Court. The Claims Administrator shall be retained subject to the condition that it agrees to be subject to the jurisdiction of the Court.

4.2.    Notice and Administration Expenses shall be paid from the Settlement Fund. Notwithstanding that the Effective Date has not yet occurred, Lead Counsel may pay (or cause to be paid) from the Escrow Account the actual costs of notice and related administrative expenses without further court order, up to US $300,000 (three hundred thousand U.S. dollars). In no event shall Plaintiff or any Plaintiff's Counsel be responsible to pay any amount for Notice and Administration Expenses.

4.3.    Precigen will cooperate in good faith in the class notice process and, for purposes of identifying and giving notice to the Settlement Class, shall use reasonable efforts to provide to the Claims Administrator (at no cost to the Settlement Class and within seven (7) calendar days of the entry of the Preliminary Approval Order) the last known names and addresses of all Persons or entities who, based on the records of Precigen or its transfer agent, are likely Settlement Class Members or nominees of Settlement Class Members. In addition, no later than ten (10) calendar days following the filing of this Stipulation with the Court, Precigen shall serve the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715 et seq. ("CAFA") on behalf of all Defendants. Precigen shall be solely responsible for the costs of the CAFA notice and administering the CAFA notice. The Parties agree that any delay by Precigen in timely serving

the CAFA notice will not provide grounds for delay of the Fairness Hearing or entry of the Judgment.

4.4.    The Released Defendant Persons shall have no role in, or any liability, obligation, or responsibility for, the dissemination of the Notice (other than as provided in ¶4.3 above), the administration of the Settlement, or the distribution of the Settlement Fund, including with respect to: (i) any act, omission, or determination by Plaintiff's Counsel or the Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; or (iii) the payment or withholding of any taxes, expenses, and/or costs incurred with the taxation of the Settlement Fund or the filing of any federal, state, or local returns.

4.5.    Each Settlement Class Member wishing to participate in the Settlement shall be required to submit to the Claims Administrator a Proof of Claim, substantially in the form set forth in Exhibit A-2 hereto and as approved by the Court, which, *inter alia,* will also provide for the release of all Released Claims as against all Released Defendant Persons.  Each Proof of Claim must be signed under penalty of perjury by the beneficial owner(s) of the Precigen common stock that is the subject of the Proof of Claim, or by someone with documented authority to sign for the beneficial owner(s) of such Precigen common stock, and must be supported by such documents as specified in the Instructions contained in the Proof of Claim form.

4.6.    All Proofs of Claim must be postmarked or received within the time prescribed in the Preliminary Approval Order unless otherwise ordered by the Court. Any Settlement Class Member who fails to submit a properly completed Proof of Claim within such period as shall be authorized by the Court shall be forever barred from receiving any payments pursuant to this Stipulation or from the Net Settlement Fund (unless Lead Counsel in its discretion deems such late submission to be a formal or technical defect and waives the lateness of the submission in the interest of achieving substantial justice, or unless by order the Court approves that Settlement Class Member's untimely submitted Proof of Claim), but will in all other respects be subject to the

provisions of this Stipulation and the Judgment (or any Alternative Judgment), including, without limitation, the release of the Released Claims and dismissal of the Action. Provided that it is received before the motion for approval of the Settlement Distribution Order is filed, a Proof of Claim shall be deemed to have been submitted when posted if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon. In all other cases, the Proof of Claim shall be deemed to have been submitted when actually received by the Claims Administrator.

4.7.   Each Proof of Claim shall be submitted to and reviewed by the Claims Administrator who shall determine, under the supervision of Lead Counsel, in accordance with this Stipulation and any applicable orders of the Court, the extent, if any, to which each claim shall be allowed, subject to review by the Court pursuant to ¶4.9 below.

4.8.   Proofs of Claim that do not meet the submission requirements may be rejected. Prior to rejecting a Proof of Claim, the Claims Administrator shall communicate with the Claimant to give the Claimant the opportunity to remedy any curable deficiencies in the Proof of Claim submitted. The Claims Administrator, under the supervision of Lead Counsel, shall notify in a timely fashion and in writing, all Claimants whose Proofs of Claim they propose to reject in whole or in part, setting forth the reasons thereof, and shall indicate in such deficiency notice that the Claimant whose claims are to be rejected has the right to review by the Court if the Claimant so desires and complies with the requirement of ¶4.9 below.

4.9.   If any Claimant whose claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) calendar days after the date of mailing of the notice required by ¶4.8 above, serve upon the Claims Administrator a written statement of reasons indicating the Claimant's ground for contesting the rejection along with copies of any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court.

4.10.   The administrative determination of the Claims Administrator accepting and rejecting claims shall be presented by Lead Plaintiff to the Court in a motion for approval of the Settlement Distribution Order.

4.11.   Without regard to whether a Proof of Claim is submitted or allowed, each Claimant who declines to be excluded from the Settlement Class shall be deemed to have submitted to the jurisdiction of the Court with respect to such Claimant's claim, and such Claimant's claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's claim. No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of the Proofs of Claim.

4.12.   Payment pursuant to this Stipulation shall be deemed final and conclusive against all Settlement Class Members. All Settlement Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund, but shall otherwise be bound by all of the terms of the Judgment (or Alternative Judgment) to be entered in the Action and the releases provided for in this Stipulation, and will be barred from bringing any action against the Released Defendant Persons arising out of or relating to the Released Claims.

4.13.   All proceedings with respect to the administration, processing, and determination of claims described in this Stipulation and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of the Court.

4.14.   After the Claims Administrator calculates the recognized losses of each Authorized Claimant, Lead Counsel shall file a motion for distribution of the Net Settlement Fund with the Court, requesting the Court (a) to authorize the payment from the Settlement Fund any as yet unpaid Notice and Administration Expenses; (b) to resolve (if it has not previously done so or been asked to do so) any objections with respect to any rejected or disallowed claims; and (c) approve the distribution of the Net Settlement Fund to the Authorized Claimants upon final resolution of

any rejected or disallowed claims.  Such motion shall not be filed until after all of the following conditions have been met: (i) the Effective Date has occurred; (ii) all claims have been processed, and all Claimants whose claims have been rejected or disallowed, in whole or in part, have been notified and provided the opportunity to be heard by the Claims Administrator concerning such rejection or disallowance; and (iii) all matters with respect to the Fee and Expense Application have been resolved by the Court, and any appeals therefrom have been resolved or the time therefor has expired.

4.15.    If any balance remains in the Net Settlement Fund six (6) months after the date of the initial distribution the Net Settlement Fund (by reason of tax refunds, uncashed checks or otherwise), Lead Counsel shall request the Claims Administrator, if economically feasible and reasonable, to reallocate such balance among those Authorized Claimants who have cashed their checks in an equitable fashion, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund for such redistribution.  If any balance shall still remain in the Net Settlement Fund six (6) months after such re-distribution, then such balance shall be contributed to Investor Protection Trust, a non-profit Section 501(c)(3) organization devoted to investor education.

4.16.    No Person shall have any claim against any Released Defendant Persons (including any Defendants' Counsel), any Released Plaintiff Persons (including Lead Counsel), or the Claims Administrator, based on determinations or distributions made substantially in accordance with this Stipulation and the Settlement contained herein, the Plan of Allocation, or any orders of the Court.

## 5.  TAX TREATMENT

5.1.    The Parties agree that the Settlement Fund is intended at all times to be a qualified settlement fund within the meaning of Treasury Regulation §1.46813-1 and §468B of the Internal Revenue Code, as amended, for the taxable years of the Settlement Fund, beginning with the date it is created. In addition, the Escrow Agent and, as required, Lead Plaintiff and Precigen, shall jointly and timely make such elections as are necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back

to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Claims Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

5.2.    For purposes of §468B of the Internal Revenue Code, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Claims Administrator. The Claims Administrator shall timely and properly file all tax returns necessary or advisable with respect to the Settlement Fund, and make all required tax payments, including deposits of estimated tax payments in accordance with Treas. Reg. §1.468B-2(k). Such returns (as well as the election described in ¶5.1 above) shall be consistent with this paragraph and reflect that all Taxes and Tax Expenses (including any estimated Taxes and Tax Expenses, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

5.3.    All Taxes and Tax Expenses shall be paid out of the Settlement Fund. In all events, the Released Defendant Persons shall have no liability for Taxes and Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything in this Stipulation to the contrary) to withhold from distribution to Settlement Class Members any funds necessary to pay such Taxes and Tax Expenses, including the establishment of adequate reserves for any Taxes and Tax Expenses.  Lead Plaintiff and Precigen agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this paragraph.

5.4.    The Released Defendant Persons and Defendants' Counsel shall have no liability for or obligations with regard to Taxes and Tax Expenses. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each Released Defendant Person and Defendants' Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

5.5.     Lead Plaintiff and Plaintiff's Counsel shall have no liability for or obligations with regard to Taxes and Tax Expenses. The Escrow Agent, through the Settlement Fund, shall indemnify and hold Lead Plaintiff and each of Plaintiff's Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

## 6. ALLOCATION OF NET SETTLEMENT FUND

6.1.     The Claims Administrator shall determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's Recognized Claim as defined in the Plan of Allocation described in the Notice annexed hereto as Exhibit A-1, or in such other Plan of Allocation as the Court approves.

6.2.     The Plan of Allocation set forth in the Notice is not a necessary term of this Stipulation and it is not a condition of this Stipulation that any particular Plan of Allocation be approved.  The Plan of Allocation shall be prepared and proposed (subject to judicial approval) solely by Lead Counsel.  Defendants will have no involvement in or responsibility for preparing the Plan of Allocation and will take no position with respect to the proposed Plan of Allocation or such Plan of Allocation as may be approved by the Court.  The Plan of Allocation, and any changes thereto, is a matter separate and apart from the Settlement between the Parties, and any decision by the Court concerning the Plan of Allocation, or any changes thereto, and any appeal of any order relating thereto or reversal or modification thereof, shall not operate to, or be grounds to, terminate, modify or cancel, or affect the enforceability of, this Stipulation, or affect or delay the validity or finality of the Judgment (or Alternative Judgment) approving the Settlement. Each Authorized Claimant shall be allocated a *pro rata* share of the Net Settlement Fund based on his, her or its Recognized Claim compared to the total Recognized Claims of all accepted claimants.

6.3.     Defendants shall have no involvement in the solicitation or review of Proofs of Claim, and shall have no involvement in the administration process itself, which shall be conducted by the Claims Administrator in accordance with this Stipulation, the Plan of Allocation, and any orders that may be entered by the Court. No Claimant or Authorized Claimant shall have any claim

against any Released Defendant Person or their counsel based on, or in any way relating to, the distributions from the Settlement Fund.

6.4.    No Authorized Claimant shall have any claim against Plaintiff's Counsel or the Claims Administrator based on, or in any way relating to, the distributions from the Net Settlement Fund that have been made substantially in accordance with this Stipulation and any applicable orders of the Court.

## 7.  THE FEE AND EXPENSE APPLICATION

7.1.    Lead Counsel will submit an application to the Court (the "Fee and Expense Application") for an award of Attorneys' Fees and Expenses, including for (i) any and all attorneys' fees and payment of litigation costs and expenses incurred in connection with the investigation, filing, prosecution, and settlement of the Action, plus interest on such amounts awarded at the same rate as earned on the Settlement Fund until paid; and (ii) an Award to Lead Plaintiff not to exceed $5,000.

7.2.    Any Attorneys' Fees and Expenses awarded by the Court shall be payable from the Gross Settlement Fund immediately upon entry by the Court of an order awarding such amounts, notwithstanding the existence of any timely filed objections thereto, or potential for appeal or collateral attack on the Settlement or any part thereof.  Lead Counsel shall thereafter be solely responsible for allocating the Attorneys' Fees and Expenses among all counsel who have represented Lead Plaintiff or the proposed Settlement Class in a manner in which Lead Counsel may agree or have agreed based on their assessment of the overall respective contributions of such counsel to the initiation, prosecution, and resolution of the Action.  However, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, any Attorneys' Fees and Expense award is overturned or reduced, or if the Settlement is terminated or is not approved by the Court, or if there is an appeal and any order approving the Settlement does not become final and binding upon the Settlement Class, then, within fifteen (15) business days after receiving notice from any Defendants' Counsel or such an order from a court of appropriate jurisdiction, each Plaintiff's Counsel law firm that has received any fees or expenses shall refund

to the Settlement Fund such Attorneys' Fees and Expenses previously paid to it, plus interest thereon at the same rate as earned on the Settlement Fund, in an amount consistent with such reversal or reduction.

7.3.    Any Awards to Lead Plaintiff shall be paid from the Settlement Fund no earlier than ten (10) calendar days following the Judgment becoming Final.

7.4.    The Released Defendant Persons and Defendants' Counsel shall have no responsibility for or liability with respect to any payment or allocation of any award of Attorneys' Fees and Expenses from the Settlement Fund.

7.5.    It is agreed that the procedure for and the allowance or disallowance by the Court of any Fee and Expense Application shall be considered by the Court separate and apart from its consideration of the fairness, reasonableness, and adequacy of the Settlement, and any order or proceeding relating to the Fee and Expense Application, and any appeal of any order relating threreto or reversal or modification thereof, shall not operate to, or be grounds to, terminate, modify, or cancel this Stipulation or affect or delay its finality, and shall have no effect on the terms of this Stipulation or on the validity or enforceability of this Settlement. The approval, finality and effectiveness of the Settlement shall not be contingent on an award of Attorneys' Fees and Expenses, or on any Award to Lead Plaintiff.

## 8.  THE PRELIMINARY APPROVAL ORDER

8.1.    Promptly after execution of this Stipulation, the Parties shall submit the Stipulation together with its exhibits to the Court, and Lead Counsel shall apply for entry of a Preliminary Approval Order in connection with settlement proceedings substantially in the form annexed hereto as Exhibit A, providing for, among other things:  (a) preliminary approval of the Settlement as set forth in this Stipulation; (b) the setting of deadlines for the mailing of the Notice and dissemination of the Summary Notice; (c) the setting of deadlines for Settlement Class Members to submit Proofs of Claim, requests for exclusion from the Settlement Class (also known as "opt-out" requests), or objections to the proposed Settlement, Plan of Allocation and/or the Fee and Expense Application ("Objections"); (d) the setting of the time, date and location for the Fairness

Hearing; (e) approval of Lead Counsel's recommended Claims Administrator; and (f) approval of the form and content of the Notice, the Proof of Claim and Release, and the Summary Notice, respectively, substantially in the forms of Exhibits A-1, A-2 and A-3 attached hereto.  Defendants agree that they will consent to, and shall not oppose of, entry of the Preliminary Approval Order.

8.2.    Any Settlement Class Member who wishes to opt out of the Settlement must submit a timely written request for exclusion (including any required documentation) on or before the deadline for doing so set by the Court, in accordance with the Preliminary Approval Order and the Notice (a "Request for Exclusion").  Requests for Exclusion on behalf of groups, including "mass" or "class" opt-outs, will not be permitted.  Any Settlement Class Member who does not submit a timely and valid written request for exclusion will be bound by all Court proceedings, orders and judgments, whether or not he, she, or it timely submits a Proof of Claim and Release.

8.3.    Any Settlement Class Member who wishes to object to the fairness, reasonableness or adequacy of this Settlement or to any aspect of the Plan of Allocation or the Fee and Expense Application must do so in the manner specified and within the deadlines specified in the Preliminary Approval Order and the Notice.

8.4.    As part of the motion or application for entry of the Preliminary Approval Order, the Parties, unless they otherwise agree in writing, shall request that the Court hold the Fairness Hearing on a date to occur at least twenty-eight (28) calendar days after the deadline(s) referenced in ¶¶8.1-8.3 above for Settlement Class Members to submit any Requests for Exclusion or Objections.

8.5.    The Parties shall request that the postmark deadline for objecting to and/or submitting Requests for Exclusion from this Settlement be set at least sixty (60) calendar days after the date for the initial mailing of the Notice as set forth in the Preliminary Approval Order. The Claims Administrator shall promptly notify Lead Counsel and Defendants' Counsel upon receipt of any Requests for Exclusion.

## 9.  THE JUDGMENT

9.1.    Following the issuance of Notice, Lead Plaintiff shall file with the Court a motion for final approval of the Settlement and entry of a Judgment substantially in the form of Exhibit B hereto.  Should Lead Plaintiff so request, the Defendants shall join in requesting final approval of the Settlement and entry of a Judgment substantially in the form of Exhibit B hereto.

## 10.    EFFECTIVE DATE OF SETTLEMENT; TERMINATION

10.1.    The Effective Date of the Settlement shall be the date on which all of the following events or conditions have occurred:

(a) the Court has entered the Preliminary Approval Order in all material respects;

(b) the full amount of the Settlement Amount has been paid into the Escrow Account pursuant to ¶2.1 above;

(c) Defendant Precigen has not validly exercised its right (if applicable) to terminate the Settlement pursuant to ¶10.4 below or to the Supplemental Agreement pursuant to ¶10.5 below, and its right (if applicable) to do so has expired in accordance with the terms of the Stipulation and/or the Supplemental Agreement;

(d) Lead Plaintiff has not exercised his right (if applicable) to terminate the Settlement pursuant to ¶10.4, and his option (if applicable) to do so has expired in accordance with the terms of the Stipulation; and

(e) the Court has entered the Judgment (or Alternative Judgment), following issuance of Notice to the Settlement Class, that approves the Settlement, and such Judgment (or Alternative Judgment) has become Final.

10.2.    Upon the occurrence of all of the events referenced in ¶10.1 above, Plaintiff shall have, and each Settlement Class Member shall hereby be deemed to have, and by operation of the Order and Final Judgment shall have, fully, finally, and forever released, waived, settled, and discharged, the Released Defendant Persons from and with respect to the Released Claims, whether or not such Settlement Class Members have executed a Proof of Claim.

10.3.    Upon the occurrence of all of the events and conditions referenced in ¶ 10.1 above, any obligation (if otherwise applicable) of the Escrow Agent to return any funds from the Settlement Fund to Precigen pursuant to ¶10.7 or any other provision of this Stipulation shall be absolutely and forever extinguished.

