John T. Jasnoch (CA 281605)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
jjasnoch@scott-scott.com

William C. Fredericks (*pro hac vice*)
Jeffrey P. Jacobson (*pro hac vice*)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6464
Facsimile: 212-223-6334
wfredericks@scott-scott.com
jjacobson@scott-scott.com

*Attorneys for Lead Plaintiff Raju Shah and*
*Lead Counsel for the Putative Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| MARTIN JOSEPH ABADILLA, et al., | Case No.: 5:20-cv-06936-BLF |
| Plaintiff, | Dept.: Courtroom 3, 5th Floor |
| v. | Judge: Honorable Beth Labson Freeman |
| PRECIGEN, INC., et al., | Date: October 19, 2023 at 9:00 AM |
| Defendants. | |
| *This Document Relates to:* | |
| *ALL CONSOLIDATED ACTIONS* | |

## LEAD PLAINTIFF'S MOTION FOR FINAL
## APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION

# TABLE OF CONTENTS

STATEMENT OF ISSUES TO BE DECIDED ..........................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................................2

PRELIMINARY STATEMENT ..............................................................................................2

ARGUMENT ............................................................................................................................3

I.      THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL ......................3

        A.      The Class Has Been Adequately Represented Throughout ........................6

        B.      The Settlement Is the Product of Arm's-Length Negotiations by
                Informed Counsel.......................................................................................6

        C.      Adequacy of Recovery in Light of Litigation Risk and Other Rule
                23(e)(2) Factors..........................................................................................8

                1.      The Amount of the Proposed Settlement .......................................8

                2.      The Strengths and Weaknesses of the Case (Other Risk
                        Factors) ........................................................................................10

                3.      Complexity, Expense, and Expected Duration of Further
                        Litigation......................................................................................12

                4.      Risks of Obtaining and Maintaining Class Action Status.............14

                5.      Extent of Discovery Completed and Stage of Proceedings ..........14

                6.      The Experience and Views of Counsel.........................................15

                7.      Existence of a Governmental Investigation .................................16

                8.      The Class's Reaction....................................................................16

                9.      All Other Rule 23(e)(2) Factors Support Approval of the
                        Settlement ....................................................................................17

                10.     The Settlement Treats Class Members Equitably .........................18

II.     THE PLAN OF ALLOCATION IS ALSO FAIR, REASONABLE AND
        ADEQUATE...........................................................................................................19

III.    THE COURT SHOULD GRANT FINAL CERTIFICATION OF THE
        SETTLEMENT CLASS FOR SETTLEMENT PURPOSES...............................21

IV.     NOTICE TO THE CLASS SATISFIED THE REQUIREMENTS OF
        RULE 23, DUE PROCESS, AND THE PSLRA...................................................21

CONCLUSION........................................................................................................................23

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Brown v. China Integrated Energy Inc.*,

5    No. CV1102559, 2016 WL 11757878 (C.D. Cal. July 22, 2016) ...........................................12

6

*Campbell v. Facebook, Inc.*,

7    951 F.3d 1106 (9th Cir. 2020) ...............................................................................................4, 5

*Churchill Vill., L.L.C. v. Gen. Elec.*,

8    361 F.3d 566 (9th Cir. 2004) ....................................................................................5, 6, 16, 23

9

*Class Plaintiffs v. City of Seattle*,

10    955 F.2d 1268 (9th Cir. 1992) ..............................................................................................5, 19

11

*Destefano v. Zynga, Inc.*,

12    No. 12-CV-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ........................... *passim*

*Eisen v. Carlisle & Jacquelin*,

13    417 U.S. 156 (1974) ................................................................................................................21

14

*Ellis v. Costco Wholesale Corp.*,

15    657 F.3d 970 (9th Cir. 2011) .....................................................................................................6

16

*Farrar v. Workhorse Grp., Inc.*,

    No. CV2102072, 2023 WL 5505981 (C.D. Cal. July 24, 2023) ..........................................9, 12

17

*Fleming v. Impax Lab'ys Inc.*,

18    No. 16-CV-06557-HSG, 2022 WL 2789496 (N.D. Cal. July 15, 2022) ...............................21

19

*Garner v. State Farm Mut. Auto. Ins. Co.*,

20    No. CV 08 1365 CW EMC, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)..............................4

21

*Hampton v. Aqua Metals, Inc.*,

    No. 17-CV-07142-HSG, 2021 WL 4553578 (N.D. Cal. Oct. 5, 2021) ...................................19

22

*Hanlon v. Chrysler Corp.*,

23    150 F.3d 1011 (9th Cir. 1998) .............................................................................................5, 6, 8

24

*Hartless v. Clorox Co.*,

25    273 F.R.D. 630 (S.D. Cal. 2011) .............................................................................................14

26

*Hayes v. MagnaChip Semiconductor Corp.*,

    No. 14-CV-01160-JST, 2016 WL 6902856 (N.D. Cal. Nov. 21, 2016)...................................23

27

*Hefler v. Wells Fargo & Co.*,

28    No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ...................5, 7, 18, 21

ii

*In re Amgen Inc. Sec Litig.*,
   No. CV 7-2536, 2016 WL 10571773....................................................................14

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018)........................................................................7

*In re AOL Time Warner, Inc.*,
   No. 02 CIV. 5575, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)............................13

*In re Bluetooth Headset Prod. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ..............................................................................8

*In re Broadcom Corp. Sec. Litig.*,
   No. SACV01275, 2005 WL 8153007 (C.D. Cal. Sept. 14, 2005)........................10

*In re Capston Turbine Corp. Sec. Litig.*,
   No. CV1589142, 2020 WL 7889062 (C.D. Cal. Aug. 26, 2020) ........................21

*In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   No. 17-MD-02777-EMC, 2019 WL 2554232 (N.D. Cal. May 3, 2019) ................6

*In re Diamond Foods, Inc., Sec. Litig.*,
   2014 WL 106826 (N.D. Cal. Jan. 10, 2014) ......................................................12

*In re Google LLC St. View Elec. Commc'ns Litig.*,
   2020 WL 1288377 (N.D. Cal. Mar. 18, 2020)....................................................16

*In re Heritage Bond Litig.*,
   No. 02-ML-1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005)..................13, 19

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) ..............................................................................4

*In re Illumina, Inc. Sec. Litig.*,
   No. 3:16-CV-3044, 2021 WL 1017295 (S.D. Cal. Mar. 17, 2021) ....................21

*In re LinkedIn User Priv. Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015)......................................................................13

*In re LJ Int'l, Inc. Sec. Litig.*,
   No. CV0706076, 2009 WL 10669955 (C.D. Cal. Oct. 19, 2009) ......................10

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ........................................................................8, 14

*In re MGM Mirage Sec. Litig.*,
   708 F. App'x 894 (9th Cir. 2017) ......................................................................21

*In re Netflix Priv. Litig.*,
   No. 5:11-CV-00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013)............7

iii

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d (N.D. Cal. 2008) ...................................................................................14

*In re Oracle Sec. Litig.*,
  No. C-90-0931-VRW, 1994 WL 502054 (N.D. Cal. June 18, 1994) .....................................19

*In re Polaroid ERISA Litig.*,
  240 F.R.D. 65 (S.D.N.Y. 2006) .........................................................................................6

*In re Portal Software, Inc. Sec. Litig.*,
  No. C-03-5183 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ...................................12

*In re Rambus Inc. Derivative Litig.*,
  No. C 06-3513 JF (HRL), 2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ................................14

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
  895 F.3d 597 (9th Cir. 2018) ..............................................................................................4

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
  No. MDL 2672, 2019 WL 2077847 (N.D. Cal. May 10, 2019) ..............................................5

*In re Wells Fargo Collateral Prot. Ins. Litig.*,
  No. SAM1702797, 2019 WL 6219875 (C.D. Cal. Nov., 2019) ............................................16

*Int'l Bhd. of Elec. Workers Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*,
  No. 3:09-CV-00419, 2012 WL 5199742 (D. Nev. Oct. 19, 2012) ..........................................9

