John T. Jasnoch (CA 281605)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
jjasnoch@scott-scott.com

William C. Fredericks (*pro hac vice*)
Jeffrey P. Jacobson (*pro hac vice*)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6464
Facsimile:  212-223-6334
wfredericks@scott-scott.com
jjacobson@scott-scott.com

*Attorneys for Lead Plaintiff Raju Shah, and
Lead Counsel for the Putative Class and for Lead Plaintiff Raju Shah*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| MARTIN JOSEPH ABADILLA, et al.,<br><br>                              Plaintiff,<br><br>v.<br><br>PRECIGEN, INC., et al.,<br><br>                              Defendants. | Case No.: 5:20-cv-06936-BLF<br><br>Dept.:  Courtroom 3, 5th Floor<br>Judge: Honorable Beth Labson Freeman<br>Date:   October 19, 2023 at 9:00 AM |
| *This Document Relates to:*<br><br>*ALL CONSOLIDATED ACTIONS* | |

**PLAINTIFF'S COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

# **TABLE OF CONTENTS**

STATEMENT OF ISSUES TO BE DECIDED ...........................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................2

PRELIMINARY STATEMENT ..................................................................................................2

ARGUMENT................................................................................................................................4

I.  PLAINTIFF'S COUNSEL'S REQUEST FOR A 25% ATTORNEYS' FEE AWARD is EQUAL TO the "BENCHMARK pERCENTAGE" IN THIS CIRCUIT AND IS THEREFORE PRESUMPTIVELY REASONABLE ...............................................................................................4

II.  ALL OF THE OTHER MOST COMMONLY CONSIDERED FEE AWARD FACTORS ALSO SUPPORT APPROVAL OF THE REQUESTED 25% FEE...............................................................................6

    A.  The Result Achieved...................................................................6

    B.  The Risks of Litigation ...............................................................7

    C.  The Skill Required and Quality of Work Performed................................9

    D.  The Contingent Nature of the Representation .........................................11

    E.  The Reaction of the Class ........................................................12

    F.  Awards in Comparable Case (including a Lodestar Cross-Check) ...........13

III.  LEAD COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE APPROVED ...............................................................................15

IV.  LEAD PLAINTIFF'S EXPENSES ARE REASONABLE AND SHOULD BE APPROVED ...............................................................................17

CONCLUSION.............................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245 (N.D. Cal. 2015)...................................................................................................11

*Booth v. Strategic Realty Tr., Inc.*,
No. 13-CV-04921-JST, 2015 WL 6002919 (N.D. Cal. Oct. 15, 2015)....................................4

*Buccellato v. AT&T Operations, Inc.*,
2011 WL 3348055 (N.D. Cal. June 30, 2011).........................................................................14

*Destefano v. Zynga, Inc.*,
No. 12-CV-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .......................2, 5, 9, 16

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
307 F.3d 997 (9th Cir. 2002) ....................................................................................................4

*Glass v. UBS Fin. Servs., Inc.*,
331 F. App'x 452 (9th Cir. 2009) ...........................................................................................13

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ..................................................................................................4

*Hatamian v. Advanced Micro Devices, Inc.*,
No. 4:14-CV-00226-YGR, 2018 WL 8950656 (N.D. Cal. Mar. 2, 2018)................................5

*HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*,
No. 07 CV 2245, 2010 WL 4156342 (S.D. Cal. Oct. 15, 2010)..............................................13

*Hopkins v. Stryker Sales Corp.*,
No. 11-CV-02786-LHK, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013)....................................13

*In re Allergan, Inc. Proxy Violation Derivatives Litig.*,
No. 217CV04776, 2018 WL 4959014 (C.D. Cal. Aug. 13, 2018) ...........................................5

*In re Am. Apparel, Inc. S'holder Litig.*,
No. CV1006352, 2014 WL 10212865 (C.D. Cal. July 28, 2014) ..........................................13

*In re Amgen Inc. Sec. Litig.*,
No. CV 7-2536, 2016 WL 10571773 (C.D. Cal. Oct. 25, 2016)............................................13

*In re Anthem, Inc. Data Breach Litig.*,
No. 15-MD-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018)................................4

*In re Apollo Grp. Inc. Sec. Litig.*,
No. CV 04-2147, 2012 WL 1378677 (D. Ariz. Apr. 20, 2012)..............................................14

ii

*In re Banc of Cal. Sec. Litig.*,
No. SACV1700138, 2020 WL 1283486 (C.D. Cal. Mar. 16, 2020) .......................................5

*In re BankAtlantic Bancorp, Inc.*,
No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011)..........................................11

*In re Bluetooth Headset Prod. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ..................................................................................................4

*In re Capacitors Antitrust Litig.*,
No. 3:14-CV-03264-JD, 2018 WL 4790575 (N.D. Cal. Sept. 21, 2018) ...............................14

*In re Equity Funding Corp. of Am. Sec. Litig.*,
438 F. Supp. 1303 (C.D. Cal. 1977) .....................................................................................10

*In re Extreme Networks, Inc. Sec. Litig.*,
No. 15-CV-04883-BLF, 2019 WL 3290770 (N.D. Cal. July 22, 2019)..............................5, 18

*In re Heritage Bond Litig.*,
2005 WL 1594389 ..................................................................................................................11

*In re Heritage Bond Litig.*,
No. 02-ML-1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005)......................................10, 12

*In re Ins. Brokerage Antitrust Litig.*,
297 F.R.D. 136 (D.N.J. 2013)................................................................................................17

*In re Omnicom Grp., Inc. Sec. Litig.*,
597 F.3d 501 (2d Cir. 2010)...................................................................................................11

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................................ *passim*

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ..................................................................................................4

*In re Oracle Corp. Sec. Litig.*,
No. C01-0988SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009)...........................................11

*In re Silver Wheaton Corp. Sec. Litig.*,
No. 215CV05146, 2020 WL 4581642 (C.D. Cal. Aug. 6, 2020) .............................................5

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007).......................................................................................13

*In re Vaxart, Inc. Securities Litig.*,
No. 3:20-cv-059490-VC, ECF No. 274 (Jan. 25, 2023).........................................................15

*In re VeriFone Holdings, Inc. Sec. Litig.*,
No. C-07-6140 EMC, 2014 WL 12646027 (N.D. Cal. Feb. 18, 2014) ..................................14

LEAD PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND
LITIGATION EXPENSES

Case No. 5:20-cv-06936-BLF

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
  No. MDL 2672 CRB (JSC), 2019 WL 2077847 (N.D. Cal. May 10, 2019) ...........................5

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ..............................................................................11, 14

*Int'l Bhd. of Elec. Workers Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*,
  No. 3:09-CV-00419, 2012 WL 5199742 (D. Nev. Oct. 19, 2012) ........................................18

*Missouri v. Jenkins by Agyei*,
  491 U.S. 274 (1989).............................................................................................14

*Petersen v. CJ Am., Inc.*,
  No. 14-CV-2570, 2016 WL 11783674 (S.D. Cal. Oct. 18, 2016) .........................................14

*Rihn v. Acadia Pharms. Inc.*,
  No. 15-CV-00575, 2018 WL 513448 (S.D. Cal. Jan. 22, 2018)..............................................13

*Robbins v. Koger Properties, Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ..............................................................................11

*Shawn Clayborne et al., Plaintiffs, v. NEWTRON, LLC*,
  No. 19-CV-07624-JSW, 2023 WL 5748773 (N.D. Cal. Sept. 6, 2023) ...............................3, 6

*Six (6) Mexican Workers v. Arizona. Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) .................................................................................4

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ..................................................................................17

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007)..............................................................................................11

*Vega v. Weatherford U.S., Ltd. P'ship*,
  No. 1:14-CV-01790, 2016 WL 7116731 (E.D. Cal. Dec. 7, 2016) .......................................16

*Vincent v. Reser*,
  No. C 11-03572 CRB, 2013 WL 621865 (N.D. Cal. Feb. 19, 2013) ....................................15

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ......................................................................... *passim*

**Statutes, Rules, and Regulations**

15 U.S.C.
  §78u-4(a)(4) ..................................................................................................... *passim*

Federal Rules of Civil Procedure
  Rule 23(h) ...........................................................................................................1

**NOTICE OF MOTION FOR AWARD OF ATTORNEYS' FEES
AND LITIGATION EXPENSES**

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE that, pursuant to the Court's Order Preliminarily Approving Settlement and Providing for Notice (ECF No. 135) (the "Preliminary Approval Order") and Federal Rule of Civil Procedure 23(h), Lead Counsel Scott+Scott Attorneys at Law LLP ("Lead Counsel" or "Scott+Scott") will and hereby does move the Court, the Honorable Beth Labson Freeman presiding, on October 19, 2023 at 9:00 a.m. PT, via Zoom, for an Order awarding attorneys' fees and litigation expenses incurred in this securities class action (the "Action").

This motion is based on the following Memorandum of Points and Authorities; the accompanying Declaration of William C. Fredericks in Support of (A) Lead Plaintiff's Motion for Final Approval of Settlement and Plan of Allocation and (B) Plaintiff's Counsel's Motion for Attorneys' Fees and Litigation Expenses ("Fredericks Decl.") and its exhibits; the Declaration of Adam D. Walter of A.B. Data Regarding (a) Mailing of the Notice and Claim Form; (b) Publication of the Summary Notice; and (c) Report on Requests For Exclusion Received to Date, dated September 11, 2023 ("Walter Decl."); (ii) the Declaration of Raju Shah ("Lead Plaintiff" or "Plaintiff") in Support of Motion for Final Approval of Class Action Settlement and Award Pursuant to 15 U.S.C. §78u-4(a)(4) ("Shah Decl."); the Declaration of Brian J. Schall in Support of Fee and Expense Application Filed On Behalf of The Schall Law Firm (all of which are being filed concurrently herewith); as well as all other prior pleadings and papers in this Action, the arguments of counsel, and any additional information or argument that may be required by the Court.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether the Court should approve Plaintiff's Counsel's application for an award of attorneys' fees in the amount of 25% of the Settlement Fund.

2.      Whether the Court should approve Plaintiff's Counsel's application for reimbursement of its litigation expenses in the amount of $88,688.02.

1

3.   Whether the Court should approve Lead Plaintiff's application for an award of $3,000 pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(4).

## MEMORANDUM OF POINTS AND AUTHORITIES

Court-appointed Lead Counsel respectfully submits this memorandum of law in support of Plaintiff's Counsel's application for (a) an award of attorneys' fees in the amount of 25% of the Settlement Fund; (b) payment of total litigation expenses in the amount of $88,688.02; and (c) a PSLRA §78u-4(a)(4) award to Lead Plaintiff in the amount of $3,000 (collectively, the "Fee and Expense Application").[1]

## PRELIMINARY STATEMENT

The Ninth Circuit has long recognized that, in class actions resulting in a common fund, a percentage-based award is appropriate, and an award of 25% of the settlement amount is the "benchmark", or reasonable starting point, in considering such an award.  Lead Counsel respectfully submits that their hard work, skill, and persistence fully merit the requested 25% "benchmark" fee award here, particularly in light of the superior recovery they obtained for the benefit of the Class here in the face of significant litigation risk.  Moreover, as detailed in the accompanying Fredericks Declaration, the requested fee award (equal to roughly $3.25 million) also equates to unexceptional 1.62 multiplier on the combined lodestar of the two plaintiff's counsel law firms (Lead Counsel Scott+Scott, plus the Schall Law Firm).  *See also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051-52, 1051 n.6 (9th Cir. 2002) (when lodestar is used as a cross-check, "most" multipliers are in the range of 1 to 4, while also citing numerous examples of higher multipliers); *Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *21-22 (N.D. Cal. Feb. 11, 2016) (awarding 25% of $23 million settlement, and noting that the resulting 1.7 multiplier was "towards the *lower* end of the Ninth Circuit's scale") (emphasis added).

---

[1]   All capitalized terms herein have the meanings given them in the Stipulation and Agreement of Settlement dated March 1, 2023 (ECF No. 128) (the "Stipulation") at 5-13.

2

LEAD PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES          Case No. 5:20-cv-06936-BLF

Considerations based on "awards in made in similar cases" and lodestar crosscheck factors therefore readily support approval of the requested 25% "benchmark" fee. However, equally supportive of the reasonableness and fairness of the requested fee are each of the additional factors that courts in this Circuit and District most commonly consider in considering fee awards, namely: (i) the results achieved; (ii) the risks of litigation; (iii) the skill required and the work performed; (iv) the contingent nature of the fee; and (v) the reaction of the Class. *See, e.g*, *Vizcaino,* 290 F.3d 1043, 1048-50; *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046-48 (N.D. Cal. 2008); *Shawn Clayborne et al., Plaintiffs, v. Newtron, LLC*, No. 19-CV-07624-JSW, 2023 WL 5748773, at *5 (N.D. Cal. Sept. 6, 2023). In sum:

(1) The requested 25% fee equates to the "benchmark" fee;

(2) As detailed in the accompanying Fredericks Declaration and Memorandum in Support of Final Approval (the "Final Approval Brief"), Lead Counsel here obtained a decidedly superior $13 million result for the benefit of the Class;

(3) The superior result obtained here was achieved in the face of very significant litigation risk, including multiple risks associated with proving *scienter*, loss causation, and damages, as well as material collectability risks;

(4) The case was plainly complex, as it involved all the normal legal complexities of securities class action litigation in the context of claims involving Precigen's efforts to develop complex, and indeed unprecedented, "methane bioconversion" technologies;

(5) Although the September 26, 2023 deadline for filing objections has not yet passed, to date *no* objections to counsel's Fee and Expense Application (or to the proposed Settlement) have been received – even though the Notice of the 25% fee request (and the Settlement) have been mailed to over 72,000 potential Class Members and their nominees.

In addition to attorneys' fees, Lead Counsel (Scott+Scott) also seeks reimbursement of its litigation expenses in the amount of $88,688.02 that it incurred in investigating, prosecuting and resolving this Action. As discussed below, these expenses were reasonably necessary and appropriate, and are all of the type that are routinely approved in class actions.

3

Finally, Lead Plaintiff Raju Shah, a retired controller with a bachelor's degree in accounting who purchased 40,000 Precigen shares during the Class Period, seeks an award of $3,000 under 15 U.S.C. §78u-4(a)(4) for his service to the Class. As discussed below, Mr. Shah merits this relatively modest award.

Accordingly, Plaintiff's Counsel respectfully requests that the Court (a) award them attorneys' fees in the amount of 25% of the Settlement Fund (b) award Lead Counsel (Scott+Scott) reimbursement of its litigation expenses in the amount of $88,688.02, and (c) award Lead Plaintiff $3,000 under 15 U.S.C. §78u-4(a)(4).

## ARGUMENT

**I.    PLAINTIFF'S COUNSEL'S REQUEST FOR A 25% ATTORNEYS' FEE AWARD IS EQUAL TO THE "BENCHMARK PERCENTAGE" IN THIS CIRCUIT AND IS THEREFORE PRESUMPTIVELY REASONABLE**

The Ninth Circuit has held that, in common-fund cases such as this, the "benchmark" percentage-based attorney fee award is 25% of the settlement fund. *See, e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) ("in this circuit, the benchmark percentage is 25%"); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure"); *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002) ("We have established a 25 percent 'benchmark' in percentage-of-the-fund cases."); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."); *Six (6) Mexican Workers v. Arizona. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ("we established 25 percent of the fund as the 'benchmark' award . . . in common fund cases").

Similarly, courts in this District have found fee awards equal to the 25% benchmark to be "presumptively reasonable." *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *4 (N.D. Cal. Aug. 17, 2018) ("[I]t is well established that 25% of a common fund is a presumptively reasonable amount of attorneys' fees."); *Booth v. Strategic Realty Tr., Inc.*, No. 13-CV-04921-JST, 2015 WL 6002919, at *7 (N.D. Cal. Oct. 15, 2015) ("[T]he 25% award requested

4

. . . is equal to the 'benchmark' percentage for a reasonable fee award in the Ninth Circuit [and] is 'presumptively reasonable.'") (citations omitted).  Indeed, courts have found that "in most common fund cases, the award *exceeds* that benchmark [of 25%]." *Omnivision*, 559 F. Supp. 2d 1036, 1047 (emphasis added); *see also In re Allergan, Inc. Proxy Violation Deriv. Litig.*, No. 217CV04776, 2018 WL 4959014, at *1 (C.D. Cal. Aug. 13, 2018) ("'in most common fund cases, the award *exceeds* [the Ninth Circuit's] benchmark,' with a 30% award the norm 'absent extraordinary circumstances that suggest reasons to lower or increase the percentage'") (emphasis added).

Unsurprisingly, the 25% fee requested here is also well within the range -- if not at the *lower* end of the range -- of percentage fees that are typically awarded in securities class actions and other complex class actions in this Circuit with recoveries equal to or even two to three times higher than the $13 million achieved here.  *See, e.g.*, *In re Banc of Cal. Sec. Litig.*, No. SACV1700138, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (awarding 33% of $19.75 million settlement); *Zynga*, 2016 WL 537946, at *22 (awarding 25% of $23 million settlement, representing a 1.7 multiplier); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2019 WL 2077847, at *4 (N.D. Cal. May 10, 2019) (awarding 25% of $48 million settlement, representing a 1.59 multiplier); *Hatamian v. Advanced Micro Devices, Inc.*, No. 4:14-CV-00226-YGR, 2018 WL 8950656, at *1-2 (N.D. Cal. Mar. 2, 2018) (awarding 25% of $29.5 million settlement); *In re Silver Wheaton Corp. Sec. Litig.*, No. 215CV05146, 2020 WL 4581642, at *4 (C.D. Cal. Aug. 6, 2020) (awarding 30% of $41.5 million settlement); *see also In re Extreme Networks, Inc. Sec. Litig.*, No. 15-CV-04883-BLF, 2019 WL 3290770, at *11 (N.D. Cal. July 22, 2019) (awarding 25% of $7 million settlement).

Indeed, published analysis of all PSLRA settlements from 2012 to 2021 confirms that the median attorney's fee awarded in connection with securities class actions that have settled for between $10 to $25 million has remained in a fairly consistent range of *28% to 30%* over the last 25 years, which dates back to the start of the post-PSLRA era in 1996.  *See* J. McIntosh & S. Starykh, *Recent Trends In Securities Class Action Litigation: 2021 Full-Year Review,* NERA ECON. CONSULTING at 27 (Jan. 25, 2022), located at www.nera.com/publications/archive/2022/recent-trends-in-securities-class-action-litigation-2021-full-y.html ("NERA Report").  The

5

25% fee requested here is therefore, if anything, at lower end of the fee range most commonly awarded in comparable cases.

## II.   ALL OF THE OTHER MOST COMMONLY CONSIDERED FEE AWARD FACTORS ALSO SUPPORT APPROVAL OF THE REQUESTED 25% FEE

The reasonableness of Plaintiff's Counsel's 25% fee request is further confirmed by all of the additional factors most commonly considered by courts in this Circuit, namely:  (i) the results achieved, (ii) the risks of litigation, (iii) the skill required and the quality of work performed, (iv) the contingent nature of the representation, (v) awards in similar cases, including a lodestar cross-check; and (vi) the class's reaction to date.  *See, e.g.*, *Vizcaino*, 290 F.3d at 1048-50; *Omnivision*, 559 F. Supp. 2d at 1046-48; *Newtron, LLC*, 2023 WL 5748773, at *5.

### A.   The Result Achieved

Courts consider the results achieved in assessing a fee award request.  *See Vizcaino*, 290 F.3d at 1048 ("results are a relevant" factor in awarding attorneys' fees).  For all the reasons already set forth in the accompanying Final Approval Brief and the Fredericks Declaration, Plaintiff's Counsel respectfully submit that the $13 million, all-cash settlement represents a decidedly superior result for the Class (especially when considered in light of the significant litigation risks involved, as further discussed in §II.B below).

Lead Plaintiff's damages expert estimated that the range of reasonably recoverable damages in this case was roughly $135 to $270 million.  The $13 million Settlement thus represents a recovery of between 5% and 10% of the Class's reasonably recoverable damages.  Fredericks Decl. ¶42.  As discussed in Plaintiff's accompanying Final Approval Brief, recoveries in this range are not only regularly approved by the Courts but, based on several objective metrics, the Settlement here represents a decidedly superior result.  For example, NERA Economic Consulting recently reported that between 2011 and 2021 the median securities class action settlement equated to roughly 2.8% of *maximum* damages in cases involving estimated investor losses between $100 million and $199 million, and 2.3% for estimated investor losses between $200 million and $399 million.  *See* NERA Report.  Here, by comparison, the $13 million Settlement represents approximately 5% of the high end of plaintiff's experts estimate of reasonably recoverable

6

damages, which assumes that Lead Plaintiff would not only survive dismissal, but also ultimately prevail on all reasonably disputable liability and loss causation issues at summary judgment and trial (while avoiding any reversals on appeal).  Similarly, based on other published analysis, the Settlement is almost double the size of the median securities class action settlement ($6.9 million) in the Ninth Circuit between 2012 and 2021.  *See* L. Bulan & L. Simmons, *Securities Class Action Settlements: 2021 Review and Analysis*, CORNERSTONE RESEARCH, at 19 (2021), located at https://www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf.; *see also* Fredericks Decl., ¶42.

Accordingly, the quality of the result achieved strongly supports the requested 25% fee.

## B.     The Risks of Litigation

As discussed in greater detail in the Fredericks Declaration and the Settlement Memorandum, the risks of litigation here were plainly substantial, and some of the challenges that Plaintiff faced in prevailing on liability were made clear early on.

For example, at oral argument on Defendants' motion to dismiss on April 8, 2022, the Court raised doubts about various aspects of Plaintiff's main claims under §10(b) and SEC Rule 10b-5(b).  In particular, although the Court ultimately found in its MTD Order that Plaintiff had adequately alleged that certain statements from the early part of the Class Period were misleading because they purported to describe test results that used natural gas (when Plaintiff alleged that they had instead been obtained using pure methane), the MTD Order *also* found that numerous other statements were *not* actionable.  *Id*., ECF No. 111 at 8-11.  The dismissed statements were largely from the latter half of the Class Period and included all of Defendants' various statements that Precigen's Methane Bioconversion Platform ("MBP") had reached "in the money" status with respect to being able to produce certain chemicals.  Lead Counsel believed that the Court's findings that these and certain other key statements at issue were not actionable was incorrect – and hoped to so persuade the Court on repleading – but there could be no assurance that the Court would reverse course after reviewing the TAC's efforts to replead those claims.  Fredericks Decl., ¶36.

Moreover, although Lead Counsel believe that they would have been able to show that Defendants acted with *scienter*, such proof is never certain in a §10(b) case.  For example, although

7

defendant Walsh ("Walsh") (the executive who headed the MBP Program) was the defendant most at risk of being found to have acted with *scienter* (based primarily on his closeness to the program), he retired from Precigen well before the end of the Class Period, and he personally made only a few of the allegedly false or misleading statements at issue.  Moreover, Walsh did not engage in any suspicious stock sales during the Class Period – a factor that makes it significantly harder to plead (let alone prove) that he acted with *scienter*.  And the Court had already rejected Plaintiff's reliance on certain confidential witnesses ("CWs") to support the requisite "strong inference" of Walsh's *scienter*, so once again there could be no assurance that Plaintiff's reliance on many of the same CWs in the TAC would cause the Court to reach a different view as to Walsh's *scienter*.  And as for defendant Kirk ("Kirk") (Precigen's former chief executive officer and the only other individual defendant0, the challenges of pleading and proving his *scienter* were even greater, as (i) he was much more removed from the MBP Program than Walsh, (ii) the CW allegations against Kirk were significantly weaker than they were as to Walsh, and (iii) Kirk, like Walsh, also did not sell a suspiciously large percentage of his Precigen shares during the Class Period. *Id.*, ¶37.

In addition, Defendants also had significant loss causation defenses.  This case, for example, did not involve a single large drop in Precigen's share price in response to a "clean" disclosure that one or more of Defendants' prior statements about the MBP Program had been false.  Instead, this case involved a series of roughly ten "partial corrective disclosure dates," with Plaintiff alleging that the truth about Defendants' alleged misstatements and omissions only emerged gradually over a multi-year period.  On the facts alleged, proving loss causation was particularly challenging because on certain alleged "partial corrective disclosure dates" the negative stock price reaction was not statistically significant, and even on dates when there was a statistically significant reaction there were other negative (and hence potentially "confounding") disclosures relating to non-MBP-related aspects of Precigen's business.  As a result, proving that the observed price declines on such dates were related to fraud-related disclosures (as opposed to unrelated matters) would likely be quite challenging.  After considering these and other loss causation issues, as noted above Lead Plaintiff's damages expert estimated that the range of reasonably recoverable damages in this case was roughly $135 million to $270 million – but

8

unsurprisingly Defendants contended that reasonably recoverable damages were a mere fraction of such amounts. Fredericks Decl., ¶38.

Moreover, even if Plaintiff had prevailed in full on all his claims against Defendants, the Class's ability to collect on a judgment significantly greater than $13 million (let alone one anywhere near the Class's maximum reasonably recoverable damages) is doubtful at best. For example, Precigen's business has been in sharp decline in recent years and on November 9, 2022 – just a week before the Parties' face-to-face mediation session with Judge Phillips – Precigen reported in its Form 10-Q for the third quarter of 2022 that there was "substantial doubt about the Company's ability to continue as a going concern." In addition, Defendants have only limited available insurance coverage, which could well have been fully exhausted had Lead Plaintiff elected to litigate the Class's claims through discovery, summary judgment, trial, and likely appeals. *Id.* at 39. And, although defendant Kirk is a wealthy individual, as noted above at ¶37 the claims against him were far weaker than those against Walsh. *Id.*, ¶37.

In short, the "risk of litigation" factors also strongly supports the requested fee.

### C.    The Skill Required and Work Performed

Courts have long recognized that the "'prosecution and management of a complex national class action requires unique legal skills and abilities.'" *Zynga, Inc.*, 2016 WL 537946, at *17; *see also Vizcaino*, 290 F.3d at 1048. "'This is particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss.'" *Zynga*, 2016 WL 537946, at *17 (quoting *Omnivision*, 559 F. Supp. 2d at 1047). Here, Lead Counsel respectfully submit that it is among the most experienced and skilled practitioners in the securities-litigation field, with a long and successful track record in litigating securities class actions and similarly complex cases across the country. *See* Fredericks Decl., ¶69 and at Ex. D (firm resume).

Moreover, as set forth in the Fredericks Decl., the superior result obtained here was the product of significant time, effort and skill expended by Lead Counsel since this Action was first filed nearly three years ago. This work included:  (1) an extensive investigation of the claims at issue, which involved collecting and reviewing (a) Precigen's SEC filings, press releases, conference call transcripts from a roughly five year period from roughly a year before through

9

roughly a year after the start of the lengthy Class Period at issue; (b) voluminous published articles (as well internet reports, blogs and message boards) on Precigen specifically, and/or on methane bioconversion technologies generally; and (c) collecting and reviewing the many Wall Street and other analyst reports on Precigen covering the same roughly five year period, as well as (d) identifying, locating, and interviewing (and often repeatedly *re*interviewing) numerous former Precigen employees; (2) researching and preparing a series of increasingly detailed amended complaints (including the SAC and the TAC); (3) preparing comprehensive briefing in opposition to Defendants' motions to dismiss, and presenting oral argument against dismissal; (4) working extensively with Plaintiff's expert on loss causation and damages issues; (5) engaging in an extended and thorough mediation process, which included preparing and exchanging detailed mediation statements and other materials, and preparing for and participating in a full-day mediation with the Hon. Layn Phillips (ret.); (6) negotiating the terms of certain non-monetary settlement issues, and thereafter obtaining and reviewing confirmatory discovery consisting of roughly 83,000 pages of internal documents from Precigen; (7) negotiating and drafting the Stipulation of Settlement; (8) obtaining preliminary approval, including presenting briefing and oral argument in support thereof; (9) working with the Claims Administrator in preparing the Notic Plan; and (10) preparing the Final Approval Motion papers presently pending before the court. *See generally* Fredericks Decl., ¶54-62.  At all times, it respectfully submitted that Lead Counsel's work on behalf of the class was vigorous, professional, and of a caliber that further strongly supports the approval of the requested fee.

Finally, under this factor, some courts also consider the quality and vigor of opposing counsel. *See, e.g.*, *In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 WL 1594403, at *20 (C.D. Cal. June 10, 2005) ("the quality of opposing counsel is important in evaluating the quality of Plaintiff's counsel's work"); *In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) ("plaintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly").  Here, Lead Counsel'a ability to achieve a superior recovery despite being opposed by a team of extremely able lawyers

10

(from the nationally-known firms of Wilson Sonsini Goodrich & Rosati, P.C. and Norton Rose Fulbright US LLP) further supports the requested fee.  Fredericks Decl. ¶70.

### D.      The Contingent Nature of the Representation

The risks assumed by Class Counsel, particularly the risk of not receiving any payment for their work or any reimbursement of expenses they advance, is also factor in determining a reasonable fee award. *In re Heritage Bond Litig.*, 2005 WL 1594389, at *14; *see also, e.g.*, *In re Washington Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1299-1301 (9th Cir. 1994); *Omnivision*, 559 F. Supp. 2d at 1047 (citing "established practice" in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015) ("when counsel takes cases on a contingency fee basis, and litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award"). Moreover, the Supreme Court has repeatedly stressed that private securities actions "provide 'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action,'" *see, e.g.*, *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 318-19 (2007) – and the efficacy of private enforcement depends on ensuring that contingent-fee counsel are adequately compensated for the risks the take in undertaking such representations.

As courts also recognize, there have been many securities class actions in which plaintiffs' counsel took on the risk of pursuing claims on a contingency basis, expending millions of dollars' worth of attorney time, yet received no remuneration whatsoever despite their diligence and expertise.  *See, e.g.*, *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 504 (2d Cir. 2010) (affirming grant of summary judgment in favor of defendant on loss-causation grounds after years of litigation); *In re Oracle Corp. Sec. Litig.*, No. C01-0988SI, 2009 WL 1709050, at *34 (N.D. Cal. June 19, 2009) (granting summary judgment to defendants after eight years of litigation). Even plaintiffs who get past summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion.  *See, e.g.*, *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *In re*

11

*BankAtlantic Bancorp, Inc.*, No. 07-61542-CIV, 2011 WL 1585605, at *38 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict).

Here, Plaintiff's Counsel committed significant resources, time, and money to prosecute this Action vigorously on behalf of the Class for over two years – all without any payment or any guarantee of a fee – knowing that if they did not succeed in defeating Defendants' renewed motion to dismiss, or thereafter fail to prevail at any one of the many further stages of litigation that loomed ahead (*e.g.*, summary judgment, trial, post-trial motions, and appeal) they would likely receive nothing for their hard work and diligent prosecution of this Action. *See* Fredericks Decl. ¶¶66-7.

Accordingly, the fully contingent nature of the representation here also strongly supports the requested fee.

### E.    The Reaction of the Class

The reaction of the Class to the proposed Settlement and the fee motion also supports approval of the fee request. *See Heritage Bond*, 2005 WL 1594403, at *21 ("The existence or absence of objectors to the requested attorneys' fee is a factor i[n] determining the appropriate fee award."). Here, 72,491 copies of the Notice and Claim Form ("Notice Packets") have been mailed to potential Class Members and their nominees, and the Court-approved Summary Notice was published in *PRNewswire* and to be transmitted over the *Investor's Business Daily*. *See* Walter Decl., ¶¶8, 9, 14. The Notice informed potential Class Members that Lead Counsel would apply for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund. Notice (Walter Decl., Ex. A), at p. 9. The Notice further informed Class Members of their right to object to the request for attorneys' fees and expenses. *Id.* Although the deadline for filing any objections will not run until September 26, 2023, to date, no Class Member has filed an objection to the requested fee, nor are counsel or the Claims Administrator otherwise aware of any objections. Walter Decl., ¶16; Fredericks Decl., ¶8.

Should any objections be filed or received before the Fairness Hearing, Lead Counsel will address them in reply papers, but to date this factor also further supports approval of a 25% fee.

12

**F.    Awards in Comparable Case (including a Lodestar Cross-Check)**

As previously discussed, the requested 25% fee is well within – and indeed at the lower end of – the range of customary attorney's fee awards in similarly-sized securities class actions.

As for the application of a "lodestar cross-check," even though it is not even required for an award of attorneys' fees in the Ninth Circuit, "a cross-check of the fee request with a lodestar amount can [also] demonstrate the fee request's reasonableness." *In re Amgen Inc. Sec. Litig.*, No. CV 7-2536, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016); *see also HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*, No. 07 CV 2245, 2010 WL 4156342, at *2 (S.D. Cal. Oct. 15, 2010) ("Courts have found that a lodestar analysis is not necessary when the requested fee is within the accepted benchmark."). When the lodestar is used as a cross-check, the "focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007); *see In re Am. Apparel, Inc. S'holder Litig.*, No. CV1006352, 2014 WL 10212865, at *23 (C.D. Cal. July 28, 2014) ("'In contrast to the use of the lodestar method as a primary tool for setting a fee award, the lodestar cross-check can be performed with a less exhaustive cataloging and review of counsel's hours.'"); *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456-57 (9th Cir. 2009).

Fee awards in class actions with contingency risks such as this one routinely represent multipliers of counsel's lodestar to account for the possibility of non-payment. *See Rihn v. Acadia Pharms. Inc.*, No. 15-CV-00575, 2018 WL 513448, at *6 (S.D. Cal. Jan. 22, 2018) ("Courts have 'routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases'" because, in doing so, it provides a "'financial incentive to accept contingent-fee cases which may produce nothing.'"). Courts award lodestar multipliers up to four times the counsel's lodestar, and sometimes even more. *See Vizcaino*, 290 F.3d at 1051-52 & n.6 (affirming 28% fee award representing 3.65 multiplier and finding that "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases," and that, when the lodestar is used as a cross-check, "most" multipliers were in the range of one to four, but also citing various examples of even higher multipliers); *see also Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL

13

496358, at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases."); *Buccellato v. AT&T Operations, Inc.*, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (awarding fee representing 4.3 multiplier).

Here, the lodestar cross-check further demonstrates the reasonableness of the requested fee percentage. As detailed in the Fredericks Declaration, Lead Counsel spent 2,279.70 hours of attorney and other professional time prosecuting the Action for the benefit of the Class through July 7, 2023 (the date the Court preliminarily approved the Settlement), resulting in a lodestar value of $1,967,552.00. Fredericks Decl. ¶73 and Exhibits A & B thereto. Additional plaintiff's counsel, the Schall Law Firm, spent a further 49 hours with a lodestar value of $32,725.00 in prosecuting the action. Schall Decl., ¶6 and Exhibits A & B thereto. In total, Plaintiff's Counsel spent 2,328.70 hours of attorney and other professional time prosecuting the Action and $2,000,279 in lodestar.

The requested fee of 25% of the Settlement Fund, or $3,250,000 (plus interest earned thereon from the date the settlement proceeds were deposited into escrow) represents a multiplier of 1.62 on Plaintiff's Counsel's combined total lodestar. Such a multiplier is unexceptional, and if anything at the low end of the range of multipliers most commonly awarded in cases involving successful recoveries. *See, e.g.*, *Vizcaino*, 290 F.3d at 1051 (a 3.65 multiplier was "within the range of multipliers applied in common fund cases"); *In re Capacitors Antitrust Litig.*, No. 3:14-CV-03264-JD, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) ("a lodestar multiplier of around 4 times has frequently been awarded in common fund cases"); *Petersen v. CJ Am., Inc.*, No. 14-CV-2570, 2016 WL 11783674, at *1 (S.D. Cal. Oct. 18, 2016) ("[t]he majority of fee awards in the district courts in the Ninth Circuit are 1.5 to 3 times higher than lodestar"); *In re VeriFone Holdings, Inc. Sec. Litig.*, No. C-07-6140 EMC, 2014 WL 12646027, at *2 (N.D. Cal. Feb. 18, 2014) (approving fee award of 4.3 times lodestar).

Consistent with the Northern District of California Procedural Guidance for Class Action Settlements and this Court's Standing Order for Civil Cases, the Fredericks and Schall Declarations include a breakdown of the hours that each attorney and other professional devoted to the litigation into 10 distinct projects undertaken over the course of the litigation. Fredericks

14

Decl., Ex. B; Schall Decl., Ex. B.  Moreover, Plaintiff's Counsel have **excluded** from their fee application for crosscheck purposes any time expended after the Court preliminarily approved the Settlement on July 7, 2023.  Fredericks Decl., ¶¶48; Schall Decl. ¶4.  In addition, Plaintiff's Counsel also made other reductions to its time as a matter of billing discretion.  *Id.*

The hourly rates used to calculate total lodestar are also reasonable.  The hourly rates for Lead Counsel range from $1,095 to $1,595 for partners, from $625 to $795 for associates, and from $395 to $675 for paralegals and professional support staff (investigators).  *See* Fredericks Decl. Exhibits A & B.  The rates of Scott+Scott's staff attorneys, who were integrally involved in the prosecution of this case, were $675 per hour.  Schall's rates are $750 to $850 for partners, $650 for of counsel, and $125 for analysts.  Schall Decl. Exhibits A & B.  These rates are within the range of reasonable fees for attorneys working on sophisticated class action litigation in this District.  *See, e.g.*, *In re Vaxart, Inc. Securities Litig.*, No. 3:20-cv-059490-VC, ECF No. 274 (Jan. 25, 2023) (approving fee award with Scott+Scott's rates ranging from $795 to $1,395 for partners or senior counsel, from $595 to $750 for associates, and roughly $395 for paralegals).[2]

In sum, the "awards in comparable cases" factor and related lodestar cross-check considerations both strongly support the requested 25% fee.

## III.   LEAD COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

"Attorneys who create a common fund are entitled to the reimbursement of expenses they advanced for the benefit of the class."  *Vincent v. Reser*, No. C 11-03572 CRB, 2013 WL 621865, at *5 (N.D. Cal. Feb. 19, 2013).  In assessing whether counsel's expenses are compensable in a common fund case, courts look to whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace.  *See Omnivision*, 559 F. Supp. 2d at 1048

---

[2]   It is well established that it is appropriate to calculate counsel's lodestar based on current, rather than historical rates, in order to compensate counsel for the delay in payment and the loss of interest on the value of their service had they been paid as incurred.  *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 284 (1989); *Washington Pub.*, 19 F.3d at 1305; *In re Apollo Grp. Inc. Sec. Litig.*, No. CV 04-2147, 2012 WL 1378677, at *7 n.2 (D. Ariz. Apr. 20, 2012).

("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.").

From the beginning of the case, Lead Counsel was aware that it might not recover any of its expenses and would not recover anything unless and until the Action was successfully resolved. Lead Counsel also understood that, even assuming that the case was ultimately successful, an award of expenses would not compensate it for the lost use of the funds advanced to prosecute this Action. Thus, Lead Counsel was motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the Action. Fredericks Decl., ¶¶77-8.

As discussed in detail in the Fredericks Declaration, Lead Counsel incurred a total of $88,688.02 in litigation expenses in litigating the Action over the past two years, and these expenses were incurred separately by Lead Counsel (i.e. they are not duplicated in the firm's hourly rates). Fredericks Decl., ¶¶77-8 and Ex. C. (No expense reimbursement request is being made by additional counsel The Schall Firm). The expenses for which payment is sought were reasonable and necessary for the prosecution and resolution of the litigation and are of the type that are routinely charged to clients in non-contingent litigation. These include charges/fees for experts, mediation, document production/storage, court reporters, court/witness fees, couriers, photocopies, online research, press releases, telephone, and travel. Fredericks Decl. Ex. C.

Of the total expenses, Lead Counsel incurred $28,948.87, or approximately 33% of the total litigation expenses, on experts. Fredericks Decl. Ex. C. The combined costs for online legal and factual research amounted to $12,360.93, or approximately 14% of the total expenses. Fredericks Decl. Ex. C. The other expenses are also the types of expenses that are necessarily incurred in litigation and routinely charged to clients. A complete breakdown by category of the expenses incurred by Lead Counsel is set forth at Exhibit C to the Fredericks Declaration.

Courts routinely approve litigation expenses such as these. *See, e.g.*, *Vega v. Weatherford U.S., Ltd. P'ship*, No. 1:14-CV-01790, 2016 WL 7116731, at \*17 (E.D. Cal. Dec. 7, 2016) ("legal research expenses, copying costs, mediation fees, postage, federal express charges, expert fees, . . . and travel expenses," among others, were all categories of expenses "routinely reimbursed" in

16

class actions); *Zynga*, 2016 WL 537946, at \*22 ("courts throughout the Ninth Circuit regularly award litigation costs and expenses – including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses – in securities class actions, as attorneys routinely bill private clients for such expenses in non-contingent litigation"); *see also In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 158 (D.N.J. 2013) (approving reimbursement for "fees for experts, costs associated with creating and maintaining electronic document databases, participating in mediation, travel and lodging expenses, and photocopying, mailing, telephone and deposition transcription costs").

The Notice provided to potential Class Members informed them that Lead Counsel intended to apply for the payment of litigation expenses in an amount not to exceed $110,000.00. The total amount of expenses now sought ($88,688.02) is less than the amount stated in the Notice. The deadline for objecting to the fee and expense application is September 26, 2023. To date, there have been no objections to the request for attorneys' fees or litigation expenses. Walter Decl., ¶16; Fredericks Decl. ¶8.

## IV.   LEAD PLAINTIFF'S EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

The PSLRA provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4); *see also Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (named plaintiff was eligible for a "reasonable" payment as part of class-action settlement).

Here, Mr. Shah, a retired corporate controller and an experienced investor with a bachelor's degree in accounting, and who purchased 40,000 shares of Precigen common stock during the Class Period, seeks a §78u-4(a)(4) award for the time he devoted to his representation of the Class. Shah Decl., ¶1. As set forth in his declaration, Mr. Shah has consistently understood throughout these proceedings that he had an obligation to do his best to represent not only his own interests, but to also faithfully represent the best interests of all other members of the proposed Class. *Id.* at 5. And, consistent with that duty, his declaration confirms that he has, *inter alia*, reviewed

17

LEAD PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND                                     Case No. 5:20-cv-06936-BLF
LITIGATION EXPENSES

litigation papers and Court orders sent to him by counsel, and consulted with counsel at important junctures in the case, including in connection with the filing of various complaints, the Court's ruling on the Defendants' motion to dismiss, and the decision to explore settlement discussions (including the mediation process that led to the proposed Settlement). *Id.* Similarly modest §78u-4(a)(4) awards are commonly approved in this Circuit. *See, e.g.*, *Int'l Bhd. of Elec. Workers Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09-CV-00419, 2012 WL 5199742, at \*5 (D. Nev. Oct. 19, 2012) (awarding two plaintiffs over $4,000 each for their work on behalf of the class, which included reviewing case pleadings and consulting with counsel); *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-CV-04883-BLF, 2019 WL 3290770, at \*11 (N.D. Cal. July 22, 2019) (awarding requested $2,180 to plaintiff, and adding that $5,000 incentive awards are also "presumptively reasonable" in the Ninth Circuit, including in PSLRA cases).

## CONCLUSION

For all the foregoing reasons, Lead Counsel respectfully requests that the Court (1) approve Plaintiff's Counsel's request for an attorneys' fees award equal to 25% of the Settlement Fund; (2) approve the award of litigation expenses to Lead Counsel in the amount of $88,688.02, and to the Schall Law Firm in the amount of $88,688.02; and (3) approve a PSLRA award to Lead Plaintiff Shah in the amount of $3,000.

DATED: September 14, 2023

SCOTT+SCOTT ATTORNEYS AT LAW LLP

*s/ William C. Fredericks*
William C. Fredericks (*pro hac vice*)
Kristen M. Anderson (CA 246108)
Jeffrey P. Jacobson (*pro hac vice*)
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6464
Facsimile: 212-223-6334
wfredericks@scott-scott.com
kanderson@scott-scott.com
jjacobson@scott-scott.com

SCOTT+SCOTT ATTORNEYS AT LAW LLP
John T. Jasnoch (CA 281605)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565

18

jjasnoch@scott-scott.com

*Lead Counsel for the Class and Attorneys for Lead Plaintiff Raju Shah*

**THE SCHALL LAW FIRM**
Brian J. Schall (CA 290685)
1880 Century Park East, Suite 404
Los Angeles, CA 90067-1604
Telephone: 310-301-3335
Facsimile:  310-388-0192
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff Raju Shah*

19

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.


s/ *William C. Fredericks*
William C. Fredericks

1

LEAD PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND                                    Case No. 5:20-cv-06936-BLF
LITIGATION EXPENSES