John T. Jasnoch (CA 281605)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
jjasnoch@scott-scott.com

William C. Fredericks (*pro hac vice*)
Jeffrey P. Jacobson (*pro hac vice*)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6464
Facsimile:  212-223-6334
wfredericks@scott-scott.com
jjacobson@scott-scott.com

*Attorneys for Lead Plaintiff Raju Shah and
Lead Counsel for the Putative Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| MARTIN JOSEPH ABADILLA, et al.,<br><br>Plaintiff,<br><br>v.<br><br>PRECIGEN, INC., et al.,<br><br>Defendants.<br><br>*This Document Relates to:*<br><br>*ALL CONSOLIDATED ACTIONS* | Case No.: 5:20-cv-06936-BLF<br><br>Dept.: Courtroom 3, 5th Floor<br>Judge: Honorable Beth Labson Freeman<br>Date: October 19, 2023 at 9:00 AM |

**PLAINTIFF'S AND PLAINTIFF'S COUNSEL'S COMBINED REPLY MEMORANDUM OF LAW IN SUPPORT OF (A) MOTION FOR FINAL APPROVAL OF SETTLEMENT PLAN OF ALLOCATION, AND (B) MOTION FOR AN AWARD OF ATTORNEYS' <u>FEES AND LITIGATION EXPENSES</u>**

Lead Plaintiff ("Plaintiff") and his counsel submit this single reply brief in further support of the (a) Motion for Final Approval of Settlement and Plan of Allocation (ECF No. 136) and (b) Motion for Award of Attorneys' Fees and Expenses (ECF No. 137) (collectively, the "Motions").[1]

### **PRELIMINARY STATEMENT**

Now that the deadline for submitting objections and opt-out requests has passed, the reaction of the Settlement Class has only further confirmed that the proposed $13 million Settlement is fair, reasonable, and adequate and should be approved.  Following a robust, Court-approved notice program – which included mailing individual Notice to over 72,571 potential Settlement Class Members and Nominees – only two individuals have asked to "opt-out" of the Class and only two others have objected.  In short, this paucity of objectors and opt-outs shows that the "reaction of the class" factor also strongly supports approving the Settlement.

The two objections should also be overruled on their merits.  First, the objections to the alleged "inadequacy" amount of the Settlement are conclusory and lack the kind of specificity required by Rule 23(e)(5) to state a cognizable objection.  In almost every settlement, one might argue that more should have been recovered, but the objectors simply ignore, for example, the very significant litigation risks present here (as reflected by, *inter alia*, the Court's MTD Order dismissing the Second Amended Complaint) and the objective data showing that the result obtained nonetheless reflects a superior recovery.  Indeed, while one objector argues that Plaintiff should have achieved a better result in light of the SEC's prior §16(b) enforcement action against Precigen (which did not even allege fraud), that objector fails to explain why the SEC's willingness to settle its claims for $2.5 million does anything other than reflect *highly favorably* on the fairness, adequacy, and reasonableness of the *more than five times larger* settlement ($13 million) that Plaintiff and his counsel obtained to settle far more difficult §10(b) claims.  Similarly, the sole objection to the fee request is that Plaintiff's Counsel's should have recovered even more.  But again, that objection disregards Plaintiff's Counsel success in obtaining a superior recovery in the

---

[1]    All capitalized terms herein have the meanings given them in the Stipulation (ECF No. 128, ¶¶1.1-1.53) or in the previously filed Fredericks Declaration (ECF No. 138).

1

face of above-average risk, and does not consider Ninth Circuit cases regarding fee awards in comparably complex cases.  Accordingly, that objection should also be rejected.

## ARGUMENT

### I.    THE REACTION OF THE CLASS FURTHER SUPPORTS APPROVING THE SETTLEMENT AND THE FEE AND EXPENSE APPLICATION

It is respectfully submitted that the opening papers in support of the Motions show why both should be approved.  That only two objections and two requests for exclusion have been submitted, following a robust notice program that reached ***over 70,000*** potential Class members, strongly confirms that the "reaction of the class" factor supports approval of both Motions.

**Reaction to the Settlement**.  "[T]he favorable reaction of the overwhelming majority of class members to the Settlement is perhaps the most significant factor" in determining the fairness and adequacy of a settlement.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 119 (2d Cir. 2005) (citing 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS §13:58).  Accordingly, "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc*., 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008); *see also*, *e.g*., *Destefano v. Zynga, Inc*., No. 12-CV-04007-JSC, 2016 WL 537946, *13 (N.D. Cal. Feb. 11, 2016) ("a 'court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it'").  Similarly, that only two requests for exclusion were submitted in response to the mailing of over 70,000 Notice Packets also supports approving the Settlement.  *See, e.g.*, *Zynga*, 2016 WL 537946, at *14 ("a low number of exclusions . . . also supports the reasonableness of a securities class action settlement"); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 15-MD-02672-CRB, 2022 WL 17730381, at *9, 11 (N.D. Cal. Nov. 9, 2022) (that only 27 class members opted-out and only three objected supported approving settlement).

Moreover, it is significant that ***no*** institutional investors have objected to (let alone opted out from) the Settlement.  Institutional investors are typically the most sophisticated members of

2

a securities class, and possess the incentive and ability to object if they believe a settlement lacks merit. Institutional investors here held in the range of 60%-70% of Precigen's publicly traded common stock.[2] The absence of objections (and opt-out requests) by any institutional investors is thus particularly probative of the Settlement's fairness and adequacy. *See, e.g.*, *In re Wells Fargo & Co. S'holder Deriative Litig.*, 445 F. Supp. 3d 508, 518 (N.D. Cal. 2020) (class's reaction supported settlement where "not one sophisticated institutional investor objected"); *Zynga, Inc.*, 2016 WL 537946, at \*14 (lack of exclusion requests from institutional investors also "strongly supports" final approval of settlement).[3]

**Reaction to the Fee Request**. The Class's reaction should also be considered with respect to the Fee and Expense Application. The Notice disclosed that Plaintiff's Counsel would be seeking a fee equal to 25% of the Settlement Fund. ECF Nos. 138, 138-3. In addition, counsel's Fee and Expense Application ("Fee Brief") (which was publicly posted on the Settlement Website), included both the briefs and supporting declarations that provided detailed information concerning Plaintiff's Counsel's lodestar and expenses, and the tasks performed by the various lawyers who worked on the case. *See* ECF Nos. 137-141. The Notice also stated that Plaintiff's Counsel would seek litigation expenses of up to $111,000 (although counsel are actually seeking reimbursement of only $88,688.02 in expenses). *See* Fee Brief at \*3. Finally, the Notice also advised the Class that Plaintiff would seek a relatively modest award of $3,000 under 15 U.S.C. §78u-4(a)(4), for his time spent representing the Class.

---

[2]  Publicly available data shows that over 200 institutional investors currently own roughly 62% of PGEN shares, with roughly 10% held by insiders, and roughly 28% held by smaller investors. *See* PGEN Major Holders, available at https://finance.yahoo.com/quote/PGEN/holders/. Bloomberg data available by subscription indicates that institutional holdings of PGEN shares were generally even greater during the Class Period, before Precigen's most recent post-2021 share price collapse.

[3]  Similarly, that there was also only one objection from an individual investor to the Plan of Allocation supports approval of that Plan. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 240 (E.D.N.Y. 2013) (conclusion that proposed allocation plan was fair and reasonable was "buttressed" by absence of objections from class members).

3

That only one objection was made to Plaintiff's Counsel's 25% fee request – and none were submitted as to the requested expenses or §78u-4(a)(4) award – also supports a finding that these requests are fair, reasonable and should be approved.  *See, e.g.*, *In re Volkswagen*, 2022 WL 17730381, at \*9, 11 (existence of only three objections supported approval of requested fees); *see also, e.g.*, *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (absence of any objections by institutional investors, who had greatest incentive to object if they believe requested fees are excessive, further supported approval of requested fees).

In sum, the "reaction of the Class" factor – like the other relevant factors previously discussed in Plaintiff's Counsel's opening papers – strongly supports approval of the requested 25% fee, the requested award of $88,688.02 in litigation expenses, and Plaintiff's request for a relatively modest PSLRA award of $3,000.

## II.    THE OBJECTIONS TO THE SETTLEMENT SHOULD BE OVERRULED

There were only two objections to the Settlement.  *See* Objection of Ronald Dean, ECF No. 142 ("Dean Objection"), and Objection of Lawrence B. Dvores, ECF No. 143 ("Dvores Objection").  Both of these objections should be overruled.

### A.    Mr. Dean's Objections to the Settlement Should Be Overruled[4]

Mr. Dean writes, "This settlement is not being made for the little guy, or even the medium guy.  All the money will go to the major players . . . the ones who should have already known better. . . .  It is just not fair.  It has all of the appearances of a set-up."  ECF No. 142 at 1.

First, to the extent this objection can be read as contending that the Settlement is collusive, such a charge is utterly without foundation.  For example, as discussed in Plaintiff's Approval

---

[4]    As a threshold matter, Mr. Dean, a practicing California lawyer, failed to establish his standing to object because his objection (ECF No. 142) did not comply with the Preliminary Approval Order's requirements, also set forth in the Notice, that objectors state the date(s), price(s), and number of Precigen shares they purchased and sold during the Class Period; Preliminary Approval Order, ECF No. 135, ¶26; Notice at Item 17 at 9.  Although, the Court should arguably simply strike his objection (*see Miller v. Ghirardelli Choc. Co.*, No. 12-CV-04936-LB, 2015 WL 758094, at \*10 (N.D. Cal. Feb. 20, 2015) (striking objections because objectors did not prove standing as class members); *Feder v. Elec. Data Sys. Corp.*, 248 Fed. Appx. 579, 581 (5th Cir. 2007) (same)), Plaintiff's response will focus on the merits of the objections.

Memo, the Settlement is based on the parties' acceptance of a Mediator's Proposal made by a highly experienced mediator (and retired federal judge), the Hon. Layn Phillips. Second, to the extent Mr. Dean is alleging that the amount of the Settlement is inadequate, the objection should be overruled because it is conclusory, lacks specificity, and otherwise failed to address any of the specific factors relevant to assessing the adequacy of a settlement under week established Ninth Circuit law. Indeed, as this Court has noted in another case, "[objector's] assertion that the settlement should be ten times greater is devoid of supporting facts or legal citations. Accordingly, it does not provide a basis for denying the motion for final approval." *Quiruz v. Specialty Commodities, Inc.*, No. 17-cv-03300-BLF, 2020 WL 6562334, (N.D. Cal. Nov. 9, 2020) citing *Young v. LG Chem Ltd.*, 783 F. App'x 727, 737 (9th Cir. 2019) (objection to class action settlement unpersuasive where "devoid of analysis and legal citations"). *See also* §C below.

To the extent that Mr. Dean's assertion that "all the money will go to the major players" is intended as an objection to the Plan of Allocation, it must also be overruled. As discussed in Plaintiff's opening brief, the Plan of Allocation provides that each eligible claimant will receive their *pro rata* share of the recovery based on damages that they suffered attributable to the alleged fraud. ECF No. 136 at 18. In other words, no member or subset of the Class will receive any special treatment. That larger investors with larger "Recognized Losses" will receive more is not "unfair," but simply reflects the equitable principle that class members, as is customary in such cases, should be paid on a *pro rata* basis. Mr. Dean's objection to the Plan should also be overruled.

Mr. Dean's "procedural" objections should also be rejected. First, he complains that he did not receive the Notice until September 16, 2023. However, consistent with the Court's Preliminary Approval Order (ECF No. 135, ¶15), A.B. Data mailed the Notices to (*inter alia*) "Nominee" holders (such as brokers) within 21 days, *i.e.*, on July 28, 2023. Walter Decl., ¶3. A.B. Data's mailings to such "Nominees" included a cover letter that advised them that, within seven (7) days of receipt, the Nominee was required to either (a) forward copies of the Notice Packet to beneficial owners, or (b) provide A.B. Data with beneficial owners' contact details so that A.B.

5

Data could accomplish such mailings.  *Id*., ¶6.  Because A.B. Data did not receive Mr. Dean's name and address from a broker, it is virtually certain that Mr. Dean's broker assumed responsibility for mailing his Notice (Supp. Walter Decl., ¶10) – and that Mr. Dean's complaint about not receiving his Notice until September 16 lies with his broker (and not with A.B. Data or Plaintiff's Counsel).  In any event, the Court-approved Notice Plan built in time for such delays, such that Mr. Dean was not prejudiced by his broker's delay, as Mr. Dean still received the Notice by September 16, and was able to timely submit his objection prior to the September 26, 2023 deadline.

Finally, Mr. Dean objects to the Court-approved requirements that require him and other class members to "dig up" the records of his Precigen transactions in order to submit them as part of a valid proof of claim.  However, submitting adequate transaction documentation to the Claims Administrator is obviously necessary to ensure that settlement proceeds go only to eligible Class Members and to enable the Claims Administrator to weed out inaccurate – or fraudulent – claims. Nor does Mr. Dean identify any aspect of the settlement's documentation requirements that are not entirely customary and standard in securities class actions.

### B.     Mr. Dvores' Procedural Objections Should Be Overruled

Mr. Dvores, a retired New Jersey lawyer, raises a different procedural objection, namely that the Notice was "defective" since it did not give Class members "important information" about an SEC proceeding that resulted in a consent decree issued against Precigen under which Precigen agreed to pay a $2.5 million fine.  ECF No. 143, at 3-4.  Mr. Dvores further argues, without authority, that the notice was defective for failing to "summarize all material factors which shareholders should consider in deciding whether to approve or reject the settlement." *Id*. at 4.

However, "summarizing all material factors" is ***not*** the standard for evaluating the adequacy of a notice in 23(b)(3) classes.  Instead, the Ninth Circuit has made clear that Rule 23 simply requires that the notice contain "sufficient detail simply 'to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *In re Online DVD-Rental Antitrust Litig*., 779 F.3d 934, 946 (9th Cir. 2015) (quoting *Lane v. Facebook*, *Inc*., 696 F.3d 811, 826 (9th

6

Cir. 2012)); *see also Rodriguez v. W. Publ'g  Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) (notice contained "adequate information" when it did not exaggerate class representative support for the settlement and described "the aggregate amount of the settlement fund and the plan for allocation").  Here, the Notice easily meets the standards articulated in *Online DVD-Rental*, *Lane*, and *Rodriguez* because it adequately describes the nature of the case and ***summarizes*** the main claims and defenses at issue.  *See* ECF No. 136, §IV.  But no Notice could ever purport to summarize ***all*** facts potentially relevant to a settlement (and still be concise enough to mail) – which is precisely why the Notice here advised Class Members that if they wanted more detailed information they could go to the Settlement Website.  *See* Notice, Item 23 at 14, and "More Information" at 2.  On the Settlement Website, Dr. Dvores (and every other Class Member) has ready access to, *inter alia,* copies of Second Amended Complaint, all parties' respective briefs on Defendants' Motion to Dismiss that complaint, the Court's MTD Order, and Plaintiff's subsequently filed Third Amended Complaint – ***all*** of which discuss the SEC proceedings at length.  Moreover, the SEC proceedings (and the extent to which they did – and did not – support Plaintiff's claims is also expressly discussed in Plaintiff's opening Final Approval Brief (*see* ECF No. 136, §II.C.7), which was also posted to the Settlement Website promptly after it was filed on September 18, 2023.  *See* Supp. Walter Decl., ¶7).  In sum, Mr. Dvores provides no authority for his view that the SEC action must be disclosed in the text of the Court-approved Notice itself, and ignores the fact that all Class Members who were interested have had ready access, through the Settlement Website, to ample information about the SEC proceedings.

### C.    Dvores' Substantive Objections to the Settlement Should Be Overruled

Like Mr. Dean, Mr. Dvores also objects to the $13 million Settlement as inadequate.  ECF No. 143, at 3.  "Of course, every litigant hopes to recover the full amount of his losses, but the very nature of a settlement is that the parties must compromise and accept less than a full recovery, in exchange for no longer facing the risk of losing on the merits and losing any chance of recovery." *Free Range Content, Inc. v. Google, LLC*, No. 14-CV-02329-BLF, 2019 WL 1299504, at *8 (N.D. Cal. Mar. 21, 2019).  And here, like Mr. Dean, Mr. Dvores simply ignores (a) the

7

serious risks that Plaintiff would have obtained significantly less (or nothing) for the Class had he risked a further motion to dismiss, completed formal discovery, and taken the case through trial, and (b) all of the other multiple *Churchill* factors that weigh in favor of (if not heavily in favor of) approval here.  *See* Plaintiff's Final Approval Brief (ECF No. 136, §I.C.2).

Mr. Dvores' objection does address "risk factors" in one specific, but narrow, context: namely, he apparently believes that Plaintiff should have achieved a better result in light of the SEC's prior §16(b) enforcement action against Precigen.  But Mr. Dvores (a lawyer) fails to note that the SEC's §16(b) claims did not even allege fraud, nor does he explain why the SEC's willingness to settle its claims for $2.5 million does anything other than reflect ***highly favorably*** on the fairness, adequacy, and reasonableness of the ***more than five times larger*** settlement ($13 million) that Plaintiff and his counsel obtained to settle vastly more difficult §10(b) claims.

Mr. Dvores (like Mr. Dean) also ignores the objective data showing that the $13 million Settlement is also double the size of the median securities class action settlement ($6.9 million) in the Ninth Circuit between 2012 and 2021, and reflects a higher percentage of recovery than other similarly sized securities class action settlements over the same period.  And both objectors also ignore that the Settlement is based on a "mediator's proposal" by an experienced retired federal judge. *See, e.g.*, *In re Purdue Pharma, L.P.*, 635 B.R. 26, 62 (S.D.N.Y.) (referring to Judge Phillips as "among the most experienced and respected mediators in the country").  In sum, Plaintiff and his counsel respectfully submit that the $13 million "bird in the hand" settlement is fair, reasonable, and adequate, and Mr. Dvores' contrary objections should be rejected.

Finally, Mr. Dvores objects to the Class Period set forth in the Settlement because it starts too late to capture other allegedly misleading statements that pre-date May 10, 2017 – with the result that the Settlement provides no recovery for Precigen shares purchased prior to the start of Class Period. ECF No. 143, at 2-3.  Mr. Dvores, however, provides no legal authority for such an objection, nor are Plaintiff's Counsel aware of any.  To the contrary – and leaving aside the objector's failure to specify any of the "other statements" that he believes were actionable – any such objection must be overruled for the simple reason that the proposed Settlement does not

8

release or otherwise impair any claims arising from any transactions that occurred prior to the start of the Class Period.  *See* Stipulation, ¶1.40.  Indeed, since the commencement of this action, at no point has Plaintiff – nor *any* other plaintiff or putative Class member (including those who filed any of the other related actions against Precigen before the Court consolidated all such cases into this consolidated action) – sought to represent a class that included those who purchased Precigen shares before May 10, 2017.  *See* the original, Amended, Second Amended, and Third Amended Complaints filed in *Abadilla* case, 5:20-cv-06936-BLF, ECF No. 1, ¶1; ECF No. 71, ¶1; ECF No. 88, ¶1; and ECF No. 116, ¶1, respectively; *Seppen* Complaint, Case No. 5:20-cv-07422, ECF No. 1, ¶1; *Chen* Complaint, Case No. 5:20-cv-0758g, ECF No. 1, ¶1.  *See also  Critical Path, Inc. Secs. Litig. v. Critical Path, Inc.*, C 1-00551, No. C 01-00551 WHA, 2002 WL 32627559, at *5 (N.D. Cal. June 18, 2002) (options purchasers not unfairly excluded from the settlement class because "[t]he consolidated complaint did not mention options [and] [t]here is no evidence that [objector] or anyone else urged the inclusion of such claims in the complaint.").  Had Mr. Dvores wished to, he was free to pursue his purported claims against Defendants for damages stemming from his pre-Class Period purchases of Precigen shares.  But his belated efforts to raise the issue now provides no basis for rejecting the Settlement, or for preventing other Class Members from being able to participate in its benefits.

### D.    Mr. Dvores' Objection to Plaintiff's Counsel Request for a 25% Award of Attorneys' Fees Should Be Overruled

The sole objection to Plaintiff's Counsel's request for a "benchmark" attorneys' fee award of 25% of the Settlement Fund is Mr. Dvores' objection that the "overall results in this case, and its potential if taken to a jury trial" do not warrant a 25% fee.  ECF No. 143, at 4-5.  In short, the basis of Mr. Dvores' objection to the requested attorneys' fees is that the $13 million settlement amount is inadequate.  As discussed above, however, the $13 million recovery represents a decidedly superior result in the face of significant litigation risk.  Mr. Dvores also cites no case law that suggests that a downward departure from the presumptively reasonable 25% "benchmark" fee requested here would be warranted – especially given that *all* of the relevant fee award factors

9

under Ninth Circuit law (as shown in Plaintiff's Counsel's opening Fee Memo) weigh in favor of – if not strongly in favor of – the requested 25% fee. Accordingly, the objection should be overruled.

## III. THE COURT HAS THE POWER TO REJECT THE REQUESTS FOR EXCLUSION AS INVALID

As noted above, the requests for exclusion from two individuals out of 72,571 potential Settlement Class Members who received notice constitute a miniscule portion of the Settlement Class. Plaintiffs note that even these two requests for exclusion are invalid on their face, as they fail to comply with the requirements for validly "opting out" as set forth in the Preliminary Approval Order and the Notice. Specifically, neither request provided the required information regarding the dates of the investor's Class Period transactions in Precigen common stock during the Class Period – nor any other documentation that would even establish that they are members of Class in the first place. Supp. Walter Decl., ¶8, Exs. A & B (attaching copies of the exclusion requests); *see also* Notice at Item 12 at (iii) and (iv) at 8; Preliminary Approval Order, ¶23 (providing that "[t]he request for exclusion shall not be effective unless it provides the required information . . . or is otherwise accepted by the Court."). Accordingly, the Court has full authority to reject the requests for exclusion as invalid. However, ***provided*** that no Defendant seeks to terminate the Settlement under the Parties Supplemental Agreement on grounds relating to these opt-out requests, Plaintiff has no objection to granting these opt-out requests.

## CONCLUSION

For the foregoing reasons, and those set forth in their opening papers, Lead Plaintiff and his Counsel respectfully request that the Court (a) approve the proposed Settlement and Plan of Allocation and enter the Parties' previously agreed form of [proposed] Order and Final Judgment; and (b) approve Plaintiff's Counsel's Fee and Expense Application in full.

DATED: October 5, 2023          Respectfully submitted

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

*s/ William C. Fredericks*
William C. Fredericks (*pro hac vice*)

10

Kristen M. Anderson (CA 246108)
Jeffrey P. Jacobson (*pro hac vice*)
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6464
Facsimile: 212-223-6334
wfredericks@scott-scott.com
kanderson@scott-scott.com
jjacobson@scott-scott.com

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
John T. Jasnoch (CA 281605)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
jjasnoch@scott-scott.com

*Lead Counsel for the Putative Class and Attorneys for Lead Plaintiff Raju Shah*

**THE SCHALL LAW FIRM**
Brian J. Schall (CA 290685)
1880 Century Park East, Suite 404
Los Angeles, CA 90067-1604
Telephone: 310-301-3335
Facsimile: 310-388-0192
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff Raju Shah*

11

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.


s/ *William C. Fredericks*
William C. Fredericks