UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARTIN JOSEPH ABADILLA, et al.,

      Plaintiffs,

      v.

PRECIGEN, INC., et al.,

      Defendants.

Case No.  20-cv-06936-BLF

**ORDER (1) GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION AND (2) GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE AWARD**

Re: ECF Nos. 136, 137

In this putative class action, Lead Plaintiff Raju Shah alleges that Defendants Precigen, Inc. ("Precigen"), Randal J. Kirk, and Robert F. Walsh (with Mr. Kirk, the "Individual Defendants," and with Precigen, "Defendants") committed securities fraud by publicly touting Precigen's methane bioconversion platform ("MBP"), which sought to convert cheap natural gas into valuable industrial products.  *See* Third Am. Compl. ("TAC"), ECF No. 116.  Lead Plaintiff brings two claims: (1) a claim for violation of § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder, against all Defendants, and (2) a claim against Mr. Kirk and Mr. Walsh for violation of § 20(a) of the Exchange Act.  *See id.* ¶¶ 210–24. Now pending before the Court are (1) Mr. Shah's Motion for Final Approval of Settlement and Plan of Allocation (the "Approval Motion") and (2) Counsel's Motion for Award of Attorneys' Fees and Litigation Expenses and Lead Plaintiff's Award (the "Fees Motion").  *See* Approval Mot., ECF No. 136; Fees Mot., ECF No. 137

The Court held a final fairness hearing on October 19, 2023.  For the reasons set forth below and on the record at the final fairness hearing, the Court GRANTS the Approval Motion

United States District Court
Northern District of California

and the Fees Motion.

## I.      BACKGROUND

### A.      The Parties and Claims

Precigen is a Virginia corporation with its headquarters in Maryland.  *See* TAC ¶ 15. Precigen went public in 2013 under the name Intrexon, which it changed to Precigen on February 1, 2020.  *See id.* ¶¶ 15, 18.  Precigen is a synthetic biology company that develops biologically based products used in multiple economic sectors, including healthcare, agriculture, energy, chemicals, and environmental sciences.  *See id.* ¶¶ 2, 15.  As relevant to this action, Mr. Kirk served as Precigen's Chairman of the Board and Chief Executive Officer ("CEO") from before May 10, 2017 until he departed from his role as CEO on January 1, 2020.  *See id.* ¶¶ 1, 19.  Mr. Kirk continued to serve as Precigen's Executive Chairman.  *See id.* ¶ 19.  Mr. Walsh served as Precigen's Senior Vice President of Energy & Fine Chemical Platforms from May 2013 through November 2019 and was a self-described "Section 16 Officer."  *See* TAC ¶ 20.

Mr. Shah allegedly purchased Precigen common stock during the Class Period and was damaged by Defendants' alleged misstatements.  *See id.* ¶¶ 1, 14.  Each of the Individual Defendants allegedly personally uttered or signed company disclosures containing the alleged misstatements.  *See id.* ¶¶ 19–21.

### B.      Procedural History

This putative class action was commenced on October 5, 2020.  *See* ECF No. 1.  On March 4, 2021, the Court consolidated two cases—*Chen v. Precigen, Inc.*, No. 20-cv-7442 (N.D. Cal.), and *Seppen v. Precigen, Inc.*, No. 20-cv-7586 (N.D. Cal.)—with this action.  *See* ECF No. 51. On April 8, 2021, the Court granted Mr. Shah's motion for appointment as lead plaintiff and approved his selection of Scott+Scott Attorneys at Law LLP ("Scott+Scott") as lead counsel.  *See* ECF No. 57.  Mr. Shah filed a consolidated Amended Complaint on May 18, 2021.  *See* ECF No. 71.  The defendants filed a motion to dismiss, after which the parties stipulated that Mr. Shah would file a second amended complaint in lieu of an opposition.  *See* ECF No. 86.  The Court granted the stipulation, *see* ECF No. 87, and Mr. Shah filed the Second Amended Complaint on September 27, 2021.  *See* ECF No. 88.  On May 31, 2022, the Court granted the defendants'

United States District Court
Northern District of California

subsequent motion to dismiss the Second Amended Complaint, with leave to amend.  *See* ECF No. 111.  On August 1, 2022, Mr. Shah filed the operative Third Amended Complaint against Defendants.  *See* ECF No. 116.

The following day, the parties notified the Court that they had scheduled an in-person mediation session before Judge Phillips in November 2022, and set forth a stipulated request to vacate all deadlines in this action pending the result of the mediation; the Court granted the request.  *See* ECF Nos. 118, 119.  On December 1, 2022, the parties informed the Court that they had engaged in an in-person mediation on November 17, 2022, and that they had reached an agreement in principle to settle this action.  *See* ECF No. 122.  On March 2, 2023, Mr. Shah filed an unopposed motion for preliminary approval of the Settlement Agreement, *see* ECF No. 128; the Court held a hearing on the motion on July 6, 2023, and granted preliminary approval of the settlement agreement on July 7, 2023, *see* ECF Nos. 131, 135.

Mr. Shah then filed the pending Motion on September 14, 2023.  *See* Mot.  He concurrently filed a motion for attorneys' fees and expenses, which the Court will address in a separate order pursuant to the Court's discussion with the parties at the hearing on the Motion, which the Court held on October 19, 2023.  *See* ECF No. 150.

**C.      Terms of the Settlement Agreement**

After over two years of litigation, the parties settled the case with the aid of the Honorable Layn Phillips (Ret.), a highly experienced and respected mediator in the securities field.  The written Settlement Agreement contemplates the certification of an opt-out settlement class pursuant to Federal Rule of Civil Procedure 23, defined as:

> All Persons or entities who purchased or otherwise acquired publicly traded shares of the common stock of Precigen, Inc. f/k/a Intrexon Corporation ('Precigen') (ticker PGEN, formerly XON) between May 10, 2017 and September 25, 2020, inclusive (the 'Class Period'), and were damaged thereby, provided, however, that the following are excluded from the Class: (i) Defendants; (ii) the past and current officers, directors, partners and managing partners of Precigen (and any of Precigen's subsidiaries or affiliates, including but not limited to MBP Titan LLC); (iii) the immediate family members, legal representatives, heirs, parents, subsidiaries, successors, successors and assigns of any excluded Person; and any entity in which any excluded Person(s) have or had a majority ownership interest, or that is or was controlled by any excluded Person(s).  Also excluded from

United States District Court
Northern District of California

the Settlement Class will be those Persons who file valid and timely requests for exclusion in accordance with the Court's Preliminary Approval Order.

Mot. for Prelim. Approval of Class Action Settlement, Exh. 2 ("Settlement Agreement") ¶ 1.46, ECF 128; Order Granting Prelim. Settlement Approval ("Prelim. Order") 1, ECF No. 135. The Settlement Agreement provides that Precigen will pay the total amount of $13,000,000 (thirteen million U.S. dollars) (the "Settlement Amount") to settle all claims asserted against Precigen, Mr. Kirk, and Mr. Walsh in this action. *Id.* ¶¶ 2.1, 3.2. The Settlement Amount is non-reversionary. *Id.* ¶ 2.3 ("The Settlement is not a claims-made settlement. Upon the occurrence of the Effective Date, no . . . person or entity who or which paid any portion of the Settlement Amount . . . shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever."). After deduction of attorneys' fees and costs, settlement administrator's fees, and incentive awards to Mr. Shah as the class representative, the remainder of the Settlement Amount (the "Net Settlement Fund") will be available for distribution to the Settlement Class. *See id.* ¶¶ 1.27, 1.34.

To be considered for a distribution, a member of the Settlement Class must submit a claim form to A.B. Data, Ltd. (the "Claims Administrator") within the time prescribed in the Preliminary Approval Order. *See id.* ¶¶ 4.5–4.6. The Claims Administrator then determines, under the supervision of counsel, the validity of each claim and calculate each authorized claimant's distribution according to the Plan of Allocation, as outlined in the Proposed Long Form Notice to be sent to the Settlement Class. *See id.* ¶ 4.7; *see also* Settlement Agreement, Exh. A-1 ("Proposed Long Form Notice"), at 10–13 ("Plan of Allocation"), ECF No. 128.

The Plan of Allocation provides that the Net Settlement Fun "will be distributed to Authorized Claimants on a pro rata basis based on the relative size of their Recognized Claims." Long Form Notice 13. A claimant's "Recognized Claim . . . shall be the sum of [the claimant's] Recognized Loss amounts for their Eligible Shares." *Id.* at 12. "Eligible Shares" are "[p]ublicly tradable shares of the common stock of [Precigen] purchased on or after May 10, 2017 and on or before August 11, 2020," *id.* at 10, and a claimant's "Recognized Loss" per eligible share will be the inflation per share on the date of the purchase—according to a table that divides the eligible

4

share time frame into eight periods and provides a set inflation per share for each period—minus the inflation per share (according to the same table) on the date of the sale of the share, *id.* at 11. The Plan of Allocation provides certain other rules capping the Recognized Loss for shares sold in various periods. *See id.* at 11–12.

### D. Preliminary Approval

On July 7, 2023, the Court granted Mr. Shah's unopposed motion for preliminary approval of the Settlement Agreement.  *See* Prelim. Order.  The order preliminarily certified the Settlement Class for the sole purpose of the Settlement Agreement, and likewise certified Mr. Shah as the class representative and Scott+Scott as class counsel.  *See id.* ¶¶ 2-4.  The Court held that the Settlement Agreement merited preliminary approval, finding that "(a) the [Settlement Agreement] resulted from good faith, arm's length negotiations conducted under the auspices of an independent mediator, the Hon. Layn Phillips (U.S.D.J., ret.), who has extensive experience in mediating class action litigations of this type; and (b) the terms of the proposed Settlement are sufficiently fair, reasonable, and adequate to warrant providing notice of the Settlement to the Settlement Class Members and the scheduling of a Fairness Hearing to be held following the issuance of such notice pursuant to FRCP Rule 23(e)."  *Id.* ¶ 5.  The Court further approved the form and substance of (a) the Proposed Long Form Notice, (b) the Proposed Proof of Claim and Release Form, and (c) the Proposed Summary Notice (together, the "Proposed Notice Packet"). *See id.* ¶ 11; *see also id.* at Exhs. 1–3.  The Proposed Long Form Notice included statements that (1) class counsel would seek attorneys' fees "of up to 25% of the Settlement Amount (or roughly $3,250,000), plus interest earned at the same rate as earned by the Settlement Fund, and [] litigation expenses not to exceed $111,000," (2) Mr. Shah would apply for an award not to exceed $5,000, and (3) any awards would be paid from the Settlement Fund (together, the "Fee and Expense Application").  *See* Proposed Long Form Notice 1, 8.

The Preliminary Approval Order required the Claims Administrator to mail the Proposed Notice Packet "by first class mail, postage prepaid . . . to all Settlement Class Members who can be identified with reasonable effort" by the "Notice Mailing Date" deadline, *i.e.*, "by the twenty-first (21st) calendar day after entry of this Order (or, if later, by the fifth (5th) business day of the

date on which at least the first $300,000 of the Settlement Amount has been paid by or on behalf of Defendants by wire into the Escrow Account) . . ..”  Prelim. Order ¶ 15.  Settlement Class members had 60 days from the Notice Mailing Date to either (1) mail any request for exclusion from the Settlement Class to the Claims Administrator or (2) electronically or physically file on the public docket in this action any objection to the Settlement Agreement, Plan of Allocation, or Fee and Expense Application.  *See id.* ¶¶ 23, 26.  Any Proof of Claim form was due within 120 days of the Notice Mailing Date.  *See id.* ¶ 21.

### E.     Notice, Opt-Out Requests, and Objectors

The Notice Mailing Date for the Notice Packet was July 28, 2023, *i.e.*, the Claims Administrator mailed the initial Notice Packets—consisting of the Long Form Notice, Proof of Claim and Release Form, and Summary Notice, in accordance with the Preliminary Approval Order—21 days after the Court preliminarily approved the Settlement Agreement.  *See* Decl. of Adam D. Walter (“Claims Adm’r Decl.”) ¶¶ 3–5, ECF No. 140; *id.* at Exh. A (“Notice Packet”), ECF No. 140-1.  The Claims Administrator subsequently mailed Notice Packets to additional potential Settlement Class members after receiving their names and addresses.  *See* Claims Adm’r Decl. ¶¶ 5–8.  Further, on August 14, 2023, the Claims Administrator caused the Summary Notice to be published in *Investor’s Business Daily* and to be transmitted over the internet via the *PR Newswire* service.  *See id.* ¶ 9; *id.* at Exhs. B–C, ECF Nos. 140-2, 140-3.  The Summary Notice advised potential members of the Settlement Class that they could obtain the Long Form Notice and other information by calling a provided dedicated toll-free number or by accessing a provided dedicated website.  *See id.*  Both the Long Form Notice and the Summary Notice informed potential members of the Settlement Class that requests for exclusion were due in writing to the Claims Administrator by September 26, 2023; that objections to the Settlement Agreement, Plan of Allocation, or Fee and Expense Application had to be filed with the Court and delivered to counsel for the parties by September 26, 2023; and that a Proof of Claim form had to be mailed or submitted online no later than November 25, 2023.  *See* Long Form Notice 3; Summary Notice 3.

As of October 5, 2020, the Claims Administrator had mailed 72,571 Notice Packets to potential members of the Settlement Class.  *See* Suppl. Decl. of A.B. Data (“Claims Adm’r Suppl.

Decl.") ¶ 5, ECF No. 144-1.  Two individuals, Lisa M. Moose and Selorme Agbleze, submitted opt-out requests to the Claims Administrator.  *See id.* ¶ 8.  Both requests are postmarked prior to September 26, 2023, but neither provides the number of shares transacted or the dates, prices, and documentation of transactions and share ownership.  *See* Claims Adm'r Suppl. Decl., Exh. A ("Moose Opt-Out"), ECF No. 144-2; *id.* at Exh. B ("Agbleze Opt-Out"), ECF No. 144-3.  Two other individuals, Ronald Dean and Lawrence B. Dvores, mailed objections to the Court on or before September 26, 2023; the objections were filed on the public docket on September 21, 2023, and October 3, 2023, respectively.  *See* Dean Obj., ECF No. 142; Dvores Obj., ECF No. 143.

## II.    MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT AND PLAN OF ALLOCATION (ECF NO. 136)

To grant final approval of the class action settlement, the Court must determine that (1) the class meets the requirements for certification under Federal Rule of Civil Procedure 23, and (2) the settlement reached on behalf of the class is fair, reasonable, and adequate.  *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) ("Especially in the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement.").

### A.    Certification of Settlement Class Under Federal Rule of Civil Procedure 23

There exist four prerequisites to bring a class action: (1) numerosity, *i.e.*, the class is so numerous that joinder of all members is impracticable; (2) commonality, *i.e.*, there are questions of law or fact common to the class; (3) typicality; *i.e.*, the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) adequacy, *i.e.*, the representative parties will fairly and adequately protect the interests of the class.  *See* Fed. R. Civ. P. 23(a).  In a settlement-only certification context, the "specifications of the Rule— those designed to protect absentees by blocking unwarranted or overbroad class definitions— demand undiluted, even heightened, attention." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

"In addition to satisfying the Rule 23(a) prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)."  *Id.* at 614.  Rule 23(b)(3) is at issue here, and it requires the Court to find that (1) "questions of law or fact common

to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). That is, Rule 23(b)(3) "add[s] 'predominance' and 'superiority' to the qualification-for-certification" requirements. *Amchem*, 521 U.S. at 615. In enacting a "'close look' at the predominance and superiority criteria," *id.*, courts consider the non-exhaustive list of factors listed in Rule 23(b)(3), namely:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D).

Here, the Court concluded that the Rule 23(a) and 23(b)(3) requirements were satisfied when it granted preliminary approval of the class action settlement. *See* Prelim. Order ¶¶ 2–3. The Court is not aware of any new facts that would alter that conclusion. However, the Court briefly reviews each of the Rule 23 requirements as follows.

### 1. Rule 23(a): Numerosity, Commonality, Typicality, and Adequacy

The Rule 23(a) prerequisites for class certification are numerosity, commonality, typicality, and adequacy. *See* Fed. R. Civ. P. 23(a); *Amchem*, 521 U.S. at 614. The Court concludes that the numerosity requirement is met because joinder of all class members would be impracticable under the circumstances of this case. Counsel estimated that there were thousands of purchasers of Precigen common stock during the Class Period, *see* Mot. for Prelim. Approval 20, ECF No. 128, and the Claims Administrator has mailed over 72,000 Notice Packets to potential class members, *see* Claims Adm'r Suppl. Decl. ¶ 5. These numbers easily meet the numerosity requirement. *See Floyd v. Saratoga Diagnostics, Inc.*, No. 20-cv-01520–LHK, 2021 WL 2139343, at *3 (N.D. Cal. May 26, 2021) ("[C]lasses of 40 or more are numerous enough.") (citations omitted); *Wong v. Arlo Techs., Inc.*, No. 19-cv-00372, 2021 WL 1531171, at *4 (N.D. Cal. Apr. 19, 2021) ("[T]he Court finds that because the class contains thousands of members (6,084 claims filed as of the [final fairness] hearing), joinder of all class members would be

United States District Court
Northern District of California

impracticable.").

The commonality requirement is met because the key issues in the case are the same for all class members, such as (1) whether Defendants violated Section 10(b)—and whether the Individual Defendants violated Section 20(a)—of the Exchange Act; (2) whether Defendants omitted or misrepresented material facts regarding Precigen's MBP in the company's earnings reports and calls; and (3) the appropriate measure of damages, if any. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").

Mr. Shah's claims are also typical of those of the Settlement Class, as he alleges that he purchased Precigen common stock during the Class Period and was subsequently damaged due to Defendants' conduct, just like the other members of the Settlement Class. *See* TAC ¶ 14; *Castillo v. Bank of Am., NA*, 980 F.3d 723, 729 (9th Cir. 2020) ("Under the [typicality] rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.") (citation omitted).

Finally, to determine Plaintiffs' adequacy, the Court "must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (citations omitted). There is no evidence of any conflict of interest that would preclude Mr. Shah from acting as class representative, or Scott+Scott from acting as Class Counsel, and the Court does not find that Scott+Scott has failed or will fail to continue to vigorously litigate this action on behalf of the class.

## 2. Rule 23(b)(3): Predominance and Superiority

Class certification under Rule 23(b)(3) requires a showing of both predominance and superiority. *See Amchem*, 521 U.S. at 615. The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623. The common questions in this case which would be subject to common proof include (a) whether the

Defendants violated the Exchange Act; (b) whether Defendants made public statements during the Class Period that were materially false, misleading, or incomplete or otherwise omitted material facts; (c) whether the Individual Defendants caused Precigen to issue false and misleading statements; (d) whether the Individual Defendants acted knowingly or recklessly in issuing false and misleading statements; (e) whether the price of Precigen common stock was artificially inflated; and (f) the extent of damage sustained by class members and the appropriate measure of damages. *See* TAC ¶ 205.  These questions predominate.  In light of this commonality, and the number of potential class members, and because the damages suffered by some class members may be sufficiently small as to economically deter separate actions to recover individual losses, the Court concludes that a class action is a superior mechanism for adjudicating the claims at issue. *See Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (citation omitted).  The Court has also considered the factors listed in Rule 23(b)(3) as relevant to predominance and superiority, *i.e.*, (i) the class members' (lack of) interest in individually controlling the prosecution of separate actions; (ii) the extent and nature of any litigation controlling the prosecution or defense of separate actions already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in this particular forum; and (iv) the (lack of) likely difficulties in managing a class action, and concludes that they support a finding of predominance of class questions and superiority of class adjudication.  *See* Fed. R. Civ. P. 23(b)(3)(A)–(D).

Accordingly, the Court certifies this action as a class action, solely for purposes of the Settlement Agreement, pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of a Class (the "Settlement Class") consisting of all Persons or entities who purchased or otherwise acquired publicly traded shares of the common stock of Precigen Inc. (f/k/a Intrexon Corporation) ("Precigen") (ticker: PGEN, formerly XON) between May 10, 2017 and September 25, 2020, inclusive (the "Class Period"), and were damaged thereby, provided, however, that the following are excluded from the Settlement Class: (i) Defendants; (ii) the past and current officers, directors, partners and managing partners of Precigen (and any of Precigen's subsidiaries or

affiliates, including but not limited to MBP Titan LLC); (iii) the immediate family members, legal representatives, heirs, parents, subsidiaries, successors, successors and assigns of any excluded Person; and any entity in which any excluded Person(s) have or had a majority ownership interest, or that is or was controlled by any excluded Persons.  Also excluded from the Settlement Class are those Persons or entities listed on Exhibit A hereto that the Court finds have timely and validly requested exclusion from the Settlement Class in accordance with the Court's Preliminary Approval Order.

### B.   Review of Settlement Agreement

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  "Adequate notice is critical to court approval of a class settlement under Rule 23(e)."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998) (*overruled on other grounds by Dukes*, 564 U.S. at 338).  Further, in evaluating a potential settlement, Federal Rule of Civil Procedure 23(e) "requires the district court to determine whether [the] proposed settlement is fundamentally fair, adequate, and reasonable."  *Id.* at 1026.  And where, as here, the parties reach a settlement prior to formal class certification (*i.e.*, certification decided in the course of continuing litigation, rather than for the purposes of settlement), courts must examine the settlement with "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citing *Hanlon*, 150 F.3d at 1026).

### 1.   Adequate Notice

For the Court to approve a class action settlement, "[t]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice."  *Officers for Just. v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).

The Court previously approved Mr. Shah's plan for providing notice to the class when it granted preliminary approval of the class action settlement.  *See* Prelim. Order ¶ 19.  Prior to granting preliminary approval, the Court carefully examined the proposed class notice and notice

United States District Court
Northern District of California

United States District Court
Northern District of California

plan, and determined that they complied with Federal Rule of Civil Procedure 23 and the constitutional requirements of due process.  *See id.*  Mr. Shah has provided two declarations from the Claims Administrator explaining the implementation of the plan.  *See* Claims Adm'r Decl. ¶¶ 2–14; Claims Adm'r Suppl. Decl. ¶¶ 2–7.  Based on those declarations, the Claims Administrator has caused the Summary Notice to be published in *Investor's Business Daily* and to be transmitted over the internet via the *PR Newswire* service, *see* Claims Adm'r Decl. ¶ 9; mailed 72,571 Notice Packets to potential members of the Settlement Class, *see* Claims Adm'r Suppl. Decl. ¶ 5; promptly responded to all inquiries made over the toll-free telephone helpline dedicated to the Settlement Agreement in this action, *see id.* ¶ 6; and established and maintained a case-specific website dedicated to the Settlement Agreement that permits online claim submission and includes general information about the case as well as downloadable copies of the Settlement Agreement, Long Form Notice, Proof of Claim and Release Form, and the pending Approval Motion and Fees Motion.  *See id.* ¶ 7.  The Long Form Notice and Summary Notice (and thus the Notice Packet) all stated that Class Members could "object to the proposed Settlement, the proposed Plan of Allocation, Plaintiff's Counsel's request for attorney's fees and expenses, and/or the Lead Plaintiff's request for an award for his service, time and expenses."  *See* Long Form Notice 3, 9–10; Summary Notice 3.  Based on the implementation details of the notice plan, the Court is satisfied that the Settlement Class has received the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see Hanlon*, 150 F.3d at 1025 (rejecting argument that notice was inadequate where "the notice provided . . . each member with the opportunity to opt-out and individually pursue any state law remedies that might provide a better opportunity for recovery").

Accordingly, the Court finds that the forms and methods of notifying the Settlement Class of the Settlement Agreement and its terms and conditions and the rights of Settlement Class Members in connection therewith (a) constituted the best notice practicable under the circumstances; (b) constituted due and sufficient notice of these proceedings and the matters set forth herein (including the Settlement and Plan of Allocation) to all persons and entities entitled to such notice; and (c) met the requirements of due process, Rule 23 of the Federal Rules of Civil

1  Procedure, and Section 21D(a)(7) of the Exchange Act, 15 U.S.C. § 78u-4(a)(7) (as amended by

2  the Private Securities Litigation Reform Act of 1995).  No Settlement Class Member is or shall be

3  relieved from the terms and conditions of the Settlement, including the releases provided for in the

4  Settlement Agreement, based upon the contention or proof that such Settlement Class Member

5  failed to receive actual or adequate notice.  A full opportunity has been offered to the Settlement

6  Class Members to object to the proposed Settlement (and to participate in the hearing thereon), or

7  to exclude themselves from the Settlement Class.  The Court further finds that the notice

8  provisions of the Class Action Fairness Act, 28 U.S.C. § 1715, were fully discharged.  Thus, it is

9  determined that all Settlement Class Members are bound by this Order and concurrently filed

10  Final Judgment, except for those persons listed on Exhibit A hereto.

### 2. Fairness, Adequacy, and Reasonableness of Settlement Agreement

11  In the Ninth Circuit, courts use a multi-factor balancing test to analyze whether a given

12  settlement is fair, adequate, and reasonable.  That test includes the following eight factors, known

13  as the *Hanlon* or *Churchill* factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

19  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (quoting *Churchill*

20  *Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)); *see also Hanlon*, 150 F.3d at 1026

21  (listing same factors).  Settlements that occur before formal class certification also require a higher

22  standard of fairness.  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).  In

23  reviewing such settlements, in addition to considering the above factors, the court also must

24  ensure that "the settlement is not the product of collusion among the negotiating parties."  *In re*

25  *Bluetooth*, 654 F.3d at 946–47.

26  Rule 23 requires the district court to consider a similar list of factors before approving a

27  settlement as fair, reasonable, and adequate, including whether:

28  A. the class representatives and class counsel have adequately represented the class;

13

1      B.  the proposal was negotiated at arm's length;

2      C.  the relief provided for the class is adequate, taking into account:

3          i.  the costs, risks, and delay of trial and appeal;

4          ii.  the effectiveness of any proposed method of distributing relief to the class,

5              including the method of processing class-member claims;

6          iii.  the terms of any proposed award of attorney's fees, including timing of

7              payment; and

8          iv.  any agreement required to be identified under Rule 23(e)(3); and

9      D.  The proposal treats class members equitably relative to each other.

10  Fed. R. Civ. P. 23(e)(2).

11        The Advisory Committee notes to subdivision (e)(2) of Rule 23 state that "[c]ourts have

12  generated lists of factors to shed light" on whether a proposed class-action settlement is "fair,

13  reasonable, and adequate."  Advisory Committee Notes to 2018 Amendments, Fed. R. Civ. P.

14  23(e)(2) ("2018 Advisory Notes").  The Advisory Committee explains that the enumerated,

15  specific factors added to Rule 23(e)(2) are not intended to "displace" any factors currently used by

16  the courts, but instead aim to focus the court and attorneys on "the core concerns of procedure and

17  substance that should guide the decision whether to approve the proposal."  *Id.*; *cf. United States v.*

18  *Vonn*, 535 U.S. 55, 64 n.6 (2002) ("[T]he Advisory Committee Notes provide a reliable source of

19  insight into the meaning of a rule . . . .").  The Court therefore applies the framework set forth in

20  Rule 23 with guidance from the Ninth Circuit's precedent, bearing in mind the Advisory

21  Committee's instruction not to let "[t]he sheer number of factors" distract the Court and parties

22  from the "central concerns" underlying Rule 23(e)(2).

23          **a.**      **Rule 23(e)(2)(A):  Adequacy of Representation**

24        Rule 23(e)(2)(A) requires the Court to consider whether "the class representatives and

25  class counsel have adequately represented the class."  This consideration overlaps with certain

26  *Hanlon* factors, such as the extent of discovery completed and the stage of the proceedings, the

27  experience and view of counsel, and the reaction of the class members of the proposed settlement.

28  *See Hanlon*, 150 F.3d at 1026.

United States District Court
Northern District of California

As discussed above when certifying the class, *see supra*, at Part II(A)(1), the Court finds that both Mr. Shah and Scott+Scott have adequately represented the Settlement Class as, respectively, class representative and class counsel.  In its Preliminary Approval Order, the Court appointed Lead Plaintiff Mr. Shah as class representative for the Settlement Class and Scott+Scott as class counsel for the Settlement Class after finding each had fairly and adequately protected the interests of the Settlement Class, and would continue to do so.  *See* Prelim. Order ¶¶ 2–4; *see also* Order Appointing Lead Plaintiff and Approving Selection of Lead Counsel 6–8, ECF No. 57.  No contrary evidence has emerged.  For the past two-plus years, Mr. Shah and Scott+Scott have zealously prosecuted this action on behalf of the Settlement Class.  Mr. Shah's claims were investigated through Scott+Scott, who conducted an extensive pre-filing investigation; drafted detailed complaints in this matter based on that investigation and legal research; fully briefed Defendants' motion to dismiss the Second Amended Complaints; conducted further investigative work, including taking further confidential witness interviews, prior to filing the TAC; and consulted extensively with damage and loss causation experts.  *See* Decl. of William C. Fredericks ("Fredericks Decl.") ¶¶ 17, 4–22, 60.  Further, the parties prepared and exchanged comprehensive pre-mediation briefs and participated in a full-day, in-person mediation session in November 2022 before a Judge Phillips, a highly experienced mediator of complex commercial cases, after which Scott+Scott obtained and reviewed roughly 83,000 pages of documents from Precigen to confirm the fairness and reasonableness of the Settlement Agreement before signing the Settlement Agreement in March 2023.  *See id.* ¶¶ 7, 23–26, 31.  Scott+Scott is experienced in securities fraud class actions, and, based on its thorough understanding of the strengths and weaknesses of this action, has concluded that the Settlement Agreement represents a superior outcome for the Settlement Class in light of the significant litigation risks.  *See id.* ¶¶ 7, 41, 43–44, 69.

Mr. Shah has been actively involved in this litigation, having spent a conservative estimate of 15 hours in connection with (i) researching and following the performance of Precigen common stock; (ii) communicating with counsel to discuss the basis of possible securities claims against Defendants; (iii) reviewing the initial complaint in this action and later amended complaints filed by counsel on his behalf and that of the Settlement Class; (iv) discussing with counsel the Court's

United States District Court
Northern District of California

1  order granting Defendants' motion to dismiss the Second Amended Complaint with leave to

2  amend; (v) discussing with counsel the strengths and weaknesses of the action, the prospects for a

3  successful mediation, and overall settlement objectives; and, following the mediation, (vi)

4  discussing with counsel the mediation proposal made by Judge Phillips. *See* Declaration of Raju

5  Shah ("Shah Decl.") ¶¶ 7–8; ECF 139.

6        The Court also finds that Mr. Shah and Scott+Scott have continued to represent the

7  Settlement Class since the Court's issuance of the Preliminary Approval Order by diligently

8  complying with the notice plan and settlement procedures. *See* Fredericks Decl. ¶ 8; Claims

9  Adm'r Decl. ¶ 8. Although over 72,000 Notice Packets have been sent out to potential class

10  members and the Summary Notice was both published in *Investor's Business Daily* and

11  transmitted over the internet via the *PR Newswire* service, only two potential class members have

12  requested to opt out of the Settlement Agreement[1] and two other individuals have objected. *See*

13  Claims Adm'r Decl. ¶ 9; Claims Adm'r Suppl. Decl. ¶¶ 5, 8, 10. "A court may appropriately infer

14  that a class action settlement is fair, adequate, and reasonable when few class members object to

15  it." *Knapp v. Art*, 283 F. Supp. 3d 823, 833–34 (N.D. Cal. 2017).

16        For the foregoing reasons, the Court concludes that the adequacy of representation weighs

17  in favor of approval.

18              **b.      Rule 23(e)(2)(B):  Arms-Length Negotiation**

19        Rule 23(e)(2)(B) requires the Court to consider whether "the proposal was negotiated at

20  arm's length." This consideration overlaps with the *Bluetooth* requirement that the Court examine

21  the risk of collusion in this pre-class certification Settlement Agreement with "an even higher level

22  of scrutiny" to ensure that "the settlement is not the product of collusion among the negotiating

23  parties." *In re Bluetooth*, 654 F.3d at 946–47. Signs of collusion may include (a) disproportionate

24  distributions of settlement funds to counsel; (b) negotiation of attorney's fees separate from the

25  class fund (a "clear sailing" provision); or (c) an arrangement for funds not awarded to revert to

26

27  _____

[1] Although both opt-out requests were technically improper due to their failure to include the
number of shared purchased, counsel for Mr. Shah indicated at oral argument that these putative
28  class members were nevertheless deemed excluded from the Settlement Class. *See* Oct. 19 Hr'g
Tr. ("Tr.") 13:4–23.

1    the defendants.  *Id.*  If multiple indicia of implicit collusion are present, the district court has a

2    heightened obligation to assure that fees are not unreasonably high.  *Id.* (quoting *Staton v. Boeing*

3    *Co.*, 327 F.3d 938, 965 (9th Cir. 2003)).

4          Here, the parties held a full-day, in-person mediation session on November 17, 2022

5    before the Honorable Layn Phillips.  *See* Fredericks Decl. ¶¶ 23–26.  The Settlement Agreement is

6    based on a fully consistent with Judge Phillips's independent "mediator's proposal."  *See id.* ¶ 7.

7    Further, the Settlement Agreement was not signed until months later, on March 1, 2023, following

8    further months of negotiation and Scott+Scott's review of over 83,000 pages of additional internal

9    documents that Precigen produced as part of the mediation process.  *See id.* ¶¶ 7, 31.  The Court

10   finds these facts highly probative of an arms-length negotiation free of collusion, and notes that it

11   considers Judge Phillips one of the foremost mediators in the nation in the securities litigation

12   field.  None of the potential signs of collusion enumerated by the Ninth Circuit are present here—

13   the 25% fee request sought by counsel is reasonable under the Ninth Circuit benchmark, rather

14   than disproportionate; there is no "clear sailing" provision; and no funds revert to Defendants.  *See*

15   Fees Mot. 3; Approval Mot. 7–8.  The requested fees are discussed in greater detail below.  This

16   factor weighs in favor of approval.

17          c.        **Rule 23(e)(2)(C):  Adequacy of Relief Provided for Class**

18          Rule 23(e)(2)(C) requires the Court to consider whether "the relief provided for the class is

19   adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the

20   effectiveness of any proposed method of distributing relief to the class, including the method of

21   processing class-member claims; (iii) the terms of any proposed award of attorney's fees,

22   including timing of payment; and (iv) any agreement required to be identified under Rule

23   23(e)(3)."  This consideration overlaps with certain *Hanlon* factors, such as the strength of the

24   plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of

25   maintaining class action status throughout the trial; and the amount offered in settlement.  *See*

26   *Hanlon*, 150 F.3d at 1026.  The Court considers the Rule 23(e)(2)(C) subfactors in turn.

27

28

United States District Court
Northern District of California

### i.   Rule 23(e)(2)(C)(i):  Costs, Risks, and Delay of Trial and Appeal

In assessing "the costs, risks, and delay of trial and appeal," Fed R. Civ. P. 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial." *Hanlon*, 150 F.3d at 1026.

Here, the Court finds that the parties have done substantial investigation and tested it through the court process with a ruling on Defendants' motion to dismiss the Second Amended Complaint. *See* Order Granting Mot. to Dismiss SAC, ECF No. 111.  The Court takes no position on the merits of the action, but notes that it granted the motion to dismiss in full, with leave to amend, and that Mr. Shah faced an uphill battle in getting through the pleading stage with respect to issues such as scienter and the actionability of statements on Precigen's MBP technology.  The Settlement Class would have faced similar risks at trial.  The Court finds that if not for this Settlement Agreement, the parties would have litigated for months before Mr. Shah could prevail on a motion to dismiss the Third Amended Complaint, if at all, after which Mr. Shah almost certainly would have faced several more months, if not over a year, of opposition to a formal motion for class certification and a motion for summary judgment before potentially bringing the case to trial.  Accordingly, the settlement of this litigation provides an early resolution, ensuring a strong recovery of $13,000,000, and eliminating the risk of no recovery at all.  Thus, the Settlement Agreement is in the best interest of the Settlement Class.  The Court finds that this factor weighs in favor of approval.

### ii.   Rule 23(e)(2)(C)(ii)–(iv):  Effectiveness of Distribution Method, Terms of Attorney's Fees, and Supplemental Agreements

The Court must likewise consider "the effectiveness of [the] proposed method of distributing relief to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii).  The Court has already approved the Plan of Allocation and has determined that it is reasonable and effective. *See* Prelim. Order ¶ 5.  The "terms of [the] proposed award of attorney's fees," Fed. R. Civ. P. 23(e)(2)(C)(iii), are reasonable as discussed below, *see infra*, at Part III(A)(2).  There are no supplemental agreements. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv).  Accordingly, these factors weigh in favor of approval.

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

#### d.     Rule 23(e)(2)(D):  Equitable Treatment of Class Members

Rule 23(e)(2)(D) requires the Court to consider whether "the proposal treats class members equitably relative to each other."  Consistent with this instruction, the Court considers whether the proposal "improperly grant[s] preferential treatment to class representatives or segments of the class."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citation omitted).

Here, under the Settlement Agreement's Plan of Allocation was developed by Scott+Scott in consultation with a damages expert, who is a financial economist and chartered financial analyst with over 25 years of experience in advising both private litigants and the Securities Exchange Commission on damages, loss causation, and plan of allocation issues in federal securities cases. *See* Fredericks Decl. ¶ 45.  The Plan of Allocation is based upon the estimated amount of artificial inflation in the per share price of Precigen (f/k/a Intrexon) common stock (ticker PGEN, formerly XON) during the Class Period.  *See* Long Form Notice 11–14.  To have a Recognized Claim under the Plan, a Claimant must have purchased or otherwise acquired their shares during the Settlement Class Period (i.e., between May 10, 2017 and September 25, 2020, inclusive) and held them through one or more of the alleged corrective disclosure dates that removed the alleged artificial inflation caused by Defendants' alleged misrepresentations.  *See id.*  The sum of an Authorized Claimant's Recognized Loss Amounts for all their Settlement Class Period purchases/acquisitions is that claimant's "Recognized Claim," and the Net Settlement Fund will be allocated to Authorized Claimants on a pro rata basis based on the relative size of their Recognized Claims. *See* Long Form Notice 11, 13.

The Court finds the Plan of Allocation to be a fair, reasonable, adequate, and equitable method to allocate the Net Settlement Fund among members of the Settlement Class.  *See, e.g.*, *Wong*, 2021 WL 1531171, at *8 (approving plan of allocation under which "class members who have submitted a Proof of Claim will have their trade information evaluated against the Class definition and the Plan of Allocation to determine their 'Recognized Loss' in order to receive payments on a pro rata portion of the Net Settlement Fund").  Accordingly, this factor weighs in favor of approval.

United States District Court
Northern District of California

### e.   Remaining *Hanlon* Factors:  Governmental Participant

The Court has reasoned that seven of the eight *Hanlon* factors overlap with the factors enumerated in Rule 23(e)(2).  *See supra*, at Part II(B)(2)(a)–(d).  It now turns to the last *Hanlon* factor:  "the presence of a governmental participant."  *Hanlon*, 150 F.3d at 1026.

This action was filed on October 5, 2020, shortly after Precigen reached a settlement with the Securities and Exchange Commission (the "SEC") on September 25, 2020.  *See* TAC ¶ 101; ECF No. 1.  The SEC settlement resulted in Precigen's (1) consent to the entry of a cease-and-desist order prohibiting it from committing "any future violations" of SEC rules requiring the filing of accurate current reports with the SEC, and (2) agreement to pay a $2.5 million penalty to the SEC under § 13 of the Exchange Act.  *See* TAC ¶ 101; Fredericks Decl. ¶ 40.  The findings of the SEC investigation did not result in any allegations of fraud, were limited to settled allegations involving alleged misstatements from 2017, and involved no admissions of misstatement by any Defendant.  Fredericks Decl. ¶ 40.

Given the parameters of the SEC's investigation and settlement, Mr. Shah would still have to plead and prove actionable misstatements for the portions of the Class Period from 2018 through September 25, 2020, scienter, loss causation, and damages—and, as described above, *see supra*, at Part II(B)(2)(c)(i), would have faced substantial challenges in doing so on which the SEC investigation and settlement would have had no bearing.  The existence of the SEC investigation and settlement does not support a finding that Mr. Shah could have achieved a better outcome than the $13 million recovery obtained here.  Accordingly, this factor weighs minimally, if at all, against denying the Approval Motion, and does not prevent final settlement approval.  *See In re Wells Fargo Collateral Prot. Ins. Litig.,* No. SAM1702797, 2019 WL 6219875, at *3 (C.D. Cal. Nov. 4, 2019) (approving final settlement where government investigated practices at issue in litigation prior to filing of suit was "[p]erhaps the only *Churchill* factor weighing against approving the settlement").

### C.   Objections

Two objections were filed.  "An objector to a proposed settlement agreement bears the burden of proving any assertions they raise challenging the reasonableness of a class action

settlement." *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 583 (N.D. Cal. 2015) (citing *United States v. Oregon*, 913 F.2d 576, 581 (9th Cir. 1990). The Court address each objection in turn.

### 1.    The Dean Objection

Mr. Dean mailed his objection on September 16, 2023, and it was filed on September 21, 2023. *See* Dean Obj. Mr. Dean objects that (1) it is too onerous to locate the purchase records of his 4,571 shares of Precigen common stock, as required to receive a payment from the Net Settlement Fund, and that those records should exist elsewhere; (2) that the average recovery of $0.13 per share, less attorneys' fees and costs, is too low to make the effort of locating the purchase records worthwhile; (3) that the Settlement Agreement is not "made for the little guy, or even the medium guy . . . [a]ll the money will go to the major players . . . who should have already known better"; (4) that he only received notice of the Settlement Agreement on September 16, "10 days before the [deadline]," and that the notice did not inform him of how to file his objection electronically; and (5) that the Settlement Agreement is "just not fair . . . [and] has all the appearances of a set-up." *See id.*

The Court is highly sympathetic to the difficulty of complying with the Proof of Claim form. Nonetheless, in light of the prevalence of fraudulent financial activity, the Court finds the process of requiring transaction records necessary to ensure that Net Settlement Fund proceeds are not paid to individuals who do not belong to the Settlement Class. *See Broomfield v. Craft Brew Alliance, Inc.*, No. 17-cv-01027, 2020 WL 1972505, at *21 (N.D. Cal. Feb. 5, 2020) (finding age certification provision "necessary to ensure that only those who are legally allowed to purchase Kona Beers received compensation under the Settlement Agreement") (citation omitted). The Court will therefore overrule Mr. Dean's first and third objections to the extent they protest the process of claim submission.

To the extent Mr. Dean's second, third, and fifth objections object to the Settlement Amount as too low, the Court finds the all-cash, non-reversionary $13,000,000 settlement, including the Plan of Allocation, to be fair, reasonable, and adequate for the reasons described above. *See supra*, at Part II(B)(2). Accordingly, the Court will overrule these objections. *See*

*Quiruz v. Specialty Commodities, Inc.*, No. 17-cv-03300-BLF, 2020 WL 6562334, (N.D. Cal. Nov. 9, 2020) ("[An objector's] assertion that the settlement should be ten times greater is devoid of supporting facts or legal citations.  Accordingly, it does not provide a basis for denying the motion for final approval.") (citing *Young v. LG Chem Ltd.*, 783 F. App'x 727, 737 (9th Cir. 2019)); *see also Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) ("[I]t is the nature of a settlement, as a highly negotiated compromise . . . that it may be unavoidable that some class members will always be happier with a given result than others.") (internal punctuation and citation omitted).

The Court will also overrule Mr. Dean's fifth objection to the extent it contends that the Settlement Agreement is the product of collusive activity, as the Court has already found strong proof of a lack of collusion, particularly in light of the parties' acceptance of Judge Phillips's mediation proposal in crafting the Settlement Agreement.  *See supra*, at Part II(B)(2)(b).

Lastly, the Court will overrule Mr. Dean's fourth objection regarding notice, as the Claims Administrator complied with the Court's Preliminary Approval Order regarding notice procedures and did not receive Mr. Dean's name and address at any point prior to his objection.  *See* Claims Adm'r Suppl. Decl. ¶ 10.  Further, Mr. Dean's objection was timely filed, and he was therefore not prejudiced by the delay.

### 2.     The Dvores Objection

Mr. Dvores mailed his objection on September 26, 2023, and it was filed on October 3, 2023.  *See* Dvores Obj.  Mr. Dvores objects that (1) the choice of May 10, 2017 as the beginning of the Class Period is illogical and unreasonable; (2) the Settlement Amount is unfair and inadequate; (3) notice was inadequate because it failed to provide class members with important information regarding the SEC investigation and settlement; and (4) the attorneys' fee request of 25% of the Settlement Fund is unjustified and should be rejected.  *See id.*

### a.     Class Period Start Date

With respect to his first objection—the choice of May 10, 2017 as the start of the Class Period—Mr. Dvores argues that the date is "illogical and unreasonable" because he purchased Precigen common stock prior to that date (and specifically on May 8, 2017), having relied on

broker analyst reports containing positive statements about Precigen based on other allegedly misleading statements. *See* Dvores Obj. 2–3. Although the Court appreciates Mr. Dvores's frustration at having bought shares two days prior to the start of the Class Period, it is not persuaded by his argument—unsupported by any analysis of earlier statements or legal support— that the start date is "illogical and unreasonable." *See Sekiya v. Gates*, 508 F.3d 1198, 1200 (9th Cir. 2007) (rejecting objections that contained "[b]are assertions and lists of facts unaccompanied by analysis and completely devoid of caselaw"). Further, the Court is satisfied that the May 10, 2017 start of the Class Period is reasonable, given that, as Mr. Dvores admits and Mr. Shah's counsel stated at the fairness hearing, that was the date identified by the SEC as the issuance of Precigen's first potentially inaccurate statement about MBP. *See* Dvores Obj. 2; Tr. 10:15–23. Finally, the Settlement Agreement does not release Mr. Dvores from bringing a claim arising from any transaction that occurred prior to May 10, 2017. *See* Settlement Agreement ¶ 1.40. For these reasons, the Court will overrule Mr. Dvores's objection as to the Class Period.

### b. Settlement Amount

Mr. Dvores next objects to the Settlement Amount of $13,000,000 as "inadequate and unfair and a breakdown of our system of justice and the public policy goal of protecting public shareholders from corporate management misconduct and misrepresentation," in light of the size of his capital loss. *See* Dvores Obj. 3. The Court will overrule this objection for the same reasons it overruled Mr. Dean's objection that the Settlement Amount is too low: a settlement generally requires a level of compromise under which litigants receive a certain recovery less than the full amount of their losses, and the Court finds the Settlement Agreement, including the Settlement Amount and the Plan of Allocation, to be fair, reasonable, and adequate. *See supra*, at Parts II(B)(2), II(C)(1); *see also Free Range Content, Inc. v. Google, LLC*, No. 14-cv-02329, 2019 WL 1299504, at *8 (N.D. Cal. Mar. 21, 2019) (noting that although "every litigant hopes to recover the full amount of his losses, . . . the very nature of a settlement is that the parties must compromise and accept less than a full recovery, in exchange for no longer facing the risk of losing on the merits and losing any chance of recovery").

United States District Court
Northern District of California

### c.      Adequacy of Notice

Mr. Dvores next objects to the adequacy of the notice sent to potential members of the Settlement Class, arguing that notice was defective because it did not inform recipients of the SEC's investigation of Precigen's MBP statements and the subsequent cease-and-desist order and $2,500,000 settlement.  *See* Dvores Obj. 4.  Mr. Dvores argues that this information is material to a class member's understanding of the strength of the plaintiffs' case in this action, so that its exclusion "effectively prevented class members from having a fair opportunity to evaluate their chances of prevailing in a jury trial of this class action."  *Id.*  He further states that a notice "should summarize all material factors which shareholders should consider in deciding whether to approve or reject the settlement."  *Id.*  Mr. Shah responds that the standard for evaluating the adequacy of notice is not whether is "summarize[s] all material factors," but rather whether the notice contains "sufficient detail simply 'to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  Reply 6, ECF No. 144 (quoting *In re Online DVD-Rental*, 779 F.3d at 946).  The Court takes Mr. Dvores's point about desiring more information on the SEC proceedings, but (1) agrees with Mr. Shah that the Ninth Circuit acknowledges that not everything can be included in the notice and (2) notes that the settlement website—which is repeatedly provided in the Notice Packet, *see, e.g.*, Long Form Notice 5, 10—includes court documents, such as multiple complaints, that describe the SEC proceedings.  The Court accordingly concludes that the Notice Packet met the standard for adequacy by describing "the terms of the settlement in sufficient detail," and also provided recipients access to further resources, including information regarding the SEC proceedings.  *See In re Online DVD-Rental*, 779 F.3d at 946 (quoting *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012); *see also supra*, at Part II(B)(1).

### d.      Attorneys' Fees Request

Lastly, Mr. Dvores objects to Mr. Shah's request for attorneys' fees of 25% of the Settlement Fund, or $3,250,000.  *See* Dvores Obj. 4–5.  He argues that Scott+Scott is a "top level national and global firm," and that its "record of major victories and recoveries in securities class actions whether by trial or by settlement" makes the Settlement Amount "disappoint[ing]" in considering the "huge losses suffered by the class."  *Id.*  Mr. Dvores further argues that attorneys'

fees must be based in results, rather than effort, and that the result here is too low to justify "25% of a very low gross settlement". *See id.* As described in more detail below, *see infra*, at Part III(A)(2), the Court finds the request for attorneys' fees to be reasonable under both the Ninth Circuit's benchmark and the lodestar cross-check, particularly in light of the significant risk that the case would not have gone forward beyond the pleading stage, or won at trial. It will accordingly overrule this objection.

### D.    Conclusion

For the foregoing reasons, and after considering the record as a whole, the Court finds that notice of the Settlement Agreement was adequate, the Settlement Agreement was not the result of collusion, and the Settlement Agreement—including the Plan of Allocation—is fair, adequate, and reasonable. Mr. Dean's and Mr. Dvores's objections are OVERRULED. Mr. Shah's Motion for Final Approval of Settlement and Plan of Allocation is GRANTED.

### III.    MOTION FOR AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES AND CLASS REPRESENTATIVE AWARD (ECF NO. 137)

Mr. Shah also seeks an award of attorneys' fees totaling 25% of the Settlement Fund, reimbursement of litigation costs and expenses in the amount of $88,688.02, and a service award of $3,000. *See* Fees Mot. 1–2.

### A.    Attorneys' Fees and Expenses

#### 1.    Legal Standard

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941. "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorneys' fees. *Id.* at 942.

Under the percentage-of-recovery method, the attorneys are awarded fees in the amount of a percentage of the common fund recovered for the class. *Id.* Courts applying this method

"typically calculate 25% of the fund as the benchmark for a reasonable fee award, providing adequate explanation in the record of any special circumstances justifying a departure." *Id.* (internal quotation marks omitted).  However, "[t]he benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.3d 1301, 1311 (9th Cir. 2011).  Relevant factors to a determination of the percentage ultimately awarded include "(1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *Tarlecki v. bebe Stores, Inc.*, No. C 05-1777 MHP, 2009 WL 3720872, at *4 (N.D. Cal. Nov. 3, 2009) (citations omitted).

Under the lodestar method, attorneys' fees are "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941.  This amount may be increased or decreased by a multiplier that reflects factors such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 942.

In common fund cases, a lodestar calculation may provide a cross-check on the reasonableness of a percentage award. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002).  Where the attorneys' investment in the case "is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable." *Id.* Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted." *Id.* Thus even when the primary basis of the fee award is the percentage method, "the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Id.* "The lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . . . [Courts] may rely on summaries submitted by the attorneys and need not review actual billing records." *Covillo v. Specialtys Cafe*, No. C-11-00594-DMR, 2014 WL 954516, at *6 (N.D. Cal. Mar. 6, 2014) (internal quotation marks and

citation omitted).

An attorney is also entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation omitted).

### 2.   Discussion

Mr. Shah seeks an award of attorneys' fees of 25% of the $13,000,000 gross Settlement Fund—*i.e.*, $3,250,000, plus 25% of the interest earned from the date the settlement proceeds were deposited into escrow—as well as litigation expenses and costs in the amount of $88,688.02.  *See* Fees Mot. 14, 17.  The request for attorneys' fees is made on behalf of both lead counsel, Scott+Scott, as well as The Schall Law Firm ("Schall Law"), who acted as additional counsel for Mr. Shah and the Settlement Class.  *See* Fees Mot. 2.

Addressing expenses first, the Court does not hesitate to approve an award in the requested amount of $88,688.02.  Lead counsel Scott+Scott has submitted a list of expenses by category of expense incurred in connection with this action, totaling $88,688.02.  *See* Fredericks Decl., Exh. C.  The Court has reviewed the list and finds the expenses to be reasonable.

The Court likewise is satisfied that the request for attorneys' fees for Scott+Scott and Schall Law is reasonable.  Using the percentage-of-recovery method, the Court starts at the 25% benchmark.  *See In re Bluetooth*, 654 F.3d at 942.  Mr. Shah requests 25%, given the superior results achieved; the significant risks of the litigation, the difficult nature of securities litigation; the additional complexities caused by the subject matter of the alleged misstatements, *i.e.*, methane bioconversion technologies; and the contingent nature of the fee.  Fees Mot. 3–12. Courts have awarded comparable percentages in similar cases.  *See, e.g.*, *Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 WL 537946, at *23 (N.D. Cal. Feb. 11, 2016) (25% of $23 million settlement fund in securities fraud action); *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1049 (N.D. Cal. 2008) (28% of $13,750,000 settlement fund in securities fraud action).  As of September 14, 2023, Scott+Scott and Schall Law expended 2,279.70 hours and 49 hours, respectively, litigating this action, for a total of 2,328.70 hours.  *See* Fredericks Decl. ¶ 49; *id.* at Exh. A; Decl. of Brian J. Schall ("Schall Decl."), Exh. A, ECF No. 141-1.  A lodestar cross-check

confirms the reasonableness of the requested fees, which amounts to a multiplier of 1.62 of the

lodestar amount of $2,000,279.00.  *See* Fredericks Decl. ¶ 49.  Courts have found that

"[m]ultipliers of 1 to 4 are commonly found to be appropriate in common fund cases."  *Aboudi v.*

*T-Mobile USA, Inc.*, No. 12-CV-2169-BTM, 2015 WL 4923602, at *7 (S.D. Cal. Aug. 18, 2015);

*see also Petersen v. CJ Am., Inc.*, No. 14-CV-2570-DMS, 2016 WL 5719823, at *1 (S.D. Cal.

Sept. 30, 2016) (awarding 1.12 multiplier and recognizing that "the majority of fee awards in the

district courts in the Ninth Circuit are 1.5 to 3 times higher than lodestar"); *Destefano*, 2016 WL

537946, at *21 (noting that the 1.7 multiplier of $23 million settlement was "towards the lower

end of the Ninth Circuit's scale").

> Mr. Shah's motion for attorneys' fees and expenses is GRANTED.  Mr. Shah is awarded
attorneys' fees of 25% of the Settlement Fund, consisting of $3,250,000 plus 25% of the interest
earned from the date the settlement proceeds were deposited into escrow, and litigation expenses
in the amount of $88,688.02.

### B.  Service Award

> Mr. Shah requests an incentive award in the amount of $3,000.00.  *See* Fees Mot. 2.  The
Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(4), limits a class
representative's recovery to an amount "equal, on a per share basis, to the portion of the final
judgment or settlement awarded to all other members of the class," but also provides that
"[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses
(including lost wages) directly relating to the representation of the class to any representative party
serving on behalf of a class."  Incentive awards "are discretionary . . . and are intended to
compensate class representatives for work done on behalf of the class, to make up for financial or
reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness
to act as a private attorney general."  *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59
(9th Cir. 2009) (internal citation omitted).

> "Incentive awards typically range from $2,000 to $10,000."  *Bellinghausen v. Tractor*
*Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015).  Service awards as high as $5,000 are
presumptively reasonable in this judicial district.  *See, e.g., Camberis v. Ocwen Loan Serv. LLC*,

No. 14-cv-02970, 2015 WL 7995534, at *3 (N.D. Cal. Dec. 7, 2015). Mr. Shah's understood throughout the proceedings his obligation to represent the best interests of the Settlement Class, and his participation in this case was substantial and diligent in pursuit of a favorable resolution in this action. *See* Shah Decl. ¶¶ 5, 7–8. He is a retired corporate controller with over 35 years of investing experience, and has spent at least 15 hours researching Precigen common stock, reviewing litigation papers and Court orders sent to him by counsel, and discussing and consulting with counsel throughout the case. *See id.* ¶¶ 1, 7. In light of Mr. Shah's involvement in the action, an incentive award in the amount of $3,000—an amount below the $5,000 threshold deemed presumptively reasonable in this district and circuit—is appropriate given the achieved settlement. *See Hayes v. MagnaChip Semiconductor Corp.*, No.14-cv-01160-JST, 2016 WL 6902856 at *10 (N.D. Cal. Nov. 21, 2016) (noting that $5,000 incentive awards are presumptively reasonable in the 9th Circuit); *In re Am. Apparel S'holder Litig.*, No. CV 10-06352 MMM, 2014 WL 10212865, at *34 (C.D. Cal. July 28, 2014) (awarding an incentive award of $6,600 in a securities class action).

The Court concludes that the requested $3,000.00 incentive award to Mr. Shah is appropriate in this case.

### C.   Conclusion

The Court finds that the request for attorneys' fees and costs is reasonable, and that the requested service award is appropriate, and accordingly GRANTS Mr. Shah's Fees Motion.

## IV.   ORDER

For the foregoing reasons, the Court hereby ORDERS as follows:

1.   Mr. Shah's Motion for Final Approval of Settlement and Plan of Allocation is GRANTED.

2.   Mr. Shah's Motion for Attorneys' Fees and Expenses and Service Award is GRANTED.

3.   Mr. Dean's and Mr. Dvores's objections are OVERRULED.

Accordingly, the Court gives its final approval to the Settlement Agreement, and directs the Parties to consummate the Settlement in accordance with the terms and provisions of the

United States District Court
Northern District of California

1   Settlement Agreement.

2       All claims asserted against all Defendants are hereby dismissed with prejudice.  All parties

3   to the Action shall bear their own costs, except as otherwise provided in the Settlement

4   Agreement.

5       Lead Plaintiff and each Settlement Class Member, on behalf of themselves and their

6   Related Persons, shall be deemed to have, and by operation of this Order and concurrently filed

7   Final Judgment shall have, fully, finally, and forever released, waived, relinquished and

8   discharged, and shall forever be enjoined from prosecuting, all Released Claims against each

9   Released Defendant Person, whether or not such Plaintiff or Settlement Class Member executes

10  and delivers a Proof of Claim.

11      Defendants and each of the Released Defendant Persons shall be deemed to have, and by

12  operation of this Order and concurrently filed Final Judgment shall have, fully, finally, and forever

13  released, waived, relinquished and discharged, and shall forever be enjoined from prosecuting,

14  each and every one of the Released Defendants' Claims against each Released Plaintiff Person.

15      Nothing contained herein shall, however, bar any Party, Released Defendant Person, or

16  Released Plaintiff Person from bringing any action or claim to enforce the terms of the Settlement

17  Agreement or this Order and concurrently filed Final Judgment.

18      The Court finds that the proposed Plan of Allocation is a fair and reasonable method to

19  allocate the Net Settlement Fund among Settlement Class Members, and Plaintiff's Counsel and

20  the Claims Administrator are directed to administer the Plan of Allocation in accordance with its

21  terms and the terms of the Settlement Agreement.

22      The Court finds that the Parties and their counsel have complied with all requirements of

23  Rule 11 of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act

24  of 1995 as to all proceedings had herein.

25      Neither this Order and concurrently filed Final Judgment, the Settlement Agreement, nor

26  any of the terms and provisions of the Settlement Agreement, nor any of the negotiations or

27  proceedings in connection therewith, nor any of the documents or statements referred to herein or

28  therein, nor the Settlement Agreement, nor the fact of the Settlement Agreement, nor the

Settlement proceedings, nor any statement in connection therewith:

    a) is or may be deemed to be, or may be used as an admission, concession, or evidence of the validity or invalidity of any Released Claims, the truth or falsity of any fact alleged by Lead Plaintiff or any other plaintiff in the Action (collectively, "Plaintiffs"), the sufficiency or deficiency of any defense that has been or could have been asserted in the Action, or any wrongdoing, liability, negligence or fault of the Defendants, their Related Persons, or any of them;

    b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or misrepresentation or omission with respect to any statement or written document attributed to, approved or made by any of the Defendants or their Related Persons in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal;

    c) is or may be deemed to be or shall be used, offered or received against any Party or any of their Related Persons as an admission, concession or evidence of the validity or invalidity of any Released Claim or Released Defendants' Claims, the infirmity or strength of any claim raised in the Action, the truth or falsity of any fact alleged by any Plaintiff or the Settlement Class, or the availability or lack of availability of meritorious defenses to the claims raised in the Action; nor

    d) is or may be deemed to be or shall be construed as or received in evidence as an admission or concession against the Defendants, or their Related Persons, or any of them, that any of Plaintiff's or the Settlement Class Members' claims are with or without merit, that a litigation class should or should not be certified, that damages recoverable in the Action would have been greater or less than the Settlement Amount or that the consideration to be given pursuant to the Settlement Agreement represents an amount equal to, less than or greater than the amount which could have or would have been recovered after trial

    Notwithstanding the immediately preceding paragraph, however, the Parties and the other Released Defendant Persons and Released Plaintiff Persons may file the Settlement Agreement

and/or this Order and concurrently filed Final Judgment in any other action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, full faith and credit, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim. The Parties may also file the Settlement Agreement and/or this Order and concurrently filed Final Judgment in any proceedings that may be necessary to consummate or enforce the Settlement Agreement, the Settlement, or this Order and concurrently filed Final Judgment.

Except as otherwise provided herein or in the Settlement Agreement, all funds held by the Escrow Agent shall be deemed to be held in custodia legis and shall remain subject to the jurisdiction of the Court until such time as the funds are distributed or returned pursuant to the Settlement Agreement and/or pursuant to further order of the Court.

Without affecting the finality of this Order and concurrently filed Final Judgment in any way, this Court retains continuing exclusive jurisdiction over all Parties to the Action and the Settlement Class Members for all matters relating to the Action, including the administration, interpretation, effectuation or enforcement of the Settlement Agreement, and including any application for fees and expenses incurred in connection with administering and distributing the Settlement proceeds to the Settlement Class Members.

Absent further order of the Court, the Court hereby sets the following schedule for completing the administration of the Settlement in this matter:

a) the Claims Administrator shall complete its review of submitted Proofs of Claim in this matter and calculation of Recognized Claim Amounts for Authorized Claimants within 180 days of the Court's existing deadline for putative Settlement Class Members to submit completed Proofs of Claim;

b) within twenty-one (21) days of the later of (i) the Claims Administrator's completion of its review of submitted claims or (ii) the date on which each of the conditions set forth in ¶ 4.14 of the Settlement Agreement (including the occurrence of the Effective Date) has been met, Plaintiff's Counsel shall submit a distribution motion (the "Settlement Class Distribution Motion") to the Court,

which shall seek entry of an Order (the "Distribution Order") approving the Claims Administrator's claims determinations and resolving, pursuant to ¶¶ 4.7–4.10 of the Settlement Agreement, any unresolved disputes raised by any Claimants relating to the Claims Administrator's administrative determinations;

   c)  unless the Distribution Order provides for a later date, the Claims Administrator shall mail checks distributing settlement fund payments to eligible Settlement Class Members within 30 days of entry of the Distribution Order, which checks shall request that recipients cash them within 60 days; and

   d)  except as provided in sub-paragraphs (a)–(c) above, without further order of the Court the Defendants and Plaintiff may agree to reasonable extensions of time to carry out any of the provisions of the Settlement Agreement.

If the Settlement is not consummated in accordance with the terms of the Settlement Agreement, then the Settlement Agreement and this Order and the Final Judgment that the Court shall separately file (including any amendment(s) thereof, and except as expressly provided in the Settlement Agreement or by order of the Court) shall be null and void, of no further force or effect, and without prejudice to any of the Parties, and may not be introduced as evidence or used in any action or proceeding by any Person against the Parties, and each of the Parties shall be restored to his, her or its respective litigation positions as they existed immediately prior to the date of the execution of the Settlement Agreement.

**IT IS SO ORDERED.**

Dated: November 6, 2023

_____

Beth Labson Freeman
United States District Judge

United States District Court
Northern District of California