10.4.    Precigen, or Lead Plaintiff, through their respective counsel, shall each, in their respective discretions, but in all events subject to ¶10.5 herein, have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice") to all other counsel for the Parties within thirty (30) calendar days of:

a.    the Court's Final non-appealable refusal to enter the Preliminary Approval Order in any material respect;

b.    the Court's Final non-appealable refusal to approve this Stipulation or any material part of it (except with respect to any decision by the Court concerning the Fee and Expense Application and Plan of Allocation);

c.    the Court's Final non-appealable refusal to enter the Judgment (or an Alternative Judgment) in any material respect; or

d.    the date on which the Judgment (or an Alternative Judgment) is modified or reversed in any material respect by a Court of Appeals or the United States Supreme Court and such modification or reversal has become Final.

10.5.    If, prior to the Fairness Hearing, Persons who otherwise would be Settlement Class Members have timely submitted a valid Request for Exclusion from the Settlement Class in accordance with the provisions of the Preliminary Approval Order and the Notice issued pursuant thereto, and who have not retracted their Request for Exclusion before the Fairness Hearing, and such Persons in the aggregate purchased publicly-traded Precigen common stock during the Class Period in an amount equal to or greater than the amount specified in a separate Supplemental Agreement between the Parties (the "Supplemental Agreement"), then Precigen, in its sole discretion, shall have the option to terminate this Stipulation and Settlement in accordance with the requirements and procedures set forth in the Supplemental Agreement.  Plaintiff's Counsel

shall, however, have the opportunity to seek retraction of any Request for Exclusion prior to the Fairness Hearing.  The Supplemental Agreement shall not be filed with the Court unless and until a dispute among the Parties concerning its interpretation or application arises, or as otherwise ordered by the Court, nor shall the Supplemental Agreement otherwise be disclosed unless ordered by the Court.  The Court may examine the Supplemental Agreement if so requested by the Court, and if the Court requires that it be filed, the Parties shall request that it be filed under seal.

10.6.   If Precigen (or its successor) does not pay or cause to be paid the Settlement Amount in full within the time period specified in ¶2.1 of this Stipulation, then Lead Counsel, in its sole discretion, may, at any time prior to the Court entering the Judgment (or an Alternative Judgment): (i) terminate the Settlement by providing written notice to counsel for the Parties; (ii)  seek to enforce the terms of the Settlement and this Stipulation and seek entry of a judgment and/or order to effectuate and enforce the terms of this Stipulation; and/or (iii) pursue such other rights as Plaintiff and the Settlement Class may have arising out of the failure to timely pay the Settlement Amount in full into the Escrow Account.

10.7.   Except as otherwise provided herein, in the event that the Settlement is terminated in accordance with its terms, the Judgment (or Alternative Judgment) is vacated, or the Effective Date fails to occur, then (a) the Parties shall be deemed to have reverted to their respective statuses and positions in the Action as of the date of this Stipulation, and the fact and terms of the Settlement shall not be admissible in any trial of the Action and, except as otherwise expressly provided, the Parties shall proceed in all respects as if this Stipulation and any related orders had not been entered, and (b) any portion of the Settlement Amount previously paid by or on behalf of the Defendants, together with any interest earned thereon (and, if applicable, repayment of any award of Attorneys' Fees and Expenses), less any actual and reasonable Notice and Administration Costs incurred and any Taxes paid or due, shall be returned within fourteen (14) business days after the date of the event causing termination to the party, insurer or other entity that contributed the funds. Notwithstanding anything to the contrary herein, however, the provisions of ¶¶ 1.1-1.53, 2.5-2.6, 4.2, 4.4, 5.1-5.5, 7.2, 10.5-10.9 and 11.8 shall survive termination.

10.8.   If this Stipulation is terminated pursuant to its terms at the request of Precigen or the Lead Plaintiff, then the Escrow Agent or the Escrow Agent's designee shall (a) apply for any tax refund owed to the Settlement Fund and (b) pay the proceeds of any tax refund, after deduction of any fees and expenses incurred in connection with such refund application(s), to Precigen.

10.9.   Precigen warrants and represents that it is not "insolvent" within the meaning of 11 U.S.C. §101(32) as of the time the Stipulation is executed and will not be as of the time the payments of the Settlement Amount are actually (or have been) transferred or made as reflected in the Stipulation.  This representation is made by Precigen and not by Precigen's counsel.  In the event of a final order of a court of competent jurisdiction, not subject to any further proceedings, determining the transfer of the Settlement Amount to the Settlement Fund, or any portion thereof, by or on behalf of Precigen to be a voidable preference, voidable transfer, fraudulent transfer, or similar transaction under Title 11 of the United States Code or applicable state law, and any portion thereof is required to be refunded, then, unless the payment (or relevant portion thereof) is promptly made by or on behalf of another Defendant, in addition to such other rights or remedies that Lead Plaintiff (on behalf of itself and/or the Class) may have, and without waiver or loss of any such other rights or remedies, Lead Plaintiff shall also have the right to cause all of the Parties hereto to jointly move the Court to (a) vacate and set aside the release given and any Judgment entered in favor of the Defendants, and (b) order that all parties to the Action be restored to their litigation positions as of November 17, 2022, and that any portions of the Settlement Amount actually paid (less taxes paid or owing and Notice and Administration Costs paid or incurred) be returned.

10.10. No order of the Court or modification or reversal of any order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees, costs, and expenses awarded by the Court shall constitute grounds for termination of the Stipulation.

## 11.    MISCELLANEOUS PROVISIONS

11.1.   The Parties acknowledge that it is their intent to consummate the Settlement contemplated by this Stipulation.

11.2.    The Parties shall use their best efforts and take all necessary steps to consummate the Settlement contemplated herein, and the Parties and their respective counsel agree to cooperate reasonably with one another in seeking judicial approval of the Preliminary Approval Order, the Stipulation and the Settlement, and the entry of the Judgment (or an Alternative Judgment), and to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final judicial approval of the Settlement and to effectuate and implement all terms and conditions of this Stipulation.

11.3.    The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall also retain jurisdiction for purposes of, *inter alia,* entering orders relating to the Fee and Expense Application, the Plan of Allocation, and the enforcement of the terms of this Stipulation.

11.4.    The Parties agree that the Settlement Amount, and the other terms of the Settlement, were negotiated at arm's-length and in good faith by the Parties, and that the Settlement was reached voluntarily and only after negotiations conducted under the auspices of the highly experienced Mediator (the Hon. Layn Phillips) during which negotiations all Parties were represented by experienced and competent legal counsel.

11.5.    By executing this Stipulation, each of the Parties represents that they have the right, legal capacity, power and authority to enter into this Stipulation and to perform their obligations hereunder, without requiring additional consent, approval, or authorization of any other person, board, entity, tribunal, or other regulatory or governmental authority.

11.6.    By executing this Stipulation, each Party represents that their execution and delivery of this Stipulation (including by or through their counsel) and the performance of each and every obligation in this Stipulation does not and will not result in a breach of or constitute a default under, or require any consent under, any duty, relationship, contract, agreement, covenant, promise, guarantee, obligation or instrument to which the executing Party is a party or by which the executing Party is bound or affected.

11.7.   Each Party agrees that no representations, warranties, inducements, covenants, or promises of any kind or character have been made by any other Party, Released Plaintiff Person, Released Defendant Person, or anyone else to induce the execution of this Stipulation except as expressly provided in this Stipulation, and that this Stipulation and its exhibits, together with the Supplemental Agreement and the provisions of the Memorandum of Understanding relating to certain discovery obligations of the Defendants, constitutes the entire agreement between the Parties.

11.8.   Each Party represents and warrants that they have had the opportunity to be represented by counsel of their choice throughout the negotiations which preceded the execution of this Stipulation and in connection with the preparation and execution of this Stipulation, and that they have been afforded sufficient time and opportunity to review this Stipulation with counsel of their choice.

11.9.   All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth in this Stipulation.

11.10.   No amendment or modification of this Stipulation shall be effective unless in writing and signed by, or on behalf of, all of the Parties.

11.11.   Whenever this Stipulation requires or contemplates that a Defendant shall or may give notice to Lead Plaintiff (or Plaintiff's Lead Counsel), or that Lead Plaintiff shall or may give notice to a Defendant (or Defendants' Counsel), unless otherwise specified such notice shall be provided by email and next business day express delivery service, as set forth below, to the below-listed counsel:

If to Lead Plaintiff or Plaintiff's Lead Counsel:

SCOTT+SCOTT ATTORNEYS AT LAW LLP
c/o William C. Fredericks
230 Park Avenue, 17th Floor
New York, NY 10169
wfredericks@scott-scott.com

If to Defendants or Defendants' Counsel:

WILSON SONSINI GOODRICH & ROSATI, P.C.

        c/o Nina F. Locker
        c/o Evan L. Seite
        650 Page Mill Road
        Palo Alto, CA 94304
        nlocker@wsgr.com
        eseite@wsgrcom

        and

        NORTON ROSE FULBRIGHT US LLP
        c/o Peter A. Stokes
        98 San Jacinto Boulevard
        Suite 1100
        Austin, TX 78701
        peter.stokes@nortonrosefulbright.com

11.12.  Except as otherwise provided herein, each Party shall bear its own costs. Any award of Attorneys' Fees and Expenses, subject to Court approval, shall be paid only out of the Settlement Fund, and the Released Defendant Persons shall have no obligation with respect to the payment of said Attorneys' Fees and Expenses.

11.13.  Lead Counsel, on behalf of the Settlement Class, is expressly authorized to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to this Stipulation to effectuate its terms, and to enter into any written modifications or amendments to this Stipulation on behalf of the Settlement Class.

11.14.  This Stipulation shall be binding upon, and inure to the benefit of, the successors, assigns, executors, administrators, heirs, and representatives of the Parties. No assignment shall relieve any Party hereto of any obligations hereunder.

11.15.  This Stipulation and all exhibits hereto shall be governed by, construed, performed, and enforced in accordance with the laws of the State of California without regard to its rules of conflicts of law, except to the extent that federal law requires that federal law governs.

11.16.  Lead Plaintiff, on behalf of himself and each Settlement Class Member, as well as the other Parties, hereby irrevocably submit to the jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Stipulation, the applicability of this Stipulation, or the enforcement of this Stipulation. The administration and consummation of the

Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of Attorneys' Fees and Expenses and an Award to Lead Plaintiff, and for enforcing the terms of this Stipulation.

11.17.  The Parties acknowledge that each Party has participated jointly and equally in the negotiation and preparation of this Stipulation. In the event an ambiguity or question of intent or interpretation arises, such ambiguity or question shall not be construed against any Party, and no presumption or burden of proof shall arise from favoring or disfavoring any Party solely by virtue of the authorship of any of the provisions of this Stipulation, and instead this Stipulation shall be construed as if each Party participated equally in the drafting of all such provisions.

11.18. Neither this Stipulation, nor the fact of the Settlement, is an admission or concession by any Defendant or any Released Defendant Person of any liability or wrongdoing whatsoever. This Stipulation shall not constitute a finding of the validity or invalidity of any factual allegation or any claims in the Action or of any liability or wrongdoing by any Released Defendant Person. This Stipulation, the fact of settlement, the settlement proceedings, the settlement negotiations, and any related documents, shall not be used or construed as an admission of any factual allegation, fault, liability, or wrongdoing by any Person, and shall in no event be offered or received in evidence as an admission, concession, presumption, or inference against any party in any action or proceeding of any nature, or otherwise referred to or used in any manner in or before any court or other tribunal, except in such proceeding as may be necessary to enforce this Stipulation.

11.19.  The Parties agree not to assert in any forum that the Action was brought or litigated by Lead Plaintiff (or any other Class Member or their counsel), or defended by any Defendant (or any Person previously named as a defendant in this matter or their counsel), in bad faith or without a reasonable basis, and further agree not to assert in any forum that any Party or their counsel violated any provision of Rule 11 of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995, or any other similar statute, rule, or law, relating to the commencement, prosecution, maintenance, defense, litigation or settlement of the Action.

11.20.   All agreements made and orders entered during the course of this Action relating to the confidentiality of information shall survive this Settlement.

11.21.   The headings in this Stipulation are used for purposes of convenience and ease of reference only and are not meant to have legal effect.

11.22.   The waiver by one Party of any breach of this Stipulation by any other Party shall not be deemed a waiver by any other Party of such breach, nor shall it be deemed a waiver of any other breach of this Stipulation, including any prior or subsequent breach of this Stipulation. The provisions of this Stipulation may not be waived except by a writing signed by the affected Party or counsel for that Party. No failure or delay on the part of any Party in exercising any right, remedy, power, or privilege under this Stipulation shall operate as a waiver thereof or of any other right, remedy, power, or privilege of such Party under this Stipulation; nor shall any single or partial exercise of any right, remedy, power, or privilege under this Stipulation on the part of any Party operate as a waiver thereof or of any other right, remedy, power, or privilege of such Party under this Stipulation, or preclude further exercise thereof or the exercise of any other right, remedy, power, or privilege.

11.23.   All counsel and any other Person executing this Stipulation and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have full authority to to do so on behalf of their respective clients, and that they similarly have the authority to take all appropriate actions required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

11.24.   This Stipulation may be executed in one or more original, photocopied, PDF copies or facsimile counterparts, and facsimile or scanned signatures shall have the same force and effect as original signatures, and the exchange of fully executed copies of this Stipulation may similarly be effectuated by emailed PDF to the email addresses shown below for the Parties' respective counsel. All executed counterparts and each of them shall be deemed to be one and the same instrument. A copy of the complete set of executed counterparts of this Stipulation shall be electronically filed with the Court.

IN WITNESS WHEREOF, the Parties, intending to be legally bound by this Stipulation, have caused this Stipulation to be executed, by their duly authorized attorneys, as of March 1, 2023.

WILSON SONSINI GOODRICH & ROSATI, P.C.

By:
Nina F. Locker
Evan L. Seite
Betty Chang Rowe
Andrew J. Frantela
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 493-9300
nlocker@wsgr.com
eseite@wsgr.com
browe@wsgr.com
afrantela@wsgr.com

*Attorneys for Defendants Precigen, Inc. f/k/a Intrexon Corporation and Randal J. Kirk*

NORTON ROSE FULBRIGHT US LLP

By:
Peter A. Stokes
98 San Jacinto Boulevard
Suite 1100
Austin, TX 78701
peter.stokes@nortonrosefulbright.com

*Counsel for Defendant Robert F. Walsh III*

SCOTT+SCOTT, ATTORNEYS AT LAW, LLP

By:
William C. Fredericks
Jeffrey Jacobson
230 Park Avenue, 17th Floor
New York, NY 10169
Tel: (212) 223-6444
wfredericks@scott-scott.com

STIPULATION AND AGREEMENT OF SETTLEMENT
*Abadilla v. Precigen, Inc., et al.* (Consolidated Class Action), Case No. 5:20-cv-06936-BLF

- 35

jjacobson@scott-scott.com

David R. Scott
156 South Main St.
Colchester, CT  06415
(860) 537-5537
david.scott@scott-scott.com

*Counsel for Lead Plaintiff Raju Shah and the
Proposed Class*

# EXHIBIT A

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARTIN JOSEPH ABADILLA, et al., | Case No.: 5:20-cv-06936-BLF |
| Plaintiffs, | <u>CONSOLIDATED CLASS ACTION</u> |
| v. | |
| PRECIGEN, INC., et al., | |
| Defendants. | |

*This Document Relates to:*

*ALL CONSOLIDATED ACTIONS*

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT,
FOR ISSUANCE OF NOTICE TO THE CLASS,
<u>AND FOR SCHEDULING OF FAIRNESS HEARING</u>**

1    WHEREAS, (a) Lead Plaintiff Raju Shah ("Lead Plaintiff") in the above-captioned class

2  action (the "Action"), on behalf of himself and the Settlement Class (as defined below) and (b)

3  defendants Precigen, Inc. (f/k/a Intrexon Corporation) ("Precigen"), former Precigen chief

4  executive officer Randal J. Kirk ("Kirk"), and former Precigen officer Robert F. Walsh III

5  ("Walsh," and collectively, with Precigen and Kirk, the "Defendants"), have entered into the

6  Stipulation and Agreement of Settlement, dated as of March 1, 2023 (the "Stipulation") , which is

7  subject to review under Rule 23 of the Federal Rules of Civil Procedure ("FRCP") and which,

8  together with the exhibits annexed thereto, sets forth the terms and conditions for the resolution,

9  discharge, release, settlement, and dismissal of the Action and all claims set forth therein upon and

10  subject to the terms and conditions hereof, and the Court having read and considered the

11  Stipulation, the exhibits thereto, and the related submissions, and finding that substantial and

12  sufficient grounds exist for entering this Order, and the  Parties having consented to the entry of

13  this Order;

14    NOW, THEREFORE, IT IS HEREBY ORDERED that:

15    1.    Pursuant to Rules 23(a) and (b)(3) of the FRCP and for the purposes of the

16  Settlement only, the Action is hereby preliminarily certified as a class action on behalf of a Class

17  (the "Settlement Class") consisting of all Persons or entities who purchased or otherwise acquired

18  publicly traded shares of the common stock of Precigen Inc. (f/k/a Intrexon Corporation)

19  ("Precigen") (ticker: PGEN, formerly XON) between May 10, 2017 and September 25, 2020,

20  inclusive (the "Class Period"), and were damaged thereby, provided, however, that the following

21  are excluded from the Settlement Class: (i) Defendants; (ii) the past and current officers, directors,

22  partners, and managing partners of Precigen (and any of Precigen's subsidiaries or affiliates,

23  including but not limited to MBP Titan LLC); (iii) the immediate family members, legal

24  representatives, heirs, parents, subsidiaries, successors, successors, and assigns of any excluded

25  Person; and any entity in which any excluded Person(s) have or had a majority ownership interest,

26  or that is or was controlled by any excluded Persons.  Also excluded from the Settlement Class

27  will be any Person who files a valid and timely request for exclusion from the Settlement Class in

28  accordance with this Order.

1    2.    This Court finds, preliminarily and for purposes of this Settlement only, that the

2  prerequisites for class certification under FRCP Rule 23(a) have been satisfied in that: (a) the

3  number of Settlement Class Members is so numerous that joinder of all members of the Settlement

4  Class is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c)

5  the claims of the Lead Plaintiff are typical of the claims of the Settlement Class he seeks to

6  represent; (d) Lead Plaintiff and Lead Counsel have and will continue to fairly and adequately

7  protect the interests of the Settlement Class.  In addition, the Court finds, preliminarily and for

8  purposes of this Settlement only, that this Action satisfies the requirements for class certification

9  under FRCP Rule 23(b)(3) in that common questions of law and fact predominate over any

10 questions affecting only individual members, and a class action is superior to other available

11 methods for fairly and efficiently adjudicating the controversy among the Parties.

12    3.    In so finding, the Court has considered each of the following additional factors

13 under FRCP Rule 23(b)(3) and finds that they also support class certification, namely:

14         a.    the (lack of) interest of members of the class in individually controlling the

15             prosecution of separate actions;

16         b.    the extent and nature of any litigation concerning the controversy already

17             begun by or against class members;

18         c.    the desirability or undesirability of concentrating the litigation of the claims

19             in the particular forum; and

20         d.    the (lack of) difficulties likely to be encountered in managing a class action,

21             given, inter alia, that the proposed class is being settled in the context of a

22             settlement (such that, if the Settlement is approved, there will be no class

23             action litigation as to the Parties for the Court to manage).

24    4.    Pursuant to FRCP Rules 23(c)(1) and 23(g), preliminarily and for purposes of the

25 Settlement only, Lead Plaintiff is certified as the class representative ("Class Representative") of

26 the Settlement Class and Scott+Scott Attorneys at Law LLP ("Class Counsel") is appointed as

27 class counsel for the Settlement Class.

28

5.      The Court preliminarily finds that: (a) the Stipulation resulted from good faith, arm's length negotiations conducted under the auspices of an independent mediator, the Hon. Layn Phillips (U.S.D.J., ret.), who has extensive experience in mediating class action litigations of this type; and (b) the terms of the proposed Settlement are sufficiently fair, reasonable, and adequate to warrant providing notice of the Settlement to the Settlement Class Members and the scheduling of a Fairness Hearing to be held following the issuance of such notice pursuant to FRCP Rule 23(e).

6.      The Court therefore directs the issuance of notice of the Settlement to the Settlement Class Members and the scheduling of a Fairness Hearing, as set forth below.

7.      The Court hereby schedules the Fairness Hearing, to be held before the Court, on _____ 2023 at __:___ _.m. for the following purposes:

(a)      to determine finally whether the requirements for class action treatment under FRCP Rule 23 are satisfied;

(b)      to determine finally whether the Settlement is fair, reasonable, and adequate, and should be approved by the Court;

(c)      to determine whether the Judgment as provided under the Stipulation should be entered, dismissing the Action on the merits and with prejudice, and releasing the Released Claims as against the Released Defendant Persons (and Released Defendant Claims as against the Released Plaintiff Persons) as set forth in the Stipulation;

(d)      to determine whether the proposed Plan of Allocation for the distribution of the Net Settlement Fund is fair and reasonable and should be approved by the Court;

(e)      to consider Plaintiff's Counsel's Fee and Expense Application for an award of attorney's fees and expenses (including any awards to the Class Representative pursuant to 15 U.S.C. §78u-4(a)(4));

       (f)      to consider any valid objections or requests to "opt out" submitted to the Court, as further provided for herein and in the accompanying proposed forms of Notice; and

       (g)      to rule upon such other matters as the Court may deem appropriate.

8.      The Fairness Hearing will be held remotely, including by dial-in conference call or video-conferencing means.  Class Counsel are hereby ordered to cause the Claims Administrator to promptly provide prominent notice of such modification (including relevant details and instructions as to how Settlement Class Members may dial in or log in and, to the extent applicable, be heard at the Fairness Hearing) on a website to be established by the Claims Administrator in this matter for the purposes of facilitating the dissemination of the Notice and other information about this Action (the "Settlement Website").

9.      The Court also reserves the right to adjourn the Fairness Hearing to a later date or time without further notice to the Settlement Class Members other than entry of an Order on the Court's docket (provided that the time or the date of the final Fairness Hearing shall not be set at a time or date earlier than the time and date set forth in ¶7 above).  In such event, however, Class Counsel are directed to instruct the Claims Administrator to post notice of any such adjournment on the Settlement Website.

10.     Following the Fairness Hearing, the Court reserves the right to approve the Settlement without modification, or with such modifications as the Parties may agree, without further notice, and to enter its Judgment approving the Settlement and dismissing the Action on the merits and with prejudice, regardless of whether it has approved the Plan of Allocation or awarded attorney's fees and expenses.

11.     The Court approves the form and substance of: (a) the Notice; (b) the Proof of Claim and Release Form; and (c) the Summary Notice, which are Exhibits A-1, A-2, and A-3, respectively, to the Stipulation.

12.     The Court finds that Class Counsel have the authority to act on behalf of the Settlement Class as to all acts or consents that are required by or may be given pursuant to the Stipulation, or that are reasonably necessary to consummate the Settlement.

13.     For settlement purposes only, A.B. Data, Ltd. is appointed as the Claims Administrator to supervise and administer the notice procedure and the processing of claims.

14.     To the extent they have not already done so, Class Counsel shall provide wire instructions for the Escrow Account and an IRS Form W-9 for the Settlement Fund to Wilson Sonsini Goodrich & Rosati, P.C. ("Precigen's Counsel") within five (5) business days of the date of this Order.   By or before the later of the thirtieth (30th) calendar day after (a) these wire instructions have been provided to Precigen's Counsel; and (b) entry of this Order on the Court's docket, Precigen shall pay or cause to be paid the Settlement Amount of U.S. $13,000,000.00 (thirteen million U.S. Dollars) by wire into the Escrow Account.

15.     The Claims Administrator shall cause the Notice and Proof of Claim, substantially in the forms annexed hereto, to be mailed, by first class mail, postage prepaid, by the twenty-first (21st) calendar day after entry of this Order (or, if later, by the fifth (5th) business day of the date on which at least the first $300,000 of the Settlement Amount as been paid by or on behalf of Defendants by wire into the Escrow Account), to all Settlement Class Members who can be identified with reasonable effort, including nominees or custodians who purchased or acquired shares of Precigen common stock during the Class Period as record owners but not as beneficial owners.   In accordance with ¶4.3 of the Stipulation, to the extent it has not already done so, Precigen shall provide (at its expense) to the Claims Administrator the last known names and addresses of all persons who, based on the records of Precigen or Precigen's stock transfer agent, are likely members of the Settlement Class, for the purpose of assisting the Claims Administrator in identifying and giving notice to the Settlement Class.   Nominees or custodians receiving the Notice are hereby directed, within seven (7) calendar days of receipt of the Notice, to provide the Claims Administrator with lists of the names, last known addresses, and email addresses (to the extent known) of such beneficial owners, in which case the Claims Administrator is directed to send the Notice and Proof of Claim form promptly to such identified beneficial owners.   Nominee purchasers who elect to send the Notice and Proof of Claim to their beneficial owners shall send a statement to the Claims Administrator confirming that the mailing was made as directed.   Additional copies of the Notice shall be made available to any record holder requesting such for

1  the purpose of distribution to beneficial owners.  The Claims Administrator shall, if requested,

2  reimburse nominees or custodians out of the Settlement Fund solely for their reasonable out-of-

3  pocket expenses, which expenses would not have been incurred but for the sending of such notice

4  or the requirement to identify their beneficial holders, subject to further order of this Court with

5  respect to any dispute concerning such reimbursement.

6       16.  Class Counsel shall, at least seven (7) calendar days before the Fairness Hearing,

7  serve upon counsel for the Defendants, and file with the Court, proof of the mailing of the Notice

8  and Proof of Claim and Release Form as required by this Order.

9       17.  Class Counsel, through the Claims Administrator, shall cause the Stipulation and

10  its exhibits, this Order, and a copy of the Notice and Proof of Claim and Release Form to be posted

11  on the Settlement Website to be established by the Claims Administrator for the Settlement within

12  fourteen (14) calendar days after entry of this Order.

13       18.  Class Counsel, through the Claims Administrator, shall cause the Summary Notice

14  to be published: (a) electronically once on the PRNewswire; and (b) in print once in Investor's

15  Business Daily, within thirty (30) business days of entry of this Order.  Class Counsel shall, at

16  least seven (7) calendar days before the Fairness Hearing, serve upon counsel for the Defendants

17  and file with the Court proof of publication of the Summary Notice.

18       19.  The Court finds that the forms and methods set forth herein of notifying the

19  Settlement Class Members of the Settlement and its terms and conditions meet the requirements

20  of due process, FRCP Rule 23, and all other applicable laws and rules, and constitute the best

21  notice practicable under the circumstances, and shall constitute due and sufficient notice to all

22  persons and entities entitled thereto, and are reasonably calculated under the circumstances to

23  describe the terms and effect of the Settlement and to apprise the Settlement Class Members of

24  their right to object to the proposed Settlement and to exclude themselves from the Settlement

25  Class.  No Settlement Class Member will be relieved from the terms and conditions of the

26  Settlement, including the releases provided for therein, based upon the contention or proof that

27  such Settlement Class Member failed to receive actual or adequate notice.

28

20.     All reasonable fees and expenses incurred in identifying and notifying Settlement Class Members, and in administering the Settlement, shall be paid as set forth in the Stipulation. In the event the Settlement is not finally approved by the Court, or otherwise fails to become effective, neither Lead Plaintiff or any other plaintiff in the Action (collectively, "Plaintiffs"), nor any Plaintiffs' counsel shall have any obligation to repay any amounts actually and properly disbursed from the Settlement Fund, except as provided in the Stipulation.

21.     To be eligible to participate in any recovery from the Net Settlement Fund, if the Settlement becomes effective, each Settlement Class Member must take the following actions and be subject to the following conditions:

(a)     Within 120 calendar days after the deadline set by the Court for the Claims Administrator to mail the Notice to the Settlement Class (*see* ¶15), each Person claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Proof of Claim, substantially in the form of Exhibit A-2 to the Stipulation, signed under penalty of perjury and accompanied by adequate supporting documentation for the transactions reported therein as specified in the Proof of Claim, or by such other supporting documentation as is deemed adequate by the Claims Administrator;

(b)     Except as otherwise ordered by the Court, all Settlement Class Members who fail to timely submit a Proof of Claim within such period, or such other period as may be ordered by the Court, shall be forever barred from receiving any payments pursuant to the Stipulation and Settlement set forth therein, but will, in all other respects, be subject to and bound by the provisions of the Stipulation, the releases contained therein, and the Judgment.  Notwithstanding the foregoing, Class Counsel may, in its discretion (a) accept for processing late submitted claims, so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed; and (b) waive what Class Counsel deem to be de

7

1  minimis or technical defects in any Proof of Claim submitted.  No Person

2  shall have any claim against Lead Plaintiff, Class Counsel, any Plaintiffs'

3  counsel, or the Claims Administrator by reason of any exercise of discretion

4  with respect to such late-submitted or technically deficient claims.

5  (c)  Each Proof of Claim shall be deemed to have been submitted when legibly

6  postmarked (if properly addressed and mailed by first class mail) provided

7  such Proof of Claim is actually received before the filing of a motion for an

8  Order of the Court approving distribution of the Net Settlement Fund.  Any

9  Proof of Claim submitted in any other manner shall be deemed to have been

10  submitted when it was actually received by the Claims Administrator at the

11  address designated in the Notice.

12  (d)  Once the Claims Administrator has considered a timely submitted Proof of

13  Claim, it shall determine whether such claim is valid, deficient or rejected.

14  For each claim determined to be either deficient or rejected, the Claims

15  Administrator shall send a deficiency letter or rejection letter as appropriate,

16  describing the basis on which the claim was so determined.  Persons who

17  timely submit a Proof of Claim that is deficient or otherwise rejected shall

18  be afforded twenty (20) calendar days to cure such deficiency if it shall

19  appear that such deficiency may be cured.  If any Claimant whose claim has

20  been rejected in whole or in part wishes to contest such rejection, the

21  Claimant must, within twenty (20) calendar days after the date of mailing

22  of the notice of such rejection, serve upon the Claims Administrator a notice

23  and statement of reasons indicating the Claimant's ground for contesting

24  the rejection along with any supporting documentation, and requesting a

25  review thereof by the Court.  If an issue concerning a claim cannot be

26  otherwise resolved, Class Counsel shall thereafter present the request for

27  review to the Court.

28

1        (e)      As part of the Proof of Claim, each Settlement Class Member shall submit

2           to the jurisdiction of the Court with respect to the claim submitted, and shall,

3           upon the Effective Date, release all of their Released Claims against the

4           Released Defendant Persons as provided in the Stipulation.  No discovery

5           shall be allowed on the merits of the Action or the Settlement in connection

6           with the processing of any Proofs of Claim, nor shall any discovery from or

7           of Defendants be allowed on any topic.

8      22.    Settlement Class Members who do not submit valid and timely Proofs of Claim

9 will be forever barred from receiving any payments from the Net Settlement Fund, but will in all

10 other respects be subject to and bound by the terms of the Stipulation and the Judgment, if entered

11 and the Settlement becomes Effective, and will be permanently barred and enjoined from bringing

12 any action, claim, or other proceeding of any kind against the Released Defendant Persons with

13 respect to the Released Claims.

14      23.    Settlement Class Members shall be bound by all determinations and judgments in

15 this Action whether favorable or unfavorable, unless such Persons timely and validly request

16 exclusion from the Settlement Class, as hereinafter provided.  A Settlement Class Member wishing

17 to make such request for exclusion shall mail it, in written form, by First Class Mail, postage

18 prepaid, or otherwise deliver it, so that it is received no later than thirty (30) calendar days prior to

19 the Fairness Hearing (the "Exclusion Deadline"), to the address for the Claims Administrator listed

20 in the Notice.  To be valid, an exclusion request must clearly (a) state the name, address, phone

21 number, and any e-mail contact information of the Person seeking exclusion; (b) state that the

22 sender "requests to be excluded from the Settlement Class in Abadilla v. Precigen Inc., Case No.

23 5:20-cv-06936-BLF"; and (c) state (i) the date, number of shares of Precigen common stock, and

24 dollar amount of each of their purchases, acquisitions or sales of such shares during the Class

25 Period; and (ii) the number of shares of Precigen common stock they held as of the opening of

26 trading on May 10, 2017 (the first day of the Class Period) and September 25, 2020 (the last day

27 of the Class Period).  To be valid, exclusion requests must be submitted with documentary proof

28 of (i) each purchase or acquisition and, if applicable, sale transaction of Precigen shares during the

1    Class Period; and (ii) the Person's status as a beneficial owner of the Precigen shares at issue.  Any

2    such request for exclusion must be signed and submitted by the beneficial owner.  The request for

3    exclusion shall not be effective unless it provides the required information, is legible, and is made

4    within the time stated above, or is otherwise accepted by the Court.  The Claims Administrator

5    and/or Class Counsel may contact any Person filing a request for exclusion, or their attorney, to

6    discuss the exclusion.

7           24.    The Claims Administrator shall provide copies of all requests for exclusion and

8    materials submitted therewith (including untimely requests and revocations of requests) to

9    Precigen's Counsel and to Class Counsel as soon as possible, and in any event no later than the

10    Exclusion Deadline or on receipt (if later than the Exclusion Deadline).  The Settlement Class will

11    not include any Person who delivers a valid and timely request for exclusion.

12           25.    Any Person that submits a request for exclusion may thereafter submit to the Claims

13    Administrator, Class Counsel, Precigen's Counsel, or the Court a written revocation of that request

14    for exclusion, provided that it is received no later than two (2) calendar days before the Fairness

15    Hearing, in which event that Person will be included in the Settlement Class.  All Persons who

16    submit a valid, timely, and unrevoked request for exclusion will be forever barred from receiving

17    any payments from the Net Settlement Fund.

18           26.    The Court will consider objections to the Settlement, the Plan of Allocation, and

19    the Fee and Expense Application, provided, however, that, absent further order of the Court, no

20    Settlement Class Member or other Person shall be heard or entitled to contest the approval of the

21    terms and conditions of the proposed Settlement, the Plan of Allocation, the Fee and Expense

22    Application or, if approved, the Judgment, or any other order relating thereto, unless that Person

23    has submitted an objection to the Court either by filing it electronically or in person at any location

24    of the United States District Court for the Northern District of California or by mailing it to the

25    Class Action Clerk, United States District Court for the Northern District of California, San Jose

26    Courthouse, 280 S. 1st St., San Jose, CA 95113 , such that it is filed (or if mailed, postmarked) at

27    least twenty-one (21) calendar days prior to the final Fairness Hearing.  To be valid, a Settlement

28    Class Member's objection must substantially comply with the following requirements, namely, it

1    must set forth the Settlement Class Member's: (1) name, address, and telephone number, (2) a list

2    of all of their purchases, acquisitions, sales, and dispositions shares of Precigen common stock

3    during the Class Period (in order to show their membership in the Settlement Class), (3) all grounds

4    for the objection, and (4) the name, address, and telephone number of the Settlement Class

5    Member's counsel, if any.  The objection must also state whether it applies only to the objector, to

6    a specific subset of the class, or to the entire class, and also state with specificity the grounds for

7    the objection.  The objection must be signed by the objector, even if the objection is filed by

8    counsel for the objector.  Attendance at the Fairness Hearing is not necessary but Persons wishing

9    to be heard orally in opposition to approval of the Stipulation, the Plan of Allocation, and/or the

10   Fee and Expense Application must state in their written objection that they intend to appear at the

11   Fairness Hearing, and must identify any witnesses they may call to testify or exhibits they intend

12   to introduce into evidence at the Fairness Hearing, provided, however, that the Court may excuse

13   such requirements upon a showing of good cause.  Settlement Class Members need not appear at

14   the Fairness Hearing or take any other action to show their approval.

15   27.    Unless otherwise ordered by the Court upon a finding of good cause shown, any

16   Settlement Class Member who does not object in the manner prescribed above shall: be deemed

17   to have waived all such objections; be forever foreclosed from making any objection to the

18   fairness, adequacy, or reasonableness of the Settlement, any Judgment approving the Settlement,

19   and any orders approving the Plan of Allocation or the Fee and Expense Application; be bound by

20   all the terms and provisions of the Stipulation and by all proceedings, orders, and judgments in the

21   Action; and be foreclosed from appealing from any judgment or order entered in this Action.

22   28.    All papers in support of the Settlement, the Plan of Allocation, and/or the Fee and

23   Expense Application shall be filed and served no later than thirty-five (35) calendar days before

24   the Fairness Hearing.

25   29.    Any submissions filed in response to any objections or in further support of the

26   Settlement, the Plan of Allocation, and/or the Fee and Expense Application shall be filed no later

27   than fourteen (14) calendar days prior to the Fairness Hearing.

28

30. Defendants, their counsel, their insurers, and the other Released Defendant Persons shall have no responsibility for, or liability with respect to, the Plan of Allocation or the Fee and Expense Application (including any payments to the Class Representative) submitted by Class Counsel, and such matters will be considered separately from the fairness, reasonableness, and adequacy of the Settlement.

31. Pending final determination of whether the Settlement should be approved, Lead Plaintiff, all Settlement Class Members, and each of them, and anyone who acts or purports to act on their behalf, shall not institute, commence, maintain, or prosecute, and are hereby barred and enjoined from instituting, continuing, commencing, maintaining, or prosecuting, any action in any court or tribunal that asserts Released Claims against any of the Released Defendant Persons.

32. All funds held by the Escrow Agent shall be deemed to be in the custody of, and subject to the jurisdiction of, the Court until such time as such funds are either distributed or returned pursuant to the Stipulation, the Plan of Allocation, and/or further order of the Court.

33. Neither this Order, nor the Stipulation (including the Settlement contained therein) nor any act performed or document executed pursuant to or in furtherance of the Settlement:

       (a)    is or may be deemed to be, or may be used as an admission, concession, or evidence of, the validity or invalidity of any Released Claims, the truth or falsity of any fact alleged by any Plaintiff, the sufficiency or deficiency of any defense that has been or could have been asserted in either Action, or of any deception, wrongdoing, liability, negligence, or fault of the Defendants, the Released Defendant Persons, or each or any of them, or that any Plaintiff or Settlement Class Member was harmed or damaged by any conduct by any Defendant;

       (b)    is or may be deemed to be or may be used as an admission of, or evidence of, any fault or misrepresentation or omission with respect to any statement or written document attributed to, approved or made by the Defendants or the Released Defendant Persons in any arbitration proceeding or any civil,

criminal, or administrative proceeding in any court, administrative agency or other tribunal;

(c)     is or may be deemed to be or shall be used, offered or received against the Parties, Defendants, the Released Defendant Persons, the Released Plaintiff Persons, or any of them, as an admission, concession, or evidence of the validity or invalidity of the Released Claims, the infirmity or strength of any claim raised in the Action, the truth or falsity of any fact alleged by Lead Plaintiff or the Settlement Class, or the availability or lack of availability of meritorious defenses to the claims raised in the Action; and

(d)     is or may be deemed to be or shall be construed as or received in evidence as an admission or concession against the Defendants, the Released Defendant Persons, the Released Plaintiff Persons, or any of them, that any of Lead Plaintiff's or Settlement Class Members' claims are with or without merit, that a litigation class should or should not be certified, that damages recoverable in the Action would have been greater or less than the Settlement Fund, or that the consideration to be given pursuant to the Stipulation represents an amount equal to, less than or greater than the amount which could have or would have been recovered after trial.

34.     In the event the Settlement is not consummated in accordance with the terms of the Stipulation, then the Stipulation and this Order (including any amendment(s) thereof, and except as expressly provided in the Stipulation or by order of the Court) shall be null and void, of no further force or effect, and without prejudice to any Party, and may not be introduced as evidence or used in any action or proceeding by any Person against the Parties, the Released Defendant Persons or the Released Plaintiff Persons, and each Plaintiff and Defendant shall be restored to his, her, or its respective litigation positions as they existed immediately prior to the execution of the Stipulation.

35.     At least seven (7) calendar days before the Fairness Hearing, Precigen shall cause to be served on Lead Counsel and filed with the Court proof, by affidavit or declaration, regarding

1  its compliance with its notice requirements under the Class Action Fairness Act, 28 U.S.C. §1715,

2  et seq. ("CAFA") on behalf of all Defendants.

3      36.    The Court retains exclusive jurisdiction over the Action to consider all further

4  matters arising out of, or relating to, the Settlement and the Stipulation including, by way of

5  illustration and not limitation, the enforcement thereof.

6  DATED: _____, 2023      _____

7                                HON. BETH LABSON FREEMAN
                                 UNITED STATES DISTRICT COURT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A-1

**EXHIBIT A-1**
**TO STIPULATION AND AGREEMENT OF SETTLEMENT**

Dear Recipient:

You have been identified as a potential Settlement Class Member ("Class Member") in a securities class action involving Precigen, Inc., formerly known as Intrexon Corporation ("Precigen" or the "Company") captioned *Abadilla v. Precigen, Inc., et. al,* Case No. 5:20-cv-06936-BLF (the "Action"). Enclosed is a Notice about the settlement of this Action. *If you purchased or acquired Precigen common stock during the period from May 10, 2017 through September 25, 2020, inclusive, you could receive a payment from this settlement.*

A federal court authorized the accompanying Notice. **This is not a solicitation from a lawyer**. **Your legal rights will be affected whether you act or do not act**. Important facts are highlighted below and are further explained in the accompanying Notice, which you should read carefully. All capitalized terms used in this cover letter, to the extent not otherwise defined herein, are defined in the accompanying Notice.

**Relevant Security and Time Period**: Precigen common stock (ticker PGEN, formerly XON) purchased or acquired between May 10, 2017 and September 25, 2020, inclusive (the "Class Period").

**Settlement Amount:** $13,000,000.00 in cash. Your individual recovery will depend on the number of publicly tradeable shares of Precigen (f/k/a Intrexon) common stock that you (and other Class Members who file valid claims) purchased and sold, and the prices at which, and the dates on which, you (and other Class Members who file valid claims) purchased and sold those shares. Based upon information currently available to Plaintiff and the analysis performed by his damages consultant, it is estimated that if Class Members submit claims for 100% of the Precigen (Intrexon) common stock eligible for distribution, the estimated average distribution will be approximately $0.13 per share of damaged Precigen (Intrexon) common stock (before deduction of Court-approved fees, expenses, plaintiff incentive awards, and costs of notice and claims administration).

**Reasons for Settlement**: Lead Plaintiff's and Lead Counsel's principal reason for entering into the Settlement is that it provides the Settlement Class ("Class") with a significant benefit now against the Defendants (consisting of Precigen and two its current or former officers and/or directors) without the risks or delays inherent in continued litigation. *See also* Notice at §5 below ("Why is There a Settlement?"). Defendants, who have denied and continue to deny all allegations of liability, have stated that their sole reason for entering into the Settlement is to eliminate the uncertainty, risk, costs and burdens inherent in complex cases such as this.

**Nature of Claims Asserted:**

Plaintiff alleges that the Defendants violated §10(b) of the Securities Exchange Act of 1934 ("Exchange Act") by making material misstatements and omissions concerning the Company's efforts (through its "MBP program"), to develop commercially usable methods to combine natural gas with certain biological organisms to manufacture certain valuable chemical byproducts, which allegedly caused the price of the Company's common stock to be artificially inflated during the Class Period. Plaintiff further alleges that Class Members suffered damages as the alleged truth about the Company's MBP program was gradually revealed to the market. The Defendants deny all allegations of wrongdoing and liability, and contend that the statements at issue regarding the Company's MBP program were all accurate and not misleading. Defendants also assert that they had several other valid defenses to the claims at issue, including that they never acted with any intent to deceive any investors. *See also* Notice at §2 below ("What is this lawsuit about?").

**If the Settlement Had Not Been Reached:** The claims asserted against the Defendants involve numerous complex legal and factual issues, and the District Court had already dismissed (with leave to amend) Lead Plaintiff's Second Amended Complaint. The issues on which the Parties disagree are many, but include: (1) whether Defendants made any materially false or misleading statements in violation of the federal securities laws; (2) whether Defendants have defenses to the claims at issue, including that their allegedly actionable statements were protected from liability as "forward-looking" statements or as non-actionable statements of opinion; (3) the extent to which the alleged misrepresentations and omissions affected the trading price of Precigen (Intrexon) common stock during the Class Period; and (4) the appropriate economic model for determining whether and/or the extent to which purchasers of the allegedly damaged Precigen (Intrexon) common stock suffered damages that are recoverable under applicable law. There is no assurance that Plaintiff's most recent complaint (the Third Amended Complaint) would survive an expected further round of motions to dismiss by Defendants, and even if it did there could be no assurance that the facts and relevant expert testimony would support a finding of liability against Defendants. The benefits of the Settlement should therefore be compared to the risk of ultimately obtaining little or no recovery at all against the Defendants after completion of fact and expert discovery, further briefing on contested dispositive motions, potentially disputed class certification proceedings, trial, and likely appeals.

**Statement of Attorneys' Fees and Expenses Sought.** Lead Counsel will apply to the Court for an award of attorneys' fees for all Plaintiff's Counsel of up to 25% of the Settlement Amount (or roughly $3,250,000), plus interest earned at the same rate as earned by the Settlement Fund, and for litigation expenses not to exceed $111,000. In addition, the Lead Plaintiff will apply for awards for his reasonable time and expenses in representing the Class in an amount not to exceed $5,000. The requested attorneys' fees and expense awards, if granted in full, would amount to an average cost of approximately $0.03 per allegedly damaged share of Precigen (Intrexon) common stock.

**Dismissal and Releases:**  If the proposed Settlement is approved, the Court will enter a Judgment that, in sum, will dismiss and release all claims asserted against the Defendants (and their respective parents, subsidiaries, employees, directors and officers, in their capacities as such), and will bar all Class Members (unless they request exclusion from the Class) from ever bringing any such claims against those persons or entities.  The precise terms of the releases, including the meaning of the term "Released Claims," are set forth in the attached Notice.

**Important Dates and Deadlines:**

○   Deadline for Submitting Claim Form:  must be *postmarked* by _____, 2023

○   Deadline for Filing Any Objections:  must be *received* by _____, 2023

○   Deadline for Requesting Exclusion from the Class:  must be *received* by _____, 2023

○   Date of the Court's Hearing on the Fairness of Settlement:  _____, 2023 at _:__ __.m. Pacific Time (date and time are subject to change without further notice; *see* Notice at §19 below).

**More Information**:  You may contact the Claims Administrator, A.B. Data, Ltd., toll-free at 1-800-_____, by email at ____@_____.com, or by visiting www.PrecigenSecuritiesLitigation.com.  You may also contact representatives of counsel for the Settlement Class c/o William C. Fredericks, SCOTT+SCOTT ATTORNEYS AT LAW LLP, 230 Park Avenue, 17th Floor, New York, NY 10169-1820, tel. 1-800-404-7770, email: scottcases@scott-scott.com.

*Please Do Not Call the Court or Defendants with Questions About the Settlement.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARTIN JOSEPH ABADILLA, et al., | Case No. 5:20-cv-06936-BLF |
| Plaintiffs, | |
| v. | |
| PRECIGEN, INC, et al. | **NOTICE OF: (I) PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT; (II) SETTLEMENT FAIRNESS HEARING; AND (III) MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES** |
| Defendants. | |
| This Document Relates to: | |
| ALL CONSOLIDATED ACTIONS | |

**TO: ALL PERSONS WHO PURCHASED COMMON STOCK OF PRECIGEN, INC., formerly known as Intrexon Corporation ("PRECIGEN") (NASDAQ ticker PGEN, formerly XON) DURING THE PERIOD FROM MAY 10, 2017 THROUGH SEPTEMBER 25, 2020, INCLUSIVE (THE "CLASS PERIOD") AND WERE DAMAGED THEREBY**

***A FEDERAL COURT AUTHORIZED THIS NOTICE***

***THIS IS NOT A SOLICITATION FROM A LAWYER.***

PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY.  YOUR RIGHTS MAY BE AFFECTED BY PROCEEDINGS IN THIS ACTION.  PLEASE NOTE THAT IF YOU ARE A CLASS MEMBER, YOU MAY BE ENTITLED TO SHARE IN THE PROCEEDS OF THE SETTLEMENT DESCRIBED IN THIS NOTICE.  TO CLAIM YOUR SHARE OF THE SETTLEMENT PROCEEDS, YOU MUST SUBMIT A VALID PROOF OF CLAIM AND RELEASE FORM ("CLAIM FORM") *POSTMARKED* ON OR BEFORE _____, 2023.

The purpose of this Notice is to inform you of: (i) the pendency of this class action (the "Action"); (ii) the proposed $13,000,000 settlement (the "Settlement") of the Action reached between (a) Lead Plaintiff Raju Shah ("Plaintiff" or "Lead Plaintiff"); and (b) the Defendants (consisting of Precigen Inc. ("Precigen" or the "Company"), current Precigen director and former chief executive officer Randal J. Kirk ("Kirk"), and former Precigen officer Robert F. Walsh III ("Walsh" and collectively, with Precigen and Kirk, the "Defendants")); and (iii) a hearing to be held by the Court to consider the fairness, reasonableness, and adequacy of the Settlement, proposed Plan of Allocation, Plaintiff's Counsel's application for attorney's fees, costs, and expenses, and Lead Plaintiff's application

for an award (of no more than $5,000) for his reasonable time and expenses in representing the Class.  This notice (the "Notice") also describes what rights you have and what steps you may take in relation to the Settlement and this Action.[1]

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM** | The only way to be eligible to receive a payment from the Settlement.  Unless otherwise extended by the Court, **Claim Forms must be postmarked on or before _____, 2023.**  *See Question 9 below.* |
| **EXCLUDE YOURSELF** | Get no payment. This is the only option that potentially allows you to ever be part of another lawsuit against the Defendants or any other Released Defendant Persons based on the matters being resolved by this Settlement. Unless otherwise extended by the Court, **exclusion requests must be received by the Claims Administrator on or before _____, 2023.**  *See Question 12 below.* |
| **OBJECT** | Write to the Court about why you do not like the Settlement, Plan of Allocation, and/or request for attorneys' fees and expenses.  You will still be a member of  the Class. Unless otherwise extended by the Court, **objections must be filed electronically or in person with the Court on or before _____, 2023, or mailed to the Court on or before _____, 2023.**  *See Question 17 below.* |
| **ATTEND THE HEARING ON _____, 2023 AT __:00 __.m. PACIFIC TIME** | Ask to speak in Court about the fairness of the Settlement.  Unless otherwise permitted by the Court, **requests to speak must be received by the Court on or before _____, 2023.**  *See Questions 19-21 below.* |
| **DO NOTHING** | Receive no payment. You will, however, still be a member of the Class, which means that you give up your right to ever be part of any other lawsuit against the Defendants or any other Released Defendant Persons about the legal claims being resolved by this Settlement, and that you will be bound by any judgments or orders entered by the Court in the Action. *See Question 22 below.* |

You may submit a claim or object, or do both, or do nothing.  However, if you timely exclude yourself, that is the only thing you can do: you may not object in writing, you may not appear at the Fairness Hearing to state any objections, and you may not submit a claim.  The Court presiding over this case must decide whether to approve the Settlement.  Payments will be made only if the Court approves the Settlement, and only after resolution of any appeals and the review and processing of all Claim Forms.  Please be patient.

***Please Do Not Call the Court or Defendants with Questions About the Settlement.***

<u>**SUMMARY OF THIS NOTICE**</u>

**BASIC INFORMATION**

1. Why Did I Get This Notice?
2. What Is This Lawsuit About, And What Has Happened In The Action So Far?
3. How Do I Know If I Am Part Of The Settlement?
4. What If I Am Still Unsure If I Am Included?

**THE SETTLEMENT**

5. Why Is There A Settlement?
6. What Does The Settlement Provide?
7. How Much Will My Payment Be?
8. What Is The Proposed Plan Of Allocation?

**HOW TO OBTAIN A PAYMENT – SUBMITTING A CLAIM FORM**

---

[1] All capitalized terms used in this Notice that are not otherwise defined herein have the meanings provided in the Stipulation and Agreement of Settlement dated February ____, 2023 (the "Stipulation"), copies available at  www.PrecigenSecuritiesLitigation.com.

9.  How Can I Obtain A Payment?
10. When Will I Receive My Payment?
11. What Am I Giving Up To Receive A Payment?

## EXCLUDING YOURSELF FROM THE CLASS ACTION SETTLEMENT

12. How Do I Exclude Myself ("Opt Out") Of The Class?
13. If I Do Not Exclude Myself, Can I Sue The Defendants For The Same Thing Later?
14. If I Exclude Myself, Can I Receive Money From The Settlement?

## THE LAWYERS REPRESENTING YOU

15. Do I Have A Lawyer In The Case?
16. How Will The Lawyers Be Paid?

## OBJECTING TO THE SETTLEMENT

17. How Do I Tell The Court If I Do Not Like The Settlement?
18. What Is The Difference Between Objecting And Excluding?

## THE COURT'S SETTLEMENT (OR "FINAL APPROVAL") HEARING

19. When And Where Will The Court Decide Whether To Approve The Settlement?
20. Do I Have To Come To The Hearing?
21. May I Speak At The Hearing?

## IF YOU DO NOTHING

22. What Happens If I Do Nothing?

## ADDITIONAL INFORMATION

23. How Can I Get More Information?

## PROPOSED PLAN OF ALLOCATION

## SPECIAL NOTICE TO SECURITIES BROKERS AND OTHER NOMINEES

### BASIC INFORMATION

| 1.  Why Did I Get This Notice? |
|---|

The Court has directed that this Notice be sent to you because you or someone in your family may have purchased or acquired Precigen common stock during the Class Period of May 10, 2017 through September 25, 2020, inclusive. The Court has directed us to send you this Notice because, as a potential Class Member, you have a right to know about the proposed Settlement and all of your options before the Court decides whether to approve the Settlement.

The Court in charge of this Action is the United States District Court for the Northern District of California (the "Court"). The issuance of this Notice is not an expression of any opinion by the Court concerning the merits of any claim or defenses in the Action, and the Court still has to decide whether to approve the Settlement.

| 2.  What Is This Lawsuit About, And What Has Happened In The Action So Far? |
|---|

Defendant Precigen (previously known as Intrexon Corporation) is a company that, during the relevant time period, focused on using synthetic biology to develop various products. During the Class Period, Precigen's "Energy/Chemicals" segment was focused on developing the Company's Methane Bioconversion Platform ("MBP"), which sought to use natural gas to convert methanotrophic organisms into valuable chemicals (notably isobutanol, isobutyraldehyde, and various forms of butanediol). Plaintiffs allege that Defendants' statements made during the Class Period regarding the MBP program were materially false and/or misleadingly incomplete in violation of §10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), including various statements concerning the Company's claimed success in having developed "in the money" methods to use natural gas to convert methanotrophic organisms into valuable chemical byproducts. Plaintiffs further allege that, as a result, Precigen's stock price was artificially inflated during the Class Period. Defendants deny all allegations of wrongdoing or liability whatsoever in this lawsuit and, among other things, maintain that all statements made by or on behalf of Defendants during the Class Period were accurate and not materially misleading when made. *See also* §5 below ("Why Is There a Settlement?").

On May 18, 2021, following the filing of earlier complaints, Lead Plaintiff filed his Consolidated Amended Class Action Complaint (the "AC"), which asserted claims for violations of §10(b) and §20(a) of the Exchange Act against the Defendants, as well as two other former Precigen officers (former chief financial officer Rick Sterling and former chief operating officer Andrew J. Last). Defendants moved to dismiss the AC on August 2, 2021. Pursuant to a stipulation and Order, in lieu of responding to Defendants' motion to dismiss the AC, on September 27, 2021 Lead Plaintiff filed a Second Amended Class Action Complaint (the "SAC") as to the same defendants named in the AC, and on November 3, 2021 those defendants filed a motion to dismiss all claims asserted against them in the SAC.

After full briefing and oral argument, in a 19-page Order dated May 31, 2022 (the "MTD Order", available at www.PrecigenSecuritiesLitigation.com), the Court dismissed all of Plaintiff's claims asserted in the SAC, with leave to replead.

Shortly thereafter, in June 2022, the Parties commenced preliminary discussions about trying to resolve the claims at issue through mediation. While these discussions were still ongoing, on August 1, 2022, Lead Plaintiff filed his Third Amended Class Action Complaint (the "TAC"), which (*inter alia*) dropped Messrs. Last and Sterling as defendants. Shortly thereafter, the remaining Parties advised the Court that they had agreed to retain a highly experienced mediator (retired federal judge Layn R. Phillips ("Judge Phillips" or the "Mediator")), and the Court vacated its existing deadlines for briefing motions to dismiss the TAC to allow the remaining Parties time to try to reach a mediated settlement.

Thereafter, pursuant to Judge Phillips' instructions as Mediator, counsel for the Parties prepared and exchanged comprehensive mediation briefs and supporting materials in October 2022. In addition, as part of the mediation process, Precigen produced to Lead Plaintiff certain relevant Precigen documents that Lead Plaintiff had requested in advance of the mediation. The Parties then participated in a full day, arm's-length mediation session on November 17, 2022 under the auspices of the Mediator. Counsel for Precigen and Kirk participated in this mediation session on behalf of the Defendants.

At the end of this mediation session, Judge Phillips made a "mediator's proposal" for a settlement of all claims at issue, under which, in sum: (a) Lead Plaintiff (on behalf of himself and the putative class) would settle, compromise and release all claims against Precigen and its current and former officers, directors, employees, agents and representatives in exchange for the Defendants' payment of $13,000,000.00 in cash. Each Party accepted the "mediator's proposal" in principle, subject to resolution of certain non-monetary terms regarding the nature, scope and completion of confirmatory discovery to be provided to Lead Plaintiff by Precigen, and the Parties promptly notified the Court accordingly. Precigen subsequently produced to Lead Plaintiff more than 83,000 additional pages of documents concerning its MBP program. On January 20, 2023, Lead Plaintiff's counsel advised Precigen that their review had confirmed their original assessment that the proposed Settlement was fair, reasonable and adequate, and that Lead Plaintiff would elect to proceed with the Settlement. The Parties signed the Stipulation of Settlement ("Stipulation") on _____, 2023. If approved, the Settlement will settle, resolve and dispose of all claims asserted, or previously asserted, in this Action.

<h3 style="text-align:center">WHO IS IN THE SETTLEMENT</h3>

### 3. How Do I Know If I Am Part Of The Settlement?

If you are a member of the Class you are subject to the Settlement, unless you timely request to be excluded. The Class consists of: all Persons who purchased or otherwise acquired shares of the common stock of Precigen (formerly known as Intrexon Corporation), NASDAQ ticker symbol PGEN, formerly XON) between May 10, 2017 and September 25, 2020, inclusive, and were damaged thereby. Excluded from the Class are (i) all Defendants; (ii) the past and current officers, directors, partners and managing partners of Precigen (and any of Precigen's subsidiaries or affiliates, including but not limited to MBP Titan LLC); (iii) the immediate family members, legal representatives, heirs, parents, subsidiaries, predecessors, successors, and assigns of any excluded Person, or that is or was controlled by any excluded Person; and (iv) any entity in which any excluded Person(s) have or had a majority ownership interest, or that is or was controlled by any excluded Persons.

### 4. What If I Am Still Unsure If I Am Included?

If you are still not sure whether you are included in the Class, you can ask for free help by calling the Claims Administrator at 1-800-_____. You can also fill out and return the Claim Form described at §9 to see if you qualify or go to www.PrecigenSecuritiesLitigation.com for more information.

<h3 style="text-align:center">THE SETTLEMENT AND WHAT YOU MAY GET</h3>

### 5. Why Is There A Settlement?

The Court did not decide in favor of the Plaintiff or Defendants. Instead, the Plaintiff and the Defendants agreed to a Settlement. If approved, the Settlement will avoid the cost and uncertainties of further litigation, trial, and likely appeals as against all Defendants (and their "Related Persons", as defined in the Stipulation, in their capacities as such).

The court-appointed Lead Plaintiff and Lead Counsel for the Settlement Class believe that the claims that will be released under the Settlement have merit. They recognize, however, that continuing the litigation of the Released Claims through trial and likely appeals would be expensive and likely require additional years to resolve and would involve a very substantial risk that Plaintiff would be unable to prove (i) that the Defendants were liable, or (ii) that the Defendants (even if they were liable) had caused the Class to suffer legally recoverable damages. For example, Defendants argued that the TAC, like the previously filed SAC that the Court had already dismissed, (a) failed to adequately allege that any Defendant had acted with intent to defraud; and (b) failed to adequately allege that various statements were materially false or misleading and were instead merely immaterial puffery, non-actionable "opinion", or "forward-looking statements" that were immunized from liability because they were accompanied by adequate cautionary language and risk warnings. The Defendants also argued that none of the alleged misstatements or omissions caused any Class Members to suffer any damages on the grounds that the declines in Precigen's stock price that occurred on the "corrective disclosure" dates alleged by Plaintiff

did not relate to matters that had allegedly been misrepresented (or that, at worst for the Defendants, their liability would be limited to just a fraction of the losses allegedly suffered on those dates).

Because the Court had already dismissed the substantially similar claims alleged in Lead Plaintiff's prior complaints, there could be no assurance that the Court would not similarly dismiss the TAC.  And even if the TAC ultimately survived dismissal, to obtain any recovery against Defendants, the Lead Plaintiff would also have to prevail at class certification, summary judgment and trial – and even then Lead Plaintiff and the Class would still face the risk of winning on the appeals that would likely follow any potential successful result at trial.  Further litigation would therefore involve significant risks, and likely years of further proceedings.

Defendants, who deny all allegations of wrongdoing or liability whatsoever, state that they are entering into the Settlement solely to eliminate the uncertainty, burden, and expense of further protracted litigation.

### 6.  What Does The Settlement Provide?

The Settlement will result in a fund of $13,000,000 in cash in exchange for a release of the Released Claims (defined below) and the dismissal of the Action as against all current Defendants (as well as all persons formerly named as defendants).  After deductions for taxes, Court-approved attorneys' fees and expenses, Plaintiff service awards, and costs of claims administration, the balance of the fund (the "Net Settlement Fund"), will be distributed *pro rata*, in accordance with a "Plan of Allocation," to Class Members who submit valid Claim Forms.  The proposed Plan of Allocation, which is subject to approval by Court, is described in more detail at the end of this Notice.

### 7.  How Much Will My Payment Be?

Your share of the Net Settlement Fund will depend on the number of valid Claim Forms that Class Members send in, the number of Precigen common shares you purchased during the relevant period, the timing of your purchases and sales, and the amount in fees and expenses approved by the Court.  You will not receive a payment, however, if your proportionate share of the Net Settlement Fund is less than $10.00.

### 8.  What Is The Proposed Plan Of Allocation?

You can calculate your Recognized Claim under the formulas set forth below in the Plan of Allocation.  The payment you receive will reflect your Recognized Claim in relation to the Recognized Claims of all persons submitting valid Claim Forms.  Because the total of all Recognized Claims is expected to exceed the amount of the Net Settlement Fund, your Recognized Claim is not the amount of the payment that you can expect, but is used to determine how the Net Settlement Fund will be allocated among all persons submitting claims.

### HOW TO OBTAIN A PAYMENT – SUBMITTING A CLAIM FORM

### 9.  How Can I Obtain A Payment?

To be eligible for a payment from the proceeds of the Settlement, you must be an eligible Class Member and must submit a valid Claim Form.   A Claim Form is enclosed with this Notice.   You may also download a Claim Form from www.PrecigenSecuritiesLitigation.com, or request one from the Claims Administrator by calling 1-800-_____ toll free.  Please read the Claim Form instructions carefully, provide all required information, include copies of the required supporting documents, sign the form, *and mail it so that it is postmarked no later than _____, 2023,* or electronically submit it via the above website *no later than _____, 2023.*

### 10.  When Will I Receive My Payment?

The Court will hold its Fairness Hearing on _____, 2023 at _:__ __.m. Pacific Time, to decide whether to approve the Settlement and Plan of Allocation.  Please note that the Fairness Hearing date is subject to change without further notice.  *See* §19 below. If the Court approves the Settlement and Plan of Allocation, there may be appeals.  It is always uncertain when appeals will be resolved, and even if no appeals are filed it also takes time for the Claims Administrator to process all Claim Forms and make payments.  Please be patient.

### 11.  What Am I Giving Up To Receive A Payment?

Unless you timely and validly exclude yourself from the Class by the _____, 2023 deadline (*see* §§12-14 below), if you fit within the definition of the Class you will continue to be a Class Member, which means that you cannot sue or be part of any other lawsuit that brings any of the Released Claims (including the claims asserted in this Action) against any of the  Defendants or the other Released Defendant Persons.  It also means that all of the Court's orders will apply to you and legally bind you.  If you remain a Class Member, and if the Settlement is approved, you and each of your "Related Persons" (as defined below) will give up all "Released

Claims" (as defined below), including "Unknown Claims" (as defined below), against the "Released Defendant Persons" (as defined below):

- "Released Claims" means any and all claims, rights, demands, obligations, damages, actions or causes of action, or liabilities whatsoever, of every nature and description, including both known claims and Unknown Claims, whether arising under federal, state, common or foreign law or regulation, that have or could have been asserted in the Action against any of the Released Defendant Persons by Plaintiff or any Class Member that arising out of, relating to, or in connection with both: (a) the acts, facts, events, transactions, occurrences, statements, representations or omissions that were or could have been alleged in the Action; and (b) the purchase or acquisition of publicly-traded Precigen common stock during the Class Period, provided, however, that the following are expressly excluded from the definition of Released Claims: (i) all claims asserted in the Derivative Actions[2];and (ii) any claims to enforce any of the terms of the Stipulation.

- "Released Defendant Persons" means (i) Precigen, Kirk and Walsh, and (ii) each of their respective Related Persons.

- "Related Persons", when used in reference to a Person, means (a) the Person; (b) for natural persons, each of that Person's respective immediate family members and any trust that such Person is the settlor of or which is for their benefit and/or the members of his or her family, and, for non-natural persons, each of their direct or indirect parents, subsidiaries, divisions, and departments; and (c), for any of the entities or Persons listed at (a) or (b) above, their respective past, present or future parents, subsidiaries and affiliates, and their respective officers, directors, managing directors, partners, members, principals, employees, auditors, accountants, representatives, insurers, trustees, trustors, agents, attorneys, professionals, predecessors, successors, assigns, heirs, executors, and administrators, in their capacities as such, and any entity in which the Person has a controlling interest.

- "Unknown Claims" means (i) any Released Claims that Plaintiff or any Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, which if known by him, her, or it, might have affected their decision(s) with respect to the Settlement, including, but not limited to, the decision not to object to the Settlement, provided such claim arises out of or relates to the purchase or acquisition of Precigen common stock; and (ii) any Released Defendants' Claims that any Defendant does not know or expect to exist in his, her, or its favor at the time of the release of such claims, which if known by him, her, or it might have affected his, her, or its decision(s) with respect to the Settlement. With respect to any and all Released Claims and Released Defendants' Claims, the Parties stipulate and agree that upon the Effective Date, the Parties shall expressly waive, and each of the Class Members shall be deemed to have waived and by operation of the Judgment shall have waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law that is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides: "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party." The Parties and the Settlement Class Members may hereafter discover facts in addition to or different from those that any of them now knows or believes to be true related to the subject matter of the Released Claims or the Released Defendants' Claims, but the Parties shall expressly settle and release, and each Settlement Class Member, upon the Effective Date, shall be deemed to have, and by operation of Judgment or Alternative Judgment, if applicable, shall have, fully, finally, and forever settled and released any and all Released Claims and Released Defendants' Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, disclosed or undisclosed, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Parties acknowledge, and Settlement Class Members shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately bargained for and a material element of the Settlement.

In addition, if the Settlement is approved, each of the Defendants and each of their Related Persons will give up all "Released Defendants' Claims" against Class Members and the other Released Plaintiff Persons (as defined below):

- "Released Defendants' Claims" means all claims, demands, rights, remedies, liabilities, and causes of action of every nature and description whatsoever, whether based on federal, state, local, statutory, or common law, or any other law, rule, or regulation, including both known and Unknown Claims, by any of the Released Defendant Persons against Plaintiff, any members of the Settlement Class, or any of their Related Persons, including any Plaintiff's or Settlement Class Member's counsel, which arise out of or relate in any way to the institution, prosecution, assertion, settlement, or resolution of this Action or the Released Claims, except for claims to enforce any of the terms of the Stipulation.

- "Released Plaintiff Persons" means (i) Lead Plaintiff and all Class Members; and (ii) each of their Related Persons.

---

[2] "Derivative Actions" means and includes *In re Precigen, Inc. Stockholder Litigation*, Case No. 2020-0767-PAF (Del. Ct. of Chancery), *Wright v. Alvarez, et al.*, Case No CL-2020-20013 (Va. Cir. Ct.), and *Kent v. Precigen, Inc.*, Case No. CL21-6349 (Va. Cir. Ct.).

## EXCLUDING YOURSELF FROM THE CLASS ACTION SETTLEMENT

If you do not want a payment from the Settlement and want to keep the right to sue on your own the Defendants or the other Released Defendant Persons to recover anything on the claims being released by the Settlement, then you must take steps to remove yourself from the Class. This process is called excluding yourself from the Class – and is sometimes referred to as "opting out."

### 12. How Do I Exclude Myself ("Opt-Out") Of The Class?

To exclude yourself from the Class and the Settlement, you must send a letter by First Class Mail (or other postage pre-paid method of delivery) stating that you "request to be excluded from the Settlement Class in *In re Precigen, Inc. Securities Litigation*." To be valid, your request must include (i) your name, address, telephone number, any e-mail contact information, (ii) your signature, (iii) the number of shares of Precigen, Inc. (f/k/a Intrexon Corporation) common stock that you purchased and/or sold during the Class Period (*i.e.* between May 10, 2017 and September 25, 2020 inclusive), together with the number of shares, dates, and prices for each such purchase or sale transaction, and (iv) the number of shares of Precigen, Inc. (f/k/a Intrexon Corporation) common stock held as of the opening of trading on May 10, 2017 (the first day of the Class Period) and September 25, 2020 (the last day of the Class Period). A Person that requests exclusion from the Class must also include copies of documents sufficient to show: (i) how many shares of Precigen, Inc. (f/k/a Intrexon Corporation) common stock you, she, or it purchased and sold during the Class Period, including the dates of purchase or sale, the number of shares purchased and/or sold, and the price paid or received per share for each such purchase or sale, and (ii) his, her, or its status as a beneficial owner of the Precigen shares at issue. Unless the deadline is otherwise extended by the Court, you must mail your exclusion request so that it is **received no later than _____, 2023**, to the following:

Precigen Securities Litigation Settlement
EXCLUSIONS
c/o A.B. Data
P.O. Box _____
Milwaukee, WI 53217

Unless otherwise ordered by the Court, your exclusion request must comply with the above requirements in order to be valid. ***Please note that you cannot exclude yourself on the phone or by e-mail.*** If you ask to be excluded, you will not be eligible to receive any payment from the Settlement and you cannot object to the class action Settlement, but you will not be legally bound by anything that happens in this Action, and you may be able to sue on your own the Defendants and the other Released Defendant Persons on the Released Claims in the future.

### 13. If I Do Not Exclude Myself, Can I Sue the Defendants For the Same Thing Later?

No. Unless you exclude yourself from the Class, you give up any right to sue the Defendants and the other Released Defendant Persons on any and all Released Claims. If you have a pending lawsuit against any of the Released Defendant Persons, speak to your lawyer in that case immediately, as you may need to exclude yourself from this Action to continue your own lawsuit. Remember, the exclusion deadline is _____, 2023.

### 14. If I Exclude Myself, Can I Receive Money From The Settlement?

No. If you exclude yourself, do not send in a Claim Form.

## THE LAWYERS REPRESENTING YOU

### 15. Do I Have A Lawyer In This Case?

The Court appointed the law firm of Scott+Scott Attorneys at Law LLP to represent you and other Class Members. These lawyers are called Lead Counsel. You will not be personally liable for the fees and expenses incurred by these lawyers or any other lawyers working with or assisting them. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 16. How Will The Lawyers Be Paid?

Lead Counsel and the other Plaintiff's Counsel will submit a Fee and Expense Application asking the Court for an award of attorneys' fees of up to 25% of the Settlement Fund (or roughly $3,250,000) and for reimbursement of expenses up to $111,000 in connection with litigating the claims asserted in this Action that are being settled. As part of that Application, the Lead Plaintiff will also request an award of up to $5,000 for his services and reasonable time and expenses incurred in representing the Class. Such sums as may be approved by the Court will be paid from the Settlement Fund. Class Members are not personally liable for any such fees, awards or expenses.

The attorneys' fees and expenses requested will be the only payment to Lead Counsel and the other Plaintiff's Counsel for their efforts in achieving this Settlement and for their risk in undertaking, on a wholly-contingent basis, to represent Plaintiff and the Class

Members in litigating the claims that are being settled.  To date, none of Plaintiff's Counsel have been paid anything for their services in conducting this Action on behalf of Plaintiff and the Class, nor for their expenses.  Plaintiff's Counsel collectively have expended more than 2,200 hours of attorney time to date in connection with litigating and settling the Settled Claims.

Lead Counsel will file a motion in support of Plaintiff's Counsel's Fee and Expense Application not later than thirty-five (35) days prior to the Fairness Hearing, which Application will be posted on the settlement website at www.PrecigenSecuritiesLitigation.com.  The motion will argue that the requested fees are within the range of fees awarded to class counsel in other cases of this type.  The Court will decide what Plaintiff's Counsel should receive from the Settlement Fund for fees and expenses and may award less than what is requested.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with the Settlement or any part of it.

### 17.  How Do I Tell The Court If I Do Not Like The Settlement?

If you are a Class Member, you can object to the proposed Settlement, the proposed Plan of Allocation, Plaintiff's Counsel's request for attorney's fees and expenses, and/or the Lead Plaintiff's request for an award for his service, time and expenses, and the Court will consider your views.   To object,  you must send a signed letter saying that you wish to file an objection to the proposed Settlement, Plan of Allocation and/or Fee and Expense Application in *In re Precigen, Inc. Securities Litigation,* Case No. 5:20-cv-06936-BLF.  Include your name, address, telephone number, and your signature, and set forth the date(s), price(s), and number of shares of Precigen common stock you purchased and sold during the Class Period.  The objection must state whether it applies only to the objector, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for the objection.  Unless otherwise permitted by the Court, your comments or objection must be submitted to the Court either by filing it electronically or in person at any location of the United States District Court for the Northern District of California or by mailing it to the Class Action Clerk, United States District Court for the Northern District of California, San Jose Courthouse, 280 S. 1st St., San Jose, CA 95113.  Objections must be filed or postmarked on or before _____, **2023**.  The Court has stated that it will consider any written objection, as long as it substantially complies with the above requirements.

### 18.  What Is The Difference Between Objecting And Excluding?

Objecting is simply telling the Court that you do not like something about the Settlement.  You can object only if you stay in (and do not exclude yourself from) the Class.  If you object, but the Court approves the Settlement, you will be bound by the Settlement's terms in the same way as Class Members who do not object.

Excluding yourself is telling the Court that you do not want to be paid and do not want to release any claims  you think you may have against the Defendants and the other Released Defendant Persons.    If you exclude yourself, you cannot object to the Settlement because it will no longer affect you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement.  You may attend and you may ask to speak, but you do not have to.

### 19.  When And Where Will The Court Decide Whether to Approve The Settlement?

The Court will hold a Fairness Hearing on _____, 2023, at ___:00 __.m. Pacific Time, before the Hon. Beth Labson Freeman of the United States District Court for the Northern District of California.  *Please note that the Court has ordered that the hearing be held remotely by video and/or telephone conferencing*, using the link referenced below.  At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate.  If there are objections, the Court will consider them, even if you do not ask to speak at the hearing.  The Court will also consider how much to pay to Plaintiff's Counsel and whether the Plan of Allocation is fair, reasonable, and adequate.  The Court may decide these issues at the hearing or take them under consideration for a later decision.  If you want to attend the hearing, you can attend remotely by (a) accessing the following link: https://cand-uscourts.zoomgov.com/j/1607141430?pwd=OEszVGhPbTcxbjRGZngveGhmRnV5UT09; (b) inserting the following Webinar ID: 160 714 1430 and (c) inserting the following password: 773627.  *Please note that the Court may change the date, time, location and/or manner of the Fairness Hearing, or the "log-in" information, without another notice being sent to you.*  You should check with Lead Counsel or the Settlement Website, www.PrecigenSecuritiesLitigation.com, beforehand to be sure that the date, time, location/method, and relevant "log-in" information for the hearing have not changed.

### 20.  Do I Have To Attend The Fairness Hearing?

No.  Lead Counsel will answer questions the Court may have.  However, you are welcome to attend at your own expense.  If you send an objection, you do not have to come to Court to talk about it.  As long as you mailed your written objection on time, the Court

will consider it.  You may also ask your own lawyer to attend or participate (at your own expense), but it is not necessary.  Class Members do not need to appear at the hearing or take any other action to indicate their approval.

## 21.  May I Speak At The Hearing?

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "intention to appear in *In re Precigen, Inc. Securities Litigation*, No. 5:20-cv-06936-BLF."  Be sure to include your name, address, telephone number, your signature, the number of shares of Precigen, Inc. (Intrexon Corporation) common stock you purchased and/or sold during the Class Period (*i.e.*, from May 10, 2017 through September 25, 2020, inclusive), and copies of documents evidencing those purchases and/or sales.  Persons who intend to object to the Settlement, the Plan of Allocation, any award of attorneys' fees and expense to Plaintiff's Counsel, and/or any award to Lead Plaintiff for their service, time and expenses representing the Class, and who desire to present evidence at the Fairness Hearing, must include in their written objections the identity of any witnesses they may call to testify and copies of any exhibits they intend to introduce into evidence at the Fairness Hearing.  Your notice of intention to appear must be submitted to the Court either by filing it electronically or in person at any location of the United States District Court for the Northern District of California or by mailing it to the Class Action Clerk, United States District Court for the Northern District of California, San Jose Courthouse, 280 S. 1st St., San Jose, CA 95113.  Your notice of intention to appear must be filed or postmarked on or before _____, 2023.  However, if you wish to appear at the Fairness Hearing and object without having first submitted a written objection and a request to appear as set forth in this paragraph (or in Question 17 above), the Court may excuse your failure to do so *if* you can provide the Court with a "good cause" explanation of why you were unable to substantially comply with the requirements set forth above.

### IF YOU DO NOTHING

## 22.  What Happens If I Do Nothing?

If you do nothing, all of your Released Claims against the Released Defendant Persons will be released, and you will also not receive any money from the Settlement (because it is necessary to submit a valid and timely Claim Form to be eligible for a payment).

### GETTING MORE INFORMATION

## 23.  How Can I Get More Information?

This Notice summarizes the proposed Settlement.  For even more detailed information concerning the matters involved in this litigation, you can also obtain answers to common questions regarding the proposed Settlement by contacting the Claims Administrator toll-free at 1-800-_____, and you can also review (i) copies of the Stipulation (which sets forth all the terms of the proposed Settlement), (ii) the pleadings in support of the Settlement, and (iii) other settlement-related papers, which have been posted on the Settlement website at www.PrecigenSecuritiesLitigation.com.  Copies of the foregoing materials may also be inspected at the Office of the Clerk of the United States District Court for the Northern District of California, U.S. Courthouse, San Jose Courthouse, 280 S. 1st Street, San Jose, CA, 95113, during regular business hours.  For a fee, all papers filed in this Action are also available at www.pacer.gov.  You may also contact a representative of Lead Counsel with any questions c/o:

SCOTT+SCOTT ATTYS AT LAW LLP
William C. Fredericks, Esq.
The Helmsley Building
230 Park Ave, 17th Floor
New York, NY 10169
1-800-404-7770
scottcases@scott-scott.com

***PLEASE DO NOT CALL OR WRITE THE COURT OR TO DEFENDANTS OR THEIR COUNSEL REGARDING THIS NOTICE.***

### PROPOSED PLAN OF ALLOCATION OF NET SETTLEMENT FUND AMONG CLASS MEMBERS

Publicly tradable shares of the common stock of Precigen, Inc. (f/k/a Intrexon Corporation) ("Precigen") purchased on or after May 10, 2017 and on or before August 11, 2020 (collectively, the "Eligible Shares") are potentially eligible for damages.  Shares deemed purchased and sold on the same day shall not be eligible for damages.  The damages for each purchased share will be based on their Recognized Loss and resulting total value of each Authorized Claimant's Recognized Claim (as a percentage of the Aggregate Recognized claims of all Authorized Claimants), as set forth below.  The total number of damaged Eligible Shares is estimated to be no more than 101 million.  The gross recovery is expected to be at least $0.13 per share.

*A.  Calculation of Recognized Losses on Eligible Shares*

For each Eligible Share purchased in the market or in a registered secondary offering from May 10, 2017, through August 11, 2020, inclusive, the Recognized Loss for each such share shall be based on the inflation per share on the date of purchase, minus the inflation per share on the date of sale, as set forth in the following Table A below; provided, however, that all such losses will be limited by the loss limitation rules set forth in ¶¶A.1-3 below (in which case the lower amount will apply).  If a Recognized Loss amount is calculated to be a negative number, that Recognized Loss shall be set to zero.

**Table A:  Inflation per Share on Eligible Shares as of Relevant Purchase and Sale Dates**

| Period | Beginning Date | Ending Date | Inflation Per Share |
|---|---|---|---|
| 1 | 5/10/2017 | 11/9/2017 | $2.34 |
| 2 | 11/10/2017 | 11/08/2018 | $1.44 |
| 3 | 11/9/2018 | 2/28/2019 | $1.03 |
| 4 | 3/1/2019 | 11/11/2019 | $0.55 |
| 5 | 11/12/2019 | 2/28/2020 | $0.43 |
| 6 | 3/1/2020 | 8/10/2020 | $0.31 |
| 7 | 8/11/2020 | 8/11/2020 | $0.12 |
| 8 | 8/12/2020 | Current | $0.00 |

1.  For Eligible Shares sold before November 10, 2017, the Recognized Loss shall be zero.

2.  For Eligible Shares sold on or after November 10, 2017, but on or before September 27, 2020, the Recognized Loss for each share will be the lesser of: (a) the Inflation per Share at the time of purchase, minus the Inflation Per Share amount at the time of sale, as set forth in Table A; or (b) the price paid on the date of purchase ("Purchase Price") minus the price realized on the date of sale ("Sales Price").

3.  For Eligible Shares sold after September 27, 2020, but on or before December 24, 2020, the Recognized Loss will be the lesser of: (a) the Inflation Per Share amount on the date of purchase, minus the Inflation Per Share at the time of sale, as set forth in Table A; or (b) the lesser of the Purchase Price minus the greater of (i) the Sales Price or (ii) the Look-Back Average Price as set forth in Table B below[3].

4.  For Eligible Shares sold after December 24, 2020 (or that continue to be held after that date), the Recognized Loss will be the lesser of: (a) the Inflation Per Share amount at the time of Purchase as set forth in Table A; or (b) the Purchase Price minus $6.11.[4]

**Table B:  Look-Back Price Table for Loss Limitations**

| Date | Look-Back Price | Date | Look-Back Price |
|---|---|---|---|
| 9/28/2020 | 3.58 | 10/12/2020 | 4.16 |
| 9/29/2020 | 3.56 | 10/13/2020 | 4.21 |
| 9/30/2020 | 3.54 | 10/14/2020 | 4.25 |
| 10/1/2020 | 3.61 | 10/15/2020 | 4.30 |
| 10/2/2020 | 3.64 | 10/16/2020 | 4.34 |
| 10/5/2020 | 3.70 | 10/19/2020 | 4.35 |
| 10/6/2020 | 3.75 | 10/20/2020 | 4.36 |
| 10/7/2020 | 3.83 | 10/21/2020 | 4.36 |
| 10/8/2020 | 3.89 | 10/22/2020 | 4.35 |
| 10/9/2020 | 4.07 | 10/23/2020 | 4.36 |

---

[3] This is a loss limitation pursuant to the Private Securities Litigation Reform Act of 1995.

[4] This is the 90-day Look-Back Price, as set forth in Table B, as of December 24, 2020.

| Date | Look-Back Price |
|------|-----------------|
| 10/26/2020 | 4.34 |
| 10/27/2020 | 4.34 |
| 10/28/2020 | 4.33 |
| 10/29/2020 | 4.33 |
| 10/30/2020 | 4.33 |
| 11/2/2020 | 4.33 |
| 11/3/2020 | 4.34 |
| 11/4/2020 | 4.37 |
| 11/5/2020 | 4.40 |
| 11/6/2020 | 4.42 |
| 11/9/2020 | 4.45 |
| 11/10/2020 | 4.50 |
| 11/11/2020 | 4.54 |
| 11/12/2020 | 4.58 |
| 11/13/2020 | 4.62 |
| 11/16/2020 | 4.67 |
| 11/17/2020 | 4.71 |
| 11/18/2020 | 4.74 |
| 11/19/2020 | 4.78 |
| 11/20/2020 | 4.82 |
| 11/23/2020 | 4.84 |
| 11/24/2020 | 4.87 |

| Date | Look-Back Price |
|------|-----------------|
| 11/25/2020 | 4.93 |
| 11/27/2020 | 4.99 |
| 11/30/2020 | 5.06 |
| 12/1/2020 | 5.13 |
| 12/2/2020 | 5.20 |
| 12/3/2020 | 5.27 |
| 12/4/2020 | 5.33 |
| 12/7/2020 | 5.39 |
| 12/8/2020 | 5.45 |
| 12/9/2020 | 5.50 |
| 12/10/2020 | 5.56 |
| 12/11/2020 | 5.61 |
| 12/14/2020 | 5.67 |
| 12/15/2020 | 5.70 |
| 12/16/2020 | 5.73 |
| 12/17/2020 | 5.77 |
| 12/18/2020 | 5.84 |
| 12/21/2020 | 5.91 |
| 12/22/2020 | 5.98 |
| 12/23/2020 | 6.05 |
| 12/24/2020 | 6.11 |

### B. Additional Provisions Relating to the Calculation of Recognized Losses

For Class Members who held Precigen common shares at the beginning of the Class Period or made multiple purchases or sales during the Class Period, the First-In, First-Out ("FIFO") method will be applied to such holdings, purchases and sales for purposes of calculating a claim. Under the FIFO method, sales of Precigen common shares ("Precigen Shares") during the Class Period will be matched, in chronological order, first against Precigen Shares held at the beginning of the Class Period. The remaining sales of Precigen Shares the Class Period will then be matched, in chronological order, against Precigen Shares purchased during the Class Period.

The date of purchase or date of sale is the "contract" or "trade" date as distinguished from the "settlement" date. All purchase, acquisition, and sale prices shall exclude any fees and commissions. The receipt or grant by gift, devise or operation of law of Precigen Shares during the Relevant Period shall not be deemed a purchase or sale of such shares for the calculation of a claimant's Recognized Claim, nor shall it be deemed an assignment of any claim relating to the purchase of such shares unless specifically provided in the instrument of gift or assignment.

For short sales, the date of covering a "short sale" is deemed to be the date of purchase of the Precigen Share. The date of a "short sale" is deemed to be the date of sale of the Precigen Share. The Recognized Loss on "short sales" is zero. If a claimant had an opening short position, the earliest purchases during the Class Period shall be matched until that short position is fully covered.

Option contracts are not securities eligible to participate in the Settlement. With respect to Precigen Shares purchased or sold through the exercise of an option, the purchase/sale date of the Precigen Share is the exercise date of the option, and the purchase/sale price of the Precigen Share is the exercise price of the option.

### C. Allocation of Net Settlement Proceeds Based on Recognized Losses

A Claimant's "Recognized Claim" under the Plan of Allocation shall be the sum of his, her, or its Recognized Loss amounts for their Eligible Shares, as determined in accordance with §§A and B above.

To the extent a Claimant had a market gain with respect to his, her, or its overall transactions in Precigen Shares during the Class Period, the value of the Claimant's Recognized Claim shall be zero, but such Claimants shall in any event be bound by the Settlement. For the purposes of making this calculation, the Claims Administrator shall determine the difference between (i) the

Claimant's Total Purchase Amount[5] and (ii) sum of the Claimant's Sales Proceeds[6] and the Claimant's Holding Value.[7]  To the extent that a Claimant suffered an overall market loss with respect to his, her, or its overall transactions in Precigen Shares purchased during the Class Period, but that market loss was less than the total Recognized Claim calculated above, then the Claimant's Recognized Claim shall be limited to the amount of the actual market loss.

The Net Settlement Fund will be distributed to Authorized Claimants on a pro rata basis based on the relative size of their Recognized Claims.  Specifically, a "Distribution Amount" will be calculated for each Authorized Claimant, which shall be the Authorized Claimant's Recognized Claim divided by the aggregate Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.  If any Authorized Claimant's Distribution Amount calculates to less than $10.00, it will not be included in the calculation and no distribution will be made to such Authorized Claimant.

The Net Settlement Fund will not be distributed to Authorized Claimants unless and until the Court has (a) approved the Settlement and either this plan of allocation or a modified plan; and (b) the time for any petition for rehearing, appeal, or review, whether by certiorari or otherwise, has expired.  Approval of the Settlement is separate from approval of this or any other plan of allocation.  Any determination with respect to a plan of allocation will not affect the Settlement, if approved.

Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to his, her, or its Claim Form.  Payment pursuant to the Plan of Allocation set forth above shall be conclusive against all Authorized Claimants.

You should contact the Claims Administrator or Lead Counsel if you disagree with any determinations that may be made by the Claims Administrator regarding your Claim Form. If you are unsatisfied with the determinations, you may ask the Court, which retains jurisdiction over all Class Members and the claims administration process, to decide the issue by submitting a written request.  Distributions will be made to Authorized Claimants after all claims have been processed and after the Court has finally approved the Settlement.

## SPECIAL NOTICE TO SECURITIES BROKERS AND OTHER NOMINEES

The Court has ordered that if you held any shares of Precigen, Inc. (Intrexon Corporation) common stock purchased or acquired between May 10, 2017 through September 25, 2020, inclusive, as nominee for a beneficial owner, then, within seven (7) calendar days after you receive this Notice, you must either: (i) send a copy of this Notice and Claim Form ("the Notice Package") by first class mail to all such beneficial owners; or (ii) provide a list of the names and addresses of such beneficial owners to the Claims Administrator.  If you choose to mail the Notice Package yourself, you may obtain from the Claims Administrator (without cost to you) as many additional copies of these documents as you will need to complete the mailing.  Regardless of whether you choose to complete the mailing yourself or elect to have the mailing performed for you, you may obtain reimbursement for reasonable administrative costs actually incurred in connection with forwarding the Notice Package that would not have been incurred but for the obligation to forward it, upon submission of appropriate documentation to the Claims Administrator and subject to approval by the Court.  All communications concerning the foregoing should be directed to the Claims Administrator by email to ____@_____.com or by mail to:

Precigen Securities Litigation
c/o A.B. Data
P.O. Box _____
Milwaukee, WI 53217
www.PrecigenSecuritiesLitigation.com

Dated: _____, 2023            BY ORDER OF THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

---

[5] The "Total Purchase Amount" is the total amount the Claimant paid (excluding all fees, taxes, and commissions) for all such Precigen Shares purchased during the Class Period.

[6] The Claims Administrator shall match any sales of Precigen Shares during the Class Period first against the Claimant's opening position (the proceeds of those sales will not be considered for purposes of calculating market gains or losses). The total amount received for sales of the remaining Precigen Shares sold during the Class Period is the "Sales Proceeds."

[7] For each Precigen Share purchased during the Class Period that was still held as of the close of trading at the end of the Class Period, the Claims Administrator shall ascribe a "Holding Value" of $3.58.

# EXHIBIT A-2

**EXHIBIT A-2**

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARTIN JOSEPH ABADILLA, et al.<br>    Plaintiffs,<br>v.<br><br>PRECIGEN, INC., et al.,<br>    Defendants. | Case No.: 5:20-cv-06936-BLF<br><br>CONSOLIDATED CLASS ACTION<br><br><br>PROOF OF CLAIM AND<br>RELEASE FORM |

      To recover as a Settlement Class Member based on the claims asserted against the Released Defendant Persons in this Action, you must complete, ***sign*** and submit this Proof of Claim and Release Form ("Claim Form").  If you fail to submit a properly addressed Claim Form, your claim may be rejected and you may be barred from any recovery from the Net Settlement Fund created under the proposed Settlement.  YOU MUST MAIL OR SUBMIT ONLINE YOUR COMPLETED AND SIGNED CLAIM FORM, TOGETHER WITH COPIES OF THE DOCUMENTS REQUESTED HEREIN, ***ON OR BEFORE _____, 2023***, TO:

*Precigen Securities Litigation Settlement*
c/o A.B. Data
P.O. Box _____
Milwaukee, WI 53217
Online Submissions: www.PrecigenSecuritiesLitigation.com

**PART I:  GENERAL INSTRUCTIONS**

      1.      It is important that you read and understand the Notice of Proposed Settlement of Class Action (the "Notice") that accompanies this Claim Form.  The Notice describes the proposed Settlement and how Settlement Class Members' rights may be affected by it.  The Notice also contains the definitions of many of the defined terms (which are indicated by initial capital letters) used in this Claim Form.  By signing and submitting the Claim Form, you will be certifying that you have read and that you understand the Notice, including the terms of the releases that you will be giving if you submit a Claim Form.

      2.      This Claim Form is directed to all Persons who purchased or otherwise acquired publicly traded shares of the common stock of Precigen, Inc. f/k/a/ Intrexon Corporation ("Precigen") (ticker PGEN, formerly XON) ("Precigen Common Shares") between May 10, 2017 and September 25, 2020, inclusive (the "Settlement Class Period").  If you fit within this definition, and (i) are not excluded from the class by reason of your relationship to one of the Defendants or their affiliates (*see* Notice at Response to Questions 3-4) and (ii) do not exclude yourself by submitting a request for exclusion (*see* Notice at Response to Question 12), then you are a Settlement Class Member.

      3.      If you are NOT a Settlement Class Member, you may NOT participate in the Settlement, you should NOT submit a Claim Form, and any Claim Form you submit will be rejected.

      4.      If you are a Settlement Class Member and you do not timely request exclusion, you will be bound by the terms of any judgment entered in this Action, including the releases provided for under the Settlement (*see* Notice at Question 11), whether or not you submit a Claim Form.

      5.      Submission of this Claim Form does not guarantee that you will share in the proceeds of the Settlement.  The distribution of the Net Settlement Fund will be governed by the Plan of Allocation set forth in the Notice, or by such other plan of allocation that is ultimately approved by the Court.

6.      Use Part I of this form, "Claimant Identification," to identify each purchaser or acquiror of the Precigen Common Shares that form the basis of this claim. *THIS CLAIM FORM MUST BE FILED BY THE ACTUAL BENEFICIAL PURCHASER(S) OR ACQUIRER(S) OF THE PRECIGEN COMMON SHARES UPON WHICH THE CLAIM IS BASED, OR BY THEIR LEGAL REPRESENTATIVE.*

7.      Separate Claim Forms should be submitted for each separate legal entity (*e.g.*, a claim from joint owners should not include separate transactions of just one of the joint owners, and an individual should not combine his or her IRA transactions with transactions made solely in the individual's name). Generally, a single Claim Form should be submitted on behalf of one legal entity including all holdings and transactions made by that entity on one Claim Form. However, if a single person or legal entity had multiple accounts that were separately managed, separate Claim Forms may be submitted for each such account. The Claim Administrator reserves the right to request information on all holdings and transactions in Precigen Common Shares (including short sales) made on behalf of a single beneficial owner.

8.      All joint beneficial owners, purchasers or acquirers must sign this Claim Form.

9.      Agents, executors, administrators, guardians, conservators, and trustees must complete and sign this Claim Form on behalf of Persons represented by them. They must also (i) identify the capacity in which they are acting; (ii) identify the name, account number, Social Security Number (or Taxpayer Identification Number) of the beneficial owner (or other Person or entity on whose behalf they are acting); and (iii) provide documentary evidence of their authority to legally bind the person or entity on whose behalf they are acting to the Claim Form. (Authority to complete and sign a Claim Form cannot be established by stockbrokers who show only that they have discretionary authority to trade in another person's accounts.)

10.     By submitting a signed Claim Form, you will be swearing to the truth of the statements contained therein and the genuineness of the documents attached thereto, subject to penalties of perjury under U.S. law. Making false statements or submitting fraudulent documentation will result in the rejection of your Claim and may subject you to civil liability or criminal prosecution.

11.     Use Part II of this form, entitled "Schedule of Transactions in Precigen Common Shares," to supply all requested details of your transaction(s) in, including free transfers and deliveries, in, and holdings of, Precigen Common Shares. On this schedule, provide all of the requested information with respect to your holdings, purchases, acquisitions, and sales of Precigen Common Shares, whether such transactions resulted in a profit or a loss. List each transaction separately and in chronological order, by trade date, beginning with the earliest. You must accurately provide the month, day, and year of each transaction you list. The date of covering a "short sale" is deemed to be the date of purchase of Precigen Common Shares. The date of a "short sale" is deemed to be the date of sale of Precigen Common Shares. Failure to report all such transactions may result in your claim being rejected. If you need more space, attach separate sheets giving all of the required information in substantially the same form. ***Sign and print or type your name on each additional sheet***.

**12.     COPIES OF BROKER CONFIRMATIONS OR OTHER DOCUMENTATION OF YOUR TRANSACTIONS IN PRECIGEN COMMON SHARES MUST BE ATTACHED TO YOUR CLAIM. FAILURE TO PROVIDE THIS DOCUMENTATION COULD DELAY VERIFICATION OF YOUR CLAIM OR RESULT IN REJECTION OF YOUR CLAIM.**

13.     ***YOUR CLAIM IS NOT DEEMED SUBMITTED UNTIL YOU RECEIVE AN ACKNOWLEDGMENT POSTCARD***. The Claims Administrator will acknowledge receipt of your Claim Form by mail within 60 days. If you do not receive an acknowledgment postcard within 60 days, please call the Claims Administrator toll-free at 1-800-_____.

**NOTICE REGARDING ELECTRONIC FILES**: Certain claimants with large numbers of transactions may request, or may be requested, to submit information regarding their transactions in electronic files. All such claimants MUST also submit a manually signed paper Claim Form, whether or not they also submit electronic copies. If you wish to submit your claim electronically, you must contact the Claims Administrator at _____@_____.com or 1-800-_____ to obtain the *mandatory* file layout. **Any file that does not comply with the required electronic filing format will be subject to rejection.** No electronic files will be considered to have been properly submitted unless the Claims Administrator issues

to the claimant a written acknowledgment of receipt and acceptance of electronically submitted data.  Do not assume that your file has been received until you receive this email.  If you do not receive such an email within 10 days of your submission, you should contact the Claims Administrator's electronic filing department at ____@_____.com to inquire about your file and confirm it was received.

## PROOF OF CLAIM AND RELEASE ("CLAIM FORM")
*Abadilla v. Precigen, Inc.,* Case No. 5:20-cv-06936-BLF (N.D. Cal.)

## PART II:  CLAIMANT INFORMATION

The Claims Administrator will use this information for all communications regarding this Claim Form.  If this information changes, you MUST notify the Claims Administrator in writing at the address above. Complete names of all persons and entities must be provided.

Beneficial Owner's Name ↓:

Co-Beneficial Owner's Name ↓:

Entity Name (if claimant is not an individual) ↓:

Representative or Custodian Name (if different from Benefical Owner(s) listed above) ↓:

Address 1 (street name and number) ↓:

Address 2 (apartment, unit, or box number) ↓:

| City ↓ | State ↓ | Zip Code/Province ↓ | Country ↓ |

Last Four Digits of your Social Security No. or Taxpayer I.D. No. ↓:

| Telephone Number (home/cell) ↓: | Telephone Number (work) ↓: |

Email Address ↓:

Account Number (if filing for multiple account types, file a separate Claim Form for each account type) ↓:

Claimant Account Type (check appropriate box):

- ❑ Individual (includes joint owner accounts)          ❑ Pension Plan
- ❑ Corporation                                                          ❑ Estate
- ❑ IRA/401k                                                              ❑ Trust
- ❑ Other (please specify): _____

4

**PART III:   SCHEDULE OF TRANSACTIONS IN PRECIGEN (f/k/a "Intrexon") COMMON SHARES**

Please be sure to include proper documentation with your Claim Form as described in the General Instructions.  Do not include information regarding securities other than Precigen Common Shares.

| | | | | |
|---|---|---|---|---|
| **1. HOLDINGS AS OF MAY 9, 2017:** State total number of Precigen Common Shares, ticker symbol "PGEN" (formerly "XON"), you held as of the close of trading on May 9, 2017.  (Must document.)  If none, write "zero" or "0" here → ___ _____ | | | | *Check box if proof of position is enclosed→* ☐ |

| | | | | |
|---|---|---|---|---|
| **2. PURCHASES/ACQUISITIONS FROM MAY 10, 2017 THROUGH SEPTEMBER 25, 2020:** Separately list below each and every purchase or acquisition (including free receipts) of Precigen Common Shares from the opening of trading on May 10, 2017 through the close of trading on September 25, 2020.  (Must document.) ↓↓ | | | | |
| **Date of Purchase/ Acquisition (list chronologically by month/day/year)** | **# of Shares Purchased or Acquired** | **Purchase or Acquisition Price (Per Share)** | **Total Purchase or Acquisition Price (excluding any taxes, commissions, and fees)** | *Check box if copy of proof of purchase is enclosed* |
| /    / | | $ | $ | ☐ |
| /    / | | $ | $ | ☐ |
| /    / | | $ | $ | ☐ |
| /    / | | $ | $ | ☐ |

| | | | | |
|---|---|---|---|---|
| **3. PURCHASES/ACQUISITIONS FROM SEPTEMBER 26, 2020 THROUGH DECEMBER 24, 2020:** State the total number of Precigen Common Shares purchased or acquired (including free receipts) from the opening of trading on September 26, 2020 through the close of trading on December 24, 2020.  If none, write "zero" or "0" here→_____ | | | | |

| | | | | |
|---|---|---|---|---|
| **4. SALES FROM MAY 10, 2017 THROUGH DECEMBER 24, 2020, 2020:**  Separately list below each and every sale or disposition (including free deliveries) of Precigen Common Shares from the opening of trading on May 10, 2017 through the close of trading on December 24, 2020.  (Must document.) ↓↓ | | | | *If NONE, check box → ☐* |
| **Date of Sale (list chronologically by month/day/year)** | **Number of Shares Sold** | **Sale Price Per Share** | **Total Sale Price Per Share (excluding any taxes, commissions, and fees)** | *Check box if copy of proof of sale is enclosed:* |
| /    / | | $ | $ | ☐ |
| /    / | | $ | $ | ☐ |
| /    / | | $ | $ | ☐ |
| /    / | | $ | $ | ☐ |

| | | | | |
|---|---|---|---|---|
| **5. HOLDINGS AS OF DECEMBER 24, 2020:**  State total number of Precigen Common Shares you held as of the close of trading on December 24, 2020. (Must document.)<br><br>If none, write "zero" or "0" here→ _____ | | | | *Check box if proof of position is enclosed→* ☐ |

| |
|---|
| *IF YOU REQUIRE ADDITIONAL SPACE, ATTACH EXTRA SCHEDULES IN THE SAME FORMAT.  PRINT THE BENEFICIAL OWNER'S FULL NAME AND LAST FOUR DIGITS OF SOCIAL SECURITY/TAXPAYER IDENTIFICATION NUMBER ON EACH ADDITIONAL PAGE, <u>AND ALSO SIGN EACH ADDITIONAL PAGE</u>.  IF YOU <u>DO</u> ATTACH EXTRA SCHEDULES, CHECK THIS BOX →* ☐ |

<u>Note</u>:  Information about your transactions in Precigen Common Shares from September 26, 2020 through ==_____==, 2021 is needed to validate your Claim; however, shares purchased after September 26, 2020 are **not eligible** for any recovery under the Settlement or the Plan of Allocation.

### *YOU <u>MUST</u> READ AND SIGN THE RELEASE BELOW.*

## PART IV:  RELEASE

1.      I (we) hereby fully, finally, and forever settle, release, and discharge each of the Released Defendant Persons (as defined in the Notice) from each of the Released Claims (as defined in the Notice).

2.      I (we) hereby warrant and represent that I (we): have not assigned or transferred, voluntarily or involuntarily, any of my (our) Released Claims or any other part thereof; have not submitted any other claim covering the same purchases or acquisitions of Precigen Common Shares during the Class Period; and have no knowledge of any other Person having done so on my (our) behalf.

3.      I (we) hereby warrant and represent that I (we) have included herein true and correct information, and submitted true and correct copies of supporting documentation, as to all of my (our) transactions in Precigen Common Shares, as requested in Part III, from May 10, 2017 through December 24, 2020, inclusive, and the number of Precigen Common Shares held by me (us) at the close of trading on May 9, 2017 and on December 24, 2020.

4.      I (we) certify that I am (we are) *NOT* subject to backup tax withholding. (If the Internal Revenue Service has notified you that you are subject to backup withholding, please strike out the prior sentence.)

5.      I (we) submit to the jurisdiction of the U.S. District Court for the Northern District of California with respect to my (our) Claim as a Settlement Class Member and for purposes of enforcing the releases set forth above.

6.      I (we) declare under penalty of perjury under the laws of the United States that all of the information submitted by me (us) as part of this Claim Form is true and correct.

Signed on _____[month]/_____[day]/_____[Year]


_____          _____
(Signature of beneficial owner)                                (Signature of co-beneficial owner, if any)

_____          _____
(Type or print your name here)                               (Type or print your name here)

_____          _____
(Title if signing for corporate entity, or your              (Title if signing for corporate entity, or your
capacity if signing as, *e.g.*, executor, trustee,             capacity if signing as, *e.g.*, executor, trustee,
etc., and attach documentation of your authority)      etc., and attach documentation of your authority)

## <u>Reminder Checklist</u>:

1.      You must sign the above release and acknowledgment.
2.      Remember to attach copies of supporting documentation.
3.      Do not send originals of certificates or other documentation as they will not be returned.
4.      Keep a copy of your Claim Form and all supporting documentation for your records.
5.      If you move, please send your new address to the address below.
6.      Do not use red pen or highlighter on the Claim Form or any supporting documentation.
7.      Accurate claims processing takes significant time.  Thank you for your patience.

***Do not mail or send your Claim Form to the Court, the Parties, or their counsel.  Submit your Claim Form <u>only</u> to the Claims Administrator (A.B. Data) at the email or online address listed below. Remember, this Claim Form must be submitted online or mailed no later than ==_____==, 2023, to:***

*Precigen Securities Litigation Settlement*
c/o A.B. Data
P.O. Box
Milwaukee, WI 53217
Online Submissions: www.PrecigenSecuritiesLitigation.com

# EXHIBIT A-3

**Exhibit A-3**
**to Stipulation of Settlement**

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN JOSEPH ABADILLA, et al.<br>    Plaintiffs,<br>v.<br><br>PRECIGEN, INC., et al.,<br>    Defendants.<br><br>_____<br><br>*This Document Relates to:*<br><br>*ALL CONSOLIDATED ACTIONS* | Case No.: 5:20-cv-06936-BLF<br><br>CONSOLIDATED CLASS ACTION |

### SUMMARY NOTICE OF (I) PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT; (II) SETTLEMENT FAIRNESS HEARING; AND (III) MOTION FOR ATTORNEY'S FEES AND LITIGATION EXPENSES

**TO:   All Persons and entities who purchased or otherwise acquired publicly traded shares of the common stock of Precigen Inc. (f/k/a Intrexon Corporation) ("Precigen") (ticker: PGEN, formerly XON) between May 10, 2017 and September 25, 2020, inclusive (the "Class Period") and were damaged thereby (the "Settlement Class"):[1]**

**PLEASE READ THIS NOTICE CAREFULLY, YOUR RIGHTS MAY BE AFFECTED BY A CLASS ACTION LAWSUIT PENDING IN THIS COURT.**

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United State District Court for the Northern District of California (the "Court"), that the above-captioned litigation (the "Action") is pending in the Court.

YOU ARE ALSO NOTIFIED that the Lead Plaintiff in the Action, Raju Shah, has reached a proposed settlement of the Action with Defendants Precigen, its former chief executive officer, Randal J.Kirk, and its former officer, Robert F. Walsh III (collectively, the "Defendants"), that, if approved, will (i) provide for the payment of U.S. $13,000,000.00 in cash for the benefit of the Settlement Class, and (ii) resolve, settle, dismiss and release all claims asserted against in the Action against the Defendants (and their Related Persons).

---

[1] Certain persons and entities are excluded from the Settlement Class by definition, as set forth in the long-form Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Attorney's Fees and Litigation Expenses (the "Notice"), a copy of which may be downloaded from the settlement website maintained by the Claims Administrator at www.PrecigenSecuritiesLitigation.com.

A hearing will be held on _____, 2023 at _:__ __.m. Pacific Time, before the Hon. Beth Labson Freeman by telephone or videoconference.  At the hearing, the Court will determine (i) whether the proposed Settlement should be approved as fair, reasonable, and adequate; (ii) whether the Action should be dismissed with prejudice against all Defendants, and whether the releases specified and described in the Stipulation and Agreement of Settlement, dated _____, 2023, (and in the Notice) should be granted; (iii) whether, for purposes of the proposed Settlement only, the Action should be certified as a class action on behalf of the Settlement Class, Lead Plaintiff should be certified as Class Representative for the Settlement Class, and Scott+Scott Attorneys at Law LLP ("Plaintiff's Lead Counsel") should be appointed as Class Counsel; (iv) whether the proposed Plan of Allocation should be approved as fair and reasonable; and (v) whether Plaintiff's counsel's application for an award of attorney's fees and reimbursement of litigation expenses (including an award to the Lead Plaintiff) should be approved.

**If you are a member of the Settlement Class (a "Settlement Class Member"), your rights will be affected by the pending Action and the Settlement, and you may be entitled to share in the Settlement Fund**.  If you have not yet received the Notice and Claim Form, you may obtain copies of these documents by contacting the Claims Administrator, A.B. Data, Ltd., at Precigen Securities Litigation, c/o A.B. Data, P.O. Box _____, Milwaukee, WI 53217, 1-800-_____.  Copies of the Notice and Claim Form can also be downloaded from the website maintained by the Claims Administrator at www.PrecigenSecuritiesLitigation.com.

If you are a Settlement Class Member, to be eligible to receive a payment under the proposed Settlement, you must submit a Claim Form ***postmarked (if mailed), or online,* no later than** _____, **2023**, in accordance with the instructions set forth in the Claim Form.  If you are a Settlement Class Member and do not submit a proper Claim Form, you will not be eligible to share in the distribution of the net proceeds of the Settlement but you will nevertheless be bound by any releases, judgments, or orders entered by the Court in the Action.

If you are a Settlement Class Member and wish to exclude yourself from the Settlement Class, you must submit a request for exclusion such that it is ***received* no later than** _____, **2023**, in accordance with the instructions set forth in the Notice.  If you properly exclude yourself from the Settlement Class, you will not be bound by any judgments or orders entered by the Court in the Action and you will not be eligible to share in the proceeds of the Settlement.

Any objections to the proposed Settlement, the proposed Plan of Allocation, or Plaintiff's Counsel's Fee and Expense Application, must be filed with the Court and delivered to Plaintiff's Counsel and defendant Precigen's counsel such that they are ***received* no later than** _____, **2023**, in accordance with the instructions set forth in the Notice.

**Please do _not_ contact the Court, the Clerk's office, Precigen, the other Defendants, or their counsel regarding this notice.  All questions about this notice, the proposed Settlement, or your eligibility to participate in the Settlement should be directed to Plaintiff's Lead Counsel or the Claims Administrator.**

Inquiries, other than requests for the Notice and Claim Form, should be made to:

SCOTT+SCOTT ATTYS AT LAW LLP
William C. Fredericks, Esq.
The Helmsley Building
230 Park Ave, 17th Floor
New York, NY 10169
1-800-404-7770
scottcases@scott-scott.com

Requests for the Notice and Claim Form should be made to:

*Precigen Securities Litigation Settlement*
c/o A.B. Data
P.O. Box _____
Milwaukee, WI 53217
www.PrecigenSecuritiesLitigation.com

BY ORDER OF THE COURT

# EXHIBIT B

**EXHIBIT B**
**to STIPULATION AND AGREEMENT OF SETTLEMENT**

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN JOSEPH ABADILLA, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>PRECIGEN, INC., et al.,<br><br>    Defendants.<br><br>─────────────────────────<br><br>*This Document Relates to:*<br><br>*ALL CONSOLIDATED ACTIONS* | Case No.: 5:20-cv-06936-BLF<br><br>CONSOLIDATED CLASS ACTION |

**[PROPOSED] ORDER AND FINAL JUDGMENT APPROVING CLASS ACTION**
**SETTLEMENT AND PLAN OF ALLOCATION**

WHEREAS, the Parties[1], through their counsel, have agreed, subject to judicial approval following issuance of notice to the Settlement Class and a Fairness Hearing, to settle and dismiss with prejudice all claims asserted in this Action upon the terms and conditions set forth in the Parties' Stipulation and Agreement of Settlement dated March 1, 2023 (ECF No. ____) (the "Stipulation of Settlement");

WHEREAS, on _____, 2023, the Court issued its Order Granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement, For Issuance of Notice to the Class, and For Scheduling of Fairness Hearing in this Action (the "Preliminary Approval Order") (ECF No. ____);

WHEREAS, it appears in the record that the Notice substantially in the form approved by the Court in its Preliminary Approval Order was mailed to all reasonably identifiable Settlement Class Members, and posted on the settlement website established by the Claims Administrator in this matter, in accordance with the Preliminary Approval Order;

WHEREAS, it appears in the record that the Summary Notice, substantially in the form approved by the Court, was published in accordance with the Preliminary Approval Order;

WHEREAS, on the ____ day of _____ 2023, following issuance of notice of the Settlement to the Settlement Class, the Court held its Fairness Hearing to determine: (1) whether the terms and conditions of the Stipulation of Settlement are fair, reasonable and adequate, and should be approved; (2) whether judgment should be entered dismissing, with prejudice, all claims asserted in the Action; (3) whether to approve the proposed Plan of Allocation as a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members; (4) whether and in what amount to award Plaintiff's Counsel attorney's fees and expenses; and (5) whether and in what amount to grant any awards to any Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4); and

---

[1]    Unless otherwise defined herein, all capitalized terms used herein have the same meaning as given them in the Stipulation of Settlement; *see* ¶1 below.

WHEREAS, the Court has considered all matters and papers submitted to it at or in connection with the Fairness Hearing and otherwise;

NOW, THEREFORE, based upon the Stipulation of Settlement and all of the findings, records, and proceedings had herein, and it appearing to the Court upon examination, following the duly-noticed Fairness Hearing, that the Settlement is fair, reasonable, and adequate and should be finally approved, that a Judgment in the form attached as Exhibit B to the Stipulation of Settlement should be entered, and that the proposed Plan of Allocation provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.      This Order and Final Judgment incorporates by reference the definitions in the Stipulation of Settlement (ECF No. ____), and all capitalized terms used herein shall have the same meanings as set forth therein.

2.      The Court has jurisdiction over the subject matter of the Action, Lead Plaintiff, all Settlement Class Members, and the  Defendants.

3.      The Court finds that, for settlement purposes only, the prerequisites for a class action under Rule 23(a) of the Federal Rules of Civil Procedure have been satisfied in that:

(a) the number of Settlement Class Members is so numerous that joinder of all members thereof is impracticable;

(b) there are questions of law and fact common to the Settlement Class;

(c) the claims of the Lead Plaintiff are typical of the claims of the Settlement Class he seeks to represent; and

(d) Lead Plaintiff and Lead Counsel have and will continue to fairly and adequately represent the interests of the Settlement Class.

4.      The Court further finds that, for settlement purposes only, the requirements for certification of a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure have also been satisfied in that:

3

(a) questions of law and fact common to the members of the Settlement Class predominate over any questions affecting only individual members of the Settlement Class; and

(b) a class action is superior to other available methods for the fair and efficient adjudication of the claims at issue, considering:

    i.    the class members' (lack of) interests in individually controlling the prosecution or defense of separate actions;

    ii.    the extent and nature of any litigation concerning the controversy already begun by or against class members;

    iii.    the desirability or undesirability of concentrating the litigation of the claims in this particular forum; and

    iv.    the (lack of) likely difficulties in managing a class action (given, *inter alia,* that the proposed class here would be certified in the context of a settlement).

5.    Accordingly, the Court certifies this action as a class action, solely for purposes of the Settlement, pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of a Class (the "Settlement Class") consisting of all Persons or entities who purchased or otherwise acquired publicly traded shares of the common stock of Precigen Inc. (f/k/a Intrexon Corporation) ("Precigen") (ticker: PGEN, formerly XON) between May 10, 2017 and September 25, 2020, inclusive (the "Class Period"), and were damaged thereby, provided, however, that the following are excluded from the Settlement Class: (i) Defendants; (ii) the past and current officers, directors, partners and managing partners of Precigen (and any of Precigen's subsidiaries or affiliates, including but not limited to MBP Titan LLC); (iii) the immediate family members, legal representatives, heirs, parents, subsidiaries, successors, successors and assigns of any excluded Person; and any entity in which any excluded Person(s) have or had a majority ownership interest, or that is or was controlled by any excluded Persons.  Also excluded from the Settlement Class are those Persons or entities listed on Exhibit A hereto that the Court finds have timely and validly

requested exclusion from the Settlement Class in accordance with the Court's Preliminary Approval Order.

6.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, for the purposes of this Settlement only, Lead Plaintiff Raju Shah is appointed as class representative of the Settlement Class, and the law firm of Scott+Scott Attorneys at Law LLP is appointed as counsel for the Settlement Class ("Class Counsel").

7.      In accordance with the Preliminary Approval Order, the Court finds that the forms and methods of notifying the Settlement Class of the Settlement and its terms and conditions and the rights of Settlement Class Members in connection therewith (a) constituted the best notice practicable under the circumstances; (b) constituted due and sufficient notice of these proceedings and the matters set forth herein (including the Settlement and Plan of Allocation) to all persons and entities entitled to such notice; and (c) met the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and Section 21D(a)(7) of the Exchange Act, 15 U.S.C. § 78u-4(a)(7) (as amended by the Private Securities Litigation Reform Act of 1995). No Settlement Class Member is or shall be relieved from the terms and conditions of the Settlement, including the releases provided for in the Stipulation of Settlement, based upon the contention or proof that such Settlement Class Member failed to receive actual or adequate notice. A full opportunity has been offered to the Settlement Class Members to object to the proposed Settlement (and to participate in the hearing thereon), or to exclude themselves from the Settlement Class. The Court further finds that the notice provisions of the Class Action Fairness Act, 28 U.S.C. § 1715, were fully discharged. Thus, it is determined that all Settlement Class Members are bound by this Order and Final Judgment, except for those persons listed on Exhibit A hereto.

8.      The Court finds that the Settlement is fair, reasonable and adequate under Rule 23 of the Federal Rules of Civil Procedure, and in the best interests of the Settlement Class. The Court further finds that the Settlement is the result of good faith, arm's-length negotiations; and that all Parties have been represented throughout by experienced and competent counsel. The Court further finds that the Settlement was reached only after, *inter alia*:  (a) Lead Counsel had conducted

an extensive pre-filing investigation; (b) Lead Plaintiff's filing of an amended consolidated class action complaint and second amended consolidated class action complaint, ; (c) full briefing and oral argument on the Defendants' motions to dismiss the second amended consolidated complaint; (d) the filing by Lead Plaintiff, after the Court (by Order dated May 31, 2022) had granted Defendants' motion to dismiss without prejudice, and granted Lead Plaintiff leave to amend, of a Third Amended Consolidated Class Action Complaint (the "Operative Complaint"); (f) the production of certain documents by Precigen in anticipation of mediation; (g) Lead Plaintiff's and the Defendants' preparation and exchange of comprehensive pre-mediation briefs, and participation in a day-long in person mediation session in New York on November 16, 2022 under the auspices of a highly experienced mediator of complex commercial cases (the Hon. Layn Phillips, U.S.D.J., ret.), which led to the mediator making an independent "mediator's proposal" to settle the Action on terms consistent with those set forth in the Stipulation; (h) Lead Plaintiff's obtaining of and review of roughly 83,000 pages of documents from Precigen for purposes of confirming the fairness and reasonableness of the proposed Settlement before entering into the Stipulation; and (i) the Parties' negotiation and drafting of the detailed terms of the Stipulation of Settlement based on the mediator's proposal. Accordingly, the Court also finds that all Parties were well-positioned to evaluate benefits of the proposed Settlement against the risks of further and uncertain litigation.

9.     The Court further finds that its conclusions as to the fairness, reasonableness and adequacy of the proposed Settlement are further supported by the fact that, as noted above, the terms of Settlement are consistent with the "mediator's proposal" recommended by a highly experienced mediator of complex securities litigation, the Hon. Layn Phillips (U.S.D.J, ret.).

10.     The Court further finds that if the Settlement had not been achieved, the Parties faced the expense, risk, and uncertainty of extended litigation in connection with the claims asserted against the Defendants. The Court takes no position on the merits of either Plaintiff's (including the Class's) or Defendants' liability positions, but notes that the existence of substantial

arguments both for and against their respective positions further supports approval of the Settlement.

11.     Accordingly, the Court gives its final approval to the Stipulation of Settlement, and directs the  Parties to consummate the Settlement in accordance with the terms and provisions of the Stipulation of Settlement.

12.     All claims asserted against all Defendants are hereby dismissed with prejudice. All parties to the Action shall bear their own costs, except as otherwise provided in the Stipulation of Settlement.

13.     Lead Plaintiff and each Settlement Class Member, on behalf of themselves and their Related Persons, shall be deemed to have, and by operation of this Order and Final Judgment shall have, fully, finally, and forever released, waived, relinquished and discharged, and shall forever be enjoined from prosecuting, all Released Claims against each Released Defendant Person, whether or not such Plaintiff or Settlement Class Member executes and delivers a Proof of Claim.

14.      Defendants and each of the Released Defendant Persons shall be deemed to have, and by operation of this Order and Final Judgment shall have, fully, finally, and forever released, waived, relinquished and discharged, and shall forever be enjoined from prosecuting, each and every one of the Released Defendants' Claims against each Released Plaintiff Person.

15.     Nothing contained herein shall, however, bar any Party, Released Defendant Person, or Released Plaintiff Person from bringing any action or claim to enforce the terms of the Stipulation of Settlement or this Order and Final Judgment.

16.     The Court finds that the proposed Plan of Allocation is a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members, and Plaintiff's Counsel and the Claims Administrator are directed to administer the Plan of Allocation in accordance with its terms and the terms of the Stipulation of Settlement.

17.     The Court finds that the Parties and their counsel have complied with all requirements of Rule 11 of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 as to all proceedings had herein.

18.     Neither this Order and Final Judgment, the Stipulation of Settlement, nor any of the terms and provisions of the Stipulation of Settlement, nor any of the negotiations or proceedings in connection therewith, nor any of the documents or statements referred to herein or therein, nor the Settlement, nor the fact of the Settlement, nor the Settlement proceedings, nor any statement in connection therewith:

(a)     is or may be deemed to be, or may be used as an admission, concession, or evidence of the validity or invalidity of any Released Claims, the truth or falsity of any fact alleged by Lead Plaintiff or any other plaintiff in the Action (collectively, "Plaintiffs"), the sufficiency or deficiency of any defense that has been or could have been asserted in the Action, or any wrongdoing, liability, negligence or fault of the Defendants, their Related Persons, or any of them;

(b)     is or may be deemed to be or may be used as an admission of, or evidence of, any fault or misrepresentation or omission with respect to any statement or written document attributed to, approved or made by any of the Defendants or their Related Persons in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal;

(c)     is or may be deemed to be or shall be used, offered or received against any  Party or any of their Related Persons as an admission, concession or evidence of the validity or invalidity of any Released Claim or Released Defendants' Claims, the infirmity or strength of any claim raised in the Action, the truth or falsity of any fact alleged by any Plaintiff or the Settlement Class, or the availability or lack of availability of meritorious defenses to the claims raised in the Action; nor

(d)     is or may be deemed to be or shall be construed as or received in evidence as an admission or concession against the  Defendants, or their Related Persons, or any of them, that any of Plaintiff's or the Settlement Class Members' claims are with or without merit, that a litigation class should or should not be certified, that damages recoverable in the Action would have been greater or less than the Settlement Amount or that the consideration to be given pursuant to the Stipulation of Settlement represents an amount equal to, less than or greater than the amount which could have or would have been recovered after trial.

19.     Notwithstanding the immediately preceding paragraph, however, the  Parties and the other Released Defendant Persons and Released Plaintiff Persons may file the Stipulation of Settlement and/or this Order and Final Judgment in any other action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, full faith and credit, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim. The Parties may also file the Stipulation of Settlement and/or this Order and Final Judgment in any proceedings that may be necessary to consummate or enforce the Stipulation of Settlement, the Settlement, or this Order and Final Judgment.

20.     Except as otherwise provided herein or in the Stipulation of Settlement, all funds held by the Escrow Agent shall be deemed to be held *in custodia legis* and shall remain subject to the jurisdiction of the Court until such time as the funds are distributed or returned pursuant to the Stipulation of Settlement and/or pursuant to further order of the Court.

21.     Without affecting the finality of this Order and Judgment in any way, this Court retains continuing exclusive jurisdiction over all Parties to the Action and the Settlement Class Members for all matters relating to the Action, including the administration, interpretation, effectuation or enforcement of the Stipulation of Settlement, and including any application for fees and expenses incurred in connection with administering and distributing the Settlement proceeds to the Settlement Class Members.

22.     Absent further order of the Court, the Court hereby sets the following schedule for completing the administration of the Settlement in this matter:

(a)  the Claims Administrator shall complete its review of submitted Proofs of Claim in this matter and calculation of Recognized Claim Amounts for Authorized Claimants within 180 days of the Court's existing deadline for putative Settlement Class Members to submit completed Proofs of Claim;

(b) within twenty-one (21) days of the later of (i) the Claims Administrator's completion of its review of submitted claims or (ii) the date on which each of the conditions set

forth in ¶4.14 of the Stipulation of Settlement (including the occurrence of the Effective Date) has been met, Plaintiff's Counsel shall submit a distribution motion (the "Settlement Class Distribution Motion") to the Court, which shall seek entry of an Order (the "Distribution Order") approving the Claims Administrator's claims determinations and resolving, pursuant to ¶¶4.7-4.10 of the Stipulation of Settlement, any unresolved disputes raised by any Claimants relating to the Claims Administrator's administrative determinations;

(c) unless the Distribution Order provides for a later date, the Claims Administrator shall mail checks distributing settlement fund payments to eligible Settlement Class Members within 30 days of entry of the Distribution Order, which checks shall request that recipients cash them within 60 days;

(d) Except as provided in sub-paragraphs (a)-(c) above, without further order of the Court the Defendants and Plaintiff may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation of Settlement.

23.    There is no just reason for delay in the entry of this Order and Final Judgment, and immediate entry by the Clerk of the Court is expressly directed.

24.    The finality of this Order and Final Judgment shall not be affected, in any manner, by rulings that the Court may make on Plaintiff's Counsel's Fee and Expense Application.

25.    If the Settlement is not consummated in accordance with the terms of the Stipulation of Settlement, then the Stipulation of Settlement and this Order and Final Judgment (including any amendment(s) thereof, and except as expressly provided in the Stipulation of Settlement or by order of the Court) shall be null and void, of no further force or effect, and without prejudice to any of the  Parties, and may not be introduced as evidence or used in any action or proceeding by any Person against the  Parties, and each of the  Parties shall be restored to his, her or its respective litigation positions as they existed immediately prior to the date of the execution of the Stipulation of Settlement.

Dated: _____, 2023

_____
HON. BETH LABSON FREEMAN
UNITED STATES DISTRICT COURT JUDGE