*Joh v. Am. Income Life Ins. Co.*,
  No. 18-CV-06364-TSH, 2020 WL 109067 (N.D. Cal. Jan. 9, 2020) ......................................7

*Knapp v. Art.*,
  283 F. Supp. 3d 823 (N.D. Cal. 2017) ...............................................................................10

*Kirkorian v. Borelli*,
  695 F. Supp. 446 (N.D. Cal. 1988) ....................................................................................15

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ...............................................................................................5

*Linney v. Cellular Alaska P'ship*,
  No. C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997), *aff'd*, 151
  F.3d 1234 (9th Cir. 1998) ....................................................................................................7

*Mild v. PPG Indus., Inc.*,
  No. 218CV04231, 2019 WL 3345714 (C.D. Cal. July 25, 2019) ....................................8, 12

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950) ...........................................................................................................21

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) .......................................................................................15

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ............................................5, 8

*Shapiro v. JPMorgan Chase & Co.*,
    No. 11 CIV. 7961 CM, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ....................8

*Silber v. Mabon*,
    18 F.3d 1449 (9th Cir. 1994) ............................................21

*Spann v. J.C. Penney Corp.*,
    314 F.R.D. 312 (C.D. Cal. 2016) ............................................23

*Taafua v. Quantum Glob. Techs., LLC*,
    No. 18-CV-06602-VKD, 2021 WL 579862 (N.D. Cal. Feb. 16, 2021) ....................4

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ............................................10, 13

*Velazquez v. Int'l Marine & Indus. Applicators, LLC*,
    No. 16CV494, 2018 WL 828199 (S.D. Cal. Feb. 9, 2018).....................14, 16

*Vinh Nguyen v. Radient Pharms. Corp.*,
    No. SACV 11-00406, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ....................19

*Wong v. Arlo Techs., Inc.*,
    No. 5:19-CV-00372-BLF, 2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) ....................23

*Young v. LG Chem Ltd.*,
    783 F. App'x 727 (9th Cir. 2019) ............................................23

**Statutes, Rules, and Regulations**

15 U.S.C.
    §78u-4(a)(4) ............................................1
    §78u-4(a)(7) ............................................22

Fedederal Rules of Civil Procedure

Rule 10b-5(b) ...........................................................................................................10
Rule 23 ....................................................................................................................23
Rule 23(a) ...........................................................................................................1, 21
Rule 23(b)(3) .......................................................................................................1, 21
Rule 23(c)(2)(B) ......................................................................................21, 22, 23
Rule 23(e) ..................................................................................................................3
Rule 23(e)(1)(B) .......................................................................................................21
Rule 23(e)(2) ...................................................................................................... *passim*
Rule 23(e)(2)(A) .......................................................................................................6
Rule 23(e)(2)(B) .......................................................................................................7
Rule 23(e)(2)(C) .................................................................................................17, 18
Rule 23(e)(2)(C)(ii)-(iv) ........................................................................................17
Rule 23(e)(2)(C)(iv) .................................................................................................18
Rule 23(e)(2)(D) .......................................................................................................18
Rule 23(e)(2)'s ...........................................................................................................2
Rule 23(e)(3) ..................................................................................................4, 17, 18

### NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
### OF SETTLEMENT AND PLAN OF ALLOCATION

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE that, pursuant to the Court's Order Preliminarily Approving Settlement and Providing for Notice (ECF No. 135) ("Preliminary Approval Order"), on October 19, 2023 at 9:00 AM (PT), via Zoom, the Honorable Beth Labson Freeman presiding, the Court-appointed lead plaintiff, Raju Shah ("Lead Plaintiff") will and hereby does move the Court, pursuant to Federal Rule of Civil Procedure 23, for (1) entry of an order granting final approval of the proposed settlement (the "Settlement") set forth in the Stipulation of Settlement and Agreement dated March 1, 2023 (ECF No. 128) (the "Stipulation") and granting final certification of the proposed Settlement Class; and (2) entry of an order approving of the proposed Plan of Allocation.

This Motion is based on this Notice of Motion and Motion (together, the "Motion"); the supporting Memorandum that follows; the Stipulation; the accompanying declarations – including those of William C. Fredericks in Support of (A) Lead Plaintiff's Motion for Final Approval of Settlement and Plan of Allocation and (B) Plaintiff's Counsel's Fee and Expense Application, dated September 14, 2023 ("Fredericks Decl."); of Adam D. Walter Regarding (A) Mailing of Notice; (B) Publication of Summary Notice; and (C) Report on Requests for Exclusion Received To Date, dated September 11, 2023 ("Walter Decl."); and of Raju Shah in Support of Motion for (1) Final Approval of Class Action Settlement and (2) Award Pursuant to 15 U.S.C. §78u-4(a)(4) ("Shah Decl.") – all other prior pleadings and papers in this Action; the arguments of counsel; and any additional information or argument that may be required by the Court.

### STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the Court should grant final approval of the proposed Settlement as fair, reasonable, and adequate under Rule 23(e)(2), and grant final certification of the Settlement Class under Rule 23(a) and (b)(3) for settlement purposes; and

2.      Whether the Court should approve the Plan of Allocation as fair, reasonable, and adequate.

## MEMORANDUM OF POINTS AND AUTHORITIES

Lead Plaintiff, on behalf of himself and the Class, respectfully submits this memorandum in support of his motion for final approval of the proposed Settlement and Plan of Allocation, and for final certification of the Settlement Class for settlement purposes.[1]

## PRELIMINARY STATEMENT

After more than two years of litigation – and an arms-length mediation process conducted under the auspices of a highly experienced mediator (the Hon. Layn Phillips, U.S.D.J., ret.) – Lead Plaintiff is pleased to submit for final approval the proposed Settlement, which will resolve all claims at issue in exchange for a payment of $13,000,000.00 in cash for the benefit of the Class.

The proposed Settlement readily satisfies Rule 23(e)(2)'s standards for final approval. Indeed, Lead Plaintiff respectfully submits that the proposed Settlement represents a decidedly favorable result for the Class in the face of very significant litigation risk on both liability and damages issues. Indeed, the risks at issue here are amply highlighted by the fact this Court, following extensive briefing on Defendants' motion to dismiss Plaintiff's Second Amended Complaint ("SAC"), *dismissed* all claims. Pursuant to leave of Court, Plaintiff prepared and filed a Third Amended Class Action Complaint ( "TAC") that contained additional factual allegations, and Lead Counsel believed at all times that the claims asserted were meritorious. However, Defendants vigorously argued throughout the action that they lacked *scienter*, that their Class Period statements were not materially false or misleading when read in context, and that they had strong loss causation arguments under §10(b), such that, even if their §10(b) and/or §20(a) liability were otherwise established, recoverable damages would be substantially less than what Lead Plaintiff urged. In short, although Lead Plaintiff believed that he had responses to each of these arguments, there could be no assurance that the TAC would survive Defendants' renewed efforts to dismiss the case claims – let alone survive summary judgment and trial – had the litigation continued.

---

[1] All capitalized terms herein have the meanings given them in the Stipulation (ECF No. 128 at ¶¶1.1-1.53) or in the Fredericks Declaration filed herewith. Unless otherwise noted, in cited materials all internal quotation marks and citations are omitted, and all emphasis is added.

1    Significantly, the Settlement was only reached after the TAC was filed (and Defendants

2 had given Plaintiff a draft of their motion to dismiss the TAC), and only after an extended arm's-

3 length mediation process (and a full-day mediation session in November 2022) conducted under

4 the auspices of Judge Phillips.  Moreover, the Settlement is based on and fully consistent with

5 Judge Phillips's "mediator's proposal," and the Stipulation of Settlement itself was not signed until

6 after further months of negotiation and after Lead Counsel could complete their review of over

7 83,000 pages of internal documents that Precigen had produced as part of the mediation process.

8 Fredericks Decl. ¶7.  In sum, the proposed Settlement provides a substantial, certain, and immediate

9 all-cash recovery for the Class, while avoiding the significant risks and expenses of continued

10 litigation – including the real risk that the Class would recover nothing if further litigation had been

11 pursued and the substantial $13 million "bird in the hand" rejected.

12    Following a hearing on July 6, 2023, the Court issued its Preliminary Approval Order (ECF

13 No. 135) finding that the Settlement appeared sufficiently fair and reasonable to merit the issuance

14 of Notice to the Settlement Class.  While the deadline for objections has not yet passed, following

15 the dissemination of 72,491 individual Notices to potential Settlement Class Members and

16 Nominees (as well as publication of the summary notice online and in print), to date **no** objections

17 to the Settlement or Plan of Allocation (and only one request to opt-out) have been received.

18 Walter Decl., ¶¶8, 15-16; Fredericks Decl. ¶8.  Should any written objections be received prior to

19 the Fairness Hearing, Lead Plaintiff will address them in appropriate reply papers.

20    As discussed below, in addition to granting final approval to the Settlement, the Court

21 should also approve the proposed Plan of Allocation, which was prepared in consultation with

22 Lead Plaintiff's damages expert (and provides for a customary *pro rata* allocation of the Net

23 Settlement Fund based on Class Members' respective "Recognized Losses") and grant final

24 certification of the proposed Settlement Class for purposes of settlement.

## ARGUMENT

### I.    THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL

27    Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or

28 settlement of class-action claims.  *See* Fed. R. Civ. P. 23(e).  Whether to grant such approval lies

3

1    within the district court's sound discretion. *See In re Volkswagen "Clean Diesel" Mktg., Sales*

2    *Pracs., & Prod. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018). In exercising this discretion, a

3    court should be guided by the Ninth Circuit's "strong judicial policy that favors settlements,

4    particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ.*

5    *Litig.*, 926 F.3d 539, 556 (9th Cir. 2019); *see also Taafua v. Quantum Glob. Techs., LLC*, No. 18-

6    CV-06602-VKD, 2021 WL 579862, at *3 (N.D. Cal. Feb. 16, 2021) ("The Ninth Circuit has

7    declared that a strong judicial policy favors settlement of Rule 23 class actions."). The settlement

8    of complex cases like this one also promotes efficient utilization of scarce judicial resources and

9    the speedy resolution of claims. *See Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365

10   CW EMC, 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("Settlement avoids the

11   complexity, delay, risk and expense of continu[ed] . . . litigation" and "produce[s] a prompt,

12   certain, and substantial recovery for the [] class.").

13           Rule 23(e)(2) requires district courts to find that a proposed class action settlement is "fair,

14   reasonable, and adequate" before it can be approved, *Campbell v. Facebook, Inc.*, 951 F.3d 1106,

15   1120-21 (9th Cir. 2020), based on their consideration of whether:

16           1.    the class representative and class counsel have adequately represented the class;

17           2.    the proposal was negotiated at arm's length;

18           3.    the relief provided for the class is adequate, taking into account:

19                 (i)    the costs, risks, and delay of trial and appeal;

20                 (ii)   the effectiveness of any proposed method of distributing relief to the
                         class, including the method of processing class-member claims;

21

22                 (iii)  the terms of any proposed award of attorney's fees, including timing of
                         payment; and

23                 (iv)   any agreement required to be identified under Rule 23(e)(3); and

24           4.    the proposal treats class members equitably relative to each other.

25           Consistent with the foregoing Rule 23(e)(2) guidance, the Ninth Circuit has identified

26   similar and/or overlapping factors (the *Churchill* factors) for courts to consider in evaluating

27   proposed class action settlements:

28

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *accord Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. MDL 2672, 2019 WL 2077847, at *1 (N.D. Cal. May 10, 2019) (approving settlement after considering both the Rule 23(e)(2) factors and the factors identified in Ninth Circuit case law).[2]

The Ninth Circuit has explained that courts' review of class-action settlements should be "'limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'" *Hanlon*, 150 F.3d at 1027. Thus, a settlement hearing should "not to be turned into a trial or rehearsal for trial on the merits," *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982), and a court need not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992); *accord Lane*, 696 F.3d at 819.

At preliminary approval, the Court found that the relevant factors showed that the Settlement was likely fair, reasonable, and adequate, subject to further review at the Fairness Hearing. ECF No. 135. Nothing has changed to alter the Court's prior analysis or to warrant a

---

[2] In this regard, it should be noted that the stated goal of the 2018 amendments to Rule 23(e)(2) was "not to displace" any of the factors historically articulated by the various Circuits, "'but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *Campbell*, 951 F.3d at 1121 n.10. Accordingly, courts should "'appl[y] the framework set forth in Rule 23, while continuing to draw guidance from the Ninth Circuit's factors and relevant precedent.'" *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018).

1    different conclusion now. *See In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Pracs., &*

2    *Prods. Liab. Litig.*, No. 17-MD-02777-EMC, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019)

3    (court's reasons for granting preliminary approval weighed "equally in favor of final approval

4    now").

### A.    The Class Has Been Adequately Represented Throughout

6    At the settlement approval stage, the first Rule 23 consideration is whether "the class

7    representatives and class counsel have adequately represented the class."  Fed. R. Civ. P.

8    23(e)(2)(A).  To determine adequacy, courts consider two questions: (1) do the named plaintiffs

9    and their counsel have any conflicts of interest with other class members; and (2) will the named

10    plaintiffs and their counsel prosecute the action vigorously on behalf of the class. *See Ellis v.*

11    *Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).

12    Here, Lead Plaintiff's claims, which are based on a common course of alleged misconduct

13    by Defendants, are typical of those of the Class, and Lead Plaintiff has no interests antagonistic to

14    those of other Class members. *Id.* (adequacy depends on "an absence of antagonism" and "a

15    sharing of interest" between representatives and absent class members); *Hanlon*, 150 F.3d at 1020.

16    Lead Plaintiff – like all other Class Members – also has a common interest in obtaining the largest

17    possible recovery from Defendants. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y.

18    2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there

19    is no conflict of interest between the class representatives and other class members.").

20    Lead Counsel have also plainly shown their commitment to the Class by vigorously

21    prosecuting the Action for more than two years.  Fredericks Decl., ¶¶53-62.  And for his part, Lead

22    Plaintiff has also shown his adequacy and commitment to the Class by, *inter alia*, retaining counsel

23    highly experienced in securities class action litigation; reviewing pleadings and briefs; and

24    communicating regularly with Plaintiffs' Counsel regarding the case, including both litigation and

25    settlement development. *See generally* Shah Decl., ¶¶5-7.  *See also Churchill*, 361 F.3d at 576-77

26    (instructing courts to consider the "experience and views of counsel").

### B.    The Settlement Is the Product of Arm's-Length Negotiations by Informed Counsel

28

1    As noted above, the proposed Settlement was not only "negotiated at arm's length," Fed.

2    R. Civ. P. 23(e)(2)(B), but was negotiated by counsel who had a firm understanding of the strengths

3    and weakness of their case from having, *inter alia*: conducted an extensive pre-filing investigation;

4    fully briefed Defendants' motions to dismiss the SAC; conducted further investigative work (and

5    taken further confidential witness interviews) prior to filing the TAC; consulted extensively with

6    damage and loss causation experts; and exchanged comprehensive mediation submissions with

7    Defendants.  Moreover, the Stipulation itself was not finally signed until after Lead Counsel had

8    reviewed both a limited set of internal Precigen documents prior to the November mediation

9    session, as well as a much larger set of such documents produced to them shortly thereafter.  *See*

10   Fredericks Decl., ¶¶15, 17, 21, 25-27, 29; *see also* Churchill factors (5) and (6) above; *In re Netflix*

11   *Priv. Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) (courts

12   "afford[] a presumption of fairness and reasonableness . . . [where] agreement was the product of

13   non-collusive, arms' length negotiations conducted by capable and experienced counsel"); *Hefler*,

14   2018 WL 4207245, at *9 (approving settlement reached only after the parties engaged in motion

15   practice and participated in protracted mediation); *Linney v. Cellular Alaska P'ship*, No. C-96-

16   3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997) ("involvement of experienced class

17   action counsel," and fact that agreement was reached after relevant discovery had taken place,

18   "create a presumption that the agreement is fair"), *aff'd*, 151 F.3d 1234 (9th Cir. 1998).  Moreover,

19   here "[t]he involvement of a neutral mediator is [further] evidence that settlement negotiations

20   were conducted at arm's length."  *Joh v. Am. Income Life Ins. Co.*, No. 18-CV-06364-TSH, 2020

21   WL 109067, at *7 (N.D. Cal. Jan. 9, 2020); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299,

22   327 (N.D. Cal. 2018) (same).  And, any suggestion of collusion is further dispelled here because

23   the Settlement's terms are based on a "mediator's proposal" made by a retired federal judge (the

24   Hon. Layn Phillips).  Fredericks Decl. at ¶¶27-28.

25   Finally, the proposed Settlement has none of the indicia of possible collusion identified by

26   the Ninth Circuit, such as a "clear-sailing" fee agreement or a provision that would allow

27   settlement proceeds to revert to Defendants.  *Compare In re Bluetooth Headset Prod. Liab. Litig.*,

28   654 F.3d 935, 947 (9th Cir. 2011) *with* Stipulation, ¶2.3 ("The Settlement is not a claims-made

7

1    settlement.  Upon the occurrence of the Effective Date, no . . . person or entity who or which paid

2    any portion of the Settlement Amount . . . shall have any right to the return of the Settlement Fund

3    or any portion thereof for any reason whatsoever.").

4    **C.      Adequacy of Recovery in Light of Litigation Risk and Other Rule 23(e)(2)**
          **Factors**

5

6          The remaining Rule 23(e)(2) factors overlap considerably with the *Churchill* factors (1)-

7    (4), and all entail a review of the benefits of the proposed settlement in light of relevant litigation

8    risk.  *See generally* Fed. R. Civ. P. 23(e)(2) Advisory Comm. Notes to 2018 Amendment; *Hanlon*,

9    150 F.3d at 1026.  These factors also weigh strongly in favor of approval.

10                        **1.       The Amount of the Proposed Settlement**

11         "The critical component of any settlement is the amount of relief obtained by the class."

12   *Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11,

13   2016).  However, "'[i]t is well-settled law that a cash settlement amounting to only a fraction of

14   the potential recovery does not per se render the settlement inadequate or unfair.'"  *In re Mego*

15   *Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (citation omitted).  In assessing the

16   recovery, a fundamental question is how the value of the settlement compares to the amount the

17   Class potentially could recover at trial, as discounted for risk, delay, and expense.  "'Naturally, the

18   agreement reached normally embodies a compromise; in exchange for the saving of cost and

19   elimination of risk, the parties each give up something they might have won had they proceeded

20   with litigation.'"  *Officers for Justice*, 688 F. 2d at 624; *see also Shapiro v. JPMorgan Chase &*

21   *Co.*, No. 11 CIV. 7961 CM, 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014) (settlement must

22   be judged "'not in comparison with the possible recovery in the best of all possible worlds, but

23   rather in light of the strengths and weaknesses of plaintiffs' case'"); *Mild v. PPG Indus., Inc.*, No.

24   218CV04231, 2019 WL 3345714, at *6 (C.D. Cal. July 25, 2019) ("Based on the significant risks

25   of continued litigation and the Settlement amount, the Court finds that the amount offered for

26   settlement is fair.").

27         Here, based on a number of objective metrics, the $13 million Settlement compares

28   favorably to other securities class action settlements.  Lead Plaintiff's damages expert estimated

8

1    that the range of reasonably recoverable damages in this case was roughly $135 million to $270

2    million.  Fredericks Decl., ¶¶38, 42.  Thus, the $13 million Settlement represents approximately

3    5% of the high end of this range, which assumes that Lead Plaintiff would not only survive

4    dismissal, but also ultimately run the table on all reasonably disputable liability and loss causation

5    issues at summary judgment and trial (while avoiding any reversals on appeal).  Fredericks Decl.,

6    ¶42.  By comparison, NERA Economic Consulting recently reported that, between 2011 and 2022,

7    the median securities class action settlement equated to roughly 2.8% of maximum damages in

8    cases involving estimated investor losses between $100 million and $199 million, and 2.3% for

9    estimated investor losses between $200 million and $399 million.[3]  In addition, based on other

10    published analysis, the Settlement is almost double the size of the median securities class action

11    settlement ($6.9 million) in the Ninth Circuit between 2012 and 2021.[4]

12        Unsurprisingly, case law in this Circuit similarly confirms that the recovery under the

13    proposed Settlement is well within the "range of reasonableness" when considered as a percentage

14    of maximum reasonably recoverable damages.  *See, e.g., Farrar v. Workhorse Grp., Inc.,* No.

15    CV2102072, 2023 WL 5505981, at *7 (C.D. Cal. July 24, 2023) (approving settlement

16    representing roughly 3% of estimated damages); *Int'l Bhd. of Elec. Workers Loc. 697 Pension

17    Fund v. Int'l Game Tech., Inc.*, No. 3:09-CV-00419, 2012 WL 5199742, at *3 (D. Nev. Oct. 19,

18    2012) (approving settlement representing "about 3.5% of the maximum damages that Plaintiffs

19    believe[d] could be recovered" and finding it "within the median recovery in securities class

20    actions settled in the last few years"); *Destefano*, 2016 WL 537946, at *11 (citing Cornerstone

21    Report indicating that securities class action settlements between 2013 and 2015 involved a median

22    recovery of 2.2% of estimated damages); *In re LJ Int'l, Inc. Sec. Litig.*, No. CV0706076, 2009 WL

23    10669955, at *4 (C.D. Cal. Oct. 19, 2009) (approving settlement recovering 4.5% of maximum

24

25    _____

      [3]    *See* J. McIntosh & S. Starykh, *Recent Trends In Securities Class Action Litig.: 2021 Full-
26    Year Review*, NERA ECON. CONSULTING at 23 (Jan. 25, 2022), located at www.nera.com/
      publications/archive/2022/recent-trends-in-securities-class-action-litigation 2021-full-y.html.

27    [4]    *See* L. Bulan & L. Simmons, *Securities Class Action Settlements: 2021 Review and
28    Analysis*, Cornerstone Research at 19 (2022), located at https://www.cornerstone.com/wp-
      content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf.

damages); *In re Broadcom Corp. Sec. Litig.*, No. SACV01275, 2005 WL 8153007, at *6 (C.D. Cal. Sept. 14, 2005) (approving settlement representing 2.7% of damages, and finding such percentage was "not [] inconsistent with the average recovery in securities class action[s]").

### 2.    The Strengths and Weaknesses of the Case (Other Risk Factors)

To determine whether the proposed Settlement is fair, reasonable, and adequate, the Court "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017); *accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

The risks of litigation here were plainly substantial, and some of the challenges that Lead Plaintiff faced in prevailing on liability were made clear early on.  For example, at oral argument on Defendants' motion to dismiss on April 8, 2022, as noted above the Court raised doubts about various aspects of Plaintiff's main claims under §10(b) and SEC Rule 10b-5(b).  In particular, although the Court ultimately found in its Order Granting Defendants' Motion to Dismiss with Leave to Amend (ECF No. 111) (the "MTD Order") that Lead Plaintiff had adequately alleged that certain statements from the first part of the Class Period were misleading because they purported to describe test results based on use of natural gas (when Lead Plaintiff alleged that they had instead been obtained using pure methane), the MTD Order ***also*** found that numerous other statements were ***not*** actionable.  These statements were largely from the latter half of the Class Period and included Defendants' various statements that Precigen's Methane Bioconversion Platform ("MBP") had reached "in the money" status with respect to being able to produce certain chemicals.  Lead Counsel believed that the Court's findings that these and certain other key false and misleading statements at issue were not actionable was incorrect – and hoped to so persuade the Court on repleading – but there could be no assurance that the Court would have reversed course after reviewing the TAC's efforts to replead those claims.  Fredericks Decl., ¶36.

Moreover, as courts regularly observe, proving that Defendants acted with *scienter* in §10(b) cases is almost always a daunting challenge, and this case was no exception.  First, although Defendant Walsh (the executive who headed the MBP Program) was the defendant most at risk of

1   being found to have acted with *scienter* (based primarily on his closeness to the program), he

2   retired from the Company well before the end of the Class Period, and he personally made only a

3   few of the allegedly false or misleading statements at issue.  Moreover, Walsh did not engage in

4   any suspicious stock sales during the Class Period – a factor that makes it significantly harder for

5   Lead Plaintiff to plead (and later prove) that he acted with *scienter*.  And the Court had already

6   rejected Lead Plaintiff's reliance on certain confidential witnesses ("CWs") to support the requisite

7   "strong inference" of Mr. Walsh's *scienter*, so once again, there could be no assurance that Lead

8   Plaintiff's reliance on many of the same CWs in the TAC would cause the Court to reach a different

9   view as to Walsh's *scienter*.  Second, with respect to Defendant Kirk, Precigen's former chief

10  executive officer, and the only other individual defendant, the challenges of pleading and proving

11  his *scienter* were even greater, as (i) he was much more removed from the MBP Program than

12  Walsh, (ii) the CW allegations against Kirk were significantly weaker than they were as to Walsh,

13  and (iii) Kirk (like Walsh) also did not sell a suspiciously large percentage of his Precigen shares

14  during the Class Period.  Fredericks Decl., ¶37.

15        In addition, Defendants also had significant loss causation defenses.  This case, for

16  example, did not involve a single large drop in Precigen's share price in response to a "clean"

17  disclosure that one or more of Defendants' prior statements about the MBP Program had been

18  false.  Instead, this case involved a series of roughly ten "partial corrective disclosure dates," with

19  Plaintiff alleging that the truth about Defendants' alleged misstatements and omissions only

20  emerged gradually over a multi-year period.  On the facts alleged, proving loss causation was

21  particularly challenging because on certain alleged "partial corrective disclosure dates" the

22  negative stock price reaction was not statistically significant, and even on dates when there was a

23  statistically significant reaction, there were other negative (and hence potentially "confounding")

24  disclosures relating to non-MBP-related aspects of Precigen's business.  As a result, proving that

25  the observed price declines on such dates were related to fraud-related disclosures (as opposed to

26  unrelated matters) would likely be difficult.  After considering these and other loss causation

27  issues, as noted above, Lead Plaintiff's damages expert estimated that the range of reasonably

28  recoverable damages in this case was roughly $135 million to $270 million – but unsurprisingly

1  Defendants contended that maximum recoverable damages were a fraction of such amounts.

2  Fredericks Decl. ¶38; *see also, e.g.*, *Brown v. China Integrated Energy Inc.*, No. CV1102559, 2016

3  WL 11757878, at *7 (C.D. Cal. July 22, 2016) (citing inherent risks where "both sides' arguments

4  on loss causation and establishing damages at trial would have relied heavily on expert testimony,

5  with no guarantee of whose testimony the factfinder would credit").

6      Nonetheless, despite these risks, Lead Plaintiff obtained a $13 million Settlement that

7  represents a decidedly superior result.  Moreover, this recovery must be compared to the real risk

8  that the Class would recover nothing after summary judgment, trial, and likely appeals, possibly

9  years into the future.  *See Mild*, 2019 WL 3345714, at *6 (recognizing the "significant risk that

10  continued litigation might yield a smaller recovery or no recovery at all"); *In re Portal Software,

11  Inc. Sec. Litig.*, No. C-03-5183 VRW, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007) (same).

12  Indeed, even if Lead Plaintiff had prevailed in full on all his claims against Defendants, the chances

13  that he could collect on a judgment that would be significantly greater than $13 million (let alone

14  one anywhere near the Class's maximum reasonably recoverable damages) is doubtful at best.  For

15  example, Precigen's business has been in sharp decline in recent years and on November 9, 2022

16  – just a week before the Parties' face-to-face mediation session with Judge Phillips – Precigen

17  reported in its Form 10-Q for the third quarter of 2022 that there was "substantial doubt about the

18  Company's ability to continue as a going concern." Fredericks Decl., ¶39.  In addition, Defendants

19  have only limited available insurance coverage, which could well have been fully exhausted had

20  Lead Plaintiff elected to litigate the Class's claims through discovery, summary judgment, trial,

21  and likely appeals.  *Id.*; *see also, e.g.*, *Farrar*, 2023 WL 5505981, at *6 ("'It is not unreasonable

22  for counsel and the class representative to prefer the bird in hand, given concerns about Diamond's

23  strained financial state and its ability to pay a judgment following further litigation.'") (cleaned

24  up), quoting *In re Diamond Foods, Inc., Sec. Litig.*, 2014 WL 106826, at *2 (N.D. Cal. Jan. 10,

25  2014).

26      In sum, the proposed Settlement is fair and reasonable in light of the significant risks of

27  continued litigation.

28      **3.    Complexity, Expense, and Expected Duration of Further Litigation**

1    Courts consistently recognize that the likely duration and costs of continued litigation are

2    major factors in evaluating the reasonableness of a settlement.  *See, e.g.*, *Torrisi*, 8 F.3d at 1376

3    (finding that "the cost, complexity and time of fully litigating the case" rendered the settlement

4    fair).  "'Generally, unless the settlement is clearly inadequate, its acceptance and approval are

5    preferable to lengthy and expensive litigation with uncertain results.'"  *In re LinkedIn User Priv.*

6    *Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015).  Due to their "notorious complexity," settlement of

7    securities class actions is often particularly appropriate to "circumvent[] the difficulty and

8    uncertainty inherent in long, costly trials."  *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575, 2006

9    WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006); *see also In re Heritage Bond Litig.*, No. 02-ML-1475,

10   2005 WL 1594403, at *6 (C.D. Cal. June 10, 2005) (securities actions have well-deserved

11   reputation for complexity).

12   Here, absent the proposed Settlement, continued litigation would have required further

13   extensive motion to dismiss briefing directed at the TAC, to be followed by (assuming that

14   dismissal was denied): (i) the undertaking of comprehensive document discovery that, to a

15   significant degree, would have undoubtedly involved highly technical materials regarding

16   Precigen's novel methane bioconversion technologies and testing programs; (ii) the taking of

17   depositions of numerous Precigen officers and employees on the details of those same highly

18   technical programs; (iii) an expert discovery process that was expected to include, at a minimum,

19   both sides retaining experts on measuring achievement of bio-technological development

20   milestones and other technical issues, as well as on loss causation and damages issues; (iv) full

21   briefing of a contested class certification motion, and related expert discovery; (v) the all but

22   inevitable motions by Defendants for summary judgment; and then (assuming that Plaintiff

23   successfully opposed such motions) (vi) extensive pre-trial motions *in limine* and *Daubert*

24   motions; (vii) trial; and (viii) likely post-trial motions, and thereafter appeals, by the losing side.

25   Such further litigation and appeals would not only have been enormously costly, but would also

26   almost certainly take several more years to play out.  Fredericks Decl., ¶43; *see also Zynga*, 2016

27   WL 537946, at *10; *In re Amgen Inc. Sec Litig*, No. CV 7-2536, 2016 WL 10571773, at *3 ("A

28

13

1  trial of a complex, fact-intensive case . . . [as here] . . . could have taken weeks, and the likely

2  appeals of rulings on summary judgment and at trial could have added years to the litigation.").

3      In short, absent a settlement, resolution of this case would plainly require considerable time

4  and additional expense, with the result not remotely certain.  *See Hartless v. Clorox Co.*, 273

5  F.R.D. 630, 640 (S.D. Cal. 2011) ("Considering these risks, expenses and delays, an immediate

6  and certain recovery for class members . . . favors settlement of this action."); *Velazquez v. Int'l*

7  *Marine & Indus. Applicators, LLC*, No. 16CV494, 2018 WL 828199, at *4 (S.D. Cal. Feb. 9, 2018)

8  (courts should "consider the vagaries of litigation and compare the significance of immediate

9  recovery by way of the compromise to the mere possibility of relief in the future, after protracted

10  and expensive litigation").  Accordingly, the expense, complexity, and likely duration of further

11  litigation, also strongly support approving the proposed Settlement, and taking the $13 million

12  "bird in the hand."

13      **4.**    **Risks of Obtaining and Maintaining Class Action Status**

14      While Lead Counsel are confident that the Settlement Class meets the requirements for

15  certification, in counsel's experience modern Defendants almost always challenge class

16  certification, and accordingly there could again be no certainty on this issue.  *See also, e.g.*, *In re*

17  *Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1041 (N.D. Cal. 2008) (even if class were certified,

18  "there is no guarantee the certification would survive through trial, as Defendants might have

19  sought decertification or modification of the class").  Accordingly, this factor also supports

20  approval of the Settlement.

21      **5.**    **Extent of Discovery Completed and Stage of Proceedings**

22      In assessing a settlement, courts should consider the stage of the proceedings and the

23  amount of information available to the parties to assess the strengths and weaknesses of their case.

24  *See, e.g.*, *Mego Fin. Corp.*, 213 F. 3d at 459; *In re Rambus Inc. Derivative Litig.*, No. C 06-3513

25  JF (HRL), 2009 WL 166689, at *2 (N.D. Cal. Jan. 20, 2009).  Moreover, "[a] settlement following

26  sufficient discovery and genuine arms-length negotiation is presumed fair."  *Velazquez*, 2018 WL

27  828199, at *5.

28

1    From the commencement of this Action in 2020, through the signing of the Parties'

2  Stipulation of Settlement in March 2023, Lead Counsel spent substantial time and resources

3  analyzing and litigating the factual and legal issues involved in the Action.  As the Court itself can

4  attest, counsel for both sides had a strong understanding of the key legal issues involved, as

5  reflected in their comprehensive briefing on Defendants' motion to dismiss the SAC.  As for

6  understanding of the facts, although this case did not reach the formal discovery stage, the factual

7  detail reflected in the SAC and TAC is indicative of the broad extent of Lead Counsel's pre-filing

8  investigation – including the interviewing of multiple CWs – that they conducted and continued

9  to vigorously pursue in connection with the preparation of both the SAC (which the Court

10  dismissed) and the TAC (which was pending when the settlement was reached).  Fredericks Decl.,

11  ¶7.  Moreover, in addition to preparing and exchanging multiple comprehensive mediation briefs

12  with Defendants as part of Judge Phillip's mediation process – Lead Counsel were able to obtain

13  and review a limited number of internal Precigen documents that they had requested of Defendants

14  prior to November 2022 face-to-face mediation session, and Lead Plaintiff did not finalize or agree

15  to the actual Stipulation of Settlement until after his counsel had sought, received, and reviewed a

16  significantly larger production of roughly 83,000 pages of additional internal Precigen documents.

17  Fredericks Decl., ¶7, 25, 29.

18    In sum, when the Settlement was consummated, the litigation "had proceeded to a point at

19  which both parties had a clear view of the strengths and weaknesses of their cases."  *Zynga, Inc.*,

20  2016 WL 537946, at *12.  This factor therefore also supports final approval of the Settlement.

21          **6.    The Experience and Views of Counsel**

22    As courts in this Circuit have explained, "[t]he recommendation of experienced counsel

23  carries significant weight in the court's determination of the reasonableness of the settlement."

24  *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988); *see also Nat'l Rural*

25  *Telecommunications Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great

26  weight' is accorded to the recommendation of counsel . . . because 'parties represented by

27  competent counsel are better positioned than courts to produce a settlement that fairly reflects each

28  party's expected outcome in the litigation'"); *Churchill*, 361 F .3d at 575.  Here, Lead Counsel –

15

1   based on a thorough understanding of the strengths and weaknesses of the Action – have concluded

2   that the proposed Settlement represents a decidedly superior outcome for Class Members in the

3   face of very significant litigation risk.  Fredericks Decl., ¶7.  Accordingly, this factor also strongly

4   supports approval.

5                **7.        Existence of a Governmental Participant**

6           Here, there was a prior governmental investigation into a portion of the claims alleged,

7   which resulted in imposition of only a minor financial penalty totaling $2.5 million under §13 of

8   the Exchange Act.  However, the findings of that SEC investigation did not result in any allegations

9   of fraud (as §13 has no *scienter* element), and (as Defendants have repeatedly pointed out) were

10  limited to settled allegations involving alleged misstatements – all of which were from 2017, and

11  which involved no admissions of even innocent misstatement by any Defendant.  Accordingly,

12  Lead Plaintiff still bore the full brunt of trying to establish that the numerous alleged misstatements

13  from the last three years of the Class Period (up through September 25, 2020) were actionable –

14  and, as to all claims in *this* Action, Lead Plaintiff would still have to plead and prove *scienter*, loss

15  causation, and damages.  In sum, while the SEC's investigative work provided an assist, this is

16  decidedly not a case were Plaintiff could have had a "free ride" to any settlement – let alone a

17  better settlement than the $13 million recovery obtained here – or where Plaintiff failed to pick up

18  (with a vengeance) where the SEC had stopped.  Fredericks Decl., ¶40.  Accordingly, this factor

19  does not diminish the approvability of the Settlement.  *In re Wells Fargo Collateral Prot. Ins.*

20  *Litig.,* No. SAM1702797, 2019 WL 6219875, at *3 (C.D. Cal. Nov. 4, 2019).

21               **8.        The Class's Reaction**

22          "In addition to the enumerated fairness factors of Rule 23(e)(2), courts within the Ninth

23  Circuit typically consider the reaction of the class members to the proposed settlement."  *In re*

24  *Google LLC St. View Elec. Commc'ns Litig.*, 2020 WL 1288377, at *15 (N.D. Cal. Mar. 18, 2020);

25  *see also Churchill*, 361 F.3d at 577.  "The absence of a large number of objectors supports the

26  fairness, reasonableness, and adequacy of the settlement."  *Velazquez*, 2018 WL 828199, at *6.

27  Here, as of September 11, 2023, although Notice has been mailed to 72,491 potential Class

28  Members and Nominees, ***no*** objections to the Settlement have been submitted, only one request

1    for exclusion has been received.  Walter Decl., ¶15-16; Fredericks Decl., ¶8.  This factor is thus

2    on track to also be strongly supportive of the Settlement.  Should any objections be received after

3    the date of this brief, Lead Plaintiff will address them in reply papers.

4              **9.      All Other Rule 23(e)(2) Factors Support Approval of the Settlement**

5              Rule 23(e)(2)(C) also instructs courts to consider whether the relief provided for the class

6    is adequate considering "the effectiveness of any proposed method of distributing relief to the

7    class, including the method of processing class-member claims," "the terms of any proposed award

8    of attorney's fees, including timing of payment," and "any agreement required to be identified

9    under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).  Each of these factors also supports

10    approval of the proposed Settlement or is neutral and provides no basis for a finding that the

11    Settlement is inadequate.

12              First, the procedures for processing Class Members' claims and distributing the proceeds

13    of the Settlement to eligible claimants are well-established, effective methods that have been

14    widely used in securities class action litigation.  The proceeds of the Settlement will be distributed

15    to Class Members who submit eligible Claim Forms with required documentation to the Court-

16    approved Claims Administrator, A.B. Data, an independent firm with extensive experience

17    administering securities class actions.  It will (1) review and process the claims, (2) provide

18    claimants with an opportunity to cure any deficiencies in their claims or request review of the

19    denial of their claims by the Court, (3) and then mail or wire claimants their *pro rata* shares of the

20    Net Settlement Fund (as calculated under the Plan of Allocation) upon approval of the Court.

21    Stipulation, ¶¶4.5-4.14.  This type of claims processing is standard in securities class actions and

22    has long been used and found to be effective.

23              Second, the relief provided for the Class in the Settlement is also adequate when the terms

24    and timing of the proposed award of attorney's fees is considered.  As discussed in the

25    accompanying Fee Memorandum, the requested 25% fee is reasonable in light of *inter alia*

26    Plaintiff's Counsel's efforts in the superior recovery obtained in the face of significant litigation

27    risk.  Indeed, the requested fee is consistent with the 25% "benchmark" for percentage fee awards

28    in the Ninth Circuit and the range of percentage fees that courts within this Circuit award for

17

1   similarly sized settlements.  The requested fee represents a 1.62 multiplier, which is also well

2   within the range of multipliers awarded in similar cases.  With respect to the Court's consideration

3   of the fairness of the Settlement, the approval of the requested attorneys' fees is also entirely

4   separate from approval of the Settlement, and neither Lead Plaintiff nor Lead Counsel may

5   terminate the Settlement based on this Court's or any appellate court's ruling with respect to

6   attorneys' fees. Stipulation, ¶7.5.

7          Lastly, Rule 23(e)(2)(C) asks the Court to consider the proposed Settlement's fairness in

8   light of any agreements required to be identified under Rule 23(e)(3).  *See* Fed. R. Civ. P.

9   23(e)(2)(C)(iv).  As previously disclosed, the only agreement the Parties entered into other than

10  the Stipulation itself is a confidential Supplemental Agreement regarding requests for exclusion

11  Stipulation, ¶10.5.  The Supplemental Agreement gives Defendant Precigen the right to terminate

12  the Settlement if the valid requests for exclusion received from persons and entities entitled to be

13  members of the Class exceeds an amount agreed to by the Parties.  This type of agreement is

14  standard in securities class actions and has no negative impact on the fairness of the Settlement.

15  *See, e.g., Hefler*, 2018 WL 4207245, at *11 ("The existence of a termination option triggered by

16  the number of class members who opt out of the Settlement does not by itself render the Settlement

17  unfair.").

18          **10.    The Settlement Treats Class Members Equitably**

19          In determining whether a class action settlement is "fair, reasonable, and adequate," the

20  Court must also consider whether the Settlement treats class members equitably relative to one

21  another.  Fed. R. Civ. P. 23(e)(2)(D).  Here, as discussed immediately below in Part II, the

22  proposed Settlement easily meets these final criteria, as the Plan of Allocation provides

23  that each eligible claimant will receive their *pro rata* share of the recovery based on damages that

24  they suffered attributable to the alleged fraud.  In other words, no member or subset of the Class

25  is receiving any special treatment, and Lead Plaintiff will receive the same level of *pro rata*

26  recovery under the Plan of Allocation (based on his Recognized Claim as calculated under the

27  Plan) as all other Class Members.

28                                          *   *   *

1    In sum, all of the factors to be considered under Rule 23(e)(2) and Ninth Circuit case law

2    support a finding that the proposed Settlement is fair, reasonable, and adequate.

3    **II.     THE PLAN OF ALLOCATION IS ALSO FAIR, REASONABLE AND ADEQUATE**

4    The standard for approving a plan of allocation under Rule 23 is the same as that for

5    approving a settlement: it must be fair, reasonable, and adequate.  *Class Plaintiffs*, 955 F.2d at

6    1284-85; *Hampton v. Aqua Metals, Inc*., No. 17-CV-07142-HSG, 2021 WL 4553578, at *10 (N.D.

7    Cal. Oct. 5, 2021).  "An allocation formula need only have a reasonable, rational basis, particularly

8    if recommended by experienced and competent counsel."  *Vinh Nguyen v. Radient Pharms. Corp*.,

9    No. SACV 11-00406, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014); *see also Heritage Bond*,

10   2005 WL 1594403, at *11.  Further, "[a] plan of allocation that reimburses class members based

11   on the extent of their injuries is generally reasonable."  *In re Oracle Sec. Litig.*, No. C-90-0931-

12   VRW, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994).

13   Here, the Plan of Allocation (as set forth at pages 11-14 of the Notice, attached as Exhibit

14   A to the Walter Declaration) ("POA") was developed by Lead Counsel in consultation with Lead

15   Plaintiff's consulting damages expert – a Ph.D.-holding financial economist and chartered

16   financial analyst ("C.F.A.") with over 25 years of experience in advising on (among other things)

17   damages, loss causation, and plan of allocation issues in federal securities cases.  The objective of

18   the POA is to equitably distribute the Net Settlement Fund among Authorized Claimants.  In short,

19   the POA proposes that the Net Settlement Fund be allocated to Authorized Claimants (*i.e*., those

20   who submit a completed Claim Form to the Claims Administrator that is ultimately approved for

21   a payment) on a *pro rata* basis based on the relative size of their Recognized Claims, where their

22   Recognized Claims are, in turn, based on that portion of the losses on their Class Period purchases

23   of Precigen shares that can be fairly attributed to the Defendants' misconduct as alleged in the

24   TAC.  In other words, the POA is based on the declines in value of Precigen common stock that

25   occurred following partial disclosure events, which gradually disclosed the truth concerning the

26   true state of Precigen's MBP program (which, in turn, reduced the amount of artificial inflation in

27   the stock price allegedly caused by the alleged misstatements and omissions at issue).  Fredericks

28   Decl., ¶¶45-46.

The Plan is based upon the estimated amount of artificial inflation in the per share price of Precigen (f/k/a Intrexon) common stock (ticker PGEN, formerly XON) during the Settlement Class Period. To have a Recognized Claim under the Plan, a Claimant must have purchased or otherwise acquired their shares during the Settlement Class Period (*i.e.*, between May 10, 2017 and September 25, 2020, inclusive) and held them through one or more of the alleged corrective disclosure dates that removed the alleged artificial inflation caused by Defendants' alleged misrepresentations. A Claimant's loss under the Plan will depend upon several factors, including the date(s) when the Claimant purchased/acquired their Precigen shares during the Settlement Class Period, and whether such shares were sold (and if so, when and at what price), while taking into account the statutory limitation on recoverable damages under the Private Securities Litigation Reform Act ("PSLRA"). The sum of an Authorized Claimant's Recognized Loss Amounts for all their Settlement Class Period purchases/acquisitions is that claimant's "Recognized Claim," and the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. Notice at 11, 13. In Lead Counsel's experience, this type of allocation formula (as customized to the facts of this case by Lead Plaintiff's expert) is fully consistent with customary practice in other securities class actions. Fredericks Decl., ¶46.

One hundred percent of the Net Settlement Fund will be distributed to Class Members who submit eligible claims. *See* Stipulation, ¶¶2.3, 4.14-4.15. To reduce administrative costs, the Plan provides that "Recognized Claims" of less than $10 will not be paid. If any funds remain after an initial distribution to Authorized Claimants, as a result of uncashed or returned checks or other reasons, subsequent cost-effective distributions will be conducted. Notice at 13; Stipulation, ¶4.15. If any residual funds remain after all cost-effective distributions of the Net Settlement Fund to Authorized Claimants have been completed, the Stipulation identifies the Investor Protection Trust ("IPT") as the proposed *cy pres* recipient. *Id.* The IPT is a 501(c)(3) nonprofit organization devoted to investor education (*see* Stipulation, ¶14.15) and is an appropriate *cy pres* recipient because its mission relates to the nature of the securities fraud claims asserted in the Action, and courts in this Circuit have approved it as a *cy pres* recipient in other securities fraud class actions in recent years. *See, e.g., Fleming v. Impax Lab'ys Inc.*, No. 16-CV-06557-HSG, 2022 WL

1  2789496, at *2 (N.D. Cal. July 15, 2022); *In re Illumina, Inc. Sec. Litig.*, No. 3:16-CV-3044,

2  2021 WL 1017295, at *9 (S.D. Cal. Mar. 17, 2021); *In re Capston Turbine Corp. Sec. Litig.*, No.

3  CV1589142, 2020 WL 7889062, at *2 (C.D. Cal. Aug. 26, 2020); *Hefler*, 2018 WL 6619983,

4  at *11.

5       Notably, 72,491 copies of the Notice, which contains the Plan of Allocation and advises

6  Class Members of their right to object to the Plan, have been mailed to potential Class Members

7  and Nominees, but no objections to the Plan have been received to date.  Walter Decl., ¶16;

8  Fredericks Decl., ¶8.  In sum, the proposed Plan of Allocation should also be approved as fair,

9  reasonable, and adequate.

10  **III.    THE   COURT   SHOULD   GRANT   FINAL   CERTIFICATION   OF   THE
      SETTLEMENT CLASS FOR SETTLEMENT PURPOSES**

11

12       As set forth in Plaintiff's motion for preliminary approval of the Settlement, the Settlement

13  Class satisfies all of the requirements of Rules 23(a) and (b)(3).  ECF No. 128 at 19-22; *See also*

14  Preliminary Approval Order, ECF No. 135, ¶¶1-4.  None of the facts supporting certification of

15  the Settlement Class have changed since Plaintiff submitted their preliminary approval motion.

16  Accordingly, Plaintiff respectfully requests that the Court should finally certify the Settlement

17  Class under Rules 23(a) and (b)(3) for purposes of effectuating the Settlement.

18  **IV.    NOTICE TO THE CLASS SATISFIED THE REQUIREMENTS OF RULE 23, DUE
      PROCESS, AND THE PSLRA**

19

20       Plaintiffs have provided the Settlement Class with adequate notice of the Settlement.  Here,

21  Court-approved Notice Plan satisfied both: (i) Rule 23, as it was "the best notice . . . practicable

22  under the circumstances" and directed "in a reasonable manner to all class members who would

23  be bound by the" Settlement, Fed. R. Civ. P. 23(c)(2)(B) & (e)(1)(B); *see also Eisen v. Carlisle &

24  Jacquelin*, 417 U.S. 156, 173-75 (1974); *In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 896

25  (9th Cir. 2017); and (ii) due process, as it was "reasonably calculated, under all the circumstances,

26  to apprise interested parties of the pendency of the action and afford them an opportunity to present

27  their objections," *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *Silber v.

28  Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).

1    In accordance with the Court's Preliminary Approval Order, A.B. Data, the Court-

2 appointed Claims Administrator, began mailing copies of the Notice and Proof of Claim form

3 (collectively, the "Notice Packet") on July 28, 2023, and as of September 11, 2023, had sent by

4 first class mail a total of 72,491 copies of these materials to potential Class Members and nominees.

5 Walter Decl., ¶3-5, 8. In addition, A.B. Data arranged for the Summary Notice to be published in

6 *Investor's Business Daily* and to be transmitted over the internet via *PRNewswire*. *Id.*, ¶9. A.B.

7 Data also established a dedicated settlement website and to provide potential Class Members with

8 information concerning the Settlement and access to downloadable copies of the Notice, Claim

9 Form, and the Stipulation, among other documents, and staffs with live operators during business

10 hours a toll-free number that Class Members may call for information about the Settlement or

11 claims process. *Id.*, ¶¶10-14.

12    The notices apprised Settlement Class Members of, *inter alia*: (i) the amount of the

13 Settlement; (ii) the reasons why the Parties are proposing the Settlement; (iii) the estimated

14 average recovery per affected share of Precigen common stock; (iv) the maximum amount of

15 attorneys' fees and expenses that will be sought; (v) the identity and contact information for a

16 representative of Plaintiff's Lead Counsel whom is available to answer questions concerning the

17 Settlement; (vi) the right of Settlement Class Members to object to the Settlement, and how to do

18 so; (vii) the right of Settlement Class Members to request exclusion from the Settlement Class,

19 and how to do so; (viii) the binding effect of a judgment on Settlement Class Members; (ix) the

20 dates and deadlines for certain Settlement-related events (including the deadlines for requesting

21 exclusion or objecting); and (x) the opportunity to obtain additional information about the Action

22 and the Settlement by contacting Plaintiffs' Counsel, the Claims Administrator, or visiting the

23 Settlement Website. *See* Fed. R. Civ. P. 23(c)(2)(B); PSLRA requirements codified at 15 U.S.C.

24 §78u-4(a)(7). The Notice also contains the Plan of Allocation and provides Settlement Class

25 Members with information on how to submit a Claim in order to be potentially eligible to receive

26 a payment from the Net Settlement Fund.

27    The content disseminated through this notice campaign was more than adequate, as it

28 "generally describe[d] the terms of the settlement in sufficient detail to alert those with adverse

22

1    viewpoints to investigate and to come forward and be heard." *Young v. LG Chem Ltd.*, 783 F.

2    App'x 727, 736 (9th Cir. 2019); *Churchill*, 361 F.3d at 575 (same); *Spann v. J.C. Penney Corp.*,

3    314 F.R.D. 312, 330 (C.D. Cal. 2016) ("Settlement notices must 'fairly apprise the prospective

4    members of the class of the terms of the proposed settlement and of the options that are open to

5    them in connection with the proceedings.'").

6            In sum, this combination of individual first-class mailing of the Notice to all Settlement

7    Class Members who could be identified with reasonable effort, supplemented by notice in an

8    appropriate publication, transmission over a newswire, and publication on internet websites, was

9    "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

10   Comparable notice programs are routinely approved by Courts in this District. *See, e.g.*, *Wong v.*

11   *Arlo Techs., Inc.*, No. 5:19-CV-00372-BLF, 2021 WL 1531171, at *2, *6 (N.D. Cal. Apr. 19,

12   2021) (approving similar notice plan); *Hayes v. MagnaChip Semiconductor Corp.*, No. 14-CV-

13   01160-JST, 2016 WL 6902856, at *4-5 (N.D. Cal. Nov. 21, 2016) (same); *Zynga*, 2016 WL

14   537946, at *7 (finding individual notice mailed to class members combined with summary

15   publication constituted "the best form of notice available under the circumstances").

16                                        **CONCLUSION**

17           For the reasons set forth herein and in the accompanying Fredericks Declaration, Lead

18   Plaintiff respectfully requests that the Court grant final approval of the proposed Settlement,

19   approve the Plan of Allocation, and grant final certification of the Settlement Class for settlement

20   purposes.  A Proposed Order and Final Judgment will be submitted on reply.

21   DATED:  September 14, 2023              Respectfully submitted

22                                          **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

23                                          *s/ William C. Fredericks*
                                            William C. Fredericks (*pro hac vice*)
24                                          Kristen M. Anderson (CA 246108)
                                            Jeffrey P. Jacobson (*pro hac vice*)
25                                          230 Park Avenue, 17th Floor
                                            New York, NY 10169
26                                          Telephone: 212-223-6464
                                            Facsimile:  212-223-6334
27                                          wfredericks@scott-scott.com
                                            kanderson@scott-scott.com
28                                          jjacobson@scott-scott.com

                                              23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
John T. Jasnoch (CA 281605)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
jjasnoch@scott-scott.com

*Lead Counsel for the Putative Class and Attorneys*
*for Lead Plaintiff Raju Shah*

**THE SCHALL LAW FIRM**
Brian J. Schall (CA 290685)
1880 Century Park East, Suite 404
Los Angeles, CA 90067-1604
Telephone: 310-301-3335
Facsimile:  310-388-0192
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff Raju Shah*

PLTFF'S MOT. FOR FINAL APPROVAL OF SETTLEMENT & ALLOCATION PLAN          Case No. 5:20-cv-06936-BLF

1

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.


_s/ William C. Fredericks_
William C. Fredericks